**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **No. 21-cr-00040 (TNM);** |
| | : | **No. 21-mj-00111 (RMM)** |
| | : | |
| **PATRICK EDWARD MCCAUGHEY III,** | : | |
| **Defendant.** | : | |
| | : | |

**GOVERNMENT'S OMNIBUS OPPOSITION TO**
**DEFENDANT'S MOTION FOR RELEASE ON BOND AND**
**MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this omnibus opposition to the defendant's motion for release on bond, filed on February 8, 2021, and memorandum in support of its oral motion that the defendant, Patrick Edward McCaughey III, be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) [Crime of Violence]. The United States opposes the defendant's release on real estate and surety bonds pledged by the defendant's parents because the proposed bonds are insufficient to secure the safety of the community and to ensure that the defendant does not flee the country. In view of the factors outlined in 18 U.S.C. § 3142(g), there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community and reasonably assure the appearance of the defendant, pursuant to 18 U.S.C. §§ 3142(e).

1

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**Factual Background**

**1. The Attack on the United States Capitol on January 6, 2021.**

The United States Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized individuals with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College for the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael Pence, who is also the President of the Senate, was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Michael Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior

of the U.S. Capitol building, and U.S. Capitol Police ("USCP") were present and attempting to keep the crowd away from the U.S. Capitol building and the proceedings underway inside. Officers from the Metropolitan Police Department of the District of Columbia ("MPD") also responded to the U.S. Capitol to assist USCP in protecting the Capitol.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the U.S. Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of both USCP and MPD, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, and Vice President Michael Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During the course of the violent protests, several individuals were armed with weapons including bats, pepper spray, sticks, zip ties, as well as bulletproof vests and anti-tear gas masks. During the course of the violent protest, over 100 law enforcement officers reported being assaulted or injured by these violent protesters while attempting to protect the U.S. Capitol and the individuals inside of the building. These assaults occurred both inside of the Capitol, as well as on the steps outside of the Capitol and the grounds of the Capitol. The defendant, as detailed below, is charged with two instances of assaulting two different MPD officers with a makeshift

3

weapon, as well as other criminal violations, including civil disorder and obstruction of an official proceeding.

**2. Patrick Edward McCaughey III's Criminal Conduct**

   **a. Assault on Metropolitan Police Department Officers Daniel Hodges and Henry Foulds in the West Terrace Tunnel**

On January 6, 2021, MPD Officers Daniel Hodges and Henry Foulds responded to a call to assist the USCP in protecting the U.S. Capitol Building and Grounds. Shortly before 3:00 p.m., Officers Hodges and Foulds, and many other MPD and USCP officers gathered in the interior tunnel of the U.S. Capitol building, which leads out to an archway by the lower west terrace door. A large crowd of rioters pushed forward into the tunnel and tried to push through the police line. The defendant was part of a mob of individuals attacking law enforcement officers who were trying to prevent the unruly crowd from entering the U.S. Capitol, which was closed to the public that day. USCP officers are designated as officers of the United States under 18 U.S.C. 1114, and MPD officers were actively assisting USCP in their efforts to protect the Capitol on that date.

Surveillance video taken from inside of the tunnel captures defendant McCaughey first entering the mouth of the tunnel from the outside at approximately 2:49 pm. The same surveillance video then shows him initially leaving, but returning again around 3:05 p.m., this time going all the way inside the tunnel towards where the rioters are fighting with the police. As he entered the tunnel, he appeared to move forward to the front of the mob of his own volition. There is no evidence that McCaughey was pushed into the tunnel by others, that his move toward the front to physically engage the police line was compelled by others, or that he tried to turn back from the mob. Rioters in the group can be seen passing stolen police riot shields back to other rioters in the

4

tunnel. McCaughey voluntarily grabbed one of the riot shields and held onto it as he moved through the crowd toward the line of officers.

A second video, recorded by an independent journalist and posted on YouTube captures McCaughey's assaults on multiple officers in the police line, including Officers Hodges and Foulds[1]. The video depicts officers attempting to control the increasingly violent crowd using batons, riot shields, and O.C. spray (more commonly known as pepper spray or mace). In response, multiple individuals attempt to combat the officers by using stolen riot shields, police batons, mace, and make-shift weapons. Some of the individuals in the crowd can be heard planning and implementing a rotation of rioters so that "fresh" rioters continually move toward the front of the line, while those who are tired move toward the back and out of the tunnel.

During the effort to break through the police line, McCaughey moved toward the front of the line and began pushing a stolen police riot shield against an unidentified officer while saying, "just go home," and making other similar statements. He then began using the riot shield to push against Officer Hodges the officer attempted to repel McCaughey with his police baton. While forcefully pushing Officer Hodges with the shield, McCaughey then verbally engaged Hodges, making comments such as, "come on man, you are going to get squished just go home," "don't try and use that stick on me boy," and "just go home." Shortly thereafter, another rioter sprayed something orange from a canister at the officers over the riot shields that McCaughey and other rioters used to push at the officers.

While being assaulted by McCaughey, the video shows Officer Hodges crying out in pain as McCaughey pins the officer's body between the stolen riot shield and the lower west terrace door. As

---

[1] The relevant portions of the video can be viewed from minutes 19:00 to 23:00 at:
https://www.youtube.com/watch?v=qc0U755-uiM

McCaughey continued to pin Officer Hodges between the shield and the door, another rioter rips off Hodges gas mask, exposing Hodges' bloodied mouth. Hodges continues screaming in pain as he cannot move and is helpless to defend himself, as captured in the still shot below.



McCaughey eventually relents and stops pushing the riot shield against Hodges' body, which allows Hodges to dislodge himself from the door frame. McCaughey then appears to get the attention of the officer behind Hodges, saying, "Hey you, hey you, this guy isn't doing too well," in an apparent reference to Hodges. Other officers then aid Hodges in moving away from the front of the police line.

Even after Hodges is extricated from the door, McCaughey does not stop. He continues to both assist the mob attacking law enforcement and attacks multiple officers himself in the effort to break through the police line and into the Capitol building. At one point in the video, an unidentified rioter appears to state "take the shield." McCaughey can then be seen grabbing a clear police riot shield from the feet of uniformed law enforcement officers and passing it back to other rioters.

In another portion of the video, McCaughey repeatedly strikes multiple officers with the stolen riot shield, including Officer Foulds who moved toward the front of the police line after Hodges moved to safety. Foulds is readily identifiable in the video as the officer wearing the

6

distinct green mask. At this point, as evidenced in the below still from Body Worn Camera Footage from a nearby officer, no other rioters were pressed up against McCaughey as he repeatedly and forcefully began striking Officer Foulds with the shield while yelling "get out of our house."



Shortly after this portion of the assault, McCaughey disappears from the video, but is captured exiting the tunnel without the shield, which he appears to have passed off to another rioter in the tunnel, by Capitol surveillance video.

3. **The Defendant's Arrest**

On January 19, 2021, the defendant was arrested in New York at a home owned by his father. Upon arrest, he was wearing a brown jacket consistent with the jacket that he appeared to be wearing in the video of the riot. Furthermore, in a search of the defendant's cell phone, law enforcement recovered multiple "selfie-style" photos that appeared to have been taken by the defendant while outside of the Capitol building on January 6, 2021. Law enforcement also recovered data in the defendant's cell phone that indicated that he conducted an Apple Maps

7

search for directions to Freedom Plaza, located in Washington D.C., on January 6, 2021. The defendant did not provide a statement to law enforcement at the time of arrest.

### 4. Procedural History

On January 18, 2021, the defendant was charged by complaint with: (1) Assaulting an Officer of the United States with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 111(a) and (b); (2) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (3) Entering Restricted Building or Grounds, in violation of 18 U.S.C. 1752(a)( & (b); and (4) Violent Entry or Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2).

The defendant was arrested pursuant to a warrant on January 19, 2021, in New York. At his initial appearance in the Southern District of New York (SDNY) on January 20, 2021, the government orally moved for the defendant's detention pending trial pursuant to § 3142(f)(1)(A) [Crime of Violence] of the federal bail statute. The Court held the defendant and the defendant was then transported by the U.S. Marshals Service from New York to Washington D.C.

On January 29, 2021, the Grand Jury returned a nine-count indictment charging McCaughey with: (Counts 1 & 3) two counts of Assaulting an Officer of the United States with a Dangerous Weapon, 18 U.S.C. §§ 111(a)(1) and (b), one count with respect to Officer Hodges and one count with respect to Officer Foulds; (Counts 2 & 4) two counts of Civil Disorder, 18 U.S.C. § 231(a)(3), one count for each officer; (Count 5) Obstruction of an Official Proceeding, Aiding and Abetting, 18 U.S.C. 1512(c)(2) and 2); (Count 6) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, with a Deadly or Dangerous Weapon, 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A)); (Count 7) Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A)); (Count

8

8) Disorderly Conduct in a Capitol Building, 40 U.S.C. § 5104(e)(2)(D)); and (Count 9) Act of Physical Violence in the Capitol Grounds or Buildings, 40 U.S.C. § 5104(e)(2)(F))

## ARGUMENT

There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the government respectfully submits that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community and reasonably assure the defendant's appearance if he were to be released.

### Nature and Circumstances of the Offenses Charged

During the course of the January 6, 2021, siege of the U.S. Capitol, over 100 law enforcement officers were assaulted by an enormous mob, which included numerous individuals with weapons, bulletproof vests, and pepper spray who were targeting the officers protecting the Capitol. Additionally, the violent crowd encouraged others in the crowd to work together to overwhelm law enforcement and gain unlawful entry into the U.S. Capitol. In the West Terrace tunnel that day, USPC and MPD officers spent approximately three hours defending the U.S. Capitol from breach by the mob. Officers spent much of that time physically defending the entrance from violent members of the mob who fanatically and repeatedly assaulted officers at the front of the police line in an effort to break through line and into the West Terrace entrance.

9

The officers in that line were in full uniform, with clear and visible markings identifying themselves as officers.

The most troubling aspects of McCaughey's conduct involve both the violence he exhibited toward officers in the police line, as well as his determined and enthusiastic participation in attempting to breach the Capitol, even though he had multiple opportunities to walk away. As described above, the defendant is captured on surveillance video first appearing at the entrance to the tunnel at approximately 2:49 pm. At that point, he had a clear look inside the tunnel and ample opportunity to see the other rioters fighting with law enforcement officers guarding the doorway. He then left the mouth of the tunnel, only to voluntarily return a little over 15 minutes later, at approximately 3:05 p.m., and push his way to the front of the mob to fight with law enforcement. The defendant did not have to return to the West Terrace tunnel after he initially walked away. He knew what was going on inside and could have chosen not to contribute to the violence taking place inside the tunnel. Instead, he chose to return and to fight.

Once McCaughey returned to the tunnel for the second time, he made his way to the front of the mob where the violence against the officers was the greatest. McCaughey was not pushed or forced to the front of the mob. Video clearly shows that the defendant moved forward of his own volition, grabbing a stolen riot shield as he moved toward the front. He willingly participated in the mob's efforts to break through the police line and eagerly used violence against the officers to accomplish his mission.

In his violent assaults on Officers Hodges and Foulds, McCaughey had multiple opportunities to change course. He did not. During the assault on Hodges, McCaughey used the stolen riot shield he collected as he moved to the front of the mob to pin the helpless officer

10

against a metal and glass doorframe. Even while another rioter ripped off Hodges gas mask – at a time when other members of the mob were indiscriminately spraying pepper spray into the line of officers – McCaughey did not relent. He continued to forcefully push Hodges against the doorframe where the officer was unable to break free. Although other members of the mob were pushing McCaughey from behind, the video clearly shows that McCaughey used his own weight, as well as the weight of those behind him, to increase the pressure against Officer Hodges. As Hodges struggled to break free, the video shows Hodges screaming in pain while blood runs from his mouth. Even in the face of Hodges' screams, McCaughey refused to back down from his assault on the officers in the police line.

It is not clear why the defendant eventually relented and released Officer Hodges. However, video evidence shows that he did stop pushing the riot shield against Hodges long enough for the officer to get aid and to move away from the front of the line. McCaughey also appeared to try to assist Hodges by pulling the officer's helmet back over his face and by signaling to another officer to help. This moment of humanity – or regret – was another opportunity for McCaughey to stop and to walk away from the violence that day. Again, he chose not to.

Instead, after Hodges had moved to safety, McCaughey continued to use violence to try to break through the police line. Only moments after Hodges moved back, McCaughey is captured on video repeatedly striking Officer Foulds with a stolen riot shield as Foulds moved forward to defend the tunnel entrance. It is only after assaulting Officer Foulds – and after apparently being sprayed in the face with pepper spray – that McCaughey finally decided to leave his place at the front of the line and exit the tunnel.

The defendant's willing and enthusiastic participation in an angry mob seeking to break through the police line, coupled with two alleged crimes of violence against courageous officers seeking to defend the U.S. Capitol, weigh heavily in favor of detention.

### **Weight of the Evidence Against the Defendants**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is strong and compelling.  Significantly, the defendant is captured in multiple videos during the riot and that footage is clear, unmistakable, and not readily open to interpretation.  Not only is McCaughey captured in multiple open-source videos violently engaging with officers, but he is also captured on surveillance footage from the Capitol building that shows his entry into and exit from the thick of the mob in the tunnel.  The defendant's face is clearly visible in multiple videos, as is the brown jacket that he was wearing throughout his assault on Officers Hodges and Foulds.

In addition to the video footage, a search of the defendant's cell phone places him in Washington D.C. at the scene of the riot on that day.  McCaughey's own cell phone contained multiple selfie-style photographs of himself at the U.S. Capitol, as well as the record of an Apple Maps search for directions to Freedom Plaza in Washington, D.C. on January 6, 2021.  Law enforcement also recovered the brown jacket that the defendant was seen wearing in multiple videos, further confirming the defendant's presence on the scene that day.

The evidence against this defendant is very strong, and accordingly, the weight of the evidence weighs heavily in favor of detention.

### Defendants' History and Characteristics

The government recognizes that the defendant does not have any adult convictions, and is only 23 years old. He has recently lived with his mother in Connecticut, and also has strong ties to his father and his father's residence in New York. As such, the defendant moves the court to release him on a real estate bond secured by his father, as well as a as an unsecured bond signed by his mother. The United States contends that this is not sufficient to protect the community and to ensure the defendant's future appearance in court.

With respect to the real estate bond pledged by the defendant's father, also named Patrick McCaughey III, the government's evidence suggests that the defendant traveled to Washington D.C. on January 6, 2021, with the assistance and approval of his father. Nonetheless, the defendant's conduct was not constrained by the presence of his father that day. This strongly suggests that any parental pressure that McCaughey's father may exert to compel the defendant to conform his behavior to court orders will carry little weight in the defendant's decision-making process.

### Danger to the Community and Flight Risk

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention. The charged offenses involve assaultive conduct while using a stolen riot shield – a shield that was intended to be a defensive tool for those on the front lines – against the very officers the shield was mean to protect. The defendant's assault was not only dangerous, but showed a particular disregard for the courageous men and women who risked their safety to defend the Capitol, even while the mob used the officers' own defensive tools against them. The danger

13

the defendant caused by assisting the violent mob and attacking two brave officers cannot be understated. The defendant made a significant contribution to the violence that took place on January 6, 2021, and he is thus a danger to our society and a threat to the peaceful functioning of our community. The defendant's actions should give this Court great concern about the danger he would pose to the community, if released.

Finally, the United States is concerned that the defendant poses a risk of flight because he is a dual citizen of the United States and Germany. The defendant's citizenship of another country, coupled with the substantial penalties that he is facing for his alleged crimes, provide a motive as well as the opportunity to flee the country with impunity. The fact that the defendant has employment available to him if released cannot overcome the danger

Given the above assessment of all four relevant factors, there is clear and convincing evidence that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community and reasonably assure the appearance of the defendant, pursuant to 18 U.S.C. §§ 3142(e).

## **CONCLUSION**

WHEREFORE, the United States respectfully opposes the defendant's motion for release on bond and requests that the Court grant the government's oral motion to detain the defendant pending trial.

Respectfully submitted,

MICHAEL SHERWIN
Acting United States Attorney
N.Y. Bar No. 4444188


By: */s/ Jocelyn Bond*
JOCELYN BOND
Assistant United States Attorney
D.C. Bar Number 1008904
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 809-0793
Jocelyn.Bond@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2021, I caused a copy of the foregoing omnibus opposition and detention memorandum to be served on counsel of record via electronic filing.

                                                                                 */s/ Jocelyn Bond*
                                                                                JOCELYN BOND
                                                                                Assistant United States Attorney