AO 472 (Rev. 11/16) Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| ) | Case No. |
| ) | |
| *Defendant* ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

❐ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
❐ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

❐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

❐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

❐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

❐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

❐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

❐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

❐ **(e)** any felony that is not otherwise a crime of violence but involves:
**(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
**(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

❐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

❐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

❐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

❒ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*:  There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

   ❒ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

   ❒ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

   ❒ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

   ❒ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

   ❒ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

❒ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

   ❒ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

   **OR**

   ❒ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

### Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

❒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

❒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

   ❒ Weight of evidence against the defendant is strong
   ❒ Subject to lengthy period of incarceration if convicted
   ❒ Prior criminal history
   ❒ Participation in criminal activity while on probation, parole, or supervision
   ❒ History of violence or use of weapons
   ❒ History of alcohol or substance abuse
   ❒ Lack of stable employment
   ❒ Lack of stable residence
   ❒ Lack of financially responsible sureties

AO 472  (Rev. 11/16)  Order of Detention Pending Trial

- ❐ Lack of significant community or family ties to this district
- ❐ Significant family or other ties outside the United States
- ❐ Lack of legal status in the United States
- ❐ Subject to removal or deportation after serving any period of incarceration
- ❐ Prior failure to appear in court as ordered
- ❐ Prior attempt(s) to evade law enforcement
- ❐ Use of alias(es) or false documents
- ❐ Background information unknown or unverified
- ❐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: _____

Beryl A. Howell<br>
Chief Judge, U.S. District Court<br>
for the District of Columbia

*United States v. Quaglin*, 21 MJ 355

**ATTACHMENT TO ORDER OF DETENTION PENDING TRIAL, PART III. C:**
**Consideration of Defendant's evidence/arguments for release and**
**18 U.S.C. § 3142(g) Factors**

(1) The Nature and Circumstances of the Offense:

    The nature and circumstances of the offense heavily weigh in favor of detention. Defendant is charged with three felonies and faces up to 20 years imprisonment, Crim. Compl., ECF No. 1, based on his alleged offense conduct of enthusiastically participating in the assault on the Capitol on January 6, 2021, to stop the constitutionally mandated process of counting electoral votes. Rather than being deterred by the presence of law enforcement and police activity to block entry into the Capitol building, defendant engaged in verbal altercations with police officers tasked with protecting the Capitol and the people therein, grabbed and removed a metal barrier separating the Capitol and the police officers from the mob of rioters, and, most significantly physically assaulted, using his fists, a stolen riot shield, and a canister of MK-9 OC spray, no fewer than ten different police officers.

    Video footage from police officers' body-worn cameras ("BWC") and from defendant's own social media postings demonstrate in detail his aggressively provocative, violent actions during the riot. *See generally* Gov't's Mem. Supp. Pretrial Detention ("Gov't's Mem."), ECF No. 8, Exs. A–K; Gov't's Suppl. Mem. Supp. Pretrial Detention, ECF No. 11 (describing in detail Exs. A–K). Defendant filmed himself on January 6, 2021 proceeding to the Capitol, and stating that "I am ready," and showing his gas mask in hand. Gov't's Ex. I. Once at the Capitol, video footage shows that defendant shouted at antagonistically at the police officers stationed there, while shaking the fence that was installed to protect the officers and bar entrance to the Capitol by the mob. Gov't's Ex. A. Defendant is seen on other videos, beginning at approximately 1:08 PM, shoving and striking police officers, including striking one officer in the neck so that he fell, and the government advised that officer had difficulty walking for days thereafter. Defendant is also shown shoving another officer to the ground as that officer advanced to aid yet another officer who had been pushed to the ground by different rioter. Gov't's Exs. B, C.

    The video footage then shows defendant, with the aid of other rioters, at approximately 1:14 PM, rip one section of the protective fencing out of the hands of the police officers who

Page 1 of 5

were attempting to secure it in place.  Gov't's Ex. D.  Later, at approximately 2:34 PM, having breached the fence and assembled with other rioters in the Lower West Terrace of the Capitol grounds, the video footage shows defendant again shoving a police officer to the ground, and picking up a riot shield dropped by a retreating police officer.  Gov't's Ex. E.  Video evidence shows that as the police officers were retreating into a stairwell, defendant lunged at one of the retreating officers, and was restrained by other rioters.  Gov't's Ex. F.

Two different video exhibits then show that defendant entered the tunnel leading into the Capitol building from the Lower West Terrace.  *See* Gov't's Exs. G, H.  Defendant shoved his way to the front line of the mob crammed inside the tunnel and, with other rioters, attempted to shove past the police officers guarding the double glass doors at the entryway to the Capitol.  *Id.*  While at the front of the mob, defendant is shown spraying MK-9 OC at the police officers, including shooting the spray directly into the face of an officer who was not wearing a mask or face guard and whose eyes and face were therefore completely unprotected.  *Id.*  MK-9 OC is a chemical irritant for use by law enforcement and the military, which, according to its manufacturer, is "intended to cause varying degrees of pain and injury, which are temporary" and "may cause damage to property, serious bodily injury or death" if "used incorrectly," Crim. Compl., Ex. A., Aff. Supp. Crim. Compl. ("Aff.") ¶ 28, ECF No. 1-1.  Defendant remained on the front lines as the mob formed a shield wall, collectively shouting "heave ho" as they pushed against the police line in unison.  Defendant can be seen with other rioters striking a police officer in the face with the side of the stolen riot shield.  Gov't's Exs. G, H.

More video evidence, in the form of videos defendant himself filmed and posted to social media from later on January 6, show him celebrating the events at the Capitol and boasting of his role in those events.  *See generally* Gov't's Exs. J–K. In one video, he states that he "was the guy in the red, white, and blue . . . hoodie and the black helmet," and was "absolutely on a loop on Fox News."  Gov't's Ex. J.  He stated, "It was a great time."  *Id.*  In another of defendant's social media videos, he stated, "It's the first step . . . I'm sure I'm going to make the news."  Gov't's Ex. K.

Other social media evidence shows that defendant prepared for his role in the assault on the Capitol months in advance.  As early as November 6, he wrote about "fighting" "on the streets" of Washington, DC in "[f]ull body armor."  Aff. ¶ 38.  In fact, according to one of defendant's social media messages from December 22, 2020, which included a photograph of his

"gun room," he had "been planning for this since . . . Bush left office and [O]bama came in," *id.*, reflecting not just months but years of premeditation. Additionally, defendant rented six hotel rooms at a hotel in Washington, DC for January 5–6, and encouraged others to join him at the Capitol. *Id.* ¶¶ 35, 38.

(2) <u>The Weight of the Evidence Against the Person</u>:

The weight of the evidence against the defendant is overwhelming and heavily favors detention. The government has provided multiple video clips, including BWC footage, photos of defendant from the assault on the Capitol, and defendant's own social media posts and messages. The photos and videos show defendant enthusiastically participating in the riot, physically assaulting at least ten different police officers, including with his fists, a stolen riot shield, and the dangerous MK-9 OC spray. The social media materials corroborate both defendant's role in the riot and that he planned for the riot months in advance.

(3) <u>The History and Characteristics of the Person</u>:

The history and characteristics of the defendant weigh against detention. Defendant has very limited criminal history, with three prior arrests that are all at least ten years old and a single conviction, when he was 22, for disorderly conduct. Defendant has significant community ties in New Jersey, where he lives with his wife and newborn child and has worked as an electrician for approximately 15 years. He has also submitted twelve character letters in his support, *see* Def.'s Mem. Opp'n Pretrial Detention, Ex. A, ECF No. 10-1, attesting, *inter alia*, that "he is not a violent person" and that he has great respect for law enforcement. Given the videotaped evidence, these attestations are difficult to square with his provocative statements to law enforcement and aggressive and violent behavior towards law enforcement at the Capitol on January 6.

Moreover, many of defendant's social media posts suggest that he is a member of the Proud Boys. For instance, on November 3, 2020, he posted a link to a story about the Proud Boys and added the caption, "proud to be one." Gov't's Mem. ¶ 41. Other posts also include phrases associated with the group, such as "stand back and stand by" and "proud of your boy." *Id.* Finally, on December 26, 2020, defendant posted a message stating, with respect to the planned event on January 6, "we aren't repping any proud boy colors . . . . Keeping it as invisible

as we can." *Id.* Defendant's knowledge of the Proud Boys' tactics for the January 6 riot corroborates his own statement on social media that he is a member of the group.

Although his membership in the Proud Boys is not a positive aspect of defendant's community ties, given the Proud Boys' emerging role in facilitating the attack on the U.S. Capitol, on balance, particularly in light of his strong community ties, this factor weighs in favor of release.

(4) <u>The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Person's Release</u>**:**

The nature and seriousness of the danger to the community posed by the defendant's release weighs strongly in favor of detention. Defendant was part of the mob assault on the Capitol in which law enforcement officers were injured and Congress's constitutional task of counting electoral college votes was disrupted. More than that, however, and most significantly, defendant's assault of at least ten police officers on January 6 suffices to place him in the "different category of dangerousness than those" rioters who merely "cheered on the violence or entered the Capitol after others cleared the way," as his violent conduct puts him squarely among "those who actually assaulted police officers . . . and those who aided, conspired with, planned, or coordinated such actions." *United States v. Munchel*, No. 21-3010, 2021 WL 1149196, at *8 (D.C. Cir. Mar. 26, 2021).

Even so, "now that the specific circumstances of January 6 have passed," *id.*, the government must show, by clear and convincing evidence, how this defendant is "capable of" posing a danger "in the future" after consideration of the "the nature of the threat identified and the resources and capabilities of the defendant," *id.* The government has done so. First, defendant planned for violence occurring at the Capitol months in advance, by collecting necessary equipment, such as "bear spray" and gas masks, and by recruiting and organizing others to join him, including by reserving and paying for six hotel rooms and engaging in social media outreach to others, with advice about gas masks and equipment to bring. *See* Aff. ¶ 38. Second, he was an enthusiastic, provocative and violent participant in the riot and showed clear disregard for the safety of others, in particular the safety of the many police officers he shoved, struck, and sprayed with MK-9 OC spray. Third, defendant assumed an *ad hoc* leadership role for the mob on January 6, repeatedly placing himself at the front of the mob closest to the police

lines in various locations, including in the crammed tunnel outside the lower West Terrace Capitol doors, where defendant positioned himself next to the doors to "heave ho," as the crowd was yelling on the videotape, *see* Gov't's Ex. G, to discharge the MK-9 OC spray targeted at the police officers, and to use a stolen police shield to hit a police officer.  Fourth, rather than display any remorse or regret, defendant celebrated his role in the riot on January 6, calling it a "great time."  Gov't's Ex. J.  Fifth, defendant himself has stated on social media that he has previously engaged in other politically motivated violence.  In a social media post on November 6, 2020, he stated that he "literally punched antifa on camera for weeks," and in fact "did way more [than] that," clarifying, "It's not a threat."  Gov't's Mem. ¶ 42.  Together, these considerations show that defendant's violent conduct on January 6 was not aberrant or limited to the context of that day's events.