UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| v. | : | No. 21-cr-00040 (TNM); |
| | : | |
| | : | |
| **PATRICK EDWARD MCCAUGHEY III,** | : | |
| Defendant. | : | |
| | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
### TO REOPEN DETENTION HEARING AND FOR RELEASE ON CONDITIONS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its opposition to the Defendant's Motion to Reopen Detention Hearing and for Release on Conditions, filed on March 31, 2021. The United States opposes the defendant's request for release and maintains that the factors outlined in 18 U.S.C. § 3142(g) continue to weigh heavily in favor of detention. There is nothing in the defendant's motion that undermines the court's previous conclusion that defendant McCaughey is a danger to the community and that there is no combination of conditions that will protect the community if he is released. Furthermore, the United States defers to the court as to whether the defendant's proposed bail package, passport relinquishment, and extradition waiver alters the determination that he is a flight risk.

The United States respectfully requests that the following points and authorities, including the government's previously-filed Omnibus Opposition to Defendant's Motion for Release on Bond and Memorandum in Support of Pre-Trial Detention, (ECF No. 11 ), which is incorporated

herein by reference, the arguments presented by the United States on February 12, 2021, the reasoning in the recent opinion of *United States v. Munchel*, No. 21-3010, 2021 WL 1149196 (D.C. Cir. Mar. 26, 2021). as well as any other facts, arguments and authorities presented at a hearing, be considered in the Court's determination of whether to reopen the detention hearing and to release the defendant.

## Factual and Procedural Background

On January 6, 2021, Metropolitan Police Department (MPD) Officers Daniel Hodges and Henry Foulds responded to a call to assist the United States Capitol Police (USCP) in protecting the U.S. Capitol Building and Grounds from a riotous mob determined to interrupt the Congressional proceeding taking place inside. Shortly before 3:00 p.m., Officers Hodges and Foulds, and many other MPD and USCP officers gathered in the interior tunnel of the U.S. Capitol building, which leads out to an archway by the lower west terrace door. A large crowd of rioters pushed forward into the tunnel and tried to push through the police line. The defendant was part of a mob of individuals attacking law enforcement officers who were trying to prevent the unruly crowd from entering the U.S. Capitol, which was closed to the public that day. USCP officers are designated as officers of the United States under 18 U.S.C. 1114, and MPD officers were actively assisting USCP in their efforts to protect the Capitol on that date.

Surveillance video taken from inside of the tunnel captures defendant McCaughey first entering the mouth of the tunnel from the outside at approximately 2:49 pm. The same surveillance video then shows him initially leaving, but returning again around 3:05 p.m., this time going all the way inside the tunnel towards where the rioters are fighting with the police. As he entered the tunnel, he appeared to move forward to the front of the mob of his own volition. There is no evidence that McCaughey was pushed into the tunnel by others, that his move toward the front to

physically engage the police line was compelled by others, or that he tried to turn back from the mob. Rioters in the group can be seen passing stolen police riot shields back to other rioters in the tunnel. McCaughey voluntarily grabbed one of the riot shields and held onto it as he moved through the crowd toward the line of officers.

A second video, recorded by an independent journalist and posted on YouTube captures McCaughey's assaults on multiple officers in the police line, including Officers Hodges and Foulds.[1] The video depicts officers attempting to control the increasingly violent crowd using batons, riot shields, and O.C. spray (more commonly known as pepper spray or mace). In response, multiple individuals attempt to combat the officers by using stolen riot shields, police batons, mace, and make-shift weapons. Some of the individuals in the crowd can be heard planning and implementing a rotation of rioters so that "fresh" rioters continually move toward the front of the line, while those who are tired move toward the back and out of the tunnel.

During the effort to break through the police line, McCaughey moved toward the front of the line and began pushing a stolen police riot shield against an unidentified officer while saying, "just go home," and making other similar statements. He then began using the riot shield to push against Officer Hodges as the officer attempted to repel McCaughey with his police baton. While forcefully pushing Officer Hodges with the shield, McCaughey then verbally engaged Hodges, making comments such as, "come on man, you are going to get squished just go home," "don't try and use that stick on me boy," and "just go home." Shortly thereafter, another rioter sprayed something orange from a canister at the officers over the riot shields that McCaughey and other rioters used to push at the officers.

---

[1] The relevant portions of the video can be viewed from minutes 19:00 to 23:00 at: https://www.youtube.com/watch?v=qc0U755-uiM (last visited on April 7, 2021)

While being assaulted by McCaughey, the video shows Officer Hodges screaming[2] as McCaughey pins the officer's body between the stolen riot shield and the lower west terrace door.  As McCaughey continued to pin Officer Hodges between the shield and the door, another rioter rips off Hodges gas mask, exposing Hodges' bloodied mouth.  Hodges continues screaming as he cannot move and is helpless to defend himself, as captured in the still shot below.



McCaughey eventually relents and stops pushing the riot shield against Hodges' body, which allows Hodges to dislodge himself from the door frame.  McCaughey then appears to get the attention of the officer behind Hodges, saying, "Hey you, hey you, this guy isn't doing too well," in an

---

[2] In its "Omnibus Opposition to Defendant's Motion for Release on Bond and Memorandum in Support of Pre-Trial Detention," filed on February 8, 2021, the United States previously described Officer Hodges as screaming in "pain."  Since that time, the United States has reviewed the media interview given by Officer Hodges on January 14, 2021, where he clarifies that he was screaming because he was disabled by the mob, being assaulted as he was pinned in the doorway, and he was seeking a way of escape.  In his own words, he explained:

> The uh, yeah, I think you see someone in the video who um rips my mask off, my gas mask; he's also able to rip away my baton, uh, beat me with it, and um at that point I was also, ya know, sucking in OC and CS gas, so uh I was pretty disabled at that point. [Question by reporter:  Did you think you were gonna die?  What were your thoughts at that moment?] *That was another time that day when I thought this might be it and I might die and there is nothing I can do to defend myself at this point so I just started screaming at the top of my lungs for them to give me a way out, get me a line of retreat;* thankfully someone was able to do that and I was able to extricate myself.

Daniel Hodges Interview, WUSA9 CBS January 14, 2021 https://www.youtube.com/watch?v=FmAx7t2zF0g (last visited April 6, 2021) (emphasis added).

apparent reference to Hodges. Other officers then aid Hodges in moving away from the front of the police line.

Even after Hodges is extricated from the door, McCaughey does not stop. He continues to both assist the mob attacking law enforcement and attacks multiple officers himself in the effort to break through the police line and into the Capitol building. At one point in the video, an unidentified rioter appears to state "take the shield." McCaughey can then be seen grabbing a clear police riot shield from the feet of uniformed law enforcement officers and passing it back to other rioters.

In another portion of the video, McCaughey repeatedly strikes multiple officers with the stolen riot shield, including Officer Foulds who moved toward the front of the police line after Hodges moved to safety. Foulds is readily identifiable in the video as the officer wearing the distinct green mask. At this point, as evidenced in the below still from Body Worn Camera Footage from a nearby officer, no other rioters were pressed up against McCaughey as he repeatedly and forcefully began striking Officer Foulds with the shield while yelling "get out of our house."



Shortly after this portion of the assault, McCaughey disappears from the video, but is captured exiting the tunnel without the shield, which he appears to have passed off to another rioter in the tunnel, by Capitol surveillance video.

On January 18, 2021, the defendant was charged by complaint with: (1) Assaulting an Officer of the United States with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 111(a) and (b); (2) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (3) Entering Restricted Building or Grounds, in violation of 18 U.S.C. 1752(a)( & (b); and (4) Violent Entry or Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2).

The defendant was arrested pursuant to a warrant on January 19, 2021, in New York. At his initial appearance in the Southern District of New York (SDNY) on January 20, 2021, the government orally moved for the defendant's detention pending trial pursuant to § 3142(f)(1)(A) [Crime of Violence] of the federal bail statute. The Court held the defendant and he was then transported by the U.S. Marshals Service from New York to Washington D.C.

On January 29, 2021, the Grand Jury returned a nine-count indictment against the defendant, charging him with multiple felonies related to his assault on officers at the Capitol Building, including two counts of Assaulting an Officer of the United States with a Dangerous Weapon, 18 U.S.C. §§ 111(a)(1) and (b), a crime of violence, and multiple related charges. He was arraigned on February 12, 2021, and the court simultaneously held a detention hearing, pursuant to the government's oral motion for detention pursuant to § 3142(f)(1)(A). Following argument by the parties, the court detained defendant McCaughey pending trial, finding by clear and convincing evidence that there was no combination of conditions that would ensure the safety of the community. The court also found by a preponderance of the evidence that the

defendant was a flight risk and that no condition or combination of conditions would reasonably assure the Defendant's appearance as required.

On March 3, 2021, the Grand Jury returned a 19-count Superseding Indictment against defendant McCaughey and a co-defendant, charging defendant McCaughey in eleven of those counts, including: (Counts 1, 7, and 9) three counts of Assaulting an Officer of the United States with a Dangerous Weapon, 18 U.S.C. §§ 111(a)(1) and (b), one count with respect to Officer Hodges, one count with respect to Officer Foulds, and one count with respect to an unknown officer; (Counts 2, 8, and 10) three counts of Civil Disorder, 18 U.S.C. § 231(a)(3), one count for each officer assault; (Count 13) Obstruction of an Official Proceeding, Aiding and Abetting, 18 U.S.C. 1512(c)(2) and 2); (Count 15) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, with a Deadly or Dangerous Weapon, 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A)); (Count 17) Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A)); (Count 18) Disorderly Conduct in a Capitol Building, 40 U.S.C. § 5104(e)(2)(D)); and (Count 19) Act of Physical Violence in the Capitol Grounds or Buildings, 40 U.S.C. § 5104(e)(2)(F)).

The defendant filed the instant motion on March 31, 2021, seeking to reopen the detention hearing. The court ordered the United States to respond by April 7, 2021. The next status hearing is scheduled for May 4, 2021.

## **Argument**

The United States opposes reopening the detention hearing and maintains that the factors outlined in § 3142(g) continue to weigh heavily in favor of defendant McCaughey's detention. As the United States argued in its Omnibus Opposition to Defendant's Motion for Release on Bond and Memorandum in Support of Pre-Trial Detention, (ECF No. 11 ), which is incorporated herein

by reference, the defendant's violent and dangerous assault on multiple officers on January 6, 2021, in conjunction with the weight of the evidence, his personal characteristics and his future dangerousness, require detention in this case. There is nothing in the defendant's motion that undermines the court's previous conclusion that defendant McCaughey is a danger to the community and that there is no combination of conditions that will protect the community if he is released.

1. **Officer Hodges' Clarification That He Was Screaming For Help As Defendant McCaughey Pinned His Defenseless Body With a Shield Weighs in Favor of Detention**

The defendant first argues that Officer Daniel Hodges' explanation that he was screaming for help, rather than in pain, as defendant McCaughey and others assaulted him somehow "contradict[s] the most serious crime in the Superseding Indictment," thereby undermining the evidence in favor of detention. (Def. Mot. 3/31/21 at 2). While the defendant does not contest that Hodges was audibly screaming while being assaulted by defendant McCaughey, he claims that the stated purpose underlying Hodges' chilling screams has a "material bearing" on the question of detention. (Def. Mot. 3/31/21 at 1-4). The defendant argues that because the primary purpose of the scream was not pain, this somehow diminishes the defendant's violent and terrifying conduct on January 6, 2021, thereby shifting the "nature and circumstances" of the crime in favor of release. The United States disagrees.

The United States does not concede that the primary purpose of Officer Hodges' screams – seeking help versus pain – has a "material bearing" on detention, as required to reopen the detention hearing. 18 U.S.C. § 3142(f). There is no dispute that Officer Hodges was screaming, and that he was screaming at the precise moment that defendant McCaughey was pinning the officer against a door as he was simultaneously assaulted by other rioters. Nevertheless, the United

States will address the defendant's argument on the merits in the interest of resolving the defendant's motion expeditiously.

According to the defendant, Officer Hodges gave a video-recorded interview to WUSA9 CBS network on approximately January 14, 2021, in which he provided context for the multiple assaults that he experienced when defending the Capitol.  In the 12-minute interview, Officer Hodges describes how he was assaulted by numerous rioters on January 6, 2021, and how on three different occasions that day he believed that "this might be the end for [him]."  Daniel Hodges Interview, WUSA9 CBS January 14, 2021 https://www.youtube.com/watch?v=FmAx7t2zF0g (last visited April 6, 2021).

Hodges first described arriving with his platoon at the west side of the Capitol building and encountering a "chaotic" scene, which required the platoon to "fight [their] way through" to join the defense of the Capitol.  Before he was even able to get to the tunnel entrance, Hodges was hit by unknown objects thrown by rioters and then knocked to the ground and beaten by rioters, necessitating his rescue by another officer.  Beginning at approximately minute 4:00 of the interview, Hodges described his experience being pinned in the tunnel door by defendant McCaughey:

> So, after our defenses on the dais broke, we were battling tooth and nail for our lives.  We ended up falling back to hardened choke points in the building, like the tunnel there, where their numbers didn't quite mean so much.  So I went inside and put on my mask and um got down to the tunnel where they were throwing CS gas at us or either throwing ours back at us, I don't know.  But since I had my mask on and the other officers didn't, [they] retreated and I pushed forward to the defense and we held the line there in that doorway.  I guess I got pinned through the small back and forth we had fighting for, ya know, ever inch, and um I had my arm was pinned at that point, I was unable to defend myself.  The uh, yeah, I think you see someone in the video who um rips my mask off, my gas mask; he's also able to rip away my baton, uh, beat me with it, and um at that point I was also, ya know, sucking in OC and CS gas, so uh I was pretty disabled at that point.  [Question by reporter:  Did you think you were gonna die?...What were your thoughts at that

>   moment?] *That was another time that day when I thought this might be it and I might die and there is nothing I can do to defend myself at this point so I just started screaming at the top of my lungs for them to give me a way out, get me a line of retreat;* thankfully someone was able to do that and I was able to extricate myself.

*Id.* In the interview, Officer Hodges notably does not address the issue of whether he was *also* in pain at the specific moment that he was being pinned in the door by defendant McCaughey. Rather, he describes that his primary purpose in screaming was to get aid in that desperate moment. At no time in the interview does he deny that he was in pain. The United States submits that the absence of a reference to his pain in this interview does not negate the possibility that he was simultaneously in pain at that moment when defendant McCaughey was pinning him with a riot shield, allowing other rioters the opportunity assault the officer. This is particularly true given Officer Hodges description that he was "pinned," "disabled," having his gas mask ripped off, being beaten with his own baton, and inhaling CS gas, all while wondering if this was the moment his life would end. The United States maintains that irrespective of whether he experienced physical pain at the precise moment of his screams, he most certainly experienced a terrifying and traumatic experience as he wondered whether his encounter with defendant McCaughey and the mob that day would end his life. Toward the end of the interview, at approximately minute 11:00, Hodges describes coming through that experience, saying "I mean, it is hard to go through something like that and say it doesn't effect you. There's, it's something I'm going to be thinking about for the rest of my life."

More to the point, whether Officer Hodges was screaming in pain or for help is ultimately irrelevant because neither "pain" nor actually injury to the victim is an element of the offense under § 111(a)(1) and (b). To demonstrate that the defendant violated § 111(a)(1) and (b), the United States must prove that the defendant: (1) forcibly assaulted, resisted, opposed, impeded,

intimidated, *or* interfered with an officer; (2) while using a deadly or dangerous weapon; and (3) with the intent to inflict bodily injury. *See* § 111(a)(1) and (b); *United States v. Arrington*, 309 F.3d 40 (D.C. Cir. 2002) (emphasis added). To be sure, the United States must prove that the defendant intended to inflict bodily injury. This is distinct from the victim experiencing pain, and is also distinct from the victim actually being injured during the assault. The defendant simply must have intended to cause bodily injury, irrespective of whether he actually did so and any sensation by the victim who experienced the defendant's use of force.

Here, the evidence of defendant McCaughey's intent to injure is overwhelming. He joined a mob of rioters intent on breaching the Capitol building on January 6, 2021, and engaged in physical violence against three distinct officers, including Officer Hodges, Officer Foulds, and one unknown officer. He willfully entered the tunnel where a mob of rioters was engaged in hand-to-hand combat with officers trying to protect the entrance into the Capitol. The defendant then made his way toward the front of the mob, grabbing a stolen police riot shield in the process. He then used that riot shield to crush Officer Hodges in the door, after making comments such as: "come on man, you are going to get squished just go home," "don't try and use that stick on me boy," and "just go home." While pinning Hodges in the door, McCaughey was close enough to observe another rioter ripping away the officer's gas mask and beating him with his own baton.

The defendant makes much of the fact that, after assaulting Officer Hodges, he then displayed a brief moment of human decency by getting the attention of another officer to assist Hodges. In his argument, he attempts to cast the himself as hero, going so far as to claim that McCaughey's "imploration of the crowd behind him…are very likely what allowed [Hodges] to 'extricate himself." The United States submits that the evidence does not bear that out.

What the evidence does show is that the defendant made some minimal effort to aid Officer Hodges after completing the assault against him.  As described above, the video captures the defendant pulling down Hodges' face shield in a protective manner and beckoning another officer, saying "Hey you, hey you, this guy isn't doing too well," in an apparent reference to Hodges.  Other officers then aided Hodges in moving away from the front of the police line.

While this moment of decency may have spared Officer Hodges from additional assault and injury, it does not ultimately undermine the defendant's original intent to cause bodily injury to the officer in the first instance.  Defendant McCaughey is no hero here.  With respect to his true intent, his comment that "you are going to get squished" is particularly telling in this context.  It is an express acknowledgement from the defendant that he understood what was at stake:  he saw and understood the dangerousness of his actions and the potential threat of bodily injury to Officer Hodges.  Through that comment, McCaughey revealed his intent to continue fighting the line of officers – to the point of being willing to injure an officer – if that officer did not comply with his demands.  The defendant's post-assault aid to the officer does not negate his intent.  There is little conceptual difference between McCaughey's actions and those of a burglar breaking into someone's home, beating the homeowner, but then sparing the owner's life only when the owner agrees to leave the property without a fight.

McCaughey's intent is even more evident in the fact that he did not stop assaulting officers, even after assisting Hodges.  He then continued the fight, attacking multiple officers at the front of the police line, including engaging in hand-to-hand combat with Officer Foulds.  Even if the defendant momentarily regretted his actions with respect to Officer Hodges, it certainly was not for long and it did not deter him from his continued efforts to fight his way through to the Capitol, even at the expense of potential physical injury to officers along the way.

The United States maintains that defendant McCaughey's assaults on multiple officers as he attempted the breach the Capitol on January 6, 2021, weigh in favor of detention. The information that Hodges may have screamed primarily for help, rather than out of pain, does not undermine the violent and dangerous nature of the defendant's assault on officers that day, the weight of the evidence, history and characteristics, or the defendant's potential for dangerousness.

2. **A Co-Defendant's Status Has No Bearing on Defendant McCaughey's Culpability, Dangerousness, or Risk of Flight**

The defendant also contends that it is fundamentally unfair that he should be detained while his indicted co-defendant, Tristan Stevens, was released pending trial. While it is axiomatic that similarly-situated defendants should treated similarly, there is nothing fundamentally unfair about defendant McCaughey being detained after the court found by clear and convincing evidence that he was a danger to the community.

At the outset, the United States notes that at the time of co-defendant Stevens' arrest in the Florida, the United States requested that he be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A), because he was charged with a crime of violence. A court in the Northern District of Florida rejected the request for detention and released defendant Stevens over the government's objection.

Furthermore, the factors outlined in § 3142(g) are highly personal and fact-specific to each defendant. No two defendants are precisely alike, even when allegedly committing similar crimes, at the same time, in the same location. The court properly considered each of the four factors specifically with respect to defendant McCaughey – including the nature and circumstances, weight of the evidence, history and characteristics, and potential danger – before finding that there was no combination of release conditions that would protect the community from

him or assure his return to court.  The fact of co-defendant Stevens' release does not alter defendant McCaughey's culpability, dangerousness, or risk of flight.

3. **The Court Found by Clear and Convincing Evidence that Detention was Appropriate, Independent of Any Presumption**

Counsel for the defendant additionally contends that the court applied an inapplicable rebuttable presumption and that, "without a presumption in this case, the government cannot meet the applicable burdens of proof to warrant continued detention of Mr. McCaughey." (Def. Mot. 3/31/21 at 9).  In the first instance, the United States agrees that there is no rebuttable presumption applicable to the court's detention determination of defendant McCaughey.[3]  Nevertheless, the United States did – and can – meet its burden of showing by clear and convincing evidence that the defendant is an ongoing danger to the community who should be detained pending trial.

In support of his argument, defense counsel cites to the transcript of the hearing held on February 12, 2021, in which the court stated, "I find that there is a rebuttable presumption that arises under 18 U.S.C. § 3142(e)(2) for detention and because the Defendant is charged with a crime of violence under 18 U.S.C § 3142(f)(1)."  However, immediately after indicating that a presumption existed, the court goes on to explain, "*I find that the Defendant has presented evidence sufficient to rebut the presumption.*" (Tr. 2/12/21 at 24) (emphasis added).  This is significant because it clarifies that the court found that detention was appropriate, independent of the any presumption.  The court clearly stated that the defendant had overcome any presumption.  The court immediately went on to explain:

---

[3] In this case defendant McCaughey has been charged with a "crime of violence" in violation of 18 U.S.C. 111(a)(1) and (b).  Pursuant to § 3142(f)(1)(A), the United States is entitled to pursue the defendant's detention because of that charged "crime of violence."  Nevertheless, the ability to request detention under § 3142(f)(1)(A) because of the charged "crime of violence" does not confer a rebuttable presumption of detention pursuant to § 3142(e)(2), (3), unless the court makes specific findings, none of which are applicable to defendant McCaughey at this time.

> But after considering the presumption and the other factors discussed that I'll discuss in a moment, I do believe detention is warranted for the following reasons: I find that by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person in the community. I also find by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance as required.

(Tr. 2/12/21 at 24-25). Thus, although the court mistakenly indicated that a rebuttable presumption applied, the court ultimately did not rely on that presumption in finding by clear and convincing evidence that there was no combination of conditions that would protect the community from Mr. McCaughey.

### 4. The Defendant Remains a Danger to the Community and There Are No Release Conditions or Combination of Conditions That Would Protect the Community if Released

Since the time of the defendant's February 12, 2021, detention hearing, the D.C. Circuit has addressed the issue of future dangerousness as it relates to individuals who participated in the riotous mob on January 6, 2021, in the case of *United States v. Munchel*, No. 21-3010, 2021 WL 1149196 (D.C. Cir. Mar. 26, 2021). The Court's decision in *Munchel* supports the conclusion that defendant McCaughey presents an ongoing danger to the community and should be detained.

The *Munchel* Court, reviewing the detention order of a mother-son duo who entered the Capitol on January 6, 2021, with zip ties and a taser, found that the District Court did not adequately address the dangerousness determination. The circuit specifically focused on the District Court's insufficient justification for its dangerousness conclusion "notwithstanding the countervailing finding that 'the record contains no evidence indicating that, while inside the Capitol, [the defendants] vandalized any property or physically harmed any person,' and the absence of any record evidence that either [defendant] committed any violence on January 6."

*Munchel*, 2021 WL 1149196, at *8 (internal citations omitted).  The Court instructed the District Court to consider these factors in its review on remand.  *Id.* ("If, in light of the lack of evidence that [the defendants] committed violence on January 6, the District Court finds that they do not in fact pose a threat of committing violence in the future, the District Court should consider this finding in making its dangerousness determination.")  Most significantly, in remanding the matter to the District Court, the Circuit specifically found that, "*those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way.*"  *Id.* (emphasis added) (citing *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987) ("[W]here the future misconduct that is anticipated concerns violent criminal activity, no issue arises concerning the outer limits of the meaning of 'danger to the community,' an issue that would otherwise require a legal interpretation of the applicable standard.")).

Applying *Munchel* to the instant matter, the Court has more than ample basis to continue McCaughey's detention.  Here, McCaughey not only positioned himself in the midst of the Lower West Terrace tunnel during some of the heaviest violence at the Capitol on January 6, 2021, he actively and eagerly contributed to that violence.  USCP and MPD officers worked for almost three hours defending the Lower West Terrace entrance to the Capitol Building and spent much of that time under physical attack by a violent crowd – including McCaughey – that fanatically and repeatedly assaulted the officers.  The officers were in full uniform, with clear and visible markings identifying themselves as law enforcement.

McCaughey moved to the very front of the group of rioters battling the police officers.  He did not hang back.  He did not consign himself to the role of a mere bystander or one who simply

"cheered on the violence or entered the Capitol after others cleared the way." *Munchel*, 2021 WL 1149196, at *8. Rather, he actively engaged in violence and demonstrated a whole-hearted commitment to enter the Capitol and disrupt the legitimate functions of the United States Congress. McCaughey used an officer's riot shield as a weapon against the officers inside the tunnel, pinning Hodges' body in a doorway, and striking Foulds and another officer in an attempt to overrun them.

Furthermore, McCaughey's dangerousness is not limited to his past actions, but presents a future threat. It is difficult to fathom a more serious danger to the community—to the District of Columbia, to the country, or to the fabric of American Democracy—than the one posed by someone who knowingly and eagerly engaged in a violent insurrection to occupy the United States Capitol and abort the certification of a lawful and fair election. Every person who was present without authority in the Capitol on January 6 contributed to the chaos of that day and the danger posed to law enforcement, the United States Vice President, Members of Congress, and the peaceful transfer of power. McCaughey's specific conduct aggravated that chaos and danger.

The defendant's highly public assault of officers at the Capitol Building, his use of a police riot shield as an offensive weapon against officers in the attempt to stop the democratic process illustrate his danger to the community. The fact that the unique circumstances that arose on January 6, 2021, are unlikely to arise in precisely the same context a second time does not minimize his future dangerousness. In contrast to the defendants in *Munchel*, McCaughey's choice to use violence as a means to his ends, and his physical attack on officers protecting the Capitol and the people inside it, prove that he poses a threat regardless of the unique circumstances of January 6, 2021. Considering the above, the Court's reasoning in *Munchel* provides ample support for the defendant's continued detention.

### 5. The Defendant's Proffered Bail Package Does Not Mitigate His Dangerousness to the Community

The defendant additionally proposes a substantial bail package, offers to relinquish his U.S. and German passports, and offers to sign a "waiver of any rights not to be extradited to the United States," in an effort to assure the court that there are viable release conditions.  (Def. Mot. 3/31/21 at 11-13).  The United States submits that the proffered bail package does not mitigate the defendant's dangerousness to the community.  The defendant's willingness to resort to violence will not disappear simply because his family's finances are at stake.  At most, the bail package provides an incentive to the defendant to protect his family from financial loss by reappearing in court.  The United States defers to the Court on whether the bail package, passport relinquishment, and extradition waiver alters the court's earlier finding by a preponderance of the evidence that the defendant is a flight risk.

With respect to McCaughey's continued dangerousness, there is no reason to believe that a financial loss on the part of his family members would constrain him from future violence. As previously argued, McCaughey was present with his father in Washington D.C. on January 6, 2021, and his father's presence on that date did not constrain the defendant's actions. Furthermore, the defendant blatantly assaulted officers in full view of other law enforcement, without even the pretense of following the law.  The presence of USCP and MPD officers that day were immaterial to the defendant's decision to engage in a violent insurrection to stop the legitimate functioning of the United States Government.

The United States submits that the defendant's lack of respect for the rule of law and his unwillingness to abide by lawful government orders goes directly to his future dangerousness. The

D.C. Circuit has recognized that a "Court's finding as to [a defendant's] potential compliance is relevant to the ultimate determination of 'whether there are conditions of release that will reasonably assure ... the safety of any other person and the community.'" *Munchel*, 2021 WL 1149196, at *5; *see also United States v. Hir*, 517 F.3d 1081, 1092-93 (9th Cir. 2008) (explaining that release conditions require "good faith compliance" and that the circumstances of the charged offenses indicate "that there is an unacceptably high risk that [the defendant] would not comply...with the proposed conditions"); *United States v. Tortora*, 922 F.2d 880, 886–90 (1st Cir. 1990). The defendant's actions established that his own personal beliefs override the rule of law and that he will readily resort to violence to halt the legitimate functions of the United States government with which he disagrees. Such blatant disregard of the law and the valid authority of our government weigh in favor of detention. If McCaughey is unwilling to obey orders while in full view of law enforcement, or to conform his behavior to the law when he disagrees with it unlikely that he would adhere to this Court's directions and release orders, thereby demonstrating his continued dangerousness. There is no reason to believe that putting his family in financial jeopardy would have any greater deterrent effect.

With respect to the defendant's risk of flight, the United States defers to the court on whether the proposed bail package, passport relinquishment, and extradition waiver alters the court's earlier finding that the defendant is a flight risk. The defendant's German citizenship, coupled with the substantial penalties that he is facing for his alleged crimes, provide a motive as well as the opportunity to flee the country with impunity. While this may be somewhat mitigated by his offer to relinquish his passports and to sign and extradition waiver, it certainly does not eliminate the possibility that he could leave the country and pose a lengthy legal and practical challenges to any efforts on to hold him accountable for his alleged crimes.

## CONCLUSION

WHEREFORE, the United States respectfully opposes the defendant's motion to reopen the detention hearing and asks that the court continue to detain the defendant pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793


By: __/s/ Jocelyn Bond_____
JOCELYN BOND
Assistant United States Attorney
D.C. Bar Number 1008904
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 809-0793


## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2021, I caused a copy of the foregoing omnibus opposition and detention memorandum to be served on counsel of record via electronic filing.

　_/s/ Jocelyn Bond_____
JOCELYN BOND
Assistant United States Attorney