# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

**UNITED STATES OF AMERICA**

v.

**PATRICK EDWARD MCCAUGHEY, III**
**and TRISTAN CHANDLER STEVENS**,

Defendants.

---

Case No. 1:21-cr-00040 (TNM)

## MEMORANDUM OPINION

Defendant Patrick McCaughey, III was indicted on charges relating to his alleged participation in the January 6, 2021 attack on the U.S. Capitol. As part of its investigation of the January 6 events, the Government obtained (and continues to obtain) vast information, including video footage, tips, and law-enforcement reports. To expedite its disclosure of potentially discoverable materials to McCaughey and other similarly situated defendants, the Government seeks a protective order limiting the use, dissemination, and reproduction of sensitive information. McCaughey opposes the protective order because he contends, among other things, that it is unspecific and overbroad. The Court finds that the Government has shown good cause for the protective order and therefore will grant the motion.

## I.

McCaughey was charged with several counts, including assaulting a police officer with a deadly or dangerous weapon (a shield), as a result of his alleged participation in a violent mob that stormed the U.S. Capitol. *See* Indictment at 2, ECF No. 5; Superseding Indictment at 4,

ECF No. 19.[1]  The Court denied McCaughey's request for release on bond, finding in part that

he would pose a danger to the community if released.  *See* Order (Feb. 12, 2021), ECF No. 18.

The criminal cases stemming from the January 6 events are in some ways unprecedented.

"The investigation and prosecution of the Capitol Attack will likely be one of the largest in

American history, both in terms of the number of defendants prosecuted and the nature and

volume of the evidence."  Gov't Mot. for Protective Order ("Gov't Mot.") at 2, ECF No. 26.  The

Government has already brought charges against over 300 individuals and says that at least 100

more prosecutions are likely.  *Id.*

The amount of potentially discoverable information in these January 6 cases is

staggering.  The Government has obtained

> (a) more than 15,000 hours of surveillance and body-worn camera footage from
> multiple law enforcement agencies; (b) approximately 1,600 electronic devices; (c)
> the results of searches of hundreds of electronic communication providers; (d) over
> 210,000 tips; and (e) over 80,000 reports and 93,000 attachments related to law
> enforcement interviews of suspects and witnesses and other investigative steps.

*Id.* at 3.  Because of the volume and nature of these materials, the Government contends that they

are likely to contain sensitive information.  *Id.*  Some of this sensitive information will be

personal information collected from or about various defendants and victims and witnesses to the

riot.

The Government argues that its proposed protective order is necessary to "facilitate the

government's ability to provide voluminous discoverable materials expeditiously, while

adequately protecting the United States' legitimate interests."  *Id.* at 5.  The proposed order

would cover information provided by the Government in discovery that the Government has

---

[1]  All page citations refer to the page numbers that the CM/ECF system generates, except for the
Government's proposed protective order, which the Court will cite according to that document's
pagination.

identified as "Sensitive" or "Highly Sensitive."  Protective Order Governing Discovery

("Protective Order") at 1, ECF No. 26.  Materials that might fall under these designations

include:

    a.  Personal identity information as identified in Rule 49.1 of the Federal Rules of
        Criminal Procedure, as well as telephone numbers, email addresses, driver's
        license numbers, and similar unique identifying information;
    b.  Information regarding the government's confidential sources;
    c.  Information that may jeopardize witness security;
    d.  Contact information for, photographs of, and private conversations with
        individuals that do not appear to be related to the criminal conduct in this
        case;
    e.  Medical or mental health records;
    f.  Sources and methods law-enforcement officials have used, and will continue
        to use, to investigate other criminal conduct related to the publicly filed
        charges;
    g.  Surveillance camera footage from the U.S. Capitol Police's extensive system
        of cameras on U.S. Capitol grounds;
    h.  Repair estimates from the Architect of the Capitol;
    i.  Materials designated as "security information" pursuant 2 U.S.C. § 1979; and
    j.  Tax returns or tax information.

*Id.* at 1–2 (cleaned up).

       McCaughey consents to a protective order governing the materials in items a–e and j.

McCaughey's Opp'n to Mot. for Protective Order ("Def.'s Opp'n") at 1, ECF No. 29.  He

argues, though, that the Government has not met its burden to show good cause for the materials

in items f–i.[2]  *Id.*  The Government's motion is ripe for adjudication.

## II.

       Federal Rule of Criminal Procedure 16 "requires the Government to produce, upon the

defendant's request, any documents and data that are material to preparing the defense."  *United*

*States v. Dixon*, 355 F. Supp. 3d 1, 3 (D.D.C. 2019) (citing Fed. R. Crim. P. 16(a)(1)(A)–(G)).

---

[2]  McCaughey's co-defendant, Tristan Stevens, does not oppose the proposed protective order.
*See* Gov't Mot. at 6.

The rule also provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d).  Entering a protective order falls under this provision.  *See id.*

"In determining whether good cause exists, courts have considered whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm." *Dixon*, 355 F. Supp. 3d at 4; *see also United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) ("[A]mong the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger of perjury or witness intimidation, and the protection of information vital to national security." (cleaned up)).  "[O]nce a showing of good cause has been made, the court has relatively unconstrained discretion to fashion an appropriate protective order." *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018).

Protective orders are used "not only to resolve individual discovery disputes, but also to expedite the flow of discovery in cases involving a large amount of sensitive information." *Id.* at 252 (cleaned up).  They "are expressly designed to assure that a defendant's right to a fair trial are not overridden by the confidentiality and privacy interests of others." *United States v. O'Keefe*, No. 06-cr-0249 (PLF), 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007).  So a "trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969).

The Government has the burden to show good cause here, as the party seeking the protective order.  *See Cordova*, 806 F.3d at 1090.  This showing must be "particularized" and "specific." *Dixon*, 355 F. Supp. 3d at 4 (cleaned up).  "The nature of the showing of

particularity, however, depends upon the nature or type of protective order at issue." *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012). That is why some courts have found that broad "blanket" or "umbrella" protective orders, which cover all materials produced by a party, "may be entered 'without a particularized showing to support the claim for protection.'" *Johnson*, 314 F. Supp. 3d at 252 (quoting *Bulger*, 283 F.R.D. at 52).

### III.

### A.

The Court first considers whether "disclosure of the materials in question would pose a hazard to others." *Dixon*, 355 F. Supp. 3d at 4. Before turning to the specific categories of materials at issue, the Court first addresses McCaughey's main objection to the proposed protective order—that the Government has not shown good cause because it is a "blanket, nonspecific protective order." Def.'s Opp'n at 2.

To start, while the Government's proposed order might be broad, it is not a true "blanket" protective order protecting *all* materials produced by the Government. *Cf. Bulger*, 283 F.R.D. at 52 (defining a "blanket" order as meaning that "everything is tentatively protected until otherwise ordered"). Rather, it seeks to protect certain materials falling under ten categories of information—to many of which McCaughey raises no objection. *See* Def.'s Opp'n at 1.

The proposed protective order is also limited in other ways. It states that the Government "agrees to make every effort to provide discovery in a manner that will allow for *most discovery* to be produced *without* such designations." Protective Order at 2 (emphasis added). The Government represents, for example, that only "a handful of documents" in its first major round of discovery—involving "nearly 300 files" from McCaughey's case—would fall under the protective order. Gov't Reply in Supp. of Mot. for Protective Order ("Gov't Reply") at 3, ECF

5

No. 32.  The order also provides that the Government "will agree to redaction" as an alternative when it "will resolve the basis for which a sensitivity designation was applied."  Protective Order at 4.  It is therefore not impermissibly broad or unspecific.

The Court next considers the specific the categories of materials in the Government's proposed order to which McCaughey objects:

> f. Sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges;
> g. Surveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds;
> h. Repair estimates from the Architect of the Capitol; and
> i. Materials designated as "security information" pursuant 2 U.S.C. § 1979.

*See* Protective Order at 1–2; Def.'s Opp'n at 1.  The Court finds the Government has shown good cause for protecting this information.  *See Dixon*, 355 F. Supp. 3d at 4.

*First*, the materials in item f—the sources and methods of law-enforcement officials.  There is an ongoing criminal investigation into the events of January 6.  The Government is investigating hundreds of individuals relating to the riot.  *See* Gov't Mot. at 2; Gov't Reply at 2.  Courts have regularly found "that materials, including even judicial documents which are presumptively accessible, can be kept from the public if their dissemination might 'adversely affect law enforcement interests.'"  *United States v. Smith*, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)).  Thus, "where public disclosure of certain materials might officially reveal the sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges, courts have found it appropriate to enter a protective order."  *Id.* at 531.

*Second*, the footage from the U.S. Capitol Police's ("USCP") network of surveillance cameras covered by items g and i.[3]  The Government submitted the declaration of Thomas DiBiase, General Counsel for USCP.  *See* Decl. of Thomas A. DiBiase ("DiBiase Decl."), ECF No. 26-1.  DiBiase explains that USCP has "a sophisticated closed circuit video (CCV) system" to monitor the Capitol Grounds—access to which is ordinarily "strictly limited."  *Id.* ¶¶ 2–3.  He also asserts that USCP "has significant concerns with the release of any of its footage to defendants in the Capitol attack cases unless there are safeguards in place to prevent its copying and dissemination."  *Id.* ¶ 14.  In particular, "providing unfettered access to hours of extremely sensitive information to defendants who have already shown a desire to interfere with the democratic process will result in the layout, vulnerabilities and security weaknesses of the U.S. Capitol being collected, exposed and passed on to those who might wish to attack the Capitol again."  *Id.*  The Government has thus shown that maintaining the confidentiality of USCP's footage is vital to protecting the Capitol—especially as to those who have sought to attack it.

McCaughey contends that USCP has already provided the footage to the Government and so it is no longer subject to USCP's claim of confidentiality.  Def.'s Opp'n at 3–5.  He also argues that such information is already publicly available online, as a "quick Google search" reveals a "blueprint-style layout" of the Capitol and entry/exit points can "be gleaned from a single pedestrian loop around the Capitol building."  *Id.* at 5–6 & n.4.

These arguments are unpersuasive.  True, USCP has provided the footage to the Government.  But it did so only on the understanding that a protective order would govern its use and dissemination.  Gov't Reply at 4–5.  And even if some information about the U.S. Capitol's

---

[3]  While item i more broadly covers "[m]aterials designated as 'security information' pursuant [to] 2 U.S.C. § 1979," *see* Protective Order at 2, McCaughey's challenge focuses only on USCP footage, *see* Def.'s Opp'n at 4–6.

layout is available online, USCP's footage provides far more detailed information, including, for example, the precise location of the vast network of cameras. *See id.* at 4.

*Third*, although McCaughey appears to only summarily challenge the protection of repair estimates of the Capitol in a footnote, *see* Def.'s Opp'n at 4 n.2, the Court finds that the Government has likewise met its burden as to this information for now. The Government points out that the Architect of the Capitol "has indicated that the estimates contain sensitive procurement information restricted from public dissemination by law." Gov't Reply at 5. Although it is not yet clear whether any of this information will even be at issue in McCaughey's case, including it in the protective order "avoids lengthy litigation over future documents that might be grouped in with larger discovery made available to the Defendant from related cases." *Id.* As with any of the information at issue, the Court is willing to consider specific objections about actual evidence later.

**B.**

McCaughey's allegations of prejudice do not overcome the Government's showing. The proposed protective order does restrict the dissemination, reproduction, and storage of the materials considered sensitive. *See* Protective Order at 2–4. But McCaughey and his "legal defense team"—defined broadly to include "defense counsel . . . and any attorneys, investigators, paralegals, support staff, and expert witnesses who are advising or assisting defense counsel in connection with this case," Protective Order at 2—have access to all information that is subject to the proposed order to use in formulating a defense. *Cf. Cordova*, 806 F.3d at 1091 (explaining that a protective order did not prejudice defendants, in part, because "defense counsel had full and unfettered access to the Jencks materials at all relevant times, and the protective order did not otherwise limit their ability to discuss the materials with [the defendants] or to obtain their

input"). "And most important, [McCaughey] may seek a modification of the order at any time," *Dixon*, 355 F. Supp. 3d at 6–7, or object to the Government's designation of materials as sensitive, *see* Protective Order at 5.

McCaughey offers three reasons why the proposed protective order prejudices him. All are unpersuasive.

*First*, McCaughey broadly contends that the "blanket, nonspecific protective order" passes the "burden of proof onto [him], so that he has to come to the Court to try to 'unprotect' something that may well not ought to have been protected in the first instance." Def.'s Opp'n at 2. But McCaughey ignores the purpose of the proposed protective order: to set up an initial system to provide for the speedy disclosure of discoverable material. "[T]he Government intends to make voluminous materials available in all pending cases arising out of the events of January 6, 2021," including McCaughey's. Gov't Reply at 2. "[I]n a case which involves substantial amounts of discovery," such as this one, "it is consistent with the proper allocation of evidentiary burdens for the Court to construct a broad . . . protective order upon a threshold showing by the Government of good cause." *Smith*, 985 F. Supp. 2d at 546 (cleaned up) (collecting cases).

In fact, it is the Government that would be unnecessarily burdened if the proposed protective order were not entered. The Government contends, and McCaughey does not appear to dispute, that the amount of discovery here is "simply huge." Gov't Reply at 2; *cf. Smith*, 985 F. Supp. 2d at 546 ("Here, the Government represents, and Defendants do not dispute, that it has provided and will provide a vast amount and array of discovery materials, including audio recordings, transcripts, computer files, business records, telephone records, and other materials."). Indeed, "[t]he investigation already involves thousands of hours of video, over a

thousand electronic devices, thousands of reports, and the numbers just continue to grow as more suspects are identified and arrested."  Gov't Reply at 2.  A broad protective order is thus appropriate "[g]iven the large-scale nature of the discovery involved in this case and the attendant monumental burden on the Government involved in reviewing and making redaction decisions with respect to all these materials."  *Smith*, 985 F. Supp. 2d at 546 (cleaned up).

Requiring the Government to perform this review prior to disclosure would cause a substantial delay in production, which "is inconsistent with rules requiring efficient and expeditious discovery."  *Dixon*, 355 F. Supp. 3d at 8; *see also* LCrR 5.1(a) (requiring the Government to "make good-faith efforts" to disclose information that could favor the accused "*as soon as reasonably possible* after its existence is known, so as to enable the defense to make effective use of the disclosed information in the preparation of its case" (emphasis added)). Courts maintain "considerable discretion" under Federal Rule of Criminal Procedure 16(d) "to regulate discovery, and protective orders are a useful tool for expediting the flow of pretrial discovery materials."  *Dixon*, 355 F. Supp. 3d at 8 (cleaned up).

The proposed order is necessary to facilitate speedy disclosure.  McCaughey remains free to object to the designation of certain documents as sensitive or to seek modification of the proposed protective order at any time.  *See* Protective Order at 5; *cf. Smith*, 985 F. Supp. 2d at 546 ("None of this means that Defendants will not be able to challenge the designation of certain documents, or otherwise request a modification of the Protective Order should circumstances change.").

*Second*, McCaughey challenges the proposed protective order's definition of "legal defense team" because it does not include defense counsel's "non-lawyer friends" or "members

of the defendant's family." Def.'s Opp'n at 6. He requests that "laypeople assisting in the defense" be among the "permitted viewers" of the sensitive information. *Id.*

Despite McCaughey's objection, the definition of "legal defense team" is already broad. It applies not just to defense counsel, but to "any attorneys, investigators, paralegals, support staff, and expert witnesses who are advising or assisting defense counsel in connection with" the case. Protective Order at 2. McCaughey's proposed definition would impermissibly broaden this definition so that it could apply to almost anyone. Expanding access to the protected information in that way would render the protective order meaningless. *See* Gov't Reply at 5–6. McCaughey can always request a modification of the order or contest a sensitivity designation should it become necessary for counsel to show certain protected material to his "non-lawyer friends" or to McCaughey's family. *See* Protective Order at 5. But trial preparation is still a long way off; it makes little sense to allow now for uncertain evidence to be shared with uncertain family and friends for an uncertain trial.

*Third*, defense counsel contends that "[p]aragraph 6a of the proposed order essentially forbids undersigned counsel from providing copies for this *incarcerated* defendant to view" because "the only way that the defendant may view such materials is in the presence of undersigned counsel or his agents." Def.'s Opp'n at 7 (emphasis in original). That paragraph provides additional limits on the dissemination of "Highly Sensitive" materials and states that

> Defense counsel may not provide a copy of Highly Sensitive materials to Defendant or permit Defendant to view such materials unsupervised by defense counsel or an attorney, investigator, paralegal, or support staff person employed by defense counsel. The parties agree that defense counsel or an attorney, investigator, paralegal, or support staff person employed by defense counsel, may supervise Defendant by allowing access to Highly Sensitive materials through a cloud-based delivery system that permits Defendant to view the materials but does not permit Defendant the ability to download; provided that, prior to doing so, defense counsel first provides notice to the United States and allow the United States to file an objection with the Court if no agreement is reached.

Protective Order at 3–4.

To be sure, Paragraph 6a does limit the dissemination of "Highly Sensitive" materials. *See* Protective Order at 3–4.  But as the Government points out in its reply, paragraph 7 of the proposed order, governing "Viewing by Incarcerated Defendants," provides: "If Defendant is in the custody of the United States Marshals Service, defense counsel is authorized to provide a copy of discovery materials to the appropriate point of contact so that the defendant can view the discovery materials, subject to the terms of this Order."  Protective Order at 4; *see also* Gov't Reply at 6.  It is therefore incorrect to suggest that McCaughey will only be able to view the material in his attorney's presence.  In any event, such a limitation on dissemination to an incarcerated defendant would be nothing new.  *See Dixon*, 355 F. Supp. 3d at 7.

## C.

Finally, the Court determines that any public interest in the materials covered under the protective order will not be harmed by its issuance.  *Cf. Dixon*, 355 F. Supp. 3d at 9.  The order excludes materials that "[a]re, or later become, part of the public record, including materials that have been received in evidence in this or other public trials or hearings."  Protective Order at 5; *cf. Dixon*, 355 F. Supp. 3d at 9 (finding that the public interest was not harmed in part because "[t]he proposed order also excludes any materials that are received as evidence in trial, or that are otherwise made part of the public record").  Issuing a protective order is necessary to facilitate speedy disclosure to the defense while safeguarding sensitive information.  The order here is limited in important ways—most notably, by allowing McCaughey to seek its modification at any time.  *See* Protective Order at 5.  It merely ensures that this information will not be publicized without due consideration of the relevant privacy interests beforehand.

The Government's proposed protective order here has been issued—most often by consent—in many other January 6 cases in this District.  *See, e.g.*, Order, *United States v. Pert*,

No. 21-cr-00139-TNM (D.D.C. Apr. 8, 2021), ECF No. 22; Order, *United States v. Fellows*, No. 21-cr-00083-TNM (D.D.C. Mar. 29, 2021).  This case is no exception.  The Court finds that the Government's proposed order should likewise govern here.

## IV.

For all of these reasons, the Court will grant the Government's Motion for a Protective Order.  A separate order accompanies this memorandum.


Dated: April 21, 2021                                       TREVOR N. McFADDEN, U.S.D.J.