**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| | : | **CRIMINIAL NO. 21-40-5** |
| v. | : | |
| | : | |
| | : | |
| ROBERT MORSS | : | |

**EMERGENCY MOTION TO REVOKE DETENTION ORDER**
**AND FOR PRETRIAL RELEASE**

Defendant Robert Morss, by and through undersigned counsel, moves the Court, pursuant to 18 U.S.C. §§ 3142(f) and 3142(g), to revoke its July 21, 2021, order of detention and issue an order authorizing pretrial release with location monitoring and any other conditions deemed appropriate by the Court. The circumstances arising since Mr. Morss' arrest have changed such that his release is now appropriate, and he does not pose a danger to his community nor is he a flight risk such that continued detention is warranted. GPS monitoring, along with other strict conditions of release, will reasonably assure Mr. Morss' future appearances before this Court and the safety of other persons and the community.

**I.     PROCEDURAL HISTORY**

Mr. Morss was arrested on June 11, 2021, and subsequently charged with robbery, assault and related offenses stemming from his alleged conduct on January 6, 2021. Mr. Morss is charged with robbery, in violation of 18 U.S.C. § 2111 (Counts Five, Six, Twenty),  assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. §§ 111(a)(1) and 2 (Counts Ten, Twenty-Seven), assaulting, resisting, or impeding certain officers while using a dangerous

weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b) (Counts Five and Six), obstruction of an

Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) and 2 (Count Thirty-Four), civil

disorder, in violation of 18 U.S.C. § 231(a)(3) (Count Thirty-Five), disorderly and disruptive

conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18

U.S.C. §§ 1752(a)(2), (b)(1)(A) (Count Forty-One), engaging in physical violence in a restricted

building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(4),

(b)(1)(A) (Count Forty-Nine), disorderly conduct in the Capitol Building, in violation of 40

U.S.C. § 5104(e)(2)(D) (Count Fifty-Two), and an act of violence in the Capitol Grounds of

Buildings, in violation of 40 U.S.C. §§ 5104(e)(2)(F) and 2 (Count Fifty-Three). The government

orally moved for pretrial detention on July 13, 2021, and after a trifurcated pre-trial release

hearing and considering briefing by the parties, the government's Motion was granted by

Magistrate Judge G. Michael Harvey, who ruled that no condition or combination of conditions

could reasonably ensure the safety of the community if Mr. Morss were released.

## II.    DISCUSSION

Mr. Morss respectfully requests that this Court grant him pretrial release, as

circumstances have changed since his June 2021 arrest and a current, individualized assessment

indicates his release would not present an articulable threat to others. While the events of January

6, 2021, as a whole remain deeply concerning, courts overseeing these cases have explicitly

declined to detain all defendants pretrial. *See United States v. Sabol*, No. 21-35-1, 2021 U.S.

Dist. LEXIS 71836, at *28 (D.D.C. Apr. 14, 2021) ("Nonetheless, and despite the serious and

chilling nature of the events that took place that day, the D.C. Circuit has made clear that

detention is not appropriate in all cases involving Capitol Riot defendants.") (citing *United States*

*v. Munchel*, 991 F.3d 1273, 1284-85 (D.C. Cir. 2021)). Pretrial detention is limited to serious

2

cases where no restricting conditions upon release would provide sufficient safeguards. *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"); *see also United States v. Cua*, No. 21-107, 2021 U.S. Dist. LEXIS 44293, at *8-9 (D.D.C. Mar. 10, 2021) ("'The default position of the law . . . is that a defendant should be released pending trial.'" (citation omitted)). Mr. Morss is eligible for pretrial release under 18 U.S.C. §§ 3145(f) and (g), as his alleged conduct on January 6, 2021, was aberrant, and circumstances have meaningfully changed such that his release pending trial is now appropriate.

Further, while the Bail Reform Act establishes eligibility for pretrial detention for a crime of violence, it also instructs the Court only to detain defendants such as Mr. Morss if there is evidence that he is likely to flee or poses a danger to others. 18 U.S.C. §§ 3142(e) and (f). "'In common parlance, the relevant inquiry is whether the defendant is a "flight risk" or a "danger to the community."'" *Munchel*, 991 F.3d at 1279 (quoting *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In this case, an individualized assessment of Mr. Morss' behavior indicates he is not a flight risk or a danger to the community. Mr. Morss therefore respectfully submits that he can rebut the presumption of detention by showing the requisite "conditions of release that will reasonably assure [his] appearance [] as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(g); *see also United States v. Brown*, No. 20-cr-27-4, 2021 U.S. Dist. LEXIS 84332, at *14 (D.D.C. May 3, 2021) ("The defendant's burden of production is not heavy, but he must still introduce some relevant evidence").

**A. Mr. Morss Should Be Granted Pretrial Release as Circumstances Since the Court Ordered Him Detained Have Since Changed and He Does Not Pose a Danger to Others Warranting Further Detention.**

This Court may reopen a detention hearing at any time before trial if the Court finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Thus, the question is whether new, material information exists that bears on the Court's initial evaluation of the factors for pre-trial release enumerated at 18 U.S.C. § 3142(g). Mr. Morss respectfully submits that such information exists and that release is therefore appropriate.

Circumstances have changed since Magistrate Judge Harvey ordered Mr. Morss detained pre-trial. A private attorney who has moved to enter his appearance in this case and will be present at the Court's scheduled hearing tomorrow visited Mr. Morss last evening to retrieve information pertinent to Mr. Morss' unrelated request for pre-trial release. A CTF staff member accused Mr. Morss of a pretextual disciplinary violation consequent to the attorney's visit, which followed the Corrections Officer surreptitiously peering in at the attorney conference. The attorney, who is prepared to address the Court tomorrow, demanded to speak to the ranking supervisor on site and was eventually permitted to speak with Lieutenant Hines. Lt. Hines eventually assured that Mr. Morss would not be charged with any disciplinary infraction. To date, Mr. Morss has had no infractions.

After the attorney left the facility, on information and belief, Mr. Morss was ordered to strip entirely and subjected to an inspection of unmistakable sexual overtone. When he asked to be told the regulatory authority for the order, he was handcuffed and moved by five correctional

officers into a windowless room.   There, with the door closed, all five correctional officers drew

their tasers and demanded that he remove all his clothing.  When Mr. Morss questioned the

express order to remove his boxers (in roughly six contact attorney visits, he has never

previously been asked to do so), he was told he would be tased and placed in the "Hole" if he

refused to do so.  He was subsequently subjected to an extensive search of his naked person.

As this Court is well aware, Judge Royce C. Lamberth of this district recently found the

Warden of D.C. Jail and Director of the D.C. Department of Corrections in contempt of court

and called on the United States Department of Justice to investigate whether the facility is

violating the civil rights of several detained January 6 defendants.  *See* Spencer S. Hsu, *Judge*

*Calls for Justice Dept. Civil Rights Probe into D.C. Jail's Treatment of Jan. 6 Detainees*, WASH.

POST, Oct. 13, 2021, available at: https://www.washingtonpost.com/local/legal-issues/dc-jail-

conditions-contempt-investigation/2021/10/13/65292cd0-2ba1-11ec-985d-

3150f7e106b2_story.html.  And complaints about the treatment of detained January 6 defendants

"appears to have triggered a review that led to about 400 federal prisoners being transferred out

of the D.C. Central Detention Facility.  But those accused of participating in the Capitol riot are

not among them."  *See* Josh Gerstein, *Feds Transfer 400 Prisoners From Main D.C. Jail Due to*

*Conditions*, POLITICO, Nov. 2, 2021, available at:

https://www.politico.com/news/2021/11/02/feds-transfer-prisoners-dc-jail-518604.

The cases currently being reported in the news appear to center around issues with

defendants viewing their own discovery and obtaining records necessary to their cases from the

jail.  However, the indignity reportedly inflicted on Mr. Morss raises serious concerns about

institutional bias and mistreatment toward Capitol riot defendants across the board.  Mr. Morss

has legitimate concerns that he will be subjected to more physically invasive or even assaultive

conduct if he is to remain at the D.C. Jail.  These new circumstances that have presented themselves since Mr. Morss was initially detained warrant a new bail hearing and weigh heavily in favor of pre-trial release, especially given Mr. Morss has not violated any prison rules during his period of pre-trial detention.  At a minimum, the Court should order Mr. Morss be moved to the nearby facility in Alexandria, Virginia.

**B. The Government Cannot Prove by Clear and Convincing Evidence that Mr. Morss Presents an Articulable Threat to Public Safety Warranting Further Incarceration.**

Mr. Morss should be released pretrial, because the record is devoid of evidence proving he is a continued threat to any individual or the community. This inquiry demands an individualized assessment of Mr. Morss' dangerousness. *United States v. Tanios*, No. 21-3034, 2021 U.S. App. LEXIS 23609, at *2 (D.C. Cir. Aug. 9, 2021) (ordering defendant released pretrial subject to conditions, because despite district court correctly applying presumption of detention, it "clearly erred in its individualized assessment of appellant's dangerousness" as record showed no past or subsequent criminal history, or ties to extremist organizations).

In determining whether Mr. Morss must be detained on the basis of dangerousness, the Court considers the following factors: "(1) the nature and circumstances of the offense charged…; (2) the weight of the evidence against the person; (3) the history and characteristics of the person…; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).  However, a defendant's case need not weigh against detention on all factors for release to be granted. *See e.g. Cua*, 2021 U.S. Dist. LEXIS 44293 (granting defendant's motion for release despite factors one and two favoring detention); *United States v. Taylor*, No. 1:21-cr-392-RCL-2, 2021 U.S. Dist. LEXIS 150500 (D.D.C. Aug. 11, 2021) (denying government's motion to revoke defendant's release despite only

factors three and four favoring release); *United States v. Klein*, No. 21-236, 2021 U.S. Dist. LEXIS 69951 (D.D.C. Apr. 12, 2021) (ordering defendant's release despite factors one and two favoring detention, and third factor only "slightly" favoring release).

Here, upon weighing these four factors, Mr. Morss does not pose the requisite "clearly identified" threat to public safety at this time. *Munchel*, 991 F.3d at 1283. Therefore, he cannot be detained pretrial on the basis of dangerousness.

### 1. *Nature and circumstances of the offense charged.*

A close examination of the evidence supports Mr. Morss' motion for pretrial release, as the nature and circumstances of the charged offenses are opportunistic, not planned. Courts in this district have established a series of factors to guide the assessment of the nature and circumstances of the offenses charged in relation to the events of January 6, 2021. *United States v. Chrestman*, No. 21-mj-218, 2021 U.S. Dist. LEXIS 36117, at *20-25 (D.D.C. Feb. 26, 2021). This analysis considers (1) the severity of the offense; (2) evidence of "prior planning"; (3) carrying or use of a dangerous weapon such as a firearm; (4) "[e]vidence of coordination" with others; (5) the defendant taking a leadership role or encouraging others; (6) "a defendant's words and movements during the riot"; (7) whether the defendant entered the Capitol building; (8) whether the defendant injured others; and (9) whether the defendant "actively threatened or confronted federal officials or law enforcement." *Id.* The purpose of this framework is to identify intent and motive, which can suggest "danger . . . not just to the community in which [the defendant] resides, but to the American public as a whole." *Id.* at *22-23. Additionally, by considering "the extent of a defendant's disregard for the institutions of government and the rule of law" courts can assess "whether a defendant will comply with conditions of release meant to ensure the safety of the community," which is critical for the pretrial release analysis. *Id.* at *24.

Although the charges against Mr. Morss are serious and include felony assault, upon closer examination using the *Chrestman* factors, the facts weigh against pretrial detention in this case. The record indicates that Mr. Morss' alleged actions were mostly opportunistic and occurred during a brief period when emotions were running high, not premeditated to the extent the government contends. There is little evidence of prior planning, and although Mr. Morss wore tactical gear, which he otherwise used when he was in the military, he did not bring a firearm, noxious gas agents, or clubs.  The gear was intended for protective purposes and any devices he brought with blading or sharp edges was for emergency medical purposes. Mr. Morss is not part of any group or extremist organization and took no formal leadership roles. Although Mr. Morss did breach the Capitol building, there is no evidence that he caused injury to anyone while inside the structures of the Capitol.  The record indicates that any assaults Mr. Morss allegedly perpetrated occurred within a very short time period, suggesting they were opportunistic and influenced by the surrounding melee rather than a sophisticated or premeditated attack.  Indeed, the items that Mr. Morss allegedly stole from the officers were a metal barricade fence, a flagpole, and a helmet visor, which he attempted to grab off of the ground at the same time as an MPD officer.  None of the officers were seriously injured by Mr. Morss.

It is instructive to consider other Capitol riot cases where the nature of the defendant's offenses was serious but did not preclude pretrial release. In *United States v. Owens*, the defendant's motion for pretrial release was granted despite four felony offenses, a partial breach of the Capitol building, and evidence that the defendant struck an officer forcibly on the head and did not "exhibit any remorse or concern for his behavior," instead pointing "menacingly," and making "obscene gestures." No. 21-cr-286, 2021 U.S. Dist. LEXIS 101157, at *8 (D.D.C.

8

May 28, 2021). Despite this record, upon assessing the *Chrestman* factors this Court held that the nature and circumstances of the offense factor weighed only "modestly" in favor of detention, underscoring that the defendant was not a member of an organized group, brought no "conventional dangerous weapon," and "made no threats of violence in person or in social media." *Id.* at \*22-23, \*27. "Taken together, this conduct raises 'grave concerns' about the defendant's 'disregard for the institutions of government and the rule of law.' *Nevertheless*, defendant's conduct is mitigated by other considerations, including the lack of record evidence that he engaged in any preparation, premeditation or coordination." *Id.* at \*27 (emphasis added) (quoting *Chrestman*, 2021 U.S. Dist. LEXIS 36117 at \*24); *see also Klein*, 2021 U.S. Dist. LEXIS 69951 at \*20, \*41-42 (ordering defendant's release after analyzing Section 3142(g) factors in part because government "proffered no evidence that [defendant's] prolonged confrontation with law enforcement or even his attempt to breach the Capitol building were premeditated" where the defendant stole an officer's riot shield and persistently pressed it against officers trying to get past them); *United States v. Foy*, 2021 U.S. Dist. LEXIS 123953, at \*8-14 (D.D.C. July 2, 2021) (granting release even though Foy did engage in violent confrontations with officers and breached the Capitol building, in part because there was no evidence of planning or coordination with other insurrectionists and his lack of criminal history and honorable discharge from the military); *United States v. Sanford*, Crim. No. 1:21-cr-00086-PLF-1 (Docs. No. 4 and 11) (granting release on GPS monitoring for a retired firefighter who hurled a red fire extinguisher at an officer, struck him in the head, ricocheted off the officer's helmet and hit another officer who was not wearing a helmet, requiring medical treatment); *United States v. Alberts*, Crim. No. 1:21-00026-CRC-1 (releasing Alberts on his own recognizance despite him

being charged with possessing a firearm at the Capitol, with a spare magazine and a bullet in the chamber of the firearm while wearing a bulletproof vest).[1]

In this case, like the defendant in *Owens* who was released pretrial, Mr. Morss is similarly charged with allegedly striking an officer but is similarly not a member of an organized group and brought no conventional weapons to the Capitol, despite legally owning multiple firearms. This demonstrates a lack of "preparation, premeditation or coordination," supporting Mr. Morss' motion for pretrial release. *Owens*, 2021 U.S. Dist. LEXIS 101157, at *27. Mr. Morss' breach of the Capitol Building does not negate this fact, especially considering he caused no injuries while inside the building.

2. *Weight of the evidence against Mr. Morss.*

The assaults allegedly perpetrated by Mr. Morss are captured on police-worn body cameras and multiple videos posted on YouTube. The riot lasted a relatively short period of time. To defense counsel's knowledge, Mr. Morss has made no statements to police or other law enforcement indicating a malicious intent in going to the rally on January 6, 2021, and he did not post on social media about the event beforehand or afterward. In sum, while the weight of the evidence against Mr. Morss is not inconsequential, it is not the only factor the Court must

---

[1] The *Owens* court analogized the defendant's case to three others where Capitol defendants were released without opposition from the government in circumstances analogous to Mr. Morss' case. *Owens*, 2021 U.S. Dist. LEXIS 101157, at *36-37 (citing *United States v. Gossjankowski*, 21-cr-123-PLF; *United States v. Blair*, 21-cr-186-CRC; and *United States v. Leffingwell*, 21-cr-005-ABJ). In all three cases, the defendants were charged with assaultive conduct, like Mr. Morss, using a taser, lacrosse stick, and fists. None of the three defendants were accused of being in any organized gangs/groups, had engaged in any prior planning or coordination with other January 6 defendants, or had "any discernible criminal or violent history. *Id.* at 37. Thus, their dangerousness "appeared to be limited to their conduct on January 6," *see id.*, just like Mr. Morss.

consider in determining whether to release him pending trial, which is not yet scheduled and unlikely to take place in the near future.

       3.   *History and characteristics of Mr. Morss.*

The record of Mr. Morss' history and characteristics weighs strongly in favor of pretrial release. This third factor requires consideration of "the history and characteristics of the person, including—the person's character, physical and mental condition, . . . past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings." 18 U.S.C. § 3142(g)(3)(A).

Mr. Morss is a 28-year-old combat veteran with no prior criminal history and thus, no record of failing to appear for court.  Mr. Morss was honorably discharged from the Army after enlisting right after graduating high school at age 17 and serving three combat tours of duty in Afghanistan.  He received numerous medals of honor for his exemplary service.

He is also a recent graduate of Penn State University with a degree in education.  He worked as a Veterans Administration Work Study student while attending school and received exemplary reviews from his Office Manager.  He completed a student-teaching assignment in the fall of 2020 at Shaler Area Middle School and received outstanding reviews from his supervisory teacher in the Social Studies Department.  In particular, his supervising teacher praised him for using his technological knowledge to help implement a hybrid remote curriculum to accommodate learning during the pandemic, as well as his preparation and ability to adjust his teaching methods to students with varying needs.  The Supervisor of Student Teachers at Penn State gave Mr. Morss similar reviews as an outstanding student, communicator, and lauded his professionalism.

Although he is not originally from Pennsylvania, he has significant ties to the community after having attended college there and deciding to reside in Glenshaw.  He has full family support, including his mother's, who recently retired and moved from Nevada to live in his apartment and support him throughout the pendency of this case.  She is fully committed to supporting him in receiving treatment for his mental health issues.  Mr. Morss is also actively involved in his community as evidenced by his volunteer work with the Travis Manion Foundation, which develops programs, training opportunities, and events for veterans and families.  *See*, Travis Manion Foundation, *Who We Are*, located at: https://www.travismanion.org/about-us/who-we-are/.

With respect to Mr. Morss physical and mental condition, Mr. Morss reports having suffered physical injuries which have left him with a hearing deficit, and Post Traumatic Stress Disorder ("PTSD") as a result of his combat experience in Afghanistan.  He has never sought therapy or treatment for his resultant mental health issues.  Mr. Morss is fully committed to seeking treatment and complying with any mental health care condition this Court deems necessary.

### 4.  Nature and seriousness posed by Mr. Morss' release.

The record offers no evidence that Mr. Morss would be a danger to the community if he was released. The final factor in assessing a defendant's dangerousness is the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). This analysis carries particular weight. *Cua*, 2021 U.S. Dist. LEXIS 44293, at *14. "Because this factor substantially overlaps with the ultimate question whether any conditions of release 'will reasonably assure . . . the safety of any other person and the community,' 18 U.S.C. § 3142(e), it bears heavily on the Court's analysis." *Id.* Further, this

12

Court recently underscored that the threat of the defendant endangering others "must be clearly identified" especially "now that the specific circumstances of January 6, 2021, have passed." *Munchel*, 991 F.3d at 1283-84. "When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community . . . a court may disable the arrestee from executing that threat." *Salerno*, 481 U.S. at 751.

The Court need not find that the defendant is certain not to pose *any* danger in the future, as stringent release conditions can be imposed to mitigate such risk. *See e.g. Klein*, 2021 U.S. Dist. LEXIS 69951 at *37 ("[The defendant] does not pose <u>no</u> continuing danger, as he contends, given his demonstrated willingness to use force to advance his personal beliefs over legitimate government objectives. But what future risk he does present can be mitigated with supervision and other strict conditions on his release."); *Taylor*, 2021 U.S. Dist. LEXIS 150500 at *26 ("[The defendant] may pose *some* continuing danger . . . but . . . the Court finds that the government has failed to show by clear and convincing evidence" the requisite articulable threat); *Owens*, 2021 U.S. Dist. LEXIS 101157, at *40 ("This falls short of demonstrating that defendant poses the kind of dangerousness requiring pretrial detention since the risk he poses to the safety of the community and others may be cabined by tailored release conditions."). Additionally, the defendant's history and characteristics inform the analysis of dangerousness to the community. *See e.g. Foy*, 2021 U.S. Dist. LEXIS 123953, at *13-14 ("the gravity and unsettling nature of [the defendant's] actions must be considered in the context of his long history of law-abiding behavior, his military service, and the absence of any remarks promoting or celebrating the events of January 6 or indicating a willingness or desire to engage in ongoing violence.").

Although the allegations against Mr. Morss are serious, the courts overseeing these cases have cautioned against "reliance on a categorical distinction" wherein those who assaulted law

enforcement are dispositively deemed a danger to the community. *Owens*, 2021 U.S. Dist. LEXIS 101157, at *34-37 (critiquing "those who actually assaulted police officers and broke through windows . . . and those who aided, conspired with . . . or coordinated such actions, are in a different category of dangerousness") (quoting *Munchel*, 991 F.3d at 1284). In *Owens*, the defendant "actually assaulted" an officer, but the Court underscores its "'grave constitutional obligation to ensure that the facts and circumstances of each case warrant' the 'exceptional treatment' of detention. . . . Thus, defendants are entitled to an individualized determination of dangerousness." *Owens*, 2021 U.S. Dist. LEXIS 101157, at *35 (citing *Munchel*, 991 F.3d at 1285). Pursuant to this Court's caution in *Owens* against categorical distinctions, an individualized assessment of Mr. Morss' alleged actions does not support pretrial detention. Further, like the defendant in *Foy*, who was released despite an attack on law enforcement, Mr. Morss' motion for pretrial release is supported by his "long history of law-abiding behavior, his military service, and the absence of any remarks promoting or celebrating the events of January 6 or indicating a willingness or desire to engage in ongoing violence." *Foy*, 2021 U.S. Dist. LEXIS 123953, at *13-14.

In assessing whether Mr. Morss poses a concrete threat to the community, his charges cannot be divorced from the exceptional circumstances of January 6, 2021. Although Mr. Morss is charged with felonies, the evidence suggests that "'the presence of the group was critical' to defendant's ability to assault a police officer." *Owens*, 2021 U.S. Dist. LEXIS 101157, at *36 (citing *Munchel*, 991 F.3d at 1284). There is no evidence that Mr. Morss will engage in the same type of conduct in which he allegedly engaged on January 6, 2021. Absent a coordinated and highly politicized rally during a simultaneous electoral college vote tally, Mr. Morss poses no risk of any danger to the community. Admittedly, "[t]his decision is not an easy one, but, in the

absence of a concrete, prospective threat to public safety that cannot be mitigated by strict conditions, this Court must apply the default rule favoring liberty'" which weighs firmly in favor of Mr. Morss' release.  *Klein*, 2021 U.S. Dist. LEXIS 69951 at *38 (citing *Cua*, 2021 U.S. Dist. LEXIS 44293, at *22).

    **B.  The Government Cannot Prove by a Preponderance of the Evidence That Mr. Morss Poses a Serious Risk of Flight.**

      Mr. Morss' actions since January 6, 2021, as well as his stellar history of military service, demonstrate that there is no serious risk that he will attempt to flee if released pretrial. Mr. Morss had six months of opportunities to abscond or conceal his location following January 6, 2021, despite the significant media attention given to the Capitol Riot defendants who were arrested soon after the incident. Mr. Morss has no criminal history and therefore no arrests for failing to appear to court, further supporting his motion for pretrial release. *Cf. Klein*, 2021 U.S. Dist. LEXIS 69951 at *27 (ordering defendant's release pretrial despite criminal history including one arrest for failure to appear).

      Mr. Morss also has concrete ties to the community.  His mother, Angela Morss, moved from her family home in Nevada to Pennsylvania to help support her son.  Furthermore, since the last pre-trial release hearing, Mr. Morss has secured an offer of employment in the D.C. metro area.  Additionally, Mr. Morss has secured a place to live in the Washington, D.C. area with a friend who is also a Veteran, and he has his own vehicle for transportation to and from work. These new developments further support pre-trial release as they speak to both the dangerousness and risk of flight prongs of the Bail Reform Act analysis and weigh heavily in favor of release.

### III.    CONCLUSION

For the foregoing reasons, defendant Robert Morss, respectfully requests the Court grant the instant motion and issue an order for pretrial release, including conditions at the Court's discretion.  In the alternative, the Court should order or recommend that Mr. Morss be transferred to the Alexandria Jail in Virginia to ensure his physical safety.

Respectfully submitted,

*/s/ Elizabeth L. Toplin*
ELIZABETH L. TOPLIN
Assistant Chief, Trial Unit

*/s/ Kathleen M. Gaughan*
KATHLEEN M. GAUGHAN
Assistant Federal Defender

## <u>CERTIFICATE OF SERVICE</u>

We, Elizabeth L. Toplin and Kathleen M. Gaughan, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that we caused a copy of the Defendant's Motion to Revoke Detention Order and for Pretrial Release to be filed and served electronically through the Eastern District Clerk's Office Electronic Case Filing ("ECF") upon Assistant United States Attorney Melissa Jackson, United States Attorney's Office for the District of Columbia, 555 4th Street NW, Washington, D.C. 20530.

_/s/ Elizabeth L. Toplin_
ELIZABETH L. TOPLIN
Assistant Chief, Trial Unit

_/s/ Kathleen M. Gaughan_
KATHLEEN M. GAUGHAN
Assistant Federal Defender

DATE:  <u>November 4, 2021</u>