IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| v. | ) ) ) | Crim. No. 21cr40<br>Hon. Trevor McFadden |
| GEOFFREY SILLS,<br>Defendant. | ) ) ) ) | |

### DEFENDANT'S MOTION FOR PRETRIAL RELEASE

Comes now Defendant Geoffrey Sills, by counsel, and moves this Court to grant him pretrial release.

United States Magistrate Judge Mark Colombell of the Eastern District of Virginia, Richmond Division, ordered Defendant's detention on June 24, 2021 by virtue of clear and convincing evidence that no conditions could reasonably assure the safety of the community and by virtue of preponderant evidence that no conditions could reasonably assure Defendant's appearance as required. *United States v. Geoffrey Sills,* EDVA 1:21mj85, Doc. 7 at 2. This order followed a hearing on the same day before the same Magistrate Judge.

The Bail Reform Act establishes a presumption in favor of pretrial release, *United States v. Salerno*, 481 U.S. 739, 755 (1989), This Court has already recognized the need to parse the gradations in culpability among the participants in the Capitol Riot when determining who, among the hundreds charged, should be detained pre-rial. *United States v. Chrestman*, ___ F. Supp. 3d ___ (D.D.C. 2021) (20-21 WL 765662 at *7). The District of Columbia Circuit has reaffirmed in the context of the Capitol Riot defendants, the need for "clear and convincing evidence [that] no condition or combinations of circumstances will reasonably secure the safety of any other person and of the community" by reason of an "**identified and articulable** threat to

1

an individual or the community." *United Sates v. Munchel*, 2021 WL 2021 1149196 at *4 (D.C. Cir. Mar. 26, 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 751 (1987) (emphasis added).

Magistrate Judge Colombell's order is to be reviewed *de novo* by this Court. *United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017).

Magistrate Judge Colombell found Defendant to have been the "primary aggressor' among the 50+ rioters in the West Terrace Tunnel., June 24, 2021 Detention Hearing Transcript ("Transcript") at 75, based on Defendant's having assaulted multiple officers by multiple means (a pole and a baton). Transcript at 72-73. Magistrate Judge Colombell had earlier noted that Defendant had combined a "strobe" with his use of a baton to injure others. Transcript at 69.

The tunnel was a maelstrom of rioters and police with violence on all sides. Query how the "primary aggressor" failed to inflict any injury? Transcript at 25-26.

Similarly puzzling are other important findings:

"planning" to riot as evidenced by the advance purchase of an expensive gas mask – notwithstanding the uncontroverted testimony of Defendant's mother that they expected Antifa and BLM to attack the rally attendees. Transcript at 37;

the Magistrate Court's concern that Defendant secure mental health treatment soonest, Transcript at 71 – notwithstanding confinement drastically reduces the possibility of such;

the Magistrate Court's concern that Defendant could not say the number of his guns, Transcript at 70-71 – notwithstanding every one of them was legal;

Finally, the insurmountingly opaque reasoning that Defendant's lawful behavior for the six months since the Capito Riot "cuts both ways." Transcript at 72.

The conduct attributed to Defendant entails his assaulting officers by sundry means – without hurting a one. Functionally identical conduct – in fact, conduct more egregious – has already impelled this Court to release from pre-trial confinement other January 6th defendants.

Particularly instructive is this Court's decision to release co-defendant Federico Klein. *United States v. Federico Klein*, D.D.C. 1:21cr236, Doc. 29 ("Klein Opinion").

Co-defendant Klein more than once pressed a riot shiel against assembled officers. This conduct was analogous to Defendant's striking with a baton at officers and their shields – neither act hurt the officers involved. Moreover, unlike Defendant, co-defendant, Klein also exhorted fellow rioters – twice yelling "We need fresh people" and wedging a shield between the interior doors of the West Terrace Tunnel so as to jam them open. *Id.* at 14-15.

. Judge Bates found that Mr. Klein's conduct did not justify pre-trial confinement in that it did not support "a concrete determination that the defendant poses a continuing, 'identified and articulable threat to the community.'" *Id.* at 24 (quoting *Munchel*, 2021 WL 1149196 at *4).

The same rationale should apply to Defendant's conduct.

This Court, as noted in the Klein Opinion (at 24), has already released similarly or more compromisingly situated defendants: specifically, the defendants in *United States v. Sanford*, D.D.C. 1:21cr86, Doc 1-1 (defendant threw a fire extinguisher at, and hit, an officer and two others); and *United States v. Coffee*, D.D.C. 1:21mj 236, Doc. 1-1 (defendant charged several officers with his crutch, managing to jab one). By contrast and again as noted in the Klein Opinion (at n. 8), this Court has required far more egregious conduct to justify a finding of future dangerousness. See, *United States v. Webster*, (defendant struck officer with flagpole multiple times and pinned him to the ground with same); *United States v. Sabol*, D.D.C. 21cr35-1 (defendant dragged an officer out of the tunnel and down the adjacent steps into the crowd); *United States v. Stager*, D.D.C. 1:21cr35 (defendant struck prostrate officer with flagpole); *United States v. Foy*, D.D.C. 1:21cr108 (defendant struck prostrate officer with hockey stick

several times); *United States v. Mellis*, D.D.C. 1:21cr206 (defendant repeatedly struck at exposed area between officers' helmets and body armor).

Defendant has no criminal record and no indicators of violence before the Capitol Riot. In six months' confinement, he has incurred not a single disciplinary infraction.

## CONCLUSION

Defendant has an excellent release plan in place. Notwithstanding he was fired upon his arrest from his job as a 3D illustrator for SAIC, Defendant has been offered a new job as a photographer and 3D illustrator with Wayne Enterprise, LLC. (Offer of Employment/Letter of Reference attached.) His mother, Susan Sills, stands ready to take him into the home that she owns with her husband, Defendant's father (located within easy commuting distance of Defendant's prospective new employer), to serve as his Third Party Custodian, and guarantor of his compliance with any conditions the Court should impose (to include GPS monitoring).[1]

This case – and the roughly 700 others that accompany it – are unprecedented in more than breadth and scale. Just prior to the breach of the Capitol, President Trump exhorted the assembled protesters at the Ellipse. He said, in part:

> "These people [referring to his crowd while addressing media] are not going to take it any longer."
>
> "They rigged an election."
>
> "We won this election and we won it by a landslide."
>
> "All of us here today do not want to see our election victory stolen."
>
> "We will never give up."
>
> "Our country has had enough and we will not take it anymore."
>
> "We will stop the steal."

---

[1] Defendant's father is a retired Naval Officer who resides with Defendant's mother and who is presently suffering a health travail.

> "If you don't fight like hell, you're not going to have a country anymore."
>
> "Peacefully and patriotically, make your voices heard."
>
> "We are going to the Capitol."

*Capitol riots: Did Trump's words at rally incite violence?* BBC News, January 13, 2021, www.bbc.com.

Whether or not the penultimate sentence could reasonably be expected to calm the already agitated crowd, the sitting President of the United States told the crowd to go the Capitol and "Stop the Steal."

> "A criminal defendant may assert an entrapment-by-estoppel defense when the government affirmatively assures him that certain conduct is lawful, the defendant thereafter engages in the conduct in reasonable reliance on those assurances, and a criminal prosecution based upon the conduct ensues.

*United States v. Aquino-Chacon*, 109 F. 3d 936, 938-39 (4th Cir. 1997) (citing *Raley v. Ohio,* 360 U.S. at 423, 438-39 (1959); *United States v. Clark*, 986 F.2d 65, 69 (4th Cir. 1993); *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994)).

Whatever transpired once they arrived at the Capitol, the protesters were entitled to do as the President directed.

Many details of the ensuing interactions between the protesters turned rioters and the assembled police are, at present, still unclear, but indicators are emerging that significantly diminish the government's narrative of a ravening mob attacking a brave contingent of law enforcement dutifully defending democracy.

In fact, the riot's progress may have been significantly influenced by the government. There does not appear to be much informed disagreement at this juncture, that law enforcement failed to mount a professional response to the possibility of unrest consequent to the Stop the Steal protest.  Recent media accounts, however, also suggest that government agents may have been involved in the riot's creation and progress.

A Proud Boy informant for the FBI reportedly communicated with his official handler throughout the riot. *Among Those Who Marched Into the Capitol on January 6: An F.B.I. Informant,* Alan Feuer, New York Times, October 18, 2021. www.nytimes.com.

Six Capitol Police officers face discipline for misconduct on that day, one for taking a "selfie" with a rioter and another for "clearing the way" for the rioters' entry. *Capitol Police recommends discipline against six officers in connection with January 6*, Emily Brooks, Washington Examiner, September 13, 2021, www.washingtonexaminer.com

A recently surfaced video from a security camera in the depths of the West Terrace Tunnel reveals several "rioters" in street clothes repeatedly entering and exiting the tunnel mouth wherein they confer with the assembled law enforcement officers. *January 6 Police Beating Victim Speaks: 'I Could Have Died,'* Julie Kelly, American Greatness, December 8, 2021, www.amgreatness.com. The conduct of these apparent undercover officers begs the question as to how much of the rioters' conduct may actually have been abetted or even instigated by undercover law enforcement.

Much more disturbingly, the same video reveals a white shirted officer (presumably an MPD supervisor) repeatedly clubbing a woman in the head as she stands before the phalanx of officers in the tunnel with her hands at her side and unable to move because of the mass of protesters behind her. The white shirted office continues to hit her and, eventually, you start to see the blood.

The emerging picture of the day may reveal something far more nuanced than a simple mob assault on law enforcement – but instead something more akin, at least in some cases, to mutual combat implicating considerations of self defense and the defense of others.

A comprehensive (i.e., accurate) understanding of the Capitol Riot is necessary to the effective defense to which Defendant is entitled under the Sixth Amendment.  Such an understanding, however, will take time.  To confine Defendant pre-trial effectively precludes him from developing adequately his defense as the burden of his confinement, and consequent pressure to seek a resolution of his charges by agreement, contraposes his recourse to the ongoing incremental illumination of the day's events.[2]

This Court has already ruled that the scourge of pre-trial confinement should visit only the most culpable of the Capitol Riot defendants.  *United States v. Chrestman*, ___ F. Supp. 3d ___ (D.D.C. 2021), (2021 WL 765662 at *7).  Defendant is manifestly not one of them.

Respectfully submitted,

GEOFFREY SILLS
By Counsel

_____/s/_____
John C. Kiyonaga

600 Cameron Street
Alexandria, Virginia 22314
Telephone: (703) 739-0009
Facsimile: (703) 340-1642
E-mail: john@johnckiyonagaa.com

Counsel for the Defendant

Certificate of Electronic Service

I hereby certify that on December 15, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties.

_____/s/_____
John C. Kiyonaga

---

[2] Defendant intends, if his motion is granted, to waive his Speedy Trial rights thenceforth.  As of now, he continues to assert them.