IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES, | ) |
| v. | ) Crim. No. 21cr40 |
| | ) Hon. Trevor McFadden |
| GEOFFREY SILLS, | ) |
| Defendant. | ) |

### DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR PRETRIAL RELEASE

Comes now Defendant Geoffrey Sills, by counsel, and replies to the Government's Opposition to Defendant's Motion for Pre-Trial Release (Doc 204)("Opp").

The government resorts to unattributable acts and unwarranted supposition in urging the continued pretrial confinement of Defendant.

**Violence Not Attributable to Defendant**

Repeated references to acts of violence by others or to unattributable injuries to officers, do nothing to illuminate the Court's consideration.

> Describing a beating administered by "a rioter;" using what the officer "suspected" was his baton stolen by Defendant, with no indication of the basis for the suspicion. Opp at 16.

> Describing the injuries of Officer V.B. albeit "it is impossible to determine whether his injuries came from Sills… " Opp at 20.

> Describing sundry misconduct by unidentified rioters without articulating any relation to Defendant. Opp at 21.

> Describing an injury to Officer C.W. albeit "it is impossible to determine whether the injury came from Sills… " Opp at 22.

**Unsupported Inferred Intent**

The government indulges leaps of logic to infer nefarious intent where none is apparent.

1

"Sills lifts the baton above his head in what appears to be an effort to signal and galvanize the crowd." Opp at 18. A signal to do what?

"Sills came to the capitol wearing tactical gear intending to cause mayhem… " Opp at 30. Sills is alleged to have brought a gas mask – hardly a weapon of mayhem; ear plugs – hardly conducive to coordinated mayhem; padded tactical gloves – which soften the impact of a blow with the fist; and to have downloaded a walkie-talkie app – which he is not alleged to have used. Opp at 30. The government dismisses Defendant's stated (in texts to his mother) reason for the mask, fear of a terrorist gas attack, by pointing out that he did not wear it on the way to the Capitol. Opp at 30. Query who would care to be the only person in a crowded public transport wearing a gas mask?

The government references texts by Defendant that mention meetings of the "Hanover Patriots" while clarifying that the texts do not reflect "additional plans for violence." Opp at 26-27. The record is bereft of any plans by Defendant or the Hanover Patriots for wreaking any manner of violence at any time.[1]

The government finds it "particularly concerning that he chose to keep the stolen baton he used to attack officers as a trophy hidden under a desk for months." Opp at 35. The government offers no proof that the baton recovered from Defendant's home was used at the Capitol. Moreover, who hides a trophy?

## **CONCLUSIOIN**

The government finds it "difficult to fathom a more serious danger to the community – to the District of Columbia, to the country or to the fabric of our Democracy… " than Defendant. Opp at 33. Defendant, however, is alleged to have injured no one.

Defendant is alleged to have thrown sundry objects at officers – to no known effect, and to have swungj a number of times with a baton – again, to no known effect..[2]

Absolutely no showing of any leadership role in the day's events has been made.

The government overlooks with its draconian prediction that this Court has already released more compromisingly situated defendants. (See Defendant's Motion for PreTrial

---

[1] A cursory Google search by undersigned revealed no cognizable indicators of any violent or seditious proclivities of the Hanover Patriots beyond one complaint to the local school board by a correspondent who branded it a "hate group" – without any cited support whatsoever – after the group had donated to a local school.

[2] It bears noting that Exhibit G of the Government's video clips provided with its Opposition, appears to show the officer from whom the baton was presumably wrested, striking out with it. While this may or may not, depending on the broader context of the event, justify the taking of the baton, it is materially distinguishable from wresting a baton from an officer who is not using it.

Release (Doc 188) at 3-5: the release of a defendant accused of hitting three officers with a thrown fire extinguisher, and of a defendant accused of jabbing an officer with his crutch and charging several others.  Contrast the sorts of defendants the Court has refused to release: a defendant accused of striking an officer to the ground with a flagpole and pinning him there with same; a defendant accused of dragging an officer out of the tunnel, down the terrace steps, and into the crowd of rioters; a defendant accused of striking a prostrate office with flagpole; a defendant accused of striking a prostrate officer with a hockey stick; and a defendant accused of repeatedly striking officers specifically in the areas unprotected by helmet or body armor.)  None of the video exhibits proffered by the government even shows Defendant connecting with any part of an officer.

      Consider further that the circumstances that impelled Defendant to the Capitol – a pending Electoral College vote certification and a President exhorting his supporters to stop it – are unlikely in the extreme to replicate.  (See, United States v. *Klein,* D.D.C. 1:21cr 236, Doc 29 at 24).

      The government doubts that Defendant would "adhere to this Court's directions and release orders… " because he was unwilling on January 6th, "to obey orders or to conform his behavior to the law… "  Opp at 34.  The government's accusation, however, comprises every last protester at the Capitol that day.  This Court has already recognized the need to parse the gradations in culpability among the participants in the Capitol Riot when determining who, among the hundreds charged, should be detained pre-rial.  *United States v. Chrestman*, ___ F. Supp. 3d ___ (D.D.C. 2021) (20-21 WL 765662 at *7).

In fact, Defendant found himself at the Capitol in direct obedience to the order of the highest authority in the land, the sitting President. (See Defendant's Motion for PreTrial Release, (Doc 188) at 4-5.)

The government closes with the observation: "His snide remarks about taking 'a tour' and making 'some friends' as he posted videos of officers being attacked and the doors being broken in are similarly concerning." Opp at 35. Irreverence has not previously been a basis for detention - at least not here.

Finally, this Court should consider Defendant's particular circumstances which render his continued pre trial detention – the avowed exception to the rule of pretrial release – alarmingly harsh. Defendant's 60 year old father has been recently released from hospital where he was treated for COVID Pneumonia. Lt. Cdr. Sills' COVID Pneumonia comes on the heels of his chronic Thalassemia (a blood disorder which impedes the distribution of oxygen to the body), a stroke several years ago, and Type 2 Diabetes. He is essentially an illustration of grave Covid comorbidities. He currently requires oxygen to stay alive. (See attached January 10, 2022 letter of Dr. Ian Shupack.) This is not an opportune time to keep Defendant from his father.

          Respectfully submitted,

          GEOFFREY SILLS
          By Counsel

          _____/s/_____
          John C. Kiyonaga

          600 Cameron Street
          Alexandria, Virginia 22314
          Telephone: (703) 739-0009
          Facsimile: (703) 340-1642
          E-mail: john@johnckiyonagaa.com

          Counsel for the Defendant

5

<u>Certificate of Electronic Service</u>

    I hereby certify that on January 12, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties.

                                                  /s/
                                        John C. Kiyonaga