## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **1:21-CR-40 (TNM)** |
| | ) | |
| **DAVID LEE JUDD** | ) | |

### Motion to Sever Mr. Judd's Trial from Those of His Co-Defendants

Comes now the Defendant, David Lee Judd ("Mr. Judd"), by and through undersigned counsel, Elizabeth Mullin, pursuant to Federal Rules of Criminal Procedure, and moves to sever his trial from those of his co-defendants.

### FACTUAL AND PROCEDURAL BACKGROUND

Mr. Judd is charged jointly with eight co-defendants in a 53-count superseding indictment for offenses arising out of the events at the U.S. Capitol on January 6, 2021. Fifth Superseding Indictment, ECF No. 179. None of the joined defendants are charged with conspiring with one another to commit any offense. None of the joined defendants are alleged to have come to the Capitol together or to have corresponded with one another prior to or after January 6, 2021. None of the joined defendants are alleged to identify with a common political or social group. Indeed, none of the joined defendants are alleged to have ever met prior to the instant proceedings.

Despite the lack of connection between Mr. Judd and the eight joined co-defendants, the government has grouped them together in a single indictment, apparently based on their proximity to one another at certain times on January 6, 2021.  Why the government selected these nine men to be charged together from

among the hundreds of people in their vicinity is unclear. In most instances, despite their physical proximity on January 6, even the video evidence of their actions does not overlap. In fact, many of the videos that the government has produced on behalf of Mr. Judd's co-defendants would be inadmissible in the government's case in chief against him as irrelevant, since they do not even capture his conduct. Fed. R. Evid. 402.

## ARGUMENT

These nine defendants are improperly joined under controlling precedent. There is no concerted action demonstrated, or even alleged, between all of them. Their conduct is separate and distinct, which is evident both from the face of the Indictment, *see* ECF No. 179, as well as through representations made by the government for contextualizing discovery productions.

Moreover, there is a real danger that the jury will become confused by the mass trial and fail to consider the evidence against each of the nine defendants independently. The prejudice that will result from joined trials cannot be mitigated by grouping the defendants into two randomly selected groups for trial. While the government may claim that, notwithstanding these concerns, the cases should be tried together to promote judicial economy, it is difficult to imagine that two joint trials involving a seemingly random collection of defendants will not become sidetracked and delayed with countless evidentiary motions, among other issues. More importantly, balancing the efficiency imperatives of joinder against the substantive rights of criminal defendants has been foreclosed by the Supreme Court,

as discussed *infra* Part II. In light of the potential for prejudice, the only relief that guarantees Mr. Judd's substantive rights is severance.

## I.     The defendants are improperly joined under the controlling interpretation of Rule 8(b).

Rule 8 of the Federal Rules of Criminal Procedure permits joinder of defendants only if "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). To properly join two defendants in this District, the government must sufficiently demonstrate "the existence of a common scheme or plan spanning both transactions *and* both defendants." *United States v. Perry*, 731 F.2d 985, 991 (D.C. Cir. 1984) (emphasis added).

### A. There is an insufficient nexus to support the joinder of Mr. Judd with at least seven of his co-defendants.

Though generally favored, joinder does not "authorize the Government to string together, for common trial, eight or more separate and distinct crimes, conspiracies related in kind though they might be, *when the only nexus among them lies in the fact that one man participated in all.*" *Kotteakos v. United States*, 328 U.S. 750, 773 (1946) (emphasis added). Rather, each defendant must be logically relevant to *each* of their co-defendants. *See id.*; *see also Perry*, 731 F.2d at 990 ("[T]here must be a logical relationship between the acts or transactions within the series."); *see also United States v. Jackson*, 562 F.2d 789, 796 (D.C. Cir. 1977) ("[I]f acts were part of a common scheme or plan, or connected together, they could be regarded as a series.").

3

Of course, *Kotteakos* was decided shortly before the Federal Rules of Criminal Procedure became effective. However, the principle is reflected in contemporary case law. For example, in a case cited favorably by the District of Columbia Circuit in *Jackson*, the Fourth Circuit observed:

> There is nothing in the evidence to show that Whitehead and Meredith could have been joined in the same indictment. Whitehead allegedly dealt with Jackson, and Jackson with Meredith. The burden is on the government to show that persons to be joined participated in the same act or transactions, or in the same series of acts or transactions. Although there was a 'series' of transactions involving a common denominator (Jackson), the government did not meet its burden of proving that there was any connection between appellant's offense and Meredith's offense. Carried to its logical conclusion, the government's theory might well allow us to join in a common indictment and trial two delinquent taxpayers who used the same accountant. Such a result approaches the ridiculous. Clearly, the joinder of Whitehead and Meredith in the instant case was improper."

*United States v. Whitehead*, 539 F.2d 1023, 1025 (4th Cir. 1976); *see also Jackson*, 562 F.2d at 796 (citing to *Whitehead* for the proposition quoted).

While Mr. Judd's charges are similar to[1] those of his co-defendants, he is only alleged to have participated in acts involving *one* co-defendant, Defendant Stevens. Fifth Superseding Indictment, ECF No. 179 at 8, 16 (Counts 16, 33). Indeed, the joined defendants were unknown to one another until the start of the instant proceedings. Unlike the other charged January 6 conspiracies, these joined defendants had no shared plans or agreements regarding their conduct that day,

---

[1] "Similar" conduct is plainly insufficient for joinder under Rule 8(b). *See Jackson*, 562 F.2d at 796 ("When similar but unrelated offenses are jointly charged [even] to a single defendant, some prejudice almost necessarily results") (quoting *Cupo v. United States*, 359 F.2d 990, 993 (D.C. Cir. 1966)).

having traveled from different parts of the country for their own individual reasons. While at the Capitol, they are alleged to have committed separate acts, notwithstanding the grouping of those disparate acts in certain counts. *See, e.g.*, *id.* at 16 (charging all nine defendants with obstruction in Count 34, despite the fact that each defendant engaged in distinct conduct).

Because Mr. Judd's alleged actions were wholly separate and distinct from at least seven of the joined co-defendants, these parties are improperly joined.  As the principle articulated in *Kotteakos* established, Defendant Stevens' relevancy to the other seven co-defendants is insufficient as a basis for supporting the joinder of the entire group. *Kotteakos*, 328 U.S. at 773. Thus, unless the government demonstrates a logical nexus between Mr. Judd and the other seven co-defendants, the Court must sever the proceedings. Grouping the defendants into two randomly selected groups will not be sufficient to mitigate the prejudice caused by the misjoinder.

**B. The conduct alleged against Mr. Judd and his eighth co-defendant, Defendants Stevens, was not part of the same "transaction" within the meaning of Rule 8(b).**

Like its civil joinder counterpart, Rule 8 reflects the mid-20th century litigation reforms that were designed to promote judicial economy through the aggregation of related claims.[2] Specifically, both rules permit joinder where parties

---

[2] *Compare* Edward Q. Carr, *Some Aspects of Joinder of Causes*, 5 Fordham L.R. 452, 457 (1936) ("Contemporary reforms in practice and [civil] procedure include the removal of many of the restrictions covering the joinder of causes of action in the complaint. The policy of modern statutes is to encourage joinder of causes…animated by motives of practical expediency."), *with Reform in Criminal Procedure*, 50 Yale L.J. 107, 108 (1940) ("It is customary to regard procedural reform as a streamlining operation…[I]n the reform of criminal procedure… it must not only *provide speed and*

are involved in the same transaction, or same series of transactions, because the overlap in material facts facilitates increased efficiency when litigating the matters together. *Compare* Fed. R. Civ. P. 20(a)(1)(A), (a)(2)(A) ("…arising out of the same transaction, occurrence, or series of transactions or occurrences"), *with* Fed. R. Crim. P. 8(b) ("…participated in the same act or transaction, or in the same series of acts or transactions"); *see also Jackson*, 562 F.2d at 794 ("[T]he excuse being the benefit to the courts.") (observing that the purpose of Rule 8 is the promotion of judicial economy). While there is a policy favoring joinder where joinder would create efficiencies, *United States v. Mason*, 951 F.3d 567, 576 (D.C. Cir. 2020), *cert. denied*, 140 S. Ct. 2787 (2020) (quoting *Perry*, 731 F.2d at 991), it must be clear that efficiencies actually exist. *See Perry*, 731 F.2d at 990 ("Where … there are no presumptive benefits from joint proof of facts relevant to all the acts or transactions… Rule 8(b) comes to an end, and joinder is impermissible.") (quoting *Jackson*, 562 F.2d at 794-95).

That said, criminal procedure analogy to the civil context always has its limitations. As the Court of Appeals for the District of Columbia Circuit observed after the modern Rules were implemented:

> 'The civil model . . . is often inappropriate in criminal procedure, and no subject illustrates this fact better than joinder.' Efficiency 'the conservation of judicial energy and the avoidance of multiplicity of litigation' may be pursued with single-minded devotion in the rules and

---

*efficiency of administration*, but it must also safeguard the interests of a multitude of uncounselled 'little people.'") (emphasis added); *see also Jackson*, 562 F.2d at794 ("This would be consistent with the pattern of the Civil Rule that the draftsmen seem generally to have taken as their model") (describing Rule 8 as the intended analogue to the joinder rule under the Federal Rules of Civil Procedure).

doctrines of civil procedure, but, ***on the criminal side, solicitude for efficient judicial administration must sometimes give way to the need to protect the rights of defendants***."

*Jackson*, 562 F.2d at 799 (quoting 8 Moore's Federal Practice § 8.02(1), at 8-3 (2d ed. 1976)) (emphasis added). Because of the potential for prejudice in the criminal context, the efficiency of joinder must typically be evident from the face of the indictment, as in the case of conspiracy, or clearly established in pre-trial proceedings. *See, e.g.*, *id.* ("[T]his possibility of [efficiency] benefit should explicitly appear from the indictment or from other representations by the government before trial."); *see also Perry*, 731 F.2d at 990 ("Quite obviously, the indictment might satisfy this requirement, for instance when a conspiracy charge links all the offenses and defendants. Subsequent pre-trial representations, however, may suffice equally to satisfy Rule 8(b)."); *but see, e.g.*, *Thomas v. United States*, 849 F.3d 669 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 261 (2017) (holding that a court may *only* look to the face of the indictment for making such a determination).

In *Perry*, the District of Columbia Circuit applied Rule 8(b), and observing its potential for prejudice, it reaffirmed the standard first articulated in *Jackson*: the government carries the burden of sufficiently demonstrating "the existence of a common scheme or plan *spanning both transactions* and *both defendants*." *Perry*, 731 F.2d at 991 (emphasis added). Of course, two defendants charged in the same conspiracy almost always satisfies this standard, because a conspiracy charge is the "common thread that ties all of the defendants and charges together." *U.S. v. Edelin*, 118 F. Supp. 2d 36, 39 (D.D.C. 2000) ("Rule 8(b) . . . makes clear that joinder for trial

is proper where the indictment charges multiple defendants with a *single conspiracy* and also charges some of the defendants with substantive counts arising out of the conspiracy.") (citing *United States v. Simon*, 839 F.2d 1461, 1472 (11th Cir. 1988)) (emphasis added). This is true even when both defendants are not charged in each count, provided each count relates to the same conspiracy. *See* Fed. R. Crim. P. 8(b); *see also Perry*, 731 F.2d at 991 ("The district court here was presented with two cocaine transactions involving the same purchaser, the same intermediary … [t]here was certainly an ongoing relationship, if not a single ongoing transaction.") (finding sufficient factual overlap between charges involving the same conspiracy, despite the fact that defendants were not charged together in all of the same counts).

Whether proximal conduct not charged as a conspiracy can satisfy the controlling "common scheme or plan" standard is far less clear. Here, the only factual overlap in Mr. Judd's case that is evident from the face of the Indictment appears in just *two* of the 53 counts, in which he is alleged to have encouraged (i.e., waved, cheered) the assaultive conduct of Defendant Stevens. Fifth Superseding Indictment, ECF No. 179 at 8, 16 (charging Mr. Judd with aiding and abetting). If the government seriously contends that mere cheering is sufficient to render two defendants part of the same "common scheme or plan" within the meaning of Rule 8(b) and *Perry*, it must concede that these attenuated links could apply to most, if not all, of the 704 January 6 defendants. The absurdity of this logical extreme underscores the fact that the differences in the January 6 cases—including the nine joined here—far

overshadow the commonalities, yielding few, if any, efficiencies through joinder.[3] *See also Whitehead*, 539 F.2d at 1025 ("Such a result approaches the ridiculous.").

More likely, the differences would produce serious confusion and, by extension, *in*efficiency. That is precisely why, in the civil context, where an even broader joinder rule controls, this Court found that a party "cannot join defendants who simply engaged in similar types of behavior, but who are otherwise unrelated; some allegation of *concerted action between defendants is required*." *Spaeth v. Michigan State Univ. Coll. of L.*, 845 F. Supp. 2d 48, 53 (D.D.C. 2012) (quoting *Grynberg v. Alaskan Pipeline Co.*, No. 95–cv–725(TFH), 1997 WL 33763820, at *1, 2 (D.D.C. March 27, 1997) ("Courts have not joined totally independent actors, without any allegation of concert or conspiracy")) (emphasis added); *see also Perry*, 731 F.2d at 990 ("Where … there are no presumptive [efficiency] benefits from joint proof of facts relevant to all the acts or transactions…joinder is impermissible."). Concerted means "*mutually* contrived or *agreed* on."[4] Here, no actions "concerted" in nature are even alleged by the government.

While Mr. Judd readily concedes that joinder is favored and flexibly applied, he respectfully submits that the reasons why joinder is favored are not present here.

---

[3] Indeed, the heartland of joinder efficiency, i.e., mutual relief or liability, is not in play here: the determination of any material fact in Mr. Judd's case will not resolve any material fact or issue in his co-defendants' cases, and vice versa. Even if, for example, the jury determines that Defendant Stevens did not commit the assaults alleged in Counts 16 and 33, Mr. Judd may still be convicted of aiding and abetting those acts. *See Standefer v. United States*, 447 U.S. 10, 20 (1980) (expressly rejecting the principle of nonmutual collateral estoppel for the purposes of a Section 2 charge).
[4] *Concerted*, Merriam-Webster (last visited Jan. 14, 2022) (emphasis added), https://www.merriam-webster.com/dictionary/concerted.

Instead, the *de minimis* factual overlap and lack of mutual liability strongly suggest that there are no efficiencies to be gained in trying Mr. Judd with Defendant Stevens[5], and as such, they have been improperly joined.

## II. Even assuming the defendants are properly joined under Rule 8(b), the Court should sever Mr. Judd's trial from his co-defendants to protect his substantive rights.

Pursuant to Rule 14(a), "[i]f the joinder of offenses or defendants in an indictment. . . appears to prejudice a defendant. . . the court may. . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The decision to grant severance remains firmly within this Court's discretion and the Court may exercise its discretion to sever the defendants even if it finds they are properly joined. *See Zafiro v. United States*, 506 U.S. 534, 541 (1993); *Edelin*, 118 F. Supp. 2d at 41.

Like Rule 8, courts have interpreted Rule 14 in favor of joinder. *See Zafiro*, 506 U.S. at 539. However, as explored *supra* Part I, the general approval of joinder is not without limitation: the Supreme Court has made clear that severance of properly joined defendants is appropriate where, as here, there the dangers for "transference of guilty from one [defendant] to another . . . subconsciously or otherwise, are so great that no one can really say prejudice to a substantial right has not taken place." *Kotteakos*, 328 U.S. at 750; *see also United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) ("[T]here are definite limits to what the government can put together in a

---

[5] Presently, Mr. Judd has been grouped in group 2 and will not be tried with defendant Stevens.  Mr. Judd maintains that grouping defendants in two groups for trial will not mitigate the prejudice of joint trials.

single indictment.").  The Court has observed that "such risk is 'heightened' when, for example, 'many defendants are tried together in a complex case and they have markedly different degrees of culpability' or evidence 'that would not be admissible if a defendant were tried alone is admitted against a codefendant.'" *United States v. Franklin*, No. CR 04-128 (RMC), 2005 WL 8157514, at *2 (D.D.C. Dec. 16, 2005) (quoting *Zafiro*, 506 U.S. at 539).

In *Kotteakos*, the Supreme Court applied these principles in assessing the appropriateness of joinder of 34 defendants. 328 U.S. at 772-75. While the indictment charged a single conspiracy, the Court found that proof introduced at trial actually established eight or more distinct conspiracies, loosely connecting the various defendants through an incomplete overlap in membership. *Id*. at 774. Because of the concern that the broad web of conspiracies would overshadow individual conduct, the Court held that the defendants were improperly joined. *Id*. at 774. Specifically, the Court recognized the danger of prejudice where joinder has the tendency to falsely amplify the scope of criminal culpability:

> When many conspire, they invite mass trial by their conduct. Even so, the proceedings are exceptional to our tradition and call for use of every safeguard to individualize each defendant in his relation to the mass. ***Wholly different is it with those who join together with only a few, though many others may be doing the same and though some of them may line up with more than one group***.
>
> Criminal they may be, ***but it is not the criminality of mass conspiracy. They do not invite mass trial by their conduct. Nor does our system tolerate it. That way lies the drift toward totalitarian institutions***. True, this may be inconvenient for prosecution. But our Government is not one of mere convenience or efficiency. It too has a stake, with every citizen, in his being afforded our historic individual protections, including those surrounding criminal

11

> trials. About them we dare not become careless or complacent when that fashion has become rampant over the earth.

*Id.* at 773 (emphasis added). The Court further held that the trial court's caution to the jury "to consider each defendant's case separately" was not enough to mitigate the error, because it permeated the atmosphere of the entire trial. *Id.* at 769-70. In fact, the Court was so convinced of the potential for prejudice that its decision was not impacted by the fact that some of the defendants were acquitted. *Id.* at 768-69. Finally, the Court squarely rejected the government's argument that Rule 14 necessitates a consideration of the potential for joinder efficiencies that can override concerns about prejudice:

> True, this may be inconvenient for prosecution. But our government is not one of mere convenience or efficiency.  It too has a stake, with every citizen, in his being afforded our historic individual protections, including those surrounding criminal trials.

*Id.* at 773.

The dangers of a mass trial that the *Kotteakos* Court recognized are also present here. Mr. Judd is charged by indictment with eight other defendants with no single, common thread tying *all* of the defendants together.[6] While the compounding concern present in *Kotteakos*—i.e., that the jury would also be confused by the

---

[6] As observed *supra* Part I (A), it is not enough that a single defendant is relevant to each of the other defendants. *See Kotteakos*, 328 U.S. 750, 773 ("[Joinder does not] authorize the Government to string together, for common trial, eight or more separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus among them lies in the fact that one man participated in all").[7] Indeed, the differences in degrees of culpability are also evidenced by the fact that Mr. Judd was released on bond, while some of his co-defendants remain detained.

difference between the conspiracy charged and the conspiracies actually evidenced—is not at issue here, the prejudice concern is highly analogous. Specifically, there is a danger that the jury will associate each defendant with the collective conduct.

The Supreme Court has found that this concern is particularly pressing where, as here, there are significantly different degrees of culpability among the joined defendants, and where much of the evidence is only admissible against one party. *Zafiro*, 506 U.S. at 539; *see also United States v. Erwin*, 793 F.2d 656, 666 (5th Cir. 1986) (holding severance required because "[t]he charges against [defendant] were only peripherally related to those alleged against the other [co-defendants, and] [a]s the trial progressed, it became increasingly apparent that very little of the mountain of evidence was usable against her"). While Mr. Judd, like his co-defendants, stands accused of assault with a dangerous weapon, the facts reveal significant differences in "degrees of culpability." *Zafiro*, 506 U.S. at 539.[7] For example, in his most serious charge, Mr. Judd is alleged to have tossed a small firecracker into a crowd, which caused no injuries. Fifth Superseding Indictment, ECF No. 179 at 11 (Count 22). In sharp contrast, Defendant Quaglin is alleged to have (1) pushed an officer to the ground, (2) hit an officer in the face and neck with a riot shield, and (3) sprayed an officer directly in the face with a chemical irritant. *Id*. at 6 (Count 11); *id*. at 11 (Count 23); *id*. at 13 (Count 26). These troubling allegations against Defendant Quaglin,

---

[7] Indeed, the differences in degrees of culpability are also evidenced by the fact that Mr. Judd was released on bond, while some of his co-defendants remain detained.

among other co-defendants, are obviously far more serious than the allegations against Mr. Judd, and Mr. Judd stands to be deeply prejudiced by association.

Finally, while the government may argue that a joint trial will promote judicial economy, *Kotteako*s foreclosed the balancing of prejudice against efficiency where the defendant's substantive rights are at issue. 328 U.S. at 773 ("[O]ur Government is not one of mere convenience or efficiency…about [individual protections] we dare not become careless or complacent when that fashion [of efficiency] has become rampant over the earth."). Moreover, and as explained *supra*, it is hard to imagine that a trial of multiple defendants on 53 separate, substantive counts will not invite confusion, chaos, and delay: it would be tantamount to holding a trial for nine different defendants who all happened to commit separate robberies on the same day in the same general location. No Court would permit such misleading and logically irrelevant amplification of each individual defendant's charges. Likewise, this Court should not permit Mr. Judd to sit as a defendant in a mass trial of unrelated defendants each facing their own separate and distinct charges.

## CONCLUSION

For the foregoing reasons, Mr. Judd moves to sever his trial from that of his co-defendants.

Respectfully submitted,

**DAVID L. JUDD**
by counsel:

Geremy C. Kamens
Federal Public Defender for the
Eastern District of Virginia

by:_____s/_____
Elizabeth A. Mullin
DC Bar No. 484020
Assistant Federal Public Defenders
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0879
Facsimile: (703) 600-0880