# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| UNITED STATES OF AMERICA |
| v. |
| STEVEN CAPPUCCIO, |
| Defendant. |

Case No. 21-cr-40-8-TNM

## STEVEN CAPPUCCIO'S MOTION TO SEVER

STEVEN CAPPUCCIO, through his attorney, respectfully moves the Court for an order severing his case for trial from that of his co-defendants.  In support of this Motion, Mr. Cappuccio offers the following:

## I.  BACKGROUND

On January 18, 2021, the Government initiated the present case against co-defendant PATRICK E. MCCAUGHEY III by sealed Complaint.  (Doc. No. 1).  The associated affidavit alleges that "on or about January 6, 2021, [he] traveled to Washington, D.C., and knowingly and willfully joined a crowd of individuals who forcibly entered the grounds of the United States Capitol and impeded, disrupted, and disturbed the orderly conduct of business by the United States House of Representatives and the United States Senate."  *Id.*  The initial 9-count Indictment, limited to Mr. McCaughey, was filed on January 29, 2021.  (Doc. No.   5).  Since that date, co-defendants have been added in a series of superseding indictments filed March 3, 2021 (Doc. No. 19), March 16, 2021 (Doc. No. 37), June 16, 2021 (Doc. No. 68), August 4, 2021 (Doc. No. 102), and December 1, 2021 (Doc. No. 179).  Mr. Cappuccio's initial identification on the docket was on August 4, 2021 in the Fourth Superseding Indictment. (Doc. No. 102).

The Government summarizes the charges included in the most recent Fifth Superseding

1

Indictment (Doc. No. 179) as follows:

(1) 18 U.S.C. §§ lll(a)(l), 2 (Assaulting, Resisting, or Impeding Certain Officers, Aiding and Abetting)

(2) 18 U.S.C. §§ lll(a)(l) and (b) (Inflicting Bodily Injury on Certain Officers)

(3) 18 U.S.C.§§ 2111, 2 (Robbery)

(4) 18 U.S.C. §§ lll(a)(l) and (b) (Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon)

(5) 18 U.S.C. §§ 1512(c)(2) and 2 (Obstruction of an Official Proceeding)

(6) 18 U.S.C. § 231(a)(3) (Civil Disorder)

(7) 18 U.S.C. §§ 1752(a)(2) and (b)(l)(A) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon)

(8) 18 U.S.C. §§ 1752(a)(4) and (b)(l)(A) (Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon)

(9) 40 U.S.C. §§ 5104(e)(2)(D), 2 (Disorderly Conduct in a Capitol Building)

(10)   40 U.S.C. §§ 5104(e)(2)(F), 2 (Act of Physical Violence in the Capitol Grounds or Buildings)

Of the 53-Count Indictment, Mr. Cappuccio is mentioned in Counts 28, 29, 30, 34, 35, 42, 50, 52, and 53.   Of the a forementioned Counts 34 (obstruction of an official proceeding), 35 (civil disorder), 52 (disorderly conduct in a Capitol building) and 53 (act of physical violence in the Capitol grounds or Buildings) allege conduct by co-defendants and allege acts on or about January 6, 2021.  In contrast, the remaining Counts are limited to Mr. Cappuccio and are substantially limited in scope and time, with allegations potentially minutes in duration.  No counts allege a conspiracy among co-defendants.

A cursory review of available allegations and evidence directed to co-defendants suggests a wide range of offense conduct.

Patrick Edward McCaughey III is identified by video carrying a clear police riot shield that he presses to the body of  MPD Officer D.H.  Compl.  ¶ 16 (Doc. 1-1).

Tristan Chandler Stevens grabs a riot shield in response to the call to form a "shield wall."  Compl. ¶ 19 (Doc. 1-1).  He then uses the riot shield to push to the front of the line, driving into the line of officers and striking an officer in the helmet.  *Id.* ¶ 20.

David Lee Judd asked that riot shields be handed back to the crowd, calling for a "shield wall" and

himself passing two shields to others. Compl.  ¶ 19, 20.   Further, he lit an object, later referred to as a "big giant" firecracker and threw it at the line of officers.  *Id.* ¶ 21.   For approximately an hour, he can be seen "chanting with the crowd, encouraging people to enter the tunnel, and assisting the rioters exiting the tunnel wash the OC spray from their faces with water."  Compl.  ¶ 23.

Christopher Joseph Quaglin directly engages a line of MPD Officers shouting " You don't want this fight. You do not want this fucking fight. You are on the wrong fucking side. You're going to bring a fucking pistol; I'm going to bring a fucking cannon." Compl.  ¶ 13.   He physically engages multiple USCP and MPD Officers at various locations.  Compl.  ¶ 15-24.  He sprays MK 9 OC spray (available for online purchase) at MPD and USCP Officers attempting to stop unauthorized entry into the Capitol.  *Id.* ¶ 25-27.  He also approached the capitol carrying a gas mask.  *Id.* ¶ 32.

Robert Morss appeared at the Capitol in tan camouflage clothing with a tactical style vest, and scissors.  AFF. SUPPORT CRIM. COMPL. & ARREST WARRANT ¶ 13, https://www.justice.gov/usao-dc/case-multi-defendant/file/1403446/download.   He coordinated the removal of a barrier fence from the hands of MPD Officers.  *Id.* ¶ 16. He waved a yellow flag to urge the crowd on shouting "take a look around, back up, we are going to take our Capitol back."  *Id.* ¶ 19.   He then is seen in goggles and a gaiter moving back and forth in the tunnel, taking a shield from a MPD Officer, directing that a camera be disabled, clashing with officers and ultimately climbing through a broken window into a Capitol office.  *Id.* ¶ 24.

Geoffrey Sills " was on the lower west terrace of the Capitol . . . where he was seen . . . repeatedly assaulting multiple law enforcement officers. {He] . . . threw multiple objects, including pole-like objects, at law enforcement officers. . . . . . While inside, he repeatedly struck multiple police officers with an extended baton while using a strobe light, apparently to try to disorient the officers. "  Dep't Justice, Virginia Man Arrested for Assault on Law Enforcement During Jan. 6 Capitol Breach (June 24, 2021), https://www.justice.gov/usao-dc/pr/virginia-man-arrested-assault-law-enforcement-during-jan-6-capitol-breach

Federico Guillermo Klein, a former employee at the U.S. State Department and political appointee under President Trump and held a "top secret" security clearance.  He is seen carrying a shield, using the shield to hold open a door, and calling for reinforcements in the crowd while engaging police lines.  He moves from the terrace to the tunnel and back.  Statement of Facts,  https://int.nyt.com/data/documenttools/f-b-i-statement-of-facts-federico-g/0b50c0cd4b5a59e9/full.pdf

In contrast to the broad conduct described above. the most serious charges directed to Mr. Cappuccio, Counts 28 through 30, involve contact with a single officer, D.H., over a 5-minute span.

## II. ARGUMENT

Mr. Cappuccio argues that trial with his co-defendants would prejudice his trial rights and therefore separate trial is warranted.

### A.  Legal Standard

Rule 14(a) of the Federal Rules of Criminal Procedure states: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14(a).

Interpreting Rule 14(a), courts hold, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "The first hurdle in obtaining a severance under Rule 14 is a showing of prejudice, and if shown, it remains in the district court's discretion whether to grant the motion." *United States v. Lane*, 474 U.S. 438, 449 n.12   Courts consider the "weight, quantity, or type of the evidence against the movant and against the other defendants . . . [emphasizing as] [t]he critical determination . . . whether a jury could reasonably compartmentalize the evidence introduced against each individual defendant." *United States v. Halliman*, 923 F.2d 873, 884 (D.C. Cir. 1991).

In *Rhone v. United States*, 365 F.2d 980, 981 (D.C. Cir. 1966), the D.C. Circuit recognized that "[p]rejudice from joinder of defendants may arise in a wide variety of circumstances . . . . " In *United States v. Sampol*, 636 F.2d 621, 642-648 (D.C. Cir. 1980), this Circuit recognized that a great disparity in the weight and quantum of the government's evidence can justify a severance. "[N]ot only the weight of the evidence, but also the quantity and type of evidence [to be] adduced against the co-defendants, is a vital consideration in evaluating the necessity for a severance." *United States v. Sampol*, 636 F.2d at 646. As this Circuit stated in *Sampol*, "[t]o speak in terms of 'transference' or 'rubbing off' of guilt, classic expressions used to explain why severance is justified in a particular case, would be to downplay the prejudice" to which Mr. Cappuccio will be subjected in a joint trial with the others charged in the indictment who arguably exhibit greater involvement in the events of January 6, 2021. Moreover, the prejudice cannot be cured through jury instructions directed at having the jury compartmentalize the evidence. In *United States v. Daniels*, 770 F.2d 1111, 1118 (D.C. Cir. 1985), although deciding a slightly different issue, the D.C. Circuit expressed its extreme skepticism about the "efficacy of jury instructions in curing the prejudice caused by the introduction of other crimes evidence." ("To tell a jury to ignore the defendant's prior convictions in determining whether he or she committed the offense being tried is to ask human beings to act with a measure of dispassion and exactitude well beyond normal capacities ... and 'the naive assumption that prejudicial effects can be overcome by instructions to the jury' becomes more clearly than ever 'unmitigated fiction'"). The situation in the instant case presents precisely that problem and it is one which jury instructions cannot cure. Accordingly, a severance is warranted in this case.

### B. The Court Should Sever Mr. Cappuccio's Case as the Jury will be Unable to Compartmentalize the Evidence as it Relates to Him

All defendants are charged with violations committed during the events of January 6, 2021. The conduct described and characteristics of individuals vary widely among the co-defendants. Some arrived at the Capitol with items that suggest a planned entry, such as gas masks, OC spray, or tactical gear. Some clash with multiple officers, procure shields, or take an active role in coordinating efforts against Officers.

5

And at least one recently possessed a government position and significant security clearance that might imply all co-defendants benefitted from insider knowledge allowing a coordinated attack of a collective rather than individual actions.

Mr. Cappuccio's charges arise at a single point of a large area encompassing the alleged acts of co-defendants. His story does not involve efforts to direct the crowd, and there is little to suggest he planned for the events in question. Ultimately, his guilt or innocence will turn on evidence directed to minutes of his life and his interaction with a single Officer. The resulting charges are serious, and thus need not be conflated with those waving flags or arriving on scene prepared to engage the officers at the scene. The spillover effect of the evidence against the co-defendants will be highly and unfairly prejudicial to Mr. Cappuccio. The evidence will subvert Mr. Cappuccio's presumption of innocence. The cure for this is simple and necessary. Mr. Cappuccio's trial should be severed from that of his co-defendants.

**C. Failure to Sever Will Lead to a Violation of Mr. Cappuccio's Sixth-Amendment Rights.**

It appears the United States will offer into evidence statements by Mr. Cappuccino's co-defendants, including extensive recordings from video records of the event. Some of these statements may implicate Mr. Cappuccio. Admitting these statements while those co-defendants are joined in this case would violate his Sixth Amendment right "to be confronted with the witnesses against him" because those witnesses have the right to not testify. U.S. Const. Amend. VI; *Bruton v. United States*, 391 U.S. 123 (1968).

Accordingly, this Court should sever Defendant Cappuccio's case for trial to vindicate his 5th Amendment right of confrontation.

### C.  There is a serious risk that the evidence of Co-Defendants' crimes could lead the jury to erroneously convict Mr. Cappuccio

A serious risk occurs "when the evidence against one or more defendants is 'far more damaging' than the evidence against another defendant." *United States v. Moore*, No. 18- 198 (JEB), 2021 WL 1966570, at \*4 (D.D.C. May 17, 2021) (quoting *United States v. Wilson*, 605 F.3d 985, 1018 (D.C. Cir. 2010)). In such cases, "the prejudicial spillover may have deprived a defendant of a fair trial." *Id.* (quoting *Wilson*, 605 F.3d at 1018). The United States Court of Appeals for the D.C. Circuit has recognized that "[t]hree kinds of prejudice warrant relief under Rule 14": first, "the jury may cumulate evidence of the separate crimes"; second, "the jury may improperly infer a criminal disposition and treat the inference as evidence of guilt"; or, third, "the defendant may become 'embarrassed or confounded' in presenting different defenses to the different charges." *Blunt v. United States*, 404 F.2d 1283, 1288 (D.C. Cir. 1968) (quoting *Drew v. United States*, 331 F.2d 85, 88 (D.C. Cir. 1964)).

Here, the jury may cumulate the evidence of the separate crimes with which Mr. Cappuccio and the co-defendants are charged. Mr. Cappuccio's conduct stands in stark contrast to that of other co-defendants, as his conduct is limited to contact with a single officer while the behavior of other co-defendants involves planning, preparation and significant movement. Evidence of repeated antagonistic behavior with officers, and rally cries for others to engage officers, may color the jury's ability to assess Mr. Cappuccio's conduct as a discrete act.  This conflict could result in a spillover that inflames the prejudices of the jury against Mr. Cappuccio and confuses Mr. Cappuccio's conduct with that of other co-defendants.

As described above, the assaults described in the cases of other co-defendants, some of which are precisely recorded on video and involving repeated acts against a number of officers rather than

7

the single officer involved in Mr. Cappuccio's case, invite spillover in assessing charges not wholly dependent on video records.

## III. CONCLUSION

For the foregoing reasons, Mr. Cappuccio respectfully requests that his trial be severed from his co-defendants.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

/s/ MARINA-THAIS DOUENAT
Assistant Federal Public Defender
727 E. César E. Chávez Blvd., Suite B-207
San Antonio, Texas 78206-1205
State Bar No.  00798310
Tel.: 210-472-6700
Fax: 210-472-4454

## CERTIFICATE OF SERVICE

I, Marina-Thais Douenat, Assistant Federal Public Defender for the Western District of Texas, hereby certify that on the 26th day of January 2022 filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ MARINA-THAIS DOUENAT
Assistant Federal Public Defender