UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEVEN CAPPUCCIO,<br><br>          Defendant. | Crim. Action No. 21-40-8 (TNM) |

### STEVEN CAPPUCCIO'S MOTION TO COMPEL

STEVEN CAPPUCCIO, through undersigned counsel, hereby respectfully moves to compel production of material pursuant to Federal Rule of Criminal Procedure 16 and this Court's inherent authority.

Prior to filing the present Motion undersigned counsel sought this information from the Government and that such attorneys have yet to comply with this request.

INTRODUCTION

The grand jury returned the initial indictment in this case on January 29, 2021. (Doc. No. 5). However, Mr. Cappuccio's was not himself indicted until August 4, 2021, by way of the Fourth Superseding Indictment. (Doc. No. 102).

All charges implicate events that allegedly took place at the United States Capitol Building on January 6, 2021. The charges include discrete acts with an identified officer on the Capitol grounds, including assault and robbery, and charges such as civil disorder implying conduct throughout the day on January 6, 2021, and beyond.

On October 5, 2021, this Court issued its Protective Order Governing Discovery that precluded dissemination of any matters deemed 'sensitive' or "highly sensitive." (Doc. No.

1

147).

Discovery has proceeded using three distinct systems: (1) USAfx, (2) evidence.com, and (3) the Deloitte Financial Advisory Services, LLP ("Deloitte") to fund a Capitol Breach "Relativity" workspace. *See* U.S Mem. Regarding Status of Discovery as of October 21, 2021 (Doc. No. 161). As of October, the video evidence alone included 4,800 hours of closed-circuit video, representing more than 4 terabytes of data, and 1,600 hours of Metropolitan Police Department body worn camera footage. *Id.* at 2. This vast volume of material was accompanied by a camera map for fixed locations and Global Positioning System spreadsheet applicable to body worn cameras. *Id.* The Relativity database adds an additional 112,000 records to the production. *Id.* at 3.[1]

> The government's theory of the charged conduct is fairly simple.
>
> Steven Cappuccio . . . [is] charged with federal offenses that include assaulting, resisting or impeding certain officers, obstruction of an official proceeding and civil disorder, among other charges. Cappuccio is additionally charged with robbery and aiding and abetting, and disorderly and disruptive conduct on restricted grounds with a dangerous weapon. . . .
> Cappuccio was at the U.S. Capitol on Jan. 6 . . . on the lower west terrace. As depicted in the videos, Cappuccio joined in an effort to push past officers guarding the lower west terrace doors inside the tunnel and violently ripped off the mask of an officer pinned against the doors by other rioters. Cappuccio can be seen grabbing the officer's mask and yanking on it with what appears to be a significant amount of force. . . . Cappuccio is further seen with a baton as he pulled on the officer's mask.

U.S. Dep't Justice, *Texas and Ohio Men Arrested for Assault on Law Enforcement During Jan. 6 Capitol Breach* (Aug. 18, 2021), https://www.justice.gov/usao-dc/pr/texas-and-ohio-men-arrested-assault-law-enforcement-during-jan-6-capitol-breach .

The Metropolitan Police Officer Mr. Cappuccio is accused of assaulting testified before Congress, and his name is now a matter of public record. *See* S. Karanth, *A D.C. Cop*

---

[1] As of March 4, 2022 there are only 33, 137 documents that have been uploaded to the Relativity database to date. Defense counsel has only had access to this database for a little over a month.

*Testified in Congress's Jan. 6 Probe. Now One of His Attackers Has Been Charged: The FBI Accused Steve Cappuccio, Known by Online sleuths as #StripesGuy, of Ripping the Mask Off Officer Daniel Hodges and Beating Him with His Own Baton*, HUFFINGTON POST, Aug. 21, 2021, https://www.huffpost.com/entry/capitol-riot-stripes-guy-charged-officer-daniel-hodges-attack_n_6115bb42e4b07c14031319fd . One would expect an act as public and brutal as Mr. Cappuccio "beat[ing] the officer with his own baton, leaving the officer bleeding from his mouth.," as claimed by the Officer and the FBI, would be easily identified on video with all of the production to date.  Despite well circulated photos of Mr. Cappuccio at the scene with the subject Officer, an event that would appear noteworthy on ~~any~~ video review remains lost in an ocean of discovery, if it exists at all.

  The government's discovery obligations at this stage are similarly straightforward. Federal Rule of Criminal Procedure 16 requires the government to disclose specified categories of materials and the *Brady/Giglio* line of cases requires the government to make an affirmative search for exculpatory evidence and to disclose such evidence sufficiently in advance of trial so defendant~~s~~ can make meaningful use of it. To date, the government has flooded the defendants with more than 10 terabytes of discovery. Further, the Government has continued to add substantial production and has recently informed the defense of an intention to continue adding to this production. With an October trial date rapidly approaching and an April deadline for filing pre-trial motions, there appears no estimate as to when the tide of incoming discovery might ebb.

  To put this digital onslaught in perspective, one terabyte is equivalent to one million megabytes or 500 billion typewritten pages of plain text. The government's productions are thus more than the size of the entire printed collection of the Library of Congress. *See Schwarz v. United States*, 828 Fed. Appx. 628, 634 n.3 (11th Cir. 2020).

> In its most recent discovery update, the Government wrote it had produced just over 24,000 files consisting of USCP closed circuit video ("CCV") footage, BWC from multiple law enforcement agencies, and USSS surveillance footage have been made available to the defense instance of evidence.com. For context, the files provided via evidence.com amount to over nine terabytes of information and would take 102 days to view.

See U.S Mem. Regarding Status of Discovery as of Feb. 9, 2022 at 3 (Doc. No. 224).

To address the sheer volume of material produced, the Government wrote " to assist . . . defense teams in identifying video files they may consider relevant in specific cases" it produced in conjunction with these video records: (1) MPD Radio Global Positioning Satellite ("GPS") Spreadsheet (acknowledged to provide less than continuous information on officer location);  body-worn-camera Summary Spreadsheet and related zone maps (identifying officer and camera and events deemed notable by the investigative team creating the spreadsheet), USSS video spreadsheet, maps depicting the general location of the cameras that are identified by unique number in each USCP CCV video filename, Arlington County Police Department spreadsheet with handheld video start times, and a timeline of events drafted by the USCP, beginning December 16, 2020, memorializing critical events occurring in advance of and during the Capitol events of January 6, 2021. *Id.* at 3-4.

From the perspective of a single defendant facing the daunting task of evaluating discovery produced by a prosecutor endeavoring to prosecute hundreds or possibly thousands of cases arising from the events of January 6, 2021, the result is a system of production padded with an overwhelming quantity of extraneous records.  At the same time, the government has either not produced or has buried in a mass of production, records at the core of the allegations in the indictment.

For any one case, the Government's productions contain vast quantities of superfluous data.  For one man whose presence at the Capitol is easily identified, and whose

apparent misconduct involves a single officer, existing databases do not yield a clear picture of the events over a discrete timeframe and location. Moreover, in indicting others with a tenuous connection at best to Mr. Cappuccio, the Government compounds the issues inherent to Mr. Cappuccio's case by obligating the defense to investigate the movements, conduct and interactions of numerous other co-defendants in order to anticipate issues that may arise at trial.

The government has effectively given the defendants access to warehouses of information, only a small portion of which is material to the defense. If the Government produced no additional discovery, then a defense attorney attempting to review video alone would require 40 weeks of constant viewing to assess the contents of current production. Defense counsel have a constitutional and professional obligation to examine discovery materials produced by the government in a criminal case. *See, e.g.*, *United States v. Williams*, 133 F.3d 920 (4th Cir. 1998) (table), (no *Brady* violation where material was contained in open file and readily available to defense; finding that "[i]t would have been time-consuming, but not unreasonable, for counsel to scour the fruits of the Government's surveillance for evidence that either tended to implicate or exculpate his client. . . . The fact that the Government would not undertake this time-consuming task for the defense does not transform this situation into a *Brady* violation."). The current state of discovery poses a definitive risk that the defendants will be prejudiced by the inability of counsel to review this discovery for exculpatory material. *See United States v. DeTemple*, 162 F.3d 279, 289 (4th Cir. 1998) (noting that defense counsel's failure to review discovery materials has repeatedly been held to justify findings of ineffective assistance of counsel). Absent the relief requested, defendants will be left with the burden of finding needles in a haystack.

I.     LEGAL ARGUMENT

This Court is respectfully requested to compel certain discovery to insure necessary and relevant information is not lost in an unprecedented mass of production. Such will ensure undersigned counsel provides effective assistance to Mr. Cappuccio.[2]

A. This Court May Order Required Discovery

Discovery obligations under Federal Rule of Criminal Procedure 16 are limited. However, the court has the authority to order discovery beyond the minimal dictates of Rule 16. *See United States v. Caro*, 597 F.3d 608, 620 (4th Cir.2010) (recognizing that Rule 16 which provides the minimum amount of pretrial, criminal discovery is different from Brady ), *cert. denied*, 132 S. Ct. 996 (2012); *United States v. Freedman*, 688 F.2d 1364, 1366 (11th Cir.1982) ("Although Rule 16 does not mandate that the government supply the defendants with discovery material, neither does it expressly prohibit the trial court from entering such an order pursuant to its discretionary authority.").  "It has long been recognized that federal courts possess certain implied or inherent powers that 'are necessary to the exercise of all others.' Inherent powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs to achieve the orderly and expeditious disposition of cases.'" *United States v. Moussaoui*, 483 F.3d 220, 236 (4th Cir.2007). This Court is respectfully asked to invoke its inherent authority to order the discovery requested by this Motion.

B. Discovery Sought

As described above, the discovery tools serving as a platform for production in the

---

[2] Mr. Cappuccio seeks to remedy identified discovery concerns through his Motion, and does not allege violations of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) nor Giglio *v. United States*, 405 U.S. 150, 154 (1972).  However, it should be noted open file discovery does not avoid those concerns. *See, e.*g., *United States v. Hsia*, 24 F.Supp.2d 14, 29 (D.D.C.,1998), *rev'd in part on other grounds,* 176 F.3d 517 (D.C. Cir. 1999)("The government cannot meet its *Brady* obligations by providing [a defendant] with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack."); *see also United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), *aff'd in part and vacated on other grounds,*  561 U.S. 358 (2010)(same).

6

present case, despite use of the tools provided to limit review, have not yielded the results claimed. Whether by virtue of design limitations, internal errors, or intended redactions, the result has been a frustrating process of countless hours lost in reviewing irrelevant material. As the most recent defendant added to the trial, he has far less time to grapple with these shortcomings.

Mr. Cappuccio therefore requests that this Court direct certain production.

1. Bodycam evidence of Officer Hodges. This video cannot be located in evidence.com.

2. Unredacted video and audio recordings including Officer Hodges or Mr. Cappuccio, regardless of location, on January 6, 2021, or in interviews specific to the events of January 6, 2021.

3. Unredacted video and audio documenting alleged weapon used by Mr. Cappuccio, to establish chain of custody for the same.

4. Identity of officers present during the events involving Officer Hodges, by which to confirm video records produced of events.

Additionally, given the mass of discovery produced and lack of an apparent system by which to track items received or missing, this Court is respectfully asked to direct the following:

1. A comprehensive list of production to Mr. Cappuccio to date, including a specific description of items produced and Bates Stamp identifier.

2. For digital production, whether audio or video, a single page document with the video or audio file name and file size with a unique Bates Stamp identifier.

3. For documents, unique Bates Stamp identifier on individual pages by which to confirm complete production.

The foregoing is sought as the Government is uniquely situated to provide this evidence with minimal difficulty. As the party managing the discovery, it is similarly in the best position to establish a coherent system for tracking production. The possibility of duplication in production over its three existing discovery systems only compounds discovery management concerns in a flood of production that continues to batter defendants in these January 6, 2021 cases.

Regarding redactions, the systems, whether Relativity or evidence.com, are accessible by attorneys, all of whom are subject to protective orders prohibiting disclosure. In producing audio recordings or documents with substantial redactions, for example names of police officers, efforts to ascertain the significance of the evidence is thwarted. The result is excessive time expended on ascertaining if the information is at all relevant, which amounts to substantial time wasted sifting through meaningless information.

II.   CONCLUSION

For the reasons set forth above, Mr. Cappuccio respectfully requests that this Court order production of the discovery sought and discovery cataloguing requested.-

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

/s/ MARINA-THAIS DOUENAT
Assistant Federal Public Defender
727 E. César E. Chávez Blvd., Suite B-207
San Antonio, Texas 78206-1205
State Bar No.  00798310
Tel.: 210-472-6700
Fax: 210-472-4454

**CERTIFICATE OF SERVICE**

I, Marina-Thais Douenat, Assistant Federal Public Defender for the Western District of Texas, hereby certify that on the 4th day of March 2022 filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ MARINA-THAIS DOUENAT
Assistant Federal Public Defender