IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| v. | ) Criminal No. 1:21-cr-00040-TNM ) ) |
| PATRICK EDWARD MCCAUGHEY, III, | ) ) |
| TRISTAN CHANDLER STEVENS, | ) ) |
| DAVID LEE JUDD, | ) ) |
| CHRISTOPHER JOSEPH QUAGLIN, | ) ) |
| ROBERT MORSS, | ) ) |
| GEOFFREY WILLIAM SILLS, | ) ) |
| DAVID MEHAFFIE, | ) ) |
| STEVEN CAPPUCCIO, | ) ) |
| and | ) ) |
| FEDERICO GUILLERMO KLEIN, | ) ) |
| Defendants. | ) ) |

**DEFENDANTS' DISCOVERY STATUS REPORT**

On January 27, 2022, the government filed a motion requesting the Court enter a pretrial scheduling Order. Mot. (Jan. 27, 2022) (ECF No. 208). At the Court's February 4, 2022, defense counsel expressed reservations about the imposition of a pretrial order given the uncertainty of the state of discovery. Accordingly, the Court ordered the government to file a status report concerning the state of global discovery in the Capitol Breach actions. On February 11, 2022, the government filed its latest Discovery Status Report. Discovery Status Report (Feb. 11, 2022) (ECF No. 224). Specifically, the government's latest report "describ[es] the status of

implementation of [its] global discovery plan," including, as relevant here: (i) the production of "voluminous amounts of video" and the "multiple tools the government has provided to assist the defense in locating footage [defense counsel] may consider relevant;" (ii) "the ability of legal defense teams to obtain access to Relativity," "the current contents of that database," and the "manner of production of voluminous documents in view of defense counsel access to Relativity." Discovery Status Report (Feb. 11, 2022) (ECF No. 224). Because the state of discovery directly implicates the timing of pretrial motions contemplated by defense counsel, including, but not limited to, anticipated motions to sever, we provide the following response to the government's discovery status report.

## I. Evidence.com and The Production of Digital Media Evidence

As early as August of 2021, the government began advising defense counsel and courts in this District that it was in the process of establishing a defense database hosted by Evidence.com. This database was necessary, the government explained, because, "Relativity was primarily designed as [a] document review platform and not to manage terabytes of digital evidence." The government further advised, "[a]lthough its technologically possible to view and share video evidence withing Relativity, in this case, the volume of video would significantly reduce Relativity's performance speed." "Accordingly," the government advised, "we will use evidence.com as a platform to manage, review, and share *digital media evidence*." Discovery Status Report at 7 (Aug. 24, 2021) (ECF No. 120) (emphasis added).

Defense counsel acknowledges the ability to now access Evidence.com, which now contains over 24,000 files (or roughly 2,500 hours of video). Defense counsel further acknowledges the government's provision of the six (6) specific analytical and mapping tools described by the government in its status report. Discovery Status Report at 3-4 (Feb. 11, 2022) (ECF No. 224). Defense counsel do not agree, however, that these tools, without more, satisfy

the government's obligation responsive under Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419 (1995), Rule 5.1 of the Local Criminal Rules of the District Court for the District of Columbia, and the repeated due process orders given to the Government pursuant to the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (2020).

To be clear, absent these tools, the government clearly risks, "[c]reating a voluminous discovery file that is unduly onerous to access" in violation of *Brady*.  *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), *vacated in part on other grounds*, 561 U.S. 358 (2010).  And given the novel nature of this investigation, it is unsurprising that there are certain limitations with the tools developed by the government for this case – limitations that defense counsel continues to discuss in good faith with the government.  By way of one example, the mapping program developed within Evidence.com only displays a maximum of twenty (20) results, meaning that one cannot effectively use the program to identify video in any of the heavily populated areas of the Capitol building or its grounds on January 6 to identify pertinent video.  To be clear, this is not one of the tools identified by the government in its status report, but is the only known non-government tool available to defense counsel.  Put simply, only *the government's tools* are available to assist defense counsel in identifying potentially pertinent video.  Yet these tools are also subject to potentially significant limitations.  For example, as the government concedes, although the MPD Radio Global Positioning Satellite Spreadsheet contains the Computer Aided Dispatch ("CAD") of officer radios, but only in "many," and undisputedly not all, cases.  Further complicating the usefulness of this tool, only "frequently" is an officer's body worn camera footage saved in Evidence.com utilizing that officer's CAD.  Thus, although this spreadsheet provides a helpful tool for identifying potentially pertinent video,

it by no means can be exclusively relied upon by defense counsel. Further problematic is the fact that the government's remaining tools were developed for the purpose of assisting *the government*. While defense counsel appreciates the government's willingness to share this work product with the defense, it is yet unknown whether this information can be reliably utilized to ascertain what video may be material and/or exculpatory to the defense.

In addition, *notably absent* from the government's status report is any reference to non-governmental video evidence obtained from sources such as video seized or otherwise obtained from the electronic devices, social media accounts, or otherwise electronically available to the government from those at the Capitol on January 6 – so-called private citizen digital media evidence. The government had previously represented that it was in possession of, at least, more than 2,000 hours of video from the social media website parler.com alone.[1] The government provides no timetable with respect to the anticipated ingestion or otherwise availability of this data, nor is it clear whether the government has developed, or will develop, any tools for the categorization and/or organization of this significant tranche of evidence. Defense counsel simply is in no position to know the volume of additional video or other digital media evidence we can expect to receive and how much of that video it should expect to have to be reviewed in advance of trial.

## II. RELATIVITY.COM AND THE PRODUCTION OF NON-VIDEO EVIDENCE

Also as early as August 2021, the government described its plan to create a defense workspace within Relativity to allow defense counsel to "leverage Relativity's search and

---

[1] The government's discovery status report suggests that it expects to provide, "in the near future," "[v]ideos scraped from Parler that were deemed potentially relevant to the Capitol Siege after the FBI's review of thousands of videos from a two-week period encompassing January 6, 2021." Discovery Status Report at 10 (Feb. 11, 2022) (ECF No. 224). As noted, however, the government had previously advised that Relativity was not conducive to hosting digital media evidence such as this evidence, such that it is not clear how *this video* could be effectively made available to defense counsel through Relativity. *See* Discovery Status Report at 7 (Aug. 24, 2021) (ECF No. 120).

analytics capabilities to search the voluminous documents we expect to produce [utilizing] key term searches and metadata searches across hundreds of thousands of documents in the defense workspace." Discovery Status Report 4 (Aug. 24, 2021) (ECF No. 120).  Defense counsel acknowledges that access to the Relativity.com database is available, although a number of defense counsel are still navigating the "*at least* four to five business days" to fully gain access to the database.  Discovery Status Report at 6 (Feb. 11, 2022) (ECF No. 224).  That said, it is undisputed that the database is far from complete.  At the time of the government's filing of its status report, only four (4) of the eleven (11) prior global discovery productions had been loaded into the database.  Discovery Status Report at 5 (Feb. 11, 2022) (ECF No. 224).  Since then, it appears as though the remaining global productions have in fact been added to relativity (roughly only 300 files).  And in the weeks since, only another twenty-four (24) files – two (2) of which are not viewable through Relativity – have been added as part of what appears to be a volume twelve (12) – a production that defense counsel have not yet been formally made aware of and that appears to be discovery related to the pending trial in *United States v. Reffitt*, No. 21-cr-00032.

Of particular note, however, is the volume of discovery that has only recently been provided to defense counsel, whether through Relativity, or otherwise:

- Volume 8 was provided on or about November 30, 2021, and contained roughly 62 files totaling 23.8 gigabytes.
- Volume 9 was provided on or about December 17, 2021, and contained roughly 295 files totaling 32.1 megabytes.
- Volume 10 was provided on or about January 14, 2022, and contained roughly 1,337 files totaling 110 gigabytes; and
- Volume 11 was not separately provided to defense counsel, but rather only uploaded to Relativity, such that its access by defense counsel has been necessarily limited. Because it is stored only in Relativity, it is technically difficult for defense counsel to ascertain its digital size, but includes 18,512 individual files.

Thus, since November 30, 2021, thousands of files totaling more than 130 gigabytes have been produced to defense counsel, whereas previously, the total size of the so-called global discovery had not exceeded 13.4 gigabytes of materials and just roughly 300 files.

In addition, of particular concern is the lack of detail about what remains to be added to the Relativity database. The government delineated five (5) categories of data, each of which appear voluminous and totaling tens of thousands of records. *See* Discovery Status Report at 9-10 (Feb. 11, 2022) (ECF No. 224). That, however, seems to be just the tip of the proverbial iceberg given that the government also advised that it provided Deloitte (the Relativity provider) with another 380,000 records from the FBI's case management system on February 7, 2022, *for the government to first review* as the data will require, "in-depth analysis and customization so that they may be produced to the FPD database in a standardized format," which the government estimates will "take an additional several weeks." Discovery Status Report at 14 (Feb. 11, 2022) (ECF No. 224). Thus, defense counsel do not now know *when they can begin* their review of this data. Similarly, the government acknowledges it has no accurate timetable on the production of materials scoped from other investigation subjects' devices and social media accounts as well as law enforcement recorded interviews of other investigation subjects.[2] Discovery Status Report at 15 (Feb. 11, 2022) (ECF No. 224). In short, the government does not yet know when its document database will be populated and defense counsel do not yet know the volume of data that will need to be considered as part of pretrial preparations.

---

[2] Relatedly, the government advises that it will be producing, "thousands of tips or the results of searches of other defendants' devices and [social media] accounts," and that these productions, "would likely exceed the capacity of our file transfer system or defense downloading capabilities" – meaning that the contemplated discovery is likely larger than any single production to-date. *See* Discovery Status Report at 7 (Feb. 11, 2022) (ECF No. 224).

### III. CASE-SPECIFIC DISCOVERY

It bears noting that the government's investigation largely occurred after its initial indictment returned in this matter on January 18, 2021, just twelve (12) days after the events of January 6. Accordingly, the government has prioritized the provision of information over the formality of making formal discovery productions in the course of a refined investigation. As a consequence, the government's productions have lacked cohesive organization and have been made without individual records being assigned bates-numbers or other unique identifiers permitting defense counsel to confirm their receipt of every record, or enabling the data to later be easily organized in a manner consistent with the way in which it was routinely held. Alone, this approach contradicts the *decade-old* recommendations for the production of electronic discovery authored by the government and cited in its Discovery Status Report. *See* Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases, Department of Justice (DOJ) and Administrative Office of the U.S. Courts (AO) Joint Working Group on Electronic Technology in the Criminal Justice System (JETWG) at 6-7 (Feb. 2012), *available at* https://www.justice.gov/archives/dag/page/file/913236/download (detailing three recommended methods for the production of electronic records, each of which involves the utilization of bates-numbering), *cited in* Discovery Status Report at 16 n.19 (Feb. 11, 2022) (ECF No. 224).

Again, because the data was presumably produced as the government discovered it, it has not been organized in any particular fashion. In short, there are dozens of folders containing thousands of files with innocuous names such as "FBI Reports" that must be meticulously parsed for the purpose of identifying information that is *actually* material and/or exculpatory by defense counsel. In one of its recent productions, the government confirmed that its innocuous naming was intentional: "The file names, which we call 'serials', go in order and have numbers." Thus,

the government advised, an example file is titled, "089B-WF-3368293-58_AFO_0000001.pdf", and helpfully, the government added, attachments to this serial utilize this prefix so that related documents can be seen together. And while it may be true that the government provided an index with its production, the index entries are often no more descriptive, such as: "(U) unified_message_452258619121686.mp4." Thus each of the files produced to defense counsel must be opened and viewed even to determine their nature.[3]

Of course, defense counsel appreciates, as the government has repeatedly advised, that this is one of the "largest [investigations] in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence." But defense counsel would observe that despite the government's repeated representation to the Court that it had substantially completed so-called "case-specific" discovery, since the Court's last status conference a significant amount of discovery was produced, vastly exceeding the volume of all previously-produced discovery. Specifically, since January 27, 2022, the government has produced roughly 89 gigabytes of material, including scoped devices, more than the total amount of discovery – roughly 62 gigabytes – that had been produced to defense counsel since the inception of this case.[4]

---

[3] Ironically, the government also advised that its production *should not* be reviewed in the form in which it was provided. Rather, the government recommended, that defense counsel, "[sh]ould probably move all the files currently in the sensitive, highly sensitive, not sensitive, redacted, and sensitive redacted subfolders for the defendant file you are reviewing and place all those files in one folder. Then sort the files by name. This should make it easy to follow along with the index, as the files will all appear in the same order that they appear in the index. *As you go through the index, you can then organize the materials into subfolders that make sense to you personally given the issues that matter to you.*" This, "unsolicited advice," for literally thousands of unique files, which the government has chosen to organize in this fashion.

[4] This volume excludes the nearly half-terabyte of body worn camera video produced "for any officer whose BWC at some point captured something relevant to this and other Lower West Terrace related cases."

Again, the volume of discovery is exacerbated by the nature in which it has been produced. Of particular note, the government also advised as early as August that defense counsel would be provided access to two discovery platforms which, "technological functionality *commensurate to that available to the government*, for the purpose of receiving and reviewing discoverable materials."[5] Discovery Status Report at 3 (Aug. 24, 2021) (ECF No. 120). Similarly, in July, the government advised the Court that: "Producing discovery in a meaningful manner and balancing complex legal-investigative and technical difficulties takes time [and that the government] want[s] to ensure that all defendants obtain meaningful access to voluminous information that may contain exculpatory material, and that we do not overproduce or produce in a disorganized manner." Discovery Status Report at 8, *United States v. Klein*, No. 21-cr-00236-JDB (July 12, 2021) (ECF No. 28). The manner and means with which case-specific discovery has been made available to defense counsel in this case does not satisfy the government's promise. Defense counsel submit that Rule 16 and *Brady*, as well as their progeny, require more. *See United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009) ("In the present case, the government did much more than drop several hundred million pages on [the defendant's] doorstep. The open file was electronic and searchable. The government produced a set of 'hot documents' that it thought were important to its case or were potentially relevant to [the defendant's] defense. The government created indices to these and other documents. The government also provided [the defendant] with access to various databases concerning prior [relevant] litigation."). *See also United States v. Blankenship*, No. 14-cr-00244, 2015 U.S. Dist. LEXIS 76287, at *16-17 (S.D.W.V. June 12, 2015) ("Given the constitutional nature of the

---

[5] In other status reports, the government has described this database as providing, "functionalities including document organization, review, production, and analytics within a single environment." Discovery Status Report Ex. C at 3, *United States v. Samsel*, No. 21-cr-537-TJK (Nov. 23, 2021) (ECF No. 64)

Government's *Brady* obligation, and the circumstances presented in this case, the Court finds designation, to the extent it can be given, is appropriate. . . . [T]he Court observes that the United States, having determined the nature of the charges and having knowledge of the evidence and witnesses it intends to produce to prove those charges, is in a far better position than the Defendant to know what evidence might be exculpatory and/or impeachment material under *Brady*.").

[SIGNATURES ON NEXT PAGE]

| | |
|---|---|
| Dated:  March 4, 2022 | Respectfully submitted, |
| */s/ Lindy R. Urso* | */s/ John C. Kiyonaga* |
| Lindy R. Urso (CT No. 20315)<br>810 Bedford Street, Suite 3<br>Stamford, CT 06901<br>203-325-4487 (telephone)<br>lindy@lindyursolaw.com | John C. Kiyonaga<br>600 Cameron Street<br>Alexandria, VA 22314<br>703-739-0009 (telephone)<br>john@johnckiyonaga.com |
| *Counsel for Defendant Patrick McCaughey* | *Counsel for Defendants Robert Morss and William Sills* |
| */s/ Lauren Cobb* | */s/ John M. Pierce* |
| Lauren Cobb (FL Bar No. 52022)<br>3 W. Garden Street, Ste. 200<br>Pensacola, FL 32502<br>850-432-1418 (telephone)<br>Lauren_Cobb@fd.org | John M. Pierce<br>355 S. Grand Avenue, 44th Floor<br>Los Angeles, CA 90071<br>213-262-9333 (telephone)<br>jpierce@piercebainbridge.com |
| *Counsel for Defendant Tristan Stevens* | *Counsel for Defendant David Mehaffie* |
| */s/ Elizabeth Mullin* | */s/ Marina-Thais Douenat* |
| Elizabeth Mullin (DC Bar No. 484020)<br>1650 King Street, Suite 500<br>Alexandria, VA 22314<br>703-600-0879 (telephone)<br>Elizabeth_Mullin@fd.org | Marina-Thais Douenat<br>727 E. Cesar E. Chavez Blvd, Suite B-207<br>San Antonio, TX 78206<br>210-472-6700 (telephone)<br>Marina_Douenat@fd.org |
| *Counsel for Defendant David Lee Judd* | *Counsel for Defendant Steven Cappuccio* |
| */s/ Joseph D. McBride* | */s/ Stanley E. Woodward, Jr.* |
| Joseph D. McBride (NY Bar No. 0403)<br>The McBride Law Firm, PLLC<br>99 Park Avenue, 25th Floor<br>New York, NY 10016<br>917-757-9537 (telephone)<br>jmcbride@mcbridelawnyc.com | Stanley E. Woodward, Jr. (D.C. Bar No. 997320)<br>Brand Woodward Law, LP<br>1808 Park Road NW<br>Washington, DC 20010<br>202-996-7447 (telephone)<br>Stanley@BrandWoodwardLaw.com |
| *Counsel for Defendant Christopher Quaglin* | *Counsel for Defendant Federico Klein* |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) )  ) Criminal No. 1:21-cr-00040-APM |
| v. | ) ) |
| **FEDERICO GUILLERMO KLEIN,** | ) ) |
| **Defendant.** | ) ) |

## CERTIFICATE OF SERVICE

On March 4, 2022, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

Respectfully submitted,

　　*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC 20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Federico Guillermo Klein*