**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| | ) |
| | ) Criminal No. 1:21-CR-00040-TNM |
| v. | ) |
| | ) |
| **FEDERICO GUILLERMO KLEIN**, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT FREDERICO GUILLERMO KLEIN'S MOTION TO SEVER

Comes Now, Defendant Frederico Guillermo Klein, by and through undersigned counsel,

pursuant to the Federal Rules of Criminal Procedure, and respectfully moves to sever his

proceedings from those of her co-defendants *for the purposes of trial only*.

## I.     PROCEDURAL BACKGROUND

The operative indictment in this matter was filed on December 1, 2021 (ECF No. 179).

On December 17, 2021, the defendants, including Mr. Klein, were arraigned and all pleaded not

guilty to the numerous counts with which they have been charged, all arising from the allegation

that they participated in the riot that occurred at the Capitol Building on January 6, 2021.  The

defendants are charged together, the government asserts, because they are collectively alleged to

have engaged in "assaultive conduct on law enforcement officers in and around the first landing

of the Lower West Terrace archway, colloquially referred to as 'the tunnel," of the United States

Capitol Building on January 6, 2021 . . . ."  Notice, at 1 (July 29, 2021) (ECF No. 94).

"Accordingly," the government advised the Court, "because the primary criminal conduct

alleged against these individuals overlaps both temporally and geographically, . . . the

government is preparing to present evidence against them in a single trial."  Notice, at 2 (July 29,

2021) (ECF No. 94).  The government concedes, however, that, "there are potentially dozens of

additional individuals whose criminal conduct could be joined to this indictment."  Notice, at 2 (July 29, 2021) (ECF No. 94).  Only the government knows why these nine (9) defendants were charged together, and why others present that day at that location were not, but what is undisputed is that that prior to being indicted together, they previously did not know one another. Nor are any of these defendants alleged to have communicated with Federico Klein, or each other for that matter, nor are they alleged to have spoken to Federico Klein, nor each other, nor to have witnessed Federico Klein.    There are no allegations connecting Federico to them to any common scheme or plan.

Specifically, on January 29, Patrick Edward McCaughey was indicted on multiple counts, all related to the allegation that he was present at the Capitol Building and/or its grounds on January 6, 2021.  Indictment (Jan. 29, 2021) (ECF No. 5).  Mr. McCaughey a 23-year-old man who is alleged to have used a stolen riot shield to pin a law enforcement officer between the shield and a door while the officer now infamously screams for help.  USA Opp. Pretrial Release at 4 (April 7, 2021) (ECF No. 30).  On March 3, 2021, the government superseded its indictment of Mr. McCaughey, adding Defendant Tristian Chandler Stevens.  Superseding Indictment (ECF No. 19).  Mr. Stevens is a 25-year-old man who is alleged to have grabbed a riot shield in response to a call to form a "shield wall," and used the riot shield to push to the front of the line, driving into the line of officers and striking an officer in the helmet.  Compl., *United States v. Stevens*, 1:21-mj-00198-GMH, ¶19-20 (D.D.C. Feb. 3, 2021) (ECF No. 1).  On April 16, 2021, the government again superseded its indictment of Mr. McCaughey, adding Defendants David Lee Judd and Christopher Joseph Quaglin.  Second Superseding Indictment (ECF No. 37).  Mr. Judd is a 35-year-old man alleged to have, among other things, lit and thrown an object later referred to as a "big giant" firecracker and threw it at the line of officers.  Compl., *United States*

*v. Judd*, 1:21-mj-00334-GMH, ¶19-21 (D.D.C. Mar. 23, 2021) (ECF NO. 1).  Like Mr. Judd, Mr.
Quaglin is a 35-year-old man alleged to have pushed an officer to the ground, hit an officer in the
face and neck with a riot shield, and sprayed an officer directly in the face with a chemical
irritant.  Compl., *United States v. Quaglin*, 1:21-mj-00355-ZMF, ¶15-27 (D.D.C. Apr. 6, 2021)
(ECF No. 1).

On June 16, 2021, the government again superseded its indictment, adding Defendants
Robert Morss and Geoffrey William Sills.  Mr. Morss is a 27-year-old man alleged to have
engaged in multiple acts of violence over several hours including in the tunnel, but also including
having climbed through a window into an office of the Capitol Building while possessing a
knife.  USA Opp. Mot. Revoke Pre-Trial Detention at 4-25 (July 2, 2021) (ECF No. 80).
Geoffrey Sills is a 30-year-old man alleged to have thrown pole-like objects at law enforcement
officers stolen a baton from an officer and then used it to strike officers multiple times.  USA
Opp. Mot. Revoke Pre-Trial Detention at 8-22 (Jan. 5, 2022) (ECF No. 204).

The government would also later supersede its indictment of Mr. McCaughey to include
Defendants David Mehaffie and Steven Cappuccio.  Mr. Cappuccio is a 52-year-old man alleged
to have violently ripped off the mask of an officer pinned against the tunnel doors by other
rioters.  Dep't Justice, Texas and Ohio Men Arrested for Assault on Law Enforcement During
Jan. 6 Capitol Breach (Aug. 18, 2021).[1]  David Mehaffie is a 62-year-old man alleged to have
punched the glass of the doors to the tunnel, entered through the doors when another successfully
broke the glass, and then stood on a platform outside the tunnel to direct others who were
entering the Capitol through the tunnel.  *Id.*

---

[1] https://www.justice.gov/usao-dc/pr/texas-and-ohio-men-arrested-assault-law-enforcement-during-jan-6-capitol-breach

Finally, there is Defendant Federico (a/k/a Freddie) Guillermo Klein, first charged by complaint on March 2, 2021, complaint, *United States v. Klein*, No. 21-cr-00236 (D.D.C. March 2, 2021) (ECF No. 1) and then indicted as a stand-alone defendant on March 19, 2021. Indictment, *United States v. Klein*, No. 1:21-cr-00236 (D.D.C. March 19, 2021) (ECF No. 12). Mr. Klein is a forty-two-year-old marine veteran who served as a political appointee of President Trump in the U.S. State Department and held a "top secret" security clearance in that role.  On August 4, 2021, more than four and a half months– 138 days, to be precise – after Mr. Klein was initially indicted, the government again superseded its indictment of Mr. McCaughey to add Mr. Klein and Defendants David Mehaffie and Steven Cappuccio.  Fourth Superseding Indictment (ECF No. 102).  Although similar in time to the allegations as against his current co-defendants, the allegations as against Mr. Klein do not otherwise warrant his joinder in this case.  As Judge Bates found in his order releasing Mr. Klein pre-trial:  "Any evidence that Klein planned his conduct before arriving at the Capitol is noticeably absent [and] the government has proffered no evidence that Klein's prolonged confrontation with law enforcement or even his attempt to breach the Capitol building were premeditated."  *United States v. Klein*, 533 F.Supp. 3d 1, 12 (D.D.C. 2021).  Importantly, Judge Bates found "there is no suggestion that [Mr. Klein] brought a weapon with him to the Capitol or carried any items that evinced an expectation that the need to engage in *violence* against law enforcement or . . . the Legislative branch, might arise[,]' [but rather] was dressed in ordinary clothing."  *Id.* at 12-13 (quoting *United States v. Chrestman*, 525 F. Supp. 3d 14, 26 (D.D.C. 2021)).  Judge Bates also found "no evidence that Klein coordinated with other participants before, during, or after the riot, or assumed any meaningful leadership role during the events of January 6."  *Id.* at 13.  Importantly, Judge Bates found:  "The government's contention that Klein engaged in 'what can only be described as hand-to-hand

combat' for 'approximately thirty minutes' also overstates what occurred." *Id.* at 13.  Rather,

Judge Bates found no evidence of any intent to "inflict injury" and, *contrasting the allegations as*

*against Mr. Klein with those as against Mr. McCaughey*, observed that, "[Mr. Klein] is not

charged with injuring anyone and, unlike with other defendants, the government does not submit

that Klein intended to injure officers." *Id.* at 13-14 (citing USA Opp. Mot. Pretrial Release (Apr.

7, 2021) (ECF No. 30)).  At the evidentiary hearing preceding Judge Bates's ruling, he

specifically observed, "[t]he involvement of [the person alleged to be] Mr. Klein, thus far, has

been more as an observer than a participant. I haven't seen anything in terms of real participation

other than picking up a flag and handing it to someone in the back."  H'rg T. at 33, *United States*

*v. Klein*, 21-cr-00236 (D.D.C. April 9, 2021) (ECF No. 37).  Indeed, although Mr. Klein is

alleged to have possessed a riot shield that was "touching" a law enforcement officer, the

government conceded at the evidentiary hearing that the person alleged to be Mr. Klein was not

"striking the officer to the shield."  *Id.*

## II.     ARGUMENT

The nine (9) defendants in the Fifth Superseding Indictment are improperly joined

because there is no concerted action demonstrated, or even alleged, as between them.  As the

government itself concedes, nothing distinguishes these individuals from the "potentially dozens

of additional individuals whose criminal conduct could be joined to this indictment."  Notice at 2

(July 29, 2021) (ECF No. 45).  And indeed, with respect to Mr. Klein, there is no evidence of his

having engaged in conduct that "injured anyone." *Klein*, 533 F. Supp. 3d at 13.  Accordingly,

Mr. Klein's joinder is improper and it would be unfairly prejudicial to Mr. Klein to have the

evidence as against his co-defendants' conduct presented to the jury in his case.  To the extent

the government submits that joinder is necessary to promote judicial economy, Mr. Klein does

not oppose joinder pre-trial, but respectfully requests this Court sever his trial in the matter.

      A.     *The defendants are improperly joined under Rule 8(b) due to an insufficient nexus between the defendants and their acts.*

Rule 8 of the Federal Rules of Criminal Procedure permits joinder of defendants only if

"they are alleged to have participated in the same act or transaction, or in the same series of acts

or transactions constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  To properly join two

defendants in this District, the Government must sufficiently demonstrate "the existence of a

common scheme or plan spanning both transactions *and* both defendants."  *United States v.

Perry*, 731 F.2d 985, 991 (D.C. Cir. 1984) (emphasis added).  Though generally favored, joinder

does not "authorize the Government to string together, for common trial, eight or more separate

and distinct crimes, conspiracies related in kind though they might be, when the only nexus

among them lies in the fact that one man participated in all." *Kotteakos v. United States*, 328

U.S. 750, 773 (1946).  Rather, each defendant must be logically relevant to each of their co-

defendants.  *See id.*; *see also Perry*, 731 F.2d at 990 ("[T]here must be a logical relationship

between the acts or transactions within the series."); *see also United States v. Jackson*, 562 F.2d

789, 796 (D.C. Cir. 1977) ("[I]f acts were part of a common scheme or plan, or connected

together, they could be regarded as a series.").

Mr. Klein's alleged actions were wholly separate and distinct from at least seven of the

joined co-defendants, and thus, these parties are improperly joined.  As in *Jackson*, "[h]ere, we

are confronted with *dissimilar* and apparently unconnected crimes, and we are provided with

little or no indication of how or why defendants moved from one to the other. We know only that

the crimes occurred at about the same time and about the same place." *Jackson*, 562 F.2d at 795.

Unless the Government demonstrates a logical nexus between Mr. Klein and his co-defendants,

the Court must sever the proceedings.  Furthermore, grouping the defendants into two random

groups for trial is not sufficient to mitigate the prejudice caused by misjoinder.

      B.      *Even if this Court finds that the defendants are properly joined under Rule 8(b),*
            *Rule 14 permits severance where there may be prejudice.*

Rule 14 of the Federal Rules of Criminal Procedure provides that "[i]f the joinder of

defendants in an indictment . . . appears to prejudice a defendant . . . the court may . . . sever the

defendant's trials, or provide any relief that justice requires."  Fed. R. Crim. P. 14(a).  "The first

hurdle in obtaining a severance under Rule 14 is a showing of prejudice.  *United States v. Lane*,

474 U.S. 438, 449 n.12 (1986).  Once prejudice is shown, the decision to grant a severance

remains within this Court's discretion and the Court may exercise its discretion to sever the

defendants even if it finds that they are properly joined.  *See Zafiro v. United States*, 506 U.S.

534, 541 (1993); *United States v. Edelin*, 118 F. Supp. 2d 36, 41 (D.D.C. 2000).  In making the

decision to sever, courts consider the "weight, quantity, or type of evidence against the movant

and against the other defendants . . . [emphasizing as] [t]he critical determination . . whether a

jury could reasonably compartmentalize the evidence introduced against each individual

defendant."  *United States v. Halliman*, 923 F.2d 873, 884 (D.C. Cir. 1991).

In *United States v. Sampol*, 636 F.2d 621, 642-648 (D.C. Cir. 1980), the D.C. Circuit

recognized that a great disparity in the weight and quantum of the government's evidence can

justify a severance.  Specifically, the Court held that "not only the weight of the evidence, but

also the quantity and the type of evidence [to be] adduced against co-defendants, is a vital

consideration in evaluating the necessity for a severance.  *Sampol*, 636 F.2d at 646.  The court

further held that "[t]o speak in terms of 'transference' or 'rubbing off' of guilt, classic

expressions used to explain why severance is justified in a particular case, would be to downplay

the prejudice that [the defendant] [would be] subjected to in a joint trial . . ."  *Id.*

C.      *The Court should sever Mr. Klein's trial from his co-defendants to prevent prejudice and to protect his substantive rights.*

While courts have generally interpreted Rule 14 in favor of joinder, *see Zafiro* at 539, the Supreme Court has held that severance of properly joined defendants is appropriate where there are dangers for "transference of guilty from one [defendant] to another . . . subconsciously or otherwise, are so great that no one can really say prejudice to a substantial right has not taken place." *Kotteakos*, 328 U.S. at 750.  *See also United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) ("[T]here are definite limits to what the government can put together in a single indictment.").  Furthermore, courts in this District have noted that "such a risk is 'heightened' when, for example, 'many defendants are tried together in a complex case and they have markedly different degrees of culpability' or evidence 'that would not be admissible if a defendant were tried alone is admitted against a codefendant.'"  *United States v. Franklin*, No. CR 04-128 (RMC), 2005 WL 8157514, at *2 (D.D.C. Dec. 16, 2005) (quoting *Zafiro*, 506 U.S. at 539).

In *Kotteakos*, the Supreme Court applied these principles in assessing the appropriateness of joinder of 34 defendants.  328 U.S. at 772-75.  Ultimately the Court held that the defendants were improperly joined, *id.* at 774, and specifically recognized the danger of prejudice where joinder has the tendency to falsely amplify the scope of criminal culpability:

> When many conspire, they invite mass trial by their conduct. Even so, the proceedings are exceptional to our tradition and call for use of every safeguard to individualize each defendant in his relation to the mass. *Wholly different is it with those who join together with only a few, though many others may be doing the same and though some of them may line up with more than one group.*
>
> Criminal they may be, *but it is not the criminality of mass conspiracy. They do not invite mass trial by their conduct. Nor does our system tolerate it.* That way lies the drift toward totalitarian institutions. True, this may be inconvenient for prosecution. But our Government is not one of mere convenience or efficiency. It too has a stake, with every citizen, in his being afforded our historic individual protections,

> including those surrounding criminal trials. About them we dare not become
> careless or complacent when that fashion has become rampant over the earth.

*Id.* at 773 (emphasis added). Furthermore, the Court rejected the government's argument that

Rule 14 necessitates a consideration of the potential for joinder efficiencies that can override

concerns about prejudice, and held that "[the government] too has a stake, with every citizen, in

his being afforded our historic individual protections, including those surrounding criminal

trials." *Id.* at 773.

   The dangers of a mass trial found by the *Kotteakos* Court are ever present here. Mr.

Klein is charged by indictment with eight other defendants with no single, common thread tying

all of the defendants together. More specifically, there is a danger that the jury will associate

each defendant with the collective conduct. The Supreme Court has found that this concern is

particularly pressing where, as here, there are significantly different degrees of culpability among

the joined defendant, and where much of the evidence is only admissible against one party.

*Zafiro*, 506 U.S. at 539. *See also United States v. Erwin*, 793 F.2d 656, 666 (5th Cir. 1986)

(concluding severance required because "[t]he charges against [defendant] were only

peripherally related to those alleged against the other [co-defendants, and] [a]s the trial

progressed, it became increasingly apparent that very little of the mountain of evidence was

usable against her").

   While Mr. Klein, like his co-defendants, is accused of assault with a dangerous weapon,

the facts behind each case reveal significant differences in "degrees of culpability." *Zafiro*, 506

U.S. at 539. Mr. Klein's most serious alleged offense is that he is alleged to have possessed a

police riot shield and to have wedged the shield in a door. Fifth Superseding Indictment, ECF

No. 179 at 15 (Counts 31 and 32). Mr. Klein is not alleged to have injured anyone, and the

government concedes his "assault" of a law enforcement officer amounts to his having been in

possession of a riot shield that also came into contact with a law enforcement officer.  H'rg T. at 33, *United States v. Klein*, No. 21-cr-00237 (D.D.C. April 9, 2021) (ECF No. 37). Moreover, the government also acknowledges the person alleged to be Mr. Klein is captured on video appearing to help a law enforcement officer to safety after he had been dragged into the crowd.  Complaint at 13, *United States v. Klein*, No. 21-mj-00269 (March 2, 2021) (ECF No. 1).

In contrast, Mr. Klein will be prejudiced at trial because these co-defendants are alleged to have engaged in far more threatening and intentional conduct: Defendant Quaglin is alleged to have (1) pushed an officer to the ground, *id.* at 6 (Count 11), (2) hit an officer in the face and neck with a riot shield, *id.* at 13 (Count 26), and (3) sprayed an officer directly in the face with a chemical irritant, *id.* at 11 (Count 23); Defendant Sills is alleged to have (1) thrown pole-like objects at law enforcement officers, *id.* at 4 (Counts Seven and Eight), and (2) struck officers with an extended baton, *id.* at 7 (Count Fifteen); and Defendant Morss is alleged to have actually taken a shield from an MPD officer, *id.* at 10 (Count 20), and ultimately climbed through a broken window into an office of the Capitol Building with a knife on his possession, *id.* at 20, 23 (Counts 41 and 49).  These allegations against Mr. Klein's co-defendants are very serious in nature, and Mr. Klein faces the potential of severe prejudice by association.

Finally, although the government may argue that a joint trial will promote judicial economy, the Supreme Court has barred the balancing of prejudice against efficiency where the defendant's substantive rights are at issue.  328 U.S. at 773 ("[O]ur Government is not one of mere convenience or efficiency . . .  About [individual protections] we dare not become careless or complacent when that fashion [of efficiency] has become rampant over the earth.").  Thus, this Court should act to prevent the prejudice that Mr. Klein faces in sitting as a defendant in a trial amongst eight unrelated defendants face their own separate, distinct charges.

## CONCLUSION

For the foregoing reasons, Mr. Klein respectfully requests this Court sever Mr. Klein's case from this matter for purposes of trial only.

Dated: March 25, 2022

Respectfully submitted,

_____/s/ Stanley E. Woodward, Jr._____
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD, ATTORNEYS AT LAW
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Federico Guillermo Klein*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | **)** |
| | **)** |
| | **)**    Criminal No. 1:21-CR-00040-TNM |
| v. | **)** |
| | **)** |
| **FEDERICO GUILLERMO KLEIN**, | **)** |
| | **)** |
| Defendant. | **)** |
| | **)** |

## CERTIFICATE OF SERVICE

On March 25, 2022, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

_____/s/ Stanley E. Woodward, Jr._____
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD, ATTORNEYS AT LAW
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Federico Guillermo Klein*