UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEVEN CAPPUCCIO,<br><br>Defendant. | Crim. Action No. 21-40-8 (TNM) |

## STEVEN CAPPUCCIO'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SEVER

COMES NOW Defendant STEVEN CAPPUCCIO, by and through his attorney, and replies to the Government's Opposition to his Motion to Sever (Doc. No. 277), respectfully showing as follows:

The crux of the Government's opposition to severance is a joint trial allows this Court to "efficiently manage its resources." Gov't Opp. 1. At the outset, the Government simplifies its background information by removing three co-defendant movants from the listed charge summary (Tristan Stevens, Patrick McCaughey, and David Mehaffie) based on the argument the fact-specific nature of a motion to sever does not allow a defendant to join a co-defendant's motion to sever. *Id.* Thus, the 22 listed Counts (of the 53-count Indictment) summarizing the relevant background effectively limits the discussion of charges at issue to David Judd, Federico Klein and Steven Cappuccio rather than the six defendants collectively moving for severance. *Id.* at 2-3. Even applying this approach to minimize the scope of the problem, the summary table highlights that 15 of 22 Counts are directed to individual defendants rather than a collective. On the surface,

1

this begs the question of how a joint trial accumulating individualized acts of multiple co-defendants, comprising roughly two-thirds of the total charges, would be appropriate. Certainly efficient, as would be the case of a mass trial of the entirety of the January 6 defendants, but not appropriate. The Government joined a group of defendants in an indictment it claims are appropriately grouped based on "[e]videntiary, [t]emporal, [s]patial, and [l]ogical [i]ntersections between their [c]riminal [c]onduct," *id.* at 6. Steven Cappuccio disagrees.

The Government's summary of likely trial evidence that spans approximately 4 pages does not buttress its assurance of a logical connection between Steven Cappuccio and other co-defendants. Co-defendants "were facing off with police on the West Plaza," when Steven Cappuccio is a "member[] of that same crowd." *Id.* at 47. In fact 6 of the 9 named defendants, other than Steven Cappuccio, were a part of this confrontation in the West Plaza. *Id.* The implication is over roughly two hours, between 12:50 pm and 2:40 pm, *id.*, Steven Cappuccio may be found in a crowd, while certain individuals of the same crowd engaged in misconduct.

The next mention of Steven Cappuccio, after almost two pages of specific misconduct directed to other co-defendants is at 2:43 p.m. when he was "work[ing] his way through the crowd" toward the Lower West Terrace tunnel. *Id.* at 8. By 3:06 p.m., Steven Cappuccio at the front of the line in the tunnel. *Id.* The Government then consolidates Steven Cappuccio's discrete charges against D.H. as part of a collective 'battle' against police officers occurring between 3:07 and 3:14 p.m. *Id.* at 9. Near the end of this factual recitation, Steven Cappuccio's altercation is finally brought into the discussion, limited to his altercation with D.H. at 3:11 p.m., after which he was observed leaving the area two minutes later. *Id.* at 9-10. Of all co-defendant, only Steven Cappuccio is the subject of a lengthy statement of D.H., offered before the House Select Committee, regarding a brutal and detailed assault by Steven Cappuccio, that counsel for the

Government has been unable to locate on any video record. *Id.* at 9 n.4.

Thus, the Government claims it can prove Steven Cappuccio was part of a crowd at some point, engaged with D.H. and then exited the area two minutes after an altercation with a specifically identified officer. In order to efficiently adjudicate this discrete issue, the Government would subject him to the substantial prejudice resulting from the abuses heaped on officers by other co-defendants over a two-hour period leading up to his minutes of alleged misconduct." *id.* at 20. Despite a recitation of likely trial evidence devoted to the conduct of other co-defendants, and uniquely identifying Steven Cappuccio as the sole defendant in the group whose conduct turns on the testimony of an officer victim rather than video records, the Government assures this Court that his inclusion presents no significant concerns.

The Government contends that a joint trial will allow this Court to efficiently manage resources while asking this Court to overlook 'spillover' concerns as "[m]uch of the evidence will come from several dozen videotapes." *Id.* at 22; *see also id.* at 25-26 ("[m]uch of the evidence will come from several dozen videotapes the LWT Tunnel on January 6"). This assurance is of little value in Steven Cappuccio's case, as video records appear to offer little information other than location during this event offset by specific and egregious misconduct by other co-defendants lacking a connection with Steven Cappuccio.

Despite offering a recitation of facts amounting to no more than location information in an effort to characterize Steven Cappuccio's severance argument as meritless, the Government's response characterizing the totality of his involvement other than the incident with D.H. amounts to "at approximately 3:08 p.m., he entered the tunnel and pushed to the front of the group of rioters and joined them in pushing against the police line." *Id.* at 26. It further argues this Court need not tarry long with the perils of confrontation rights and co-defendants as Steven Cappuccio "does not

identify any . . . statements" that "may implicate" him. *Id.* at 27, citing *United States v. Diaz-Antunuez*, 930 F. Supp. 2d 103, 115 (D.D.C. 2013). The status of a co-defendant does not impart omniscience as to the trial strategy of co-defendants, nor does the Government offer assurances that any possible co-defendant statement it has or may have is in the possession of Steven Cappuccio at this moment. If severance turned on such a narrowly defined consideration, which it does not, then doubtless the Government's argument would have merit. But as acknowledged by the Government, *see* Gov't Opp. 1, citing *United States v. Straker*, 800 F.3d 570, 625 n.19 (D.C. Cir. 2015), severance is a fact-specific assessment.

This Court is respectfully asked to conclude that concerns of 'spillover' and an inability to compartmentalize the wildly varied conduct of co-defendants, in addition to unique evidentiary concerns associated with Steven Cappuccio, offset needs of judicial efficiency in a mass trial and support severance of his case from other co-defendants. The Government does not attempt to ascertain how much of its presentation would be directed to co-defendants, thus to what extent a separate trial would involve unnecessary co-defendant information to be compartmentalized versus the evidence unique to Steven Cappuccio. If the evidentiary summary is any indicator, this compartmentalized yet substantially prejudicial information would appear to constitute a substantial portion of the trial with co-defendants. As such, severance would appear appropriate while imposing minimal toll on this Court's resources.

This Court is therefore respectfully asked to grant his Motion and sever his case from that of his co-defendants for trial.

Respectfully submitted,

_____/s/_____
Marina Thais Douenat
FEDERAL PUBLIC
DEFENDER'S OFFICE
Western District of Texas
727 E. César E. Chávez Boulevard
Suite B-207
San Antonio, TX 78206
210-472-6700
Attorney for Defendant Steven Cappuccio

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2022, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

_____/s/_____
Marina Thais Douenat
Assistant Federal Public Defender

5