```
 1                    IN THE UNITED STATES DISTRICT COURT
                          FOR THE DISTRICT OF COLUMBIA
 2      - - - - - - - - - - - - - - - x
        THE UNITED STATES OF AMERICA,
 3                                              Criminal Action No.
                         Plaintiff,             1:21-cr-00040-TNM
 4                                              Friday, April 22, 2022
        vs.                                     1:05 p.m.
 5
        PATRICK EDWARD McCAUGHEY, III,
 6      et al.,

 7                       Defendant(s).
        - - - - - - - - - - - - - - - x
 8      _____

 9                       TRANSCRIPT OF STATUS CONFERENCE
                  HELD BEFORE THE HONORABLE TREVOR N. McFADDEN
10                       UNITED STATES DISTRICT JUDGE
        _____
11      APPEARANCES:
        For the United States:       KIMBERLY LOUISE PASCHALL, ESQ.
12                                   JOCELYN PATRICIA BOND, ESQ.
                                     KIMBERLEY CHARLENE NIELSEN, ESQ.
13                                   U.S. ATTORNEY'S OFFICE
                                     555 Fourth Street, NW
14                                   Washington, DC 20530
                                     (202) 252-2650
15                                   kimberly.paschall@usdoj.gov

16      For Defendant McCaughey:     LINDY R. URSO, ESQ.
                                     LINDY R. URSO, ATTORNEY AT LAW
17                                   810 Bedford Street, Suite 3
                                     Stamford, CT 06901
18                                   (203) 325-4487
                                     lindy@lindyursolaw.com
19
        For Defendant Stevens:       LAUREN COBB, ESQ.
20                                   FEDERAL PUBLIC DEFENDER FOR NDFL
                                     3 W. Garden Street, Suite 200
21                                   Pensacola, FL 32502
                                     (850) 432-1418
22                                   lauren_cobb@fd.org

23      For Defendant Judd:          ELIZABETH ANN MULLIN, ESQ.
                                     FEDERAL PUBLIC DEFENDER FOR D.C.
24                                   625 Indiana Ave,NW, Suite 500
                                     Washington, DC 20004
25                                   (202) 208-7500
                                     elizabeth_mullin@fd.org
```

```
 1    Appearances (CONTINUED):

 2    For Defendants Quaglin,     JOHN C. KIYONAGA, ESQ.
      Morss and Sills:            JOHN C. KIYONAGA LAW OFFICE
 3                                600 Cameron Street
                                  Alexandria, VA 22314
 4                                (703) 739-0009
                                  jkiyonaga@earthlink.net
 5
      For Defendant Cappuccio:    MARINA THAIS-DOUENAT, ESQ.
 6                                FEDERAL PUBLIC DEFENDER'S OFFICE
                                  WESTERN DISTRICT OF TEXAS
 7                                727 E. Cesar E. Chavez Boulevard
                                  Suite B-207
 8                                San Antonio, TX 78206
                                  (210) 472-6700
 9                                marina_douenat@fd.org

10    For Defendants Mehaffie     STANLEY E. WOODWARD, JR., ESQ.
      and Klein:                  BRAND WOODWARD LAW
11                                1808 Park Road, NW
                                  Washington, DC 20010
12                                (202) 996-7447
                                  stanley@brandwoodwardlaw.com
13
      Court Reporter:             Lisa A. Moreira, RDR, CRR
14                                Official Court Reporter
                                  U.S. Courthouse, Room 6718
15                                333 Constitution Avenue, NW
                                  Washington, DC  20001
16                                (202) 354-3187

17

18

19

20

21

22

23

24

25
```

<pre>
 1                     P R O C E E D I N G S
 2              THE COURTROOM DEPUTY:  Your Honor, this is
 3    Criminal Case 21-40, *United States vs. McCaughey, et al.*
 4              Counsel, please come forward to identify
 5    yourselves for the record starting with the government.
 6              MS. PASCHALL:  Good afternoon, Your Honor;
 7    Kimberly Paschall for the United States.
 8              THE COURT:  Good afternoon, Ms. Paschall.
 9              MS. BOND:  Good afternoon; Jocelyn Bond for the
10    United States.
11              THE COURT:  Good afternoon, Ms. Bond.
12              MS. NIELSEN:  Good afternoon, Your Honor;
13    Kimberley Nielsen for the United States.
14              THE COURT:  Good afternoon.
15              MR. KIYONAGA:  Good afternoon, Your Honor; John
16    Kiyonaga here for Mr. Morss, who is present, also for
17    Jeffrey Sills, who has waived his appearance.  Your
18    Honor, I'm also standing in for Joe McBride, who represents
19    Mr. Quaglin, who is here in the courtroom.
20              Mr. McBride -- I wanted to say two things very
21    briefly on Mr. McBride's behalf.  The first is that
22    Mr. Quaglin has lost 40 pounds, apparently 30 in 30 days
23    because of the diet that he's receiving, which is not in
24    conformity with his medical condition.  He had an
25    altercation.  He was attacked by another inmate, suffered 45
</pre>

1    stitches early in March, and he has been in the hole ever

2    since, solitary confinement.  I expect Mr. McBride will file

3    something pertinent to those issues in the near future.

4         Mr. McBride is not here today because he's

5    developed a concern for his personal security.  I would

6    characterize it as a well-founded concern.  He is not

7    offering any speculation as to the cause, but it's kept him

8    from attending today, and I wanted to make it -- he asked me

9    to make a record of it for the Court, which I'm doing.

10        THE COURT:  Okay.  Thank you, Mr. Kiyonaga.

11        Obviously I don't know about -- that's the first

12   I'm hearing about any of that.  I will say I'm feeling a

13   little frustrated; not at you at all, but you raised

14   concerns, I think, about Mr. Quaglin last time and on

15   Mr. McBride's behalf, and I suggested that if Mr. McBride

16   wants to file something, I'd certainly be interested in

17   seeing it.  Nothing has been filed.

18        So, again, I realize you're just standing in for

19   him, but I keep hearing about these things, but no actual

20   suggestion --

21        MR. KIYONAGA:  I understand implicitly, Your

22   Honor.  I'll pass that on to Mr. McBride.

23        I will say that he fully intended to be here

24   today.  My evaluation of his circumstances is that his

25   concern is well-founded.  He doesn't strike me remotely as a

1   person prone to histrionics, but I will pass on the Court's

2   concern.   I'm sure he'll take them very much to heart.

3           THE COURT:   Okay.   Sir, can you approach with the

4   government?

5     (The following is a sealed conference held at the bench)













```
1

2

3

4

5

6

7

8

9
```

10      (This is the end of the sealed bench conference)

11      THE COURT:  All right.  Thank you, Mr. Kiyonaga.

12 That will be under seal.

13      Next up.

14      MS. MULLIN:  Good afternoon, Your Honor; Elizabeth

15 Mullin on behalf of David Judd, who is present.

16      THE COURT:  Good afternoon, Ms. Mullin.  Good

17 afternoon, Mr. Judd.

18      MR. WOODWARD:  Good afternoon, Your Honor; Stanley

19 Woodward on behalf of Federico Klein, who is also present,

20 and I've agreed to stand in for William Shipley on behalf of

21 Mr. Mehaffie, who has waived his appearance.

22      THE COURT:  Good afternoon, Mr. Woodward.

23      Good afternoon, Mr. Klein.

24      And thank you.  I understand that you're standing

25 in for Mr. Mehaffie.

```
 1                    MR. WOODWARD:  Thank you, sir.

 2                    THE COURT:  Thank you.

 3                    MS. COBB:  Good afternoon; I'm Lauren Cobb.  I'm

 4      here for Tristan Stevens, who has waived his appearance.

 5                    THE COURT:  Good afternoon, Ms. Cobb.

 6                    MS. COBB:  Good afternoon.

 7                    MS. DOUENAT:  Good afternoon, Your Honor; Marina

 8      Douenat on behalf of Mr. Steven Cappuccio, and we're

 9      present.

10                    THE COURT:  All right.  Good afternoon,

11      Ms. Douenat, and good afternoon, Mr. Cappuccio.

12                    MR. URSO:  Good afternoon, Your Honor; Lindy Urso

13      for Mr. McCaughey, who has waived his appearance.

14                    THE COURT:  Good afternoon, Mr. Urso.

15                    All right.  Let me tell you what I have on my

16      schedule for today.  I wanted to hear from the government

17      where things are on discovery.  I also wanted to -- I think

18      we probably need to set motions hearing and pretrial

19      conference dates, and I'm interested in your views on

20      whether we need separate motion -- well, I do want to have

21      kind of a Group 1 track and a Group 2 track; I'm thinking

22      this may be the last time all of us are together -- but

23      whether we need to do separate motion hearings and pretrial

24      conferences, or we can do those combined.  So I'd be

25      interested in the attorneys' views on that.
```

 1              And then I want to make sure we've addressed

 2     Mr. Cappuccio's motion to compel.  I'll hear from the

 3     government on his motion to modify conditions of release and

 4     also decide on Mr. Mehaffie's motion to modify conditions of

 5     release.

 6              So I'll hear from the government.

 7              MS. PASCHALL:  Thank you, Your Honor.

 8              So with respect to discovery, as we discussed at

 9     the last hearing, the government did hold discovery

10     conferences with most of the defense attorneys to address

11     various issues, where things are located, access to

12     databases, things of that nature.  I think quite a bit was

13     accomplished there, and we have also said to all defense

14     attorneys that that line of communication remains open.  We

15     are happy to discuss any of the disclosures and access at

16     any point in time.

17              Since our last status, we have made three

18     additional discovery disclosures, including quite a large

19     disclosure that is going over today.  Consistent with the

20     Court's order at the last hearing, the discovery disclosure

21     we have made today is an overinclusive disclosure of

22     everything the government believes would be in the universe

23     of evidence we would want to use in our case-in-chief at

24     trial.  So it includes quite a bit of open source videos,

25     videos from other defendants who are not charged in this

1    matter, exhibits from trials that have already gone before

2    the Court, and some additional information about the

3    congressional proceeding.

4           We are also in the process, and plan to finish

5    today, a rather large spreadsheet that elucidates three

6    categories of evidence that the government expects it will

7    present in its case-in-chief.

8           One is a list of just general evidence; evidence

9    that we would present about the Capitol building itself,

10   about the proceeding, about the Secret Service, things of

11   that nature.

12          The second spreadsheet will discuss ID evidence as

13   it relates to all of these individuals and how the

14   government plans to shore up those identifications.

15          And then the final is a list of evidence per

16   count.  So each count in the indictment is listed.  Evidence

17   that the government either presented at the grand jury or

18   believes it may present is listed therein.  All of those

19   spreadsheets will also guide the defense to which production

20   that was included in and which database the government

21   believes that's in.

22          I just want to make the representation that that

23   is not an exhaustive or final exhibit list.  We will, of

24   course, provide that in advance of the trial consistent with

25   Your Honor's pretrial order.

1            But with all of those things, we think that we

2    have met Your Honor's order from the last hearing to make

3    sure that all of those disclosures have been made.

4            Also, since the last hearing, I think we've had

5    two global disclosures in the larger grand -- in the larger

6    January 6th case that are filing into the Relativity

7    database.  As I mentioned at the last hearing, all AUSAs who

8    have January 6th matters are tasked with reviewing things

9    from their specific defendants.  They're given five days to

10   do that.

11           So at the beginning of the week you get an email

12   saying something from your defendant's case file is going to

13   be uploaded into Relativity.  You'll review that, and it

14   goes over.  So that is sort of having a seriatim effect of

15   populating the Relativity database.  But what our disclosure

16   today has done has sort of short-circuited that in putting

17   any defendant that we believe that is Lower West Terrace

18   material that we will want to use in our case-in-chief in

19   the USAFX database for them to immediately download.

20           Of course, as things are going over from other

21   defendants that we might not use in our case-in-chief but

22   they may think is relevant, that will continue to populate

23   in the Relativity database.

24           During our discussion with Counsel, Counsel

25   identified for us a problem that I had hoped would be

1    remedied but has not yet been remedied with the Relativity

2    database as it relates to location tagging so that

3    information that's going over will have a tag as to which

4    area of the Capitol is relevant.  I am still working on

5    what's happening there so I hope to give an update to

6    defense counsel on that shortly.

7             I think that's everything with respect to

8    discovery, unless Your Honor has any questions.

9             THE COURT:  No.

10            MS. PASCHALL:  Okay.  With respect to pretrial

11   motions and conferences, I would agree with Your Honor.  I

12   think now is a good time to start to set those on their

13   separate tracks so that we're focused on the motions that

14   just pertain to the defendants in each of the groups.  We

15   can discuss scheduling accordingly with everyone.  I think

16   the government is readily available to make whatever

17   schedule works work.

18            THE COURT:  So I guess -- just thinking out loud

19   and given that it's going to be summer and hard to get two

20   attorneys together, let alone a bunch -- what I had in mind

21   is looking for, you know, a July date after all of the

22   motions had been filed for each group, and just do two

23   pretrial conferences and kind of wrap those in with the

24   motions hearing.  I want to hear from the attorneys as well.

25            Does that make sense to you, Ms. Paschall?

1          MS. PASCHALL:  Yes.

2          THE COURT:  Okay.

3          MS. PASCHALL:  Motions to modify conditions of

4     release, I think with respect to both of the motions that

5     have been filed, the government defers to the position of

6     pretrial, which I think for both of those --

7          THE COURT:  Everybody's deferring.

8          MS. PASCHALL:  Pardon?

9          THE COURT:  They're deferring to me so...

10         MS. PASCHALL:  I think they're both removal of GPS

11    devices, I think.  What I generally understand to be

12    pretrial's practice is that after compliance within a

13    certain period of time, that they will defer to the Court.

14         I think the government takes the same position.

15    It does not appear that either of those defendants have been

16    out of compliance so we would also defer on both of those.

17         THE COURT:  Can you tell me what you're alleging

18    Mr. Mehaffie actually did?  I don't know that I ever saw

19    kind of a specific --

20         MS. BOND:  So Ms. Mehaffie's participation was --

21    he's been charged with a 111(a), aiding and abetting,

22    because his primary conduct was first being one of the very

23    first to enter those Lower West Terrace doors.  Then he

24    got -- he exited the tunnel and climbed up sort of around

25    the arch and was directing traffic, assisting people to get

1    in that tunnel.  So, for example, as people would exit, he

2    would tell some people, "Come in on the right, exit on the

3    left; in on the right, exit on the left," that sort of

4    thing.  So he really egged on other rioters participating in

5    that.

6            So that is the primary charge against

7    Mr. Mehaffie.

8            THE COURT:  Okay.  All right.  Thank you,

9    Ms. Bond.

10           So I think I'll just set a pretrial conference,

11   not any more status conferences.  Does that make sense to

12   the government?

13           MS. PASCHALL:  Yes, I think that's fine, Your

14   Honor.  And since we are now in a posture where the Speedy

15   Trial Act is tolling because of pending motions, I don't

16   know that that's something we need to address until the

17   point in time when Your Honor will be ruling on those

18   motions anyway.  So I think that sounds just fine.

19           THE COURT:  Okay.  Anything else?

20           MS. PASCHALL:  Cappuccio motion to compel.  I'll

21   defer to Ms. Douenat.  I think we've worked out everything

22   she was looking for there, but I'll defer to her and make

23   sure we have, in fact, done that.

24           THE COURT:  All right.  So why don't we just go

25   down the list.

```
 1              Mr. Kiyonaga, are you comfortable with the idea of
 2     doing just one pretrial conference for Group 1 and one
 3     pretrial conference for Group 2, and that's it?  We wouldn't
 4     do a separate motion hearing.
 5              MR. KIYONAGA:  I'm fine with that, Your Honor.
 6              THE COURT:  Okay.  Anything else you want to be
 7     heard on for various clients?
 8              MR. KIYONAGA:  Not at this moment, no, sir.
 9              THE COURT:  Okay.
10              MR. KIYONAGA:  Thank you.
11              THE COURT:  Mr. Urso?
12              MR. URSO:  We're fine proceeding that way, Your
13     Honor, and we have nothing else to add at this point.
14              THE COURT:  Okay.  Ms. Cobb?
15              MS. COBB:  I don't have a position.  Either way is
16     fine with me.
17              THE COURT:  Okay.  Anything else you want to be
18     heard on?
19              MS. COBB:  No, not right now.  Thank you.
20              THE COURT:  All right.  Ms. Mullin?
21              MS. MULLIN:  Yes, Your Honor, I would request a
22     separate motion earlier than the pretrial conference, a
23     motion hearing on the motion to sever filed by Mr. Judd and
24     joined by other defendants.  I think the Court's ruling on
25     it would affect scheduling.
```

1          I don't know if the Court's had a chance to review

2   it, but I filed it, and so I tend to think it's meritorious,

3   and I would request a hearing on that prior to a pretrial

4   conference.

5          That's going to be fully briefed by, I believe,

6   May 4th.  Replies are due by May 4th.  So I would request an

7   interim motions hearing date on just the motion to sever

8   filed by Mr. Judd and others.

9          THE COURT:  Okay.  I haven't looked at it.  I'm

10  kind of -- I tend to be skeptical of motions like that.

11  Obviously I haven't read it at all so I'm not -- I don't

12  want to prejudge it, but just kind of, from the little I've

13  seen of this, it seems like this is properly done.

14         I guess my inclination would be to rule on that

15  ahead of time.  And tell me if there's something that a

16  motion hearing is going to add that is not already in your

17  papers.

18         MS. MULLIN:  I think that the Court could rule on

19  the papers.  I think it's been fully briefed, or it will be

20  fully briefed by May 4th.

21         I would just point out to the Court that though

22  the Court presides over many multi-codefendant cases, this

23  is a case where the defendants are not charged with

24  conspiracy.  They are not part of the same, you know, group.

25  They never knew each other before they came to the U.S.

1    Capitol.  Some of them were not even in the same vicinity at

2    the same time.

3              THE COURT:  Well, the same relative vicinity.  I

4    mean --

5              MS. MULLIN:  Right, Your Honor, but I think, if

6    the Court -- I would just request that the Court read the

7    briefing.  I think that they have been misjoined under Rule

8    8.

9              And then if the Court disagrees with that, at the

10   very least they should be severed under Rule 15.  There's

11   just -- Rule 14, pardon me.

12             I think what has happened here is the government

13   has grouped together a random group of defendants that don't

14   know each other, aren't really connected by anything other

15   than that they were all at the Capitol that day and in the

16   same general vicinity.  They're all accused of the most

17   serious charges that have been levied against the January

18   6th defendants, and I think it would result in great

19   prejudice if they were tried together even if they're tried

20   in two separate groups.

21             I'll rest on my papers on that, Your Honor, but I

22   would ask the Court to review those motions before we forge

23   ahead with scheduling.

24             THE COURT:  Okay.  Thank you, ma'am.  I appreciate

25   you flagging that.  We'll certainly prioritize that motion.

1          MS. MULLIN:  That's all I have, Your Honor.

2          THE COURT:  Thank you, ma'am.

3          Okay.  Mr. Woodward?

4          MR. WOODWARD:  Thank you, Your Honor.  I would

5     join Ms. Mullin actually.  We've separately filed a motion

6     to sever, not because Ms. Mullin's brief wasn't excellent --

7     it is -- but because of the very fact that our clients are

8     very uniquely situated and that the facts and circumstances

9     that the government has charged all of these defendants with

10    vary.

11         I think the brief is obviously satisfactory.  I

12    think that Your Honor can rule on the briefs, but I'm also a

13    proponent of oral advocacy and like coming to see Your Honor

14    as often as you'll have us.

15         In addition, I would observe that there has now

16    been a motion to transfer venue filed.  I'm aware of the

17    uphill battles that those motions face.  We have not joined

18    nor filed our own, but it is certainly something we are

19    considering.

20         Finally, I would point out that although we look

21    forward to the government's production today and to its

22    exhibit list, as ordered by the Court, our view is that

23    discovery really hasn't changed since the last time that we

24    saw you.  The productions that have been made before today

25    are limited in scope and largely consist of records that are

1   available in other cases.  The global database that is

2   available to everyone now has not seen a significant amount

3   of data added to it, relatively speaking.

4        But I won't try to -- I've made these points

5   before, and Your Honor's been clear about your position.

6        The only thing I'll observe is that in its

7   discovery letter today producing the exhibit list, the

8   government expressly reserves the right to supplement its

9   exhibit list, and that's not my interpretation of what Your

10  Honor's order was.  And so I think that there may also be an

11  opportunity for us to come back in, say, another month to

12  talk about what the status of discovery is, to talk about

13  what the posture in the trial in this case will look like.

14       It's always easier to vacate a status hearing than

15  it is to schedule one, and so we would just respectfully

16  request a motions hearing on the severance motions and then,

17  undoubtedly, there will be other things that can be

18  addressed at that time as well.

19       THE COURT:  So on the discovery point, it sounds

20  like you've -- did you, in fact, participate in the

21  conference with the government on discovery issues?

22       MR. WOODWARD:  I did, Your Honor.

23       THE COURT:  And as you probably are aware, I mean,

24  there have now been a number of trials that have occurred

25  here on -- with January 6th cases, including some that are

1   probably from a similar vintage as this one, so it certainly

2   has seemed to me like lack of information is not an issue

3   that you've been suffering from; that, if anything, there's

4   kind of too much discovery going around.

5          MR. WOODWARD:  Your Honor has no reason to recall

6   this, but, in fact, I was here with Your Honor for the Couy

7   Griffin trial representing a witness in that case.

8          THE COURT:  I do remember that.

9          MR. WOODWARD:  And I think case in point there was

10  evidence in that case that, as we met with the government in

11  preparation for trial, we realized it needed to be disclosed

12  in this case.  That is one of the discovery productions that

13  has been made since the last time we were before Your Honor.

14         So I won't pretend to suggest that there is a

15  significant amount of discovery outstanding.  The government

16  has done Yeoman's work in getting us relevant materials.

17  But, as you well know, it all comes down to what the

18  government is intending to present, and one piece of

19  evidence can be as material as everything else that's been

20  provided so far.

21         So we certainly are not, at this juncture, willing

22  to say that the government has met its obligation under

23  *Brady*, *Giglio*, Rule 16, et cetera, and we think there will

24  be disputes about discovery.  We may not ultimately prevail

25  on those, but there is still discovery to be done in the

1    cases.

2            THE COURT:  So I want to be -- I think the

3    government understands my position.  I think by today

4    anything they expect they're going to -- or anything they

5    present at trial should be in your hands.  I understand what

6    I think Ms. Paschall was saying, is there may be new exhibit

7    lists; i.e., they are kind of pinpointing things they have

8    turned over to you that, "We want to use this.  Maybe we

9    didn't say that before."  I don't think that's a problem.  I

10   just -- I don't think you should be getting something a week

11   from now that they intend to use at trial.

12           So that's my view on that.

13           MR. WOODWARD:  Okay.

14           THE COURT:  I guess just -- I'm struggling a

15   little bit.  Obviously, I mean, they will probably be

16   turning things over well after trial given the way these

17   cases are going forward, and that's just kind of an

18   unfortunate feature of these January 6th trials and cases in

19   general.  But do you feel -- I mean, do you not have footage

20   of the West Front Terrace?

21           What specifically -- I mean, are there specific

22   things that you're looking for that you've not been able to

23   get?

24           MR. WOODWARD:  Yes, Your Honor.  I am specifically

25   looking for citizen video that has been collected through

1    the government's investigation.  As I articulated at the

2    last status hearing, one of the things that is unique about

3    this case and our client is that largely the conduct that

4    occurred did not occur on CCTV footage, and some of the

5    conduct that occurred was not captured by body-worn video

6    camera.

7            In my client's specific case, he is alleged to be

8    an individual that is captured outside of the Lower West

9    Terrace assisting in helping a police officer back across

10   the police line so that that officer can be assisted.  That

11   is obviously information that is highly relevant to our

12   case.

13           THE COURT:  Sorry?  You have evidence of that, or

14   you think there is evidence of that out there?

15           MR. WOODWARD:  The government acknowledges that in

16   its complaint and in its indictment, that the person they

17   believe to be Mr. Klein is captured on video assisting a

18   police officer in the crowd outside the Lower West Terrace.

19   That area is not -- I want to be careful about what I say.

20           There are security cameras outside the Capitol

21   building obviously.  That area is not as well covered by

22   CCTV footage as are the interior areas of the Capitol, and

23   as the Court well knows, there is a tremendous amount of

24   video that was taken by the individuals who were on the

25   steps that day.  And so what we are particularly interested

1    in is all of the vantage points that would show the

2    individual alleged to be Mr. Klein assisting this police

3    officer back to safety.

4              THE COURT:  And you don't have any?

5              MR. WOODWARD:  I do have some.

6              THE COURT:  Okay.  But you believe there's more

7    out there?

8              MR. WOODWARD:  I believe, based on the law of

9    large numbers, that there is a lot more out there.

10             THE COURT:  Okay.  At some point this feels like

11   this becomes cumulative, which is not to say that you're not

12   entitled to it.

13             MR. WOODWARD:  At some point it would become

14   cumulative, Your Honor.  I would concede that.  I'm not

15   there yet on what I've received so far.

16             THE COURT:  Okay.

17             MR. WOODWARD:  It's a chaotic day, and so angles

18   are disturbed.  People are carrying phones at different

19   angles.  People are carrying different quality video

20   recording devices.  So I think if we were in a position now

21   where we had seen every angle of this individual and what's

22   happening, I'd have a much weaker argument, but we're not

23   there yet.

24             I also acknowledge that there's a big difference

25   between what the government has now in its possession,

1    custody, and control and what it doesn't.  Of course, I

2    don't have access to that information.  I don't know what

3    it's collected.  I only know that it's disclosed that there

4    are thousands of hours of video that it has captured in its

5    investigation that have not been made available to defense

6    counsel.

7            THE COURT:  Okay.  I understand.  Thank you, sir.

8    And Ms. Douenat?

9            MS. DOUENAT:  Good afternoon, Your Honor.

10           THE COURT:  Good afternoon.

11           MS. DOUENAT:  On behalf of at least Mr. Cappuccio,

12   when it comes to whether we should have another status

13   conference on discovery and on his motion to compel, the

14   government has given us an opportunity to meet with them,

15   and we did.  And there's a couple of videotapes that they

16   just -- a couple of videos of the West Terrace from

17   beginning to end that they just tendered to me in open court

18   today.  I would like the opportunity to review that before I

19   answer to the Court whether they've met everything that I've

20   asked for in the motion to compel.

21           As far as the Bates-stamping issue, they have --

22   and I'm okay with the fact that they've indexed everything.

23   They did explain things in the meeting we had with them

24   about how that's -- I mean, they were able to show us how to

25   use that more properly, and I've been able to succeed in

1    that.

2              A couple of other questions that I had asked or a

3    couple of other matters I had asked for in the motion to

4    compel were any other statements made by Officer Hodges in

5    relation to any of the assaults that happened that day.  The

6    answer to that basically was his testimony before Congress.

7    That's all they have.

8              I did find on Relativity a statement that he made

9    that the only time he was assaulted was before he got to the

10   West Terrace out in an altercation where he was on the

11   ground and received it there, so there was one statement

12   there.

13             Of course, if you Google "Officer Hodges" there's

14   a ton of stuff that comes up on social media with statements

15   he makes to news reporters and other media outlets.  The

16   government says they have nothing else in their possession.

17   I would like an opportunity to respond to that as soon as I

18   get -- I'm working on a spreadsheet with all the other

19   statements I have found online to see if they can follow up

20   and make sure that they don't have any other statements.

21             I'm not -- I'd like an opportunity to respond to

22   the Court as well as to the government with that.  First to

23   the government obviously, and if I can't get answers, then

24   to the Court and follow up on -- in response to my motion to

25   compel.  I will even say what has been answered and what

1    hasn't, if given the opportunity in the next couple of

2    weeks.

3              THE COURT:  Okay.

4              MS. DOUENAT:  As far as the motion to sever, we

5    filed our own separate motion to sever as well.  I do concur

6    with Ms. Mullin as well as Mr. Woodward, that we should have

7    that heard and answered before we have a pretrial conference

8    on other matters.  I would like the opportunity to fully

9    respond by May 4th with any additional comments I have.

10             I know the government's deadline was today on

11   their response, so I'd like to be able to respond to what

12   they have to say about why it's not appropriate.  I feel

13   like it is, specifically for the statements made by

14   Ms. Mullin as well as every argument that I've stated in my

15   motion, and I specifically explain how it is that they're

16   not related at all, the cases.  I will further go into

17   briefing on that by May 4th.

18             And on the other issue of bond, Your Honor, I

19   would like to add that his demonstrable adherence basically

20   to every condition shows that he's capable of both remaining

21   a nondanger as well as not a flight risk.  His kids are the

22   best curfew and monitor for Mr. Cappuccio.  He now also has

23   a grandchild in their custody, in his wife's and his

24   custody.

25             There are a lot of second chance places in San

1    Antonio that offer job opportunities.  The monitor becomes a

2    problem with those employers, although they do give second

3    chances to individuals who are under indictment or who have

4    a previous conviction.

5            And I know this may not be as important, but

6    summer is coming in Texas, and a lot of water activities are

7    done with children.  He's got a huge amount of children in

8    his household, and that also poses a problem.

9            THE COURT:  All right.  Thank you, ma'am.

10           Ms. Schuck, can you -- is there anything you want

11   to add on the two pending motions to modify conditions?  As

12   I understand it, Pretrial Services is not objecting to

13   either of these motions, but let me know if there's anything

14   that I should be considering.

15           PRETRIAL SERVICES:  Good afternoon, Your Honor;

16   Christine Schuck, pretrial services.

17           In reference to Mr. Cappuccio, we will note that

18   he is compliant, and, again, we are deferring to the Court

19   as it would be a lower -- removing him from location

20   monitoring would be deemed a lower level of supervision, so

21   we will defer to the Court.  We will note that he is

22   compliant, and the District of Texas did note that they do

23   not believe location monitoring is needed to adequately

24   supervise the defendant.

25           In reference to Mr. Mehaffie, the Pretrial

1    Services case manager, again, is not opposing the removal of

2    the location monitoring, but we are not recommending that he

3    be removed from location monitoring because, again, that

4    constitutes a lower level of supervision.  And we will also

5    note, he has been in compliance for approximately seven

6    months because he was -- he did have those violations back

7    in September of 2021 when he went back into the water after

8    being told specifically not to, which caused the malfunction

9    of the GPS device.

10                   THE COURT:  Okay.

11                   PRETRIAL SERVICES:  Thank you, Your Honor.

12                   THE COURT:  Thank you, Ms. Schuck.

13              All right.  In light of those representations and

14   positions of the government, I will grant both motions to

15   modify release conditions.  That's as to Mr. Cappuccio and

16   Mr. Mehaffie.

17                   MR. KIYONAGA:  Your Honor, could I be heard very

18   briefly on the issue of an interim status/motion?

19                   THE COURT:  So I think what I want you to do is

20   tell me if we couldn't just do a teleconference if an issue

21   comes up?  I just -- I think -- I feel like it's going to be

22   increasingly hard.  I'm basically in trial the next -- well,

23   in June, so I don't love the idea of scheduling more status

24   conferences unless a specific issue comes up.

25              That's how I deal with it in civil matters, and it

1    feels like that might be the more efficient way to deal with

2    it here.

3            MR. KIYONAGA:  I certainly understand the Court's

4    feelings on that.  I should tell the Court, I plan

5    imminently to file a new motion for reconsideration of bond.

6    So that will be out there for whatever that's worth, and I

7    would prefer an in-person argument as opposed to by Zoom.

8            THE COURT:  All right.  Well, I'll take a look at

9    your motion, sir.

10           MR. KIYONAGA:  All right.  Thank you, sir.

11           THE COURT:  Thank you.

12           Ms. Paschall, can you respond briefly to

13   Mr. Woodward's concerns.

14           MS. PASCHALL:  Yes, Your Honor.  I think a large

15   portion of the videos that we have collected and disclosed

16   today are going to be both what he's calling citizen

17   video -- I call them open source video; things that the

18   government has collected from the Internet, from YouTube,

19   those types of places.

20           We've also disclosed, continuously throughout the

21   case but particularly today, videos that have been taken

22   from subjects of the various investigations on the Lower

23   West Terrace.  One of the things we have disclosed since our

24   last status hearing is a spreadsheet that itemizes every

25   single item that has been disclosed in this case.  It is

1    searchable.  So it is easier now than it has been before

2    this status to take that spreadsheet, search for video in

3    whatever, you know, iteration they want, and see where that

4    has been previously produced.

5             So we have been producing subject videos.  We have

6    been producing videos that were relevant to our indictment,

7    and today's production should be, frankly, several hundred

8    additional videos of the type that I think Mr. Woodward is

9    looking for.

10            With respect to the incident that he's speaking of

11   specifically with his client, what we flagged for him when

12   the indictment came through was body-worn camera video that

13   captures that exact incident.  To the extent that we see

14   anything else that we think, you know, is relevant to that

15   incident, we can flag that for him as well, but I think

16   today's production and that spreadsheet that lists out

17   everything that has been previously produced should cover

18   those bases.

19            And to the extent that the government becomes

20   aware of anything additional specific to that point, we're

21   happy to point Mr. Woodward to that directly.

22            THE COURT:  Okay.

23            MS. PASCHALL:  With respect to Ms. Douenat's

24   request for statements by Officer Hodges, obviously

25   statements that are made in the media, while we would

1    collect them for *Jencks*'s material, are not necessarily in

2    the government's possession, custody, and control, so I

3    don't know that the government should be responsible at this

4    point of collecting every statement that Officer Hodges has

5    made.

6            To the extent that those become relevant for him

7    when he becomes a witness for *Jencks* purposes, of course

8    we'll make those disclosures.  But public media statements,

9    things on social media that we do not have, it's hard for

10   the government to say that we're going to, you know, enhance

11   our discovery obligations and proactively seek out that

12   information.

13           Our understanding is that what we have in our

14   possession, custody, and control has been turned over.

15           THE COURT:  Okay.  Thank you, ma'am.

16           MS. PASCHALL:  Uh-huh.

17           THE COURT:  So why don't we look for a pretrial

18   conference for Group 1 folks.  Raising hands worked really

19   well last time, so let's try now.

20           I'm thinking Thursday, July 21st at 10:00 a.m.

21   Any government or Group 1 attorney, if that does not work

22   for you, please raise your hand.

23           All right.  Going once.  Going twice.  Okay.

24   We've got a pretrial conference for Group 1 defendants on

25   Thursday, July 21st, at 10:00 a.m.

1        Group 2, how about Tuesday, August 2nd, at 10:00

2   a.m.?  Actually, let's do -- I want to try August 3rd just

3   to give me a little more time to get through your motions.

4   August 3rd doesn't work?

5        Okay, August 2nd, would that work?  That whole

6   week?  Okay.

7        August 8th?  August 8th, 10:00 a.m. for Group 2

8   attorneys?

9        MR. WOODWARD:  Two weeks.  Sorry, Judge.

10       THE COURT:  All right.  We have more time on that,

11  so how about August 23rd?  August 23rd, 10:00 a.m., Group 2

12  defendants?

13       All right.  We'll set a pretrial conference for

14  Group 2 defendants on Tuesday, August 23rd, at 10:00 a.m.

15       Yes, sir.

16       MR. KIYONAGA:  Your Honor, I'm very sorry.  I have

17  a trial beginning in front of Judge Nichols two weeks prior

18  to the first pretrial conference.  It's a January 6th trial,

19  and I would be surprised in the extreme if it takes two

20  weeks.

21       THE COURT:  It's a misdemeanor case?

22       MR. KIYONAGA:  No, it's a felony, sir.

23       THE COURT:  Okay.

24       MR. KIYONAGA:  And I say that --

25       THE COURT REPORTER:  Can you step to the mic,

1    please.

2              MR. KIYONAGA:  I'm terribly sorry.

3              -- where trials typically take a little longer, so

4    I think in an excess of caution I should tell the Court that

5    regrettably that first date is not good for me.  I'm sorry I

6    didn't flag it earlier.

7              THE COURT:  July 21st?

8              MR. KIYONAGA:  Yes, sir.

9              THE COURT:  Do you know, does Judge Nichols sit on

10   the Fridays?

11             MR. KIYONAGA:  I don't know whether he does or

12   not, sir.

13             THE COURT:  Okay.

14             MR. KIYONAGA:  The government said it would be a

15   two-week trial, but they mildly suggested that might be an

16   overly excessive estimate.

17             But I just don't know.  I can't control what the

18   government's going to do.

19             THE COURT:  Okay.  So going back to Group 1, how

20   about Friday, July 22nd, 10:00 a.m.?  Friday, July 22nd for

21   Group 1?

22             MR. KIYONAGA:  Your Honor, I'm assuming, if Judge

23   Nichols does not sit on Friday, that, of course, would be

24   fine, but I don't know whether he does or not.

25             THE COURT:  Well, we're going to try to make

1     that -- I mean, that sounds like it would be right at the

2     end of your two-week period, right?

3                    MR. KIYONAGA:  Yes, sir.

4                    THE COURT:  So let's try to make that work because

5     I'm out the following week.

6                    All right.

7                    MR. KIYONAGA:  Thank you, sir.

8                    THE COURT:  Anything else?

9                    Ms. Paschall, anything else that we should be

10    discussing today?

11                   MS. PASCHALL:  Not for the government, Your Honor.

12    Thank you.

13                   THE COURT:  All right.  Any defense counsel wish

14    to be heard on anything we've not already discussed?

15                   As I suggested to Mr. Kiyonaga, I'm not inclined

16    to set another status conference between now and then, which

17    is not to say that if something comes up I'm not willing to

18    handle it earlier.  What I have in mind -- I mean, maybe we

19    could all get together in person, but what I have in mind is

20    that we would just do a teleconference with the relevant

21    attorneys, and we can try to schedule that pretty quickly.

22                   Ms. Paschall, you're not seeking speedy trial

23    clock.  I think it's tolled as a matter of statute, correct?

24                   MS. PASCHALL:  It is tolled as a matter of

25    statute.  If Your Honor rules on every motion before we get

1    to the pretrial, then we can file something to that effect.

2    That seems unlikely, but --

3              THE COURT:  It does seem unlikely.

4              MS. PASCHALL:  -- we will stand on the motions

5    tolling at this point in time.

6              THE COURT:  Thanks, folks.  Have a good weekend.

7                   (Whereupon the hearing was

8                    concluded at 1:52 p.m.)

9

10              **CERTIFICATE OF OFFICIAL COURT REPORTER**

11

12              I, LISA A. MOREIRA, RDR, CRR, do hereby

13   certify that the above and foregoing constitutes a true and

14   accurate transcript of my stenographic notes and is a full,

15   true and complete transcript of the proceedings to the best

16   of my ability.

17      **NOTE:**  This hearing was held remotely by Zoom or some

18   other virtual platform and is subject to the technological

19   limitations of court reporting remotely.

20              Dated this 12th day of May, 2022.

21

22

                            /s/Lisa A. Moreira, RDR, CRR
23                          Official Court Reporter
                            United States Courthouse
24                          Room 6718
                            333 Constitution Avenue, NW
25                          Washington, DC 20001