**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-40-3 (TNM)** |
| | : | |
| **DAVID JUDD, et. al.,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**COUNT THIRTY-FIVE OF THE FIFTH SUPERSEDING INDICTMENT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to Defendant Judd's motion to dismiss Count Thirty-Five in the Fifth Superseding Indictment. ECF No. 179. Specifically, the defendant, and those who join him in this motion, challenge the count charging them with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). ECF Nos. 254, 262, 268, and 271.

Several courts in this district have recently written opinions rejecting many, if not all, of the challenges the defendant raises here. *See United States v. Mostofsky*, 21-cr-138 (JEB), 2021 WL 6049891 (D.D.C. Dec. 21, 2021); *United States v. Nordean,* 21-cr-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021); *United States v. McHugh,* 21-cr-453 (JDB), 2022 WL 296304 (D.D.C. Feb. 1, 2022); *United States v. Fischer*, 21-CR-234 (CJN), 2022 WL 782413, at *4 (D.D.C. Mar. 15, 2022); *United States v. Bingert*, 21-cr-91 (RCL), ECF No. 67 (D.D.C. May 25, 2022). There is no reason for this Court to differ here. The Court should deny the motion.

**FACTUAL BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate ("the Joint Session") convened in the United States Capitol building ("the Capitol") to certify the vote of the Electoral College of the 2020 U.S. Presidential Election ("the

1

Electoral College vote"). The Capitol is secured 24 hours a day by United States Capitol Police ("Capitol Police") and permanent and temporary barriers that restrict access to the Capitol grounds and building. On January 6, 2021, only authorized individuals with appropriate identification were allowed on the Capitol grounds or inside the Capitol. The First Street pedestrian entrance was guarded by Capitol Police. Prominent signs posted on metal barriers at the pedestrian entrance and other locations stated, "AREA CLOSED By order of the United States Capitol Police Board."

At 1:00 p.m., the Joint Session convened in the Capitol to certify the Electoral College vote.  Vice President Michael R. Pence, in his constitutional duty as President of the Senate, presided over the Joint Session. At 2:20 p.m., members of the House and Senate (including Vice President Pence)—who had withdrawn to separate chambers to resolve an objection—were evacuated from their respective chambers as the result of rioters' breach of the Capitol. The Joint Session was halted while Capitol Police and other law-enforcement officers worked to restore order and clear the Capitol building and grounds of the unlawful occupants.

Each of the defendants challenging this count of the indictment—Patrick McCaughey, Tristan Stevens, David Judd, and Stephen Cappuccio—joined the mob that overwhelmed law enforcement on the West Front of the U.S. Capitol and forced their way into the "tunnel" created by the structures present on the Lower West Terrace, meant to form the Inauguration stage for the Inauguration of President Joe Biden on January 20, 2021.

Defendants McCaughey and Stevens were among those who entered the tunnel shortly after 2:40 p.m. At approximately 2:49 p.m., both defendant McCaughey and defendant Stevens had made it to the front of the police line as well. Between 2:49 p.m. and 3:15 p.m., these two defendants assaulted several law enforcement officers, pushing against the line in a heave-ho effort to get into the building, and using various weapons in their assaults. Defendant McCaughey gained

possession of a clear police riot shield, and used it to push against the police line, crushing a Metropolitan Police Department officer in the door. Defendant Stevens then also used a clear riot shield to strike a U.S. Capitol Police officer in the face.

Closer to 3:00 p.m., defendants Judd and Cappuccio entered the tunnel. Defendant Judd encouraged other rioters to create a shield wall, and then lit a firecracker and tossed it towards the police line. Defendant Cappuccio then pushed forward through the crowd to the police line, bracing and assisting the crowd in an effort to break through and into the building.  Defendant Cappuccio ultimately ended up in front of the same Metropolitan Police Department officer that defendant McCaughey crushed in the door; defendant Cappuccio grabbed the officer's gas mask, violently yanking on it in an attempt to rip it off. Defendant Cappuccio left the tunnel with a baton in his hand that he did not have when he initially entered the tunnel.

Law enforcement was able to push rioters out of the tunnel and on to the Lower West Terrace at approximately 3:18 p.m., reestablishing the police line at the mouth of the tunnel. For the next two hours, officers continued to battle the rioters who remained, and the Lower West Terrace was not cleared until after 5:00 p.m. At approximately 8:00 p.m., the Joint Session reconvened, presided over by Vice President Pence, who had remained within the Capitol building in a secure location throughout the disruption of the proceeding. The Joint Session of Congress lasted until the early hours of January 7, 2021, when the electoral ballots were fully counted, and the Electoral College vote was certified.

## PROCEDURAL HISTORY

On January 29, 2021, the grand jury returned an indictment charging defendant Patrick McCaughey with various charges for his conduct at the U.S. Capitol on January 6, 2021. ECF No. 5. The grand jury returned First Superseding Indictment charging Tristan Stevens as a co-defendant with Patrick McCaughey on March 4, 2021. ECF No. 19. On April 16, 2021, the grand

jury returned the Second Superseding Indictment, joining David Judd and Christopher Quaglin to the case. ECF No. 37. On June 16, 2021, the grand jury returned the Third Superseding Indictment, adding Robert Morss and Geoffrey Sills. ECF No 68. The grand jury returned the Fourth Superseding Indictment on August 4, 2021, adding David Mehaffie, Steven Cappuccio and Federico Klein as defendants in this action. ECF No. 102. On December 1, 2021, the grand jury charged the nine co-defendants in the Fifth Superseding Indictment, which is the currently operative charging document for this matter. ECF No. 179. That document charges fifty-three counts, including Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count Thirty Five). ECF No. 179.

Consistent with the Scheduling Order in this case (ECF No. 232), the following Fed. R. Crim. P. 12 motions to dismiss were filed by various defendants.

- On April 15, 2022, defendant Judd filed a motion to dismiss Count Thirty-Five, charging him and his co-defendants with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). ECF No. 254. ("Mot.")

- On April 19, 2022, defendant Stevens filed a motion to adopt all of defendant Judd's motions to dismiss, including the motion to dismiss Count Thirty-Five (ECF No. 262). This Court granted the motion to adopt. Minute Order April 19, 2022.

- On April 20, 2022, defendant Cappuccio filed a motion to adopt defendant Judd's motions to dismiss Counts Thirty-Five (ECF No. 268). This Court granted the motion to adopt. Minute Order April 20, 2022.

- On April 21, 2022, Defendant McCaughey filed a motion to adopt all of defendant Judd's motions to dismiss, including for Counts Thirty-Five (ECF No. 271). This Court granted the motion to adopt. Minute Order April 22, 2022.

4

## ARGUMENT

I.   **The Court Should Deny Defendant Judd's Motion to Dismiss Count Thirty-Five, Alleging Violations of 18 U.S.C. § 231(a)(3)**

The court should deny defendant David Judd's Motion to Dismiss Count Thirty-Five of the Superseding Indictment, ECF No. 254, in which he argues that 18 USC § 231(a)(3) is both unconstitutionally vague and overbroad in that it impermissibly criminalizes First Amendment speech. Five judges in this district have recently rejected nearly identical challenges to Section 231. *See United States v. Mostofsky*, 2021 WL 6049891, at *8–*9 (rejecting overbreadth challenges); *United States v. Nordean,* 2021 WL 6134595, at *16–*17 (rejecting vagueness and overbreadth challenges); *United States v. McHugh*, 2022 WL 296304, at *13- *17; *United States v. Fischer*, 2022 WL 782413, at *1-*4 (rejecting vagueness and overbreadth challenges); *United States v. Bingert*, 21-cr-91 (RCL), ECF No. 67 (D.D.C. May 25, 2022)(rejecting vagueness challenges).[1] This Court should, too.

Section 231(a)(3) (the civil disorder statute) criminalizes any "act" (or attempted act) to "obstruct, impede, or interfere" with a law enforcement officer "lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder." 18 U.S.C. § 231(a)(3). For the statute to apply, the civil disorder must "in any way or degree obstruct[], delay[], or adversely affect[] commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." *Id.* The statute defines civil disorder as "any public disturbance involving acts of violence by assemblages of three

---

[1] A number of courts outside this circuit have also recently rejected similar challenges to Section 231. *See United States v. Phomma*, No. 20-465, 2021 WL 4199961, at *5 (D. Or. Sept. 15, 2021); *United States v. Rupert*, No. 20-cr-104 (NEB/TNL), 2021 WL 1341632, at *16–*20 (D. Minn. Jan. 6, 2021) (Report & Recommendation), *adopted*, 2021 WL 942101 (D. Minn. Mar. 12, 2021); *United States v. Pugh*, No. 1:20-cr-73-TFM, slip op. (S.D. Ala. May 13, 2021); *United States v. Wood*, No. 20-cr-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021); and *United States v. Howard*, No. 21-cr-28-pp, 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021).

or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

Reading the statute as a whole, it passes muster; Judd cannot meet the high bar required to invalidate a statute as vague or overbroad. The statute sufficiently provides notice of the conduct it prohibits. Nor are there a substantial number of unconstitutional applications, particularly compared with the statute's plainly legitimate conduct restrictions. Vagueness and overbreadth are not judged according to whether a litigant might identify a hypothetical edge case where application of a law might be questionable, yet Judd erroneously urges the Court to do so.

A.      **Vagueness and overbreadth doctrines**

An outgrowth of the Due Process Clause of the Fifth and Fourteenth Amendments, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at

1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is not vague because it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603–04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

There is a strong presumption that a statute is not vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Other courts in this district have recognized that high bar. *See United States v. Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020); *see also United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion).

Facial overbreadth challenges—in which a defendant asserts that a statute, constitutionally applied to him, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)—are even more exceptional. Overbreadth can invalidate a criminal law only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep,'" and no limiting construction is available. *Id.* (quoting *New York v. Ferber*, 458 U.S. 747, 769–771 (1982)); *see also City of Houston v. Hill*, 482 U.S. 451, 458 (1987). The Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.

"[T]he mere fact that one can conceive of some impermissible applications of a statute is

not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, a defendant must show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." *Id.* at 801. "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Invalidating a statute for overbreadth is "strong medicine" to be applied "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). If the statute is "readily susceptible" to a narrowing construction that would make it constitutional, it must be upheld. *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988); *accord Broadrick*, 413 U.S. at 613; *United States v. Rundo*, 990 F.3d 709, 714 (9th Cir. 2021) ("we construe [the riot statute, 18 U.S.C. §§ 2101–2102] as constitutional if we can reasonably do so").

### B.      Section 231 is not void for vagueness

Federal legislation enjoys a presumption of constitutionality that may only be overturned "upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison,* 529 U.S. 598, 607 (2000). Judd cannot overcome this presumption.

Section 231(a)(3) is not constitutionally vague. *See McHugh,* 2022 WL 296304, at *14*; *Nordean,* 2021 WL 6134595, at *17; *Fischer*, 2022 WL 782413, at *2; *Bingert*, 21-cr-91 (RCL), ECF No. 67*, at 22-25. It provides sufficient notice of the conduct it prohibits. The terms Judd attacks, such as "any act to obstruct, impede, or interfere" and "civil disorder," Mot. at 4-5, do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Nordean*, 2021 WL 6134596*, at *16 (observing that "there are specific fact-based ways to determine whether a

'defendant's conduct interferes with or impedes others,' or if a law enforcement officer is performing his official duties 'incident to and during' a civil disorder."). Like the challenge recently rejected in *McHugh*, Judd's motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation—the latter is perfectly normal, while the former is indicative of constitutional difficulty." *McHugh,* 2022 WL 296304, at *16.

Section 231(a)(3) does not prohibit mere presence at a civil disorder, but rather, "an act committed during the course of such disorder." *United States v. Mechanic*, 454 F.2d 849, 853 (8th Cir. 1971). And not just any act: it prohibits only concrete "act[s]" that are performed with the specific purpose to "obstruct, impede, or interfere" with firefighters or law enforcement carrying out their official duties during a civil disorder. It punishes intentional conduct, not "mere inadvertent conduct." *United States v. Featherston,* 461 F.2d 1119, 1122 (5th Cir. 1972).

Contrary to defendant's arguments, the statute's terms are thus quite different from statutory terms that courts have found to be vague, such as statutes that turn on subjective judgments of whether a defendant's conduct was "annoying" or "indecent," or those that depend on the victim's state of mind, as in the cases defendant cites. *See Nordean,* 2021 WL 6134595, at *16*; see also Williams*, 553 U.S. at 306; Mot. at 6 (citing *Coates*, 402 U.S. at 614, *United States v. Kozminski,* 487 U.S. 931, 949–50 (1988)).[2] "An ordinary person would have an intuitive

---

[2] Judd also cites *McCoy v. City of Columbia*, 929 F. Supp. 2d 541 (D.S.C. 2013) (Mot. at 8); he states that *McCoy* invalidated the law at issue as overbroad, but *McCoy* in fact found it unconstitutionally vague. Id. at 554. In any event, *McCoy* is distinguishable. *See McHugh* 2022 WL 296304, at *16. *McCoy* invalidated an ordinance making it unlawful "for any person to interfere with or molest a police officer in the lawful discharge of his duties." *Id.* at 546. As Judge Bates observed, unlike Section 231(a)(3), "the ordinance at issue in *McCoy* did not include a scienter requirement, and its use of only two operative verbs ('interfere and molest') prevented interpreters from . . . giving those words 'more precise content by the neighboring words with which it is associated." *McHugh*, at *16 n.24 (citing *McCoy*, 929 F. Supp. 2d at 553) ((quoting

understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement." *McHugh,* 2022 WL 296304, at *14. In addition, Section 231(a)(3) is not unique; many state and federal statutes likewise criminalize "obstructing" the government's efforts to enforce the law and maintain public order, and they have been upheld. *See, e.g.,* 26 U.S.C. § 7212(a) (prohibiting obstructing or impeding the administration of the tax laws); 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); *United States v. Brice,* 926 F.2d 925, 930–31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101-20.305, regulation prohibiting impeding or disrupting government duties); *see also* Cal. Penal Code § 148 (prohibiting resisting, delaying, or obstructing any peace officer or emergency medical technician); *State v. Illig-Renn,* 341 Or. 228 (2006) (rejecting constitutional attacks leveled against O.R.S. 162.247(1)(b), which prohibits interference with a police officer); *State v. Steen,* 164 Wash. App. 789, 808 (2011) (rejecting as-applied constitutional challenge to RCW 9A.76.020(1), which criminalizes obstructing police officers).

Judd also claims that the phrase "incident to and during the commission of a civil disorder" is vague because he cannot tell whether the statute requires an individual to have participated in the civil disorder or if it is sufficient that he be in the general vicinity of the event. Mot. at 5. This argument, too, is meritless. "The crime set forth by the statute is not mere presence at a civil disorder . . . but an act committed during the course of such a disorder, so 'civil disorder' simply describes the environment in which the act must be committed in order to be subject to prosecution under § 231(a) (3)." *Mechanic*, 454 F.2d at 852; *see also Howard*, 2021 WL 3856290, at *14 ("[T]he statute does not require the government to prove that the defendant created the civil disorder, or that he was participating in the civil disorder."). Contrary to Judd's argument that any

---

*United States v. Stevens*, 559 U.S. 460, 474 (2010)).

"tumultuous public gathering" could qualify, Mot. at 5, "it is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual." *Mechanic*, 454 F.2d at 853; *see* 18 U.S.C. § 232(1); *cf. United States v. Huff*, 630 F. App'x 471, 489 (6th Cir. 2015) (unpublished) (rejecting vagueness challenge to "civil disorder" term in 18 U.S.C. § 231(a)(2) and citing definition in 18 U.S.C. § 231(1)). *See McHugh*, 2022 WL 296304, at *14, n.22.

And even if a broad range of public gatherings could be deemed "civil disorders," Section 231(a)(3) criminalizes only particular conduct, not mere participation in such a disorder. The "civil disorder" language operates to <u>narrow</u> the situation where the statute may apply—unlike other statutes, which criminalize acts of obstruction, wherever they may take place. *See* 26 U.S.C. § 7212(a) (criminalizing obstruction of tax laws). The requirement that the *actus reus* take place in the context of a civil disorder does not make Section 231 vague; to the contrary, it limits its application.

Judd's argument that the statute is vague because it lacks an express scienter requirement or *mens rea* (Mot. at 5-7) is also incorrect. Judd ignores the fact that Section 231(a)(3) requires *intent*, which narrows its scope. *See Williams*, 553 U.S. at 294 (focusing on scienter requirement in finding that a statute was not overbroad); *McHugh,* 2022 WL 296304, at *17 (finding that Section 231(a)(3) includes an intent requirement); *Fischer*, 2022 WL 782413, at *3 (citing *McHugh*); *Bingert*, 21-cr-91, ECF No. 67, at 22.  The requirement that a defendant who violates Section 231(a)(3) act with the intent to obstruct, interfere or impede is critical to the First Amendment analysis. *See United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir. 1987) (intent requirement prevents application of statute to protected speech). The statute requires proof that the

"act" was done "to obstruct, impede, or interfere" with a firefighter or police officer, *i.e.,* the defendant's purpose or intent in performing the "act" must be to obstruct, impede, or interfere. *See Mechanic*, 854 F.2d at 854 (construing Section 231(a)(3) to include an intent requirement). And even if the statute lacked an express scienter requirement, courts "generally interpret [] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (citation omitted); *see also United States v. Cassel*, 408 F.3d 622, 634 (9th Cir. 2005) ("[E]xcept in unusual circumstances, we construe a criminal statute to include a *mens rea* element even when none appears on the face of the statute.").

Judd's vagueness claim also fails because his conduct clearly falls within the ambit of Section 231. The Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Nordean,* 2021 WL6134595, at *17 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (cleaned up)); *see generally Wood*, 2021 WL 3048448, at *9 ("Defendant does not have standing to bring a facial vagueness challenge" to § 231(a)(3) because he failed to "demonstrate that [the statute]is vague as applied to his conduct"). The January 6, 2021 attack on the United States Capitol was clearly a "civil disorder," not just some "tumultuous public gathering" to which the police were called. And there is no question that Judd participated in the disorder. Tracking the statutory language, the Fifth Superseding Indictment alleges that he "commit[ted] an act to obstruct, impede, and interfere with a law enforcement officer." ECF No. 179.  Judd crossed into the restricted area of the Capitol Grounds and eventually onto the Lower West Terrace, which faces the Washington Monument. He then is alleged to have entered the Lower West Terrace tunnel, which leads directly into the

building, and participated in the mob's forceful efforts to break through the police line and into the Capitol building itself. He is also alleged to have thrown a firework at the line of officers seeking to protect the tunnel entrance. He was not some bystander. No one could credibly claim to believe that he could lawfully throw objects at officers or use physical force to block, push, and press against law enforcement who were attempting to prevent the mob from entering the Capitol via the tunnel entrance. The statute is "sufficiently clear that a normally intelligent person could ascertain its meaning and would be given fair notice of whether or not his conduct is forbidden." *Mechanic*, 454 F.2d at 854.

### C. Section 231(a)(3) is not unconstitutionally overbroad

Judd's remaining claims are most appropriately cast as an overbreadth argument—he contends that Section 231 criminalizes too wide an array of activity, including protected speech. "[T]his exact argument has been heard and rejected by at least five different federal judges all within the last year." *McHugh*, 2022 WL 296304, at *17 (citing *Mostofsky*, 2021 WL 6049891, at *8–9; *Nordean*, 2021 WL 6134595, at *17; *Howard*, 2021 WL 3856290, at *11–12; *Phomma*, 2021 WL 4199961, at *4–5; *Wood*, 2021 WL 3048448, at *7–8, and adding, "This Court joins them."); *see also Fischer,* 2022 WL 782413, at *3- *4.

Section 231(a)(3) is not overbroad because "the statute's potentially unconstitutional applications are few compared to its legitimate ones." *Mostofsky,* 2021 WL 6049891, at *8. The statute's scope is primarily, if not exclusively, conduct or unprotected speech, such as threats. The plain text supports this reading. *See Nordean*, 2021 WL 6134595, at *17. An overbreadth challenge faces a steep uphill climb when the statute focuses mainly on conduct, as Section 231(a)(3) does. *See Hicks*, 539 U.S. at 119, 124 (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct" and observing that laws "not specifically addressed to speech or to conduct necessarily associated with

speech" are far less likely to be overbroad).

In *Mechanic*, the Eighth Circuit rejected a similar overbreadth challenge to § 231(a)(3). "The section applies only to a person who acts to impede, obstruct, or interfere with an official described in the statute." 454 F.2d at 852. The Eighth Circuit held that the "conduct involved here [the massing of a mob that threw stones at an R.O.T.C. building on a college campus to protest the Viet Nam war, followed by rock and bottle-throwing at firemen who arrived to quell the disturbance] is not entitled to constitutional protection." *Id.* As the Court explained, "[t]he First Amendment has not been extended to protect rioting, inciting to riot, or other forms of physical violence." *Id.* (citation omitted).

Judd argues that Section 231(a)(3) could prohibit conduct "undertaken merely to convey a message or symbolic content" (and protected by the First Amendment) because it applies to "any act to obstruct, impede, or interfere." Mot. at 4-5. Even if there could be "limited instances in which speaking constitutes the 'act' of interfering with a law-enforcement officer," *Mostofsky,* 2021 WL 6049891, at *8, those instances are just that: limited. *McHugh*, 2022 WL 296304, at *17. As *Mostofsky* found, Section 231's "plain text, however, indicates that it is 'targeted primarily if not exclusively at conduct rather than speech.'" *Id.* (citing *Phomma*, 2021 WL 4199961, at *5); *see also Nordean,* 2021 WL 6134595, at *17 ("Section 231(a)(3) does not even mention speech, and it simply does not prohibit peaceful expression or association."); *Mechanic*, 454 F.2d at 852 (Section 231 "does not purport to reach speech of any kind. It reaches only acts to impede, obstruct, or interfere with police officers and firemen"), *see also Wood*, 2021 WL 3048448, at *7 ("This Court agrees with *Mechanic* that § 231(a)(3) applies to conduct, not speech."). As such, it is unlikely to present a "realistic danger" that it will "significantly compromise recognized First Amendment protections." *Mostofsky,* 2021 WL 6049891, at *17 (quoting *Vincent,* 466 at 800).

Judd relatedly contends that Section 231 "casts far too wide a net" because it is not limited to "violent acts or acts that result in bodily injury or that otherwise put persons or property in imminent danger," and could therefore reach "acts with protected expressive content or those that occur in a traditional public forum." *See* Mot. at 8.[3] Like Mostofsky and Fischer before him, defendant Judd offers similar examples of potential unlawful applications of Section 231(a)(3), such as a bystander "who yells at police to desist from an arrest, one who gestures at officers to distract or to encourage resistance, or one who records police activity with a cell phone."  Mot. at 8; *cf. Mostofsky,* 2021 WL 6049891 at *8 2022 WL 782413, at *3 .

Judge Boasberg held that Mostofsky was wrong, while Judge Nichols ruled that Fischer was wrong.  *Mostofsky,* 2021 WL 6049891, at *8–*9; *Fischer*, 2022 WL 782413, at *3 - *4. Judd's hypotheticals do not undermine the conclusion that "[m]any more potential applications would fall within the statute's plainly legitimate sweep." *Mostofsky,* at *8 (citation omitted). As noted above, the statute prohibits both violent acts (which are not protected by the First Amendment), and non-violent conduct that is not expressive, such as "creating a barricade to prevent officers' movement." *See id.* Again, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Mostofsky,* 2021 WL 6049891, at *8 (quoting *Vincent*, 466 U.S. at 800); *see also Howard*, 2021 WL 3856290, at *11 (rejecting overbreadth claim while noting that "because the statute does not require a violent act or an assaultive act, the government perhaps could charge someone who yelled at an officer during a civil disorder and could argue that the yelling was an 'act' that 'attempted to obstruct' an officer performing her lawful duties"). Courts have denied similar challenges to

---

[3]     Judd's reference to "acts…that occur in a traditional public forum" is misguided. While there is a greater right to speak in a public forum, there is no right to engage in non-protected (indeed, criminal) conduct there.

Section 231(a)(3) while recognizing that the statute is not limited to "violent" acts for the simple reason that the statute is not overbroad, as explained above, and so no limiting construction is required. *See, e.g., Mostofsky,* 2021 WL 6049891 at *9 (finding that "the Court need not adopt a limiting construction such that § 231(a)(3) reaches only violent conduct" to uphold the statute and collecting cases); *see also McHugh,* 2022 WL 296304, at *17, n.26, *Wood*, 2021 WL 3048448, at *7 (rejecting overbreadth challenge to § 231(a)(3) while recognizing that it is possible for nonviolent acts to also fall within the statute's prohibition.").[4]

Moreover, Judd's hypotheticals may not even be criminal under the statute because they "would not necessarily rise to the level of 'obstruct[ing], imped[ing], or interfer[ing]' with a law-enforcement officer," as the statute requires. *Mostofsky,* 2021 WL 6049891, at *8. Indeed, as noted above, Section 231 contains numerous guardrails ensuring that not all "acts" qualify: they must obstruct, interfere with, or impede; and they must occur during a civil disorder, which is defined, in part, as a public disturbance "involving acts of violence." *Mostofsky,* 2021 WL 6049891, at *8; *Wood,* 2021 WL 3048448, at *7. Even if "some expressive conduct may fall within its remit," however, Section 231(a)(3) still would not "make unlawful a substantial amount of constitutionally protected conduct." *Mostofsky,* 2021 WL 6049891, at *8 (citation omitted). Judd has failed to show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Vincent*, 466 U.S. at 801. His overbreadth and vagueness challenges fail.

---

[4]     While *Mechanic* states that Section 231(a)(3) "applies only to violent physical acts," courts do not take this to mean that it imposed such a limitation on the statute; rather, "it appears that the Eighth Circuit was considering the specific 'acts' committed by the defendants in that case—throwing cherry bombs at police officers and firemen—when it referenced "violent acts." *Howard,* 2021 WL 3856290, at *11; *Nordean,* 2021 WL 6134595 at *17 n.14.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY: ____/s/_____
JOCELYN BOND
Assistant United States Attorney
D.C. Bar No. 1008904
Email: Jocelyn.Bond@usdoj.gov

KIMBERLY L. PASCHALL
Assistant United States Attorney
D.C. Bar No. 1015665
Email:Kimberly.Paschall@usdoj.gov