UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-40 (TNM) |
| | : | |
| PATRICK MCCAUGHEY, et. al., | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT DAVID JUDD'S
MOTION TO DISMISS COUNTS THIRTY-EIGHT AND FORTY-SIX OF THE
THE FIFTH SUPERSEDING INDICTMENT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant David Judd's Motion to Dismiss Counts Thirty-Eight and Forty-Six of the Fifth Superseding Indictment. ECF Nos. 179, 256. Specifically, the defendant challenges the counts charging him with Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A); and Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A). ECF Nos. 256, 262, 268, and 271.

Several courts in this district have recently written opinions rejecting many of the challenges the defendant raises here, as well as other arguments related to the Constitutionality of 18 U.S.C. § 1752. *See United States v. Mostofsky*, 21-cr-138 (JEB), 2021 WL 6049891 (D.D.C. Dec. 21, 2021); *United States v. Nordean,* 21-cr-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021); *United States v. McHugh,* 21-cr-453 (JDB), 2022 WL 296304 (D.D.C. Feb. 1, 2022); *United States v. Andries*, 21-cr-93 (RC), 2022 WL 768684 (D.D.C. Mar. 14, 2022); *United States v. Puma*, 21-cr-454 (PLF), 2022 WL 823079 (D.D.C. Mar. 19, 2022); *United States v. Bingert*, 21-cr-91 (RCL), ECF No. 67 (D.D.C. May 25, 2022). Indeed, this Court has addressed and a denied

a motions to dismis the 18 U.S.C. § 1752(a) charges in *United States v. Griffin*, No. 21-cr-92 (TNM), 2021 WL 2778557 (D.D.C. July 2, 2021). There is no reason for this Court to differ here. The Court should deny the pending motion to dismiss count Thirty-Eight and Forty-Six.

## **FACTUAL BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate ("the Joint Session") convened in the United States Capitol building ("the Capitol") to certify the vote of the Electoral College of the 2020 U.S. Presidential Election ("the Electoral College vote"). The Capitol is secured 24 hours a day by United States Capitol Police ("Capitol Police") and permanent and temporary barriers that restrict access to the Capitol grounds and building. On January 6, 2021, only authorized individuals with appropriate identification were allowed on the Capitol grounds or inside the Capitol. The First Street pedestrian entrance was guarded by Capitol Police. Prominent signs posted on metal barriers at the pedestrian entrance and other locations stated, "AREA CLOSED By order of the United States Capitol Police Board."

At 1:00 p.m., the Joint Session convened in the Capitol to certify the Electoral College vote. Vice President Michael R. Pence, in his constitutional duty as President of the Senate, presided over the Joint Session. At 2:20 p.m., members of the House and Senate (including Vice President Pence)—who had withdrawn to separate chambers to resolve an objection—were evacuated from their respective chambers as the result of rioters' breach of the Capitol. The Joint Session was halted while Capitol Police and other law-enforcement officers worked to restore order and clear the Capitol building and grounds of the unlawful occupants.

Defendant Judd, and each of the defendants who have joined in his motion to dismiss the counts related to 18 U.S.C. §§ 1752 – including defendants McCaughey, Stevens, and Cappuccio – joined the mob that overwhelmed law enforcement on the West Front of the U.S. Capitol and forced their way into the "tunnel" created by the structures present on the Lower West Terrace,

meant to form the Inauguration stage for the Inauguration of President Joe Biden on January 20, 2021.

Defendants McCaughey and Stevens were among those who entered the tunnel shortly after 2:40 p.m. At approximately 2:49 p.m., both defendant McCaughey and defendant Stevens had made it to the front of the police line as well. Between 2:49 p.m. and 3:15 p.m., these two defendants, and others, assaulted several law enforcement officers, pushing against the line in a heave-ho effort to get into the building, and using various weapons in their assaults. Defendant McCaughey gained possession of a clear police riot shield, and used it to push against the police line, crushing a Metropolitan Police Department officer in the door. Defendant Stevens then used a clear riot shield to strike a U.S. Capitol Police officer in the face.

Closer to 3:00 p.m., defendants Judd and Cappuccio entered the tunnel. Defendant Judd encouraged other rioters to create a shield wall, and then lit a firecracker and tossed it towards the police line. Defendant Cappuccio then pushed forward through the crowd to the police line, bracing and assisting the crowd in an effort to break through and into the building. Defendant Cappuccio ultimately ended up in front of the same Metropolitan Police Department officer that defendant McCaughey crushed in the door; defendant Cappuccio grabbed the officer's gas mask, violently yanking on it in an attempt to rip it off. Defendant Cappuccio left the tunnel with a baton in his hand that he did not have when he initially entered the tunnel.

Law enforcement was able to push rioters out of the tunnel and on to the Lower West Terrace at approximately 3:18 p.m., reestablishing the police line at the mouth of the tunnel. For the next two hours, officers continued to battle the rioters who remained, and the Lower West Terrace was not cleared until after 5:00 p.m. At approximately 8:00 p.m., the Joint Session reconvened, presided over by Vice President Pence, who had remained within the Capitol building

in a secure location throughout the disruption of the proceeding. The Joint Session of Congress lasted until the early hours of January 7, 2021, when the electoral ballots were fully counted, and the Electoral College vote was certified.

## PROCEDURAL HISTORY

On January 29, 2021, the grand jury returned an indictment charging defendant Patrick McCaughey with various charges for his conduct at the U.S. Capitol on January 6, 2021. ECF No. 5. The grand jury returned the First Superseding Indictment charging Tristan Stevens as a co-defendant with Patrick McCaughey on March 4, 2021. ECF No. 19. On April 16, 2021, the grand jury returned the Second Superseding Indictment, joining David Judd and Christopher Quaglin to the case. ECF No. 37. On June 16, 2021, the grand jury returned the Third Superseding Indictment, adding Robert Morss and Geoffrey Sills. ECF No 68. The grand jury returned the Fourth Superseding Indictment on August 4, 2021, adding David Mehaffie, Steven Cappuccio and Federico Klein as defendants in this action. ECF No. 102. On December 1, 2021, the grand jury charged the nine co-defendants in the Fifth Superseding Indictment, which is the currently-operative charging document for this matter. ECF No. 179. That document charges fifty-three counts, including:

- Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1) and (b) (Counts One, Two, Three, Seven, Eight, Nine, Ten, Eleven, Twelve, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Six, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty-One, Thirty-Two and Thirty-Three);

- Robbery, in violation of 18 U.S.C. § 2111 (Counts Four, Five, Six, Thirteen, Twenty, and Thirty);

- Obstruction of an Official Proceeding, Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) (Count Thirty-Four);

- Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count Thirty Five);

- Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Thirty-Six, Thirty-Seven, Thirty-Eight, Thirty-Nine, Forty, Forty-One, Forty-Two, and Forty-Three);

- Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4) (Count Forty-Four, Forty-Five, Forty-Six, Forty-Seven, Forty-Eight, Forty-Nine, Fifty, Fifty-One);

- Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Fifty-Two); and

- Act of Physical Violence in the Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Fifty-Three).

ECF No. 179.

Consistent with the Scheduling Order in this case (ECF No. 232), on April 15, 2022, defendant David Judd filed a motion pursuant to Fed. R. Crim. P. 12 to dismiss Counts Thirty-Eight and Forty-Six, charging him with Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A) and Engaging in Physical Violence in a Restricted building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§1752(a)(4) and (b)(1)(A). ECF No. 256.  On April 19, 2022, defendant Stevens moved to adopt this motion.  (ECF No. 262).  This Court granted Stevens' motion to adopt via minute order on April 19, 2022.  On April 20, 2022, defendant Cappuccio also filed a motion to adopt the instant motion, among others, (ECF No. 268),

5

which was granted on April 20, 2022. On April 21, 2022, Defendant McCaughey similarly filed a motion to adopt of all of defendant Judd's motions, including the instant motion. (ECF No. 271). This Court granted McCaughey's motion to adopt on April 22, 2022.

The government now opposes defendant Judd's motion to dismiss Counts Thirty-Eight and Forty-Six.

## ARGUMENT

**I.   The Court Should Deny Defendant Judd's Motion to Dismiss Counts Alleging Violations of 18 U.S.C. § 1752**

Defendant Judd contends (ECF 256) that Counts 38 and 46—which charge violations of 18 U.S.C. § 1752—are insufficient because the Vice President was not "temporarily visiting" the Capitol on January 6. That argument is incorrect, as this Court, *United States v. Griffin,* 21-cr-92 (D.D.C. Mar. 22, 2022) (denying motion for judgment of acquittal arguing that Vice President was not temporarily visiting the Capitol on January 6, 2021), and all the other judges from this district to have addressed the issue have concluded. *See United States v. Bingert*, 21-cr-91, ECF 67 at 28 (D.D.C. May 25, 2022); *United States v. Puma*, 21-cr-454, 2022 WL 823079, at *16-*19 (D.D.C. Mar. 19, 2022) (Friedman, J.); *United States v. Andries*, 21-cr-93, 2022 WL 768684, at *16-*17 (D.D.C. Mar. 14, 2022) (Contreras, J.); *United States v. McHugh*, --- F.Supp.3d ---, 21-cr-453, 2022 WL 296304, at *20-*22 (D.D.C. Feb. 1, 2022) (Bates, J.); *see also United States v. Fischer*, 21-cr-234, Minute Entry (D.D.C. May 3, 2022).1 The Court should therefore deny Judd's motion to dismiss Counts 38 and 46 of the indictment.

---

1 In *Fischer*, Judge Nichols orally denied the defendant's motion to dismiss counts charging violations of Section 1752 after concluding that those counts adequately pleaded that the Vice President was temporarily visiting the Capitol on January 6, 2021. Judd is therefore incorrect (ECF 256 at 11 n.11) to suggest that Judge Nichols in *Fischer* reached a different conclusion. The government has requested a transcript containing that oral ruling and will submit it as a supplementary authority in this case.

### A. Section 1752's text, purpose, and history make clear that the statute covers the Vice President's Visit to the Capitol on January 6, 2021.

Counts 38 and 46 charge Judd with violations of 18 U.S.C. § 1752. Section 1752 prohibits certain conduct in any "restricted building or grounds." *See* 18 U.S.C. § 1752(a)(1)-(5). As relevant here, a "restricted buildings or grounds" is "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where . . . [a] person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). Judd's arguments that the Vice President was not temporarily visiting the U.S. Capitol on January 6 are "laughable" because any plausible definitions of the relevant terms confirm that the Vice President was temporarily visiting the Capitol building on January 6, 2021. *Bingert*, *supra*, at 28.

1. To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). The "ordinary meaning" of "temporarily visit" includes a trip to the office. *See Andries*, 2022 WL 768684, at *16.

The term "temporary" means "[l]asting for a time only; existing or continuing for a limited time; transitory." *Temporary*, Black's Law Dictionary (11th ed. 2019). The verb "visit" means, *inter alia,* "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee." *See* https://www.merriam-webster.com/dictionary/visit. Taken together, therefore, "someone is 'temporarily visiting' a location if they have gone there for a particular purpose, be it 'business, pleasure, or sight-seeing,' and for a limited time, which could be 'brief' or 'extended' while nonetheless remaining 'temporary.'" *McHugh*, 2022 WL 296304, at *20. It is, moreover, "quite natural to say that a person 'temporarily visits' a place where she has an office." *Andries*, 2022 WL 768684, at *16. Applying these definitions, the Vice President "was temporarily visiting the Capitol on January 6,

7

2021: he was there for a limited time only in order to preside over and participate in the Electoral College vote certification." *Puma*, 2022 WL 823079, at*17; *accord McHugh*, 2022 WL 296304, at *21 ("[T]he Vice President went to the Capitol for a particular purpose—in this case, an official business purpose—and stayed there for only a brief time; his sojourn at the Capitol was 'for a period relatively short' and set to 'terminate upon the occurrence of an event having a reasonable possibility of occurring within a short period of time,' namely the completion of the certification vote.").

Simply because Vice President Pence presided over the Senate Chamber on January 6 to count the electoral votes does not mean he could not "temporarily visit" the Capitol to accomplish that task. The President or Vice President frequently "temporarily visit" various locations for work-related purposes, as they fulfill various official duties. "[O]ne can "visit" a location for the business purpose of working and meeting there." *Andries,* 2022 WL 786684, at *16. As a definitional matter, part of what it means to "temporarily visit" a location is to go there "for a particular purpose"—which, in this case, was the Certification of the Electoral College vote. *McHugh*, 2022 WL 296304, at *20. The definitions of "visit" do not include a limitation "based on a trip's purpose," and including such a limitation "flies in the face of the ordinary usage" of the ordinary words. *Id.* at *21. Under Judd's logic, someone who travels for a business trip, including an appellate judge traveling out of town to hear an oral argument, would not be "temporarily visiting," even though describing such conduct as a temporary visit "would be perfectly natural." *Id.*; *accord Andries*, 2022 WL 768684, at *16. That fact that Vice President Pence traveled to the Capitol for a particular purpose on January 6 in fact *strengthens* the argument that he "temporarily visited" there.

8

Under the plain language of Section 1752, then, the Vice President "was temporarily visiting the Capitol on January 6, 2021: he was there for a limited time only in order to preside over and participate in the Electoral College vote certification." *Puma*, 2022 WL 823079, at *17; *accord Andries,* 2022 WL 786684, at *16 ("Vice President Pence was 'temporarily visiting' the Capitol on January 6, 2021 if he went to the Capitol for a particular purpose, including a business purpose, and for a limited time only. Plainly he did. He went to the Capitol for the business purpose of carrying out his constitutionally assigned role in the electoral count proceeding; he intended to and did stay there only for a limited time."). Judd's argument is contrary to this "commonsense conclusion." *McHugh*, 2022 WL 296304, at *21. His conduct accordingly falls within Section 1752's plain sweep because he unlawfully entered a restricted area while the Vice President was "temporarily visiting" that area.

Moreover, even if it were "'awkward . . . to describe an ordinary commute from home to one's regular workplace as 'temporarily visiting' the office,' this case does not present such a situation." *Andries*, 2022 WL 768684, at *17 (quoting *McHugh*, 2022 WL 296304, at *22). The Capitol "is not the Vice President's regular workplace, nor was Vice President Pence's trip to the Capitol on January 6, 2021 analogous to a regular commute to the office." *McHugh*, 2022 WL 296304, at *22. At trial, the government could offer evidence that Vice President Pence had four offices within the District of Columbia: an executive office in the West Wing of the White House, a legislative office in the Dirksen Senate Office Building and ceremonial offices for functions related to his role in each branch. *See* Congressional Directory of the 116th Congress (2019 – 2020), *Officers and Officials of the Senate* at 397 (February 12, 2016) (available at https://www.govinfo.gov/app/collection/cdir/cdir_114/2016-02-12/F1); "The Vice President's Residence & Office" (available at https://www.whitehouse.gov/about-the-white-house/the-

9

grounds/the-vice-presidents-residence-office/). Senate 212, the office set aside in the Capitol Building for the Vice President, is known as a "ceremonial office," and testimony would show that Vice President Pence visited this office at the Capitol only a handful of times during his four-year tenure. Calling this a "permanent office," as the defendant suggests (ECF 256 at 3), is thus "more than a little misleading." *McHugh,* 2022 WL 296304, at *22; *see also Andries*, 2022 WL 768684, at *17 ("Like a President who maintains an office at his home-state residence, and like the CEO who maintains a reserve office at her firm's satellite location, Vice President Pence held an office at the Capitol, but did not use that office as his primary, regular workspace."). Additionally, trial evidence would also show that the Secret Service considered the Vice President's trip to the Capitol on January 6 a "visit" by a Head of State. *See* Secret Service Head of State Worksheet (Redacted), attached as Exhibit A.

2. Statutory purpose and legislative history also support that plain-text interpretation. Judd's interpretation of "temporarily visit"—which urges the Court (ECF 256 at 8-9) to carve out an exception for a protectee performing an official duty in a building where he or she has an office—"is not supported by the statutory text and is out of step with the statutory context." *Puma*, 2022 WL 823079, at *17. Sections 1752 and 3056, which is cited in Section 1752(c)(2), are principally designed to protect certain high-level Executive Branch officials and their families. Section 1752 aims to deter attacks on these protectees by criminalizing attacks on these individuals either in their official residences, *see* 18 U.S.C. § 1752(c)(1)(A), in any "restricted building or grounds" where they are or will be temporarily visiting, 18 U.S.C. § 1752(c)(1)(B), or in any "restricted building or grounds" that is restricted for a "special event of national significance,"[2]

---

[2] Although the Presidential Inauguration was designated as a "special event of national significance," the Certification proceeding on January 6, 2021, was not. *See* Congressional Research Service, *National Special Security Events: Fact Sheet* (Jan. 11, 2021), available at

18 U.S.C. § 1752(c)(1)(C). Judd's narrowed interpretation of the "temporarily visiting" prong would protect a protectee for brief visits—but not work trips—outside of Washington, D.C., but not at "any location in Washington, D.C. (other than an official residence) where the protectee maintains an office." *Puma*, 2022 WL 823079, at*17. Such an interpretation would "leave an arbitrary gap in the application of the law." *Id.* "The much more sensible reading is that subsection (c)(1)(B) applies to those areas not covered by subsections (c)(1)(A) and (c)(1)(C) where a Secret Service protectee may nonetheless face security risks." *Id.* at *18.

While the Court need not resort to legislative history to find that Vice President Pence was temporarily visiting the Capitol on January 6, the straightforward reading of Section 1752's context and purpose outlined above finds support in its legislative history. That history explains that Section 1752 "was designed to remedy the fact that 'there is, at the present time, no Federal statute which specifically authorizes [the Secret Service] to restrict entry to areas where the President maintains temporary residences *or offices*.'" *Andries*, 2022 WL 768684, at *17 (citing S. Rep. No. 91-1252 at 7S. Rep. No. 91-1252 at 7 (1970) (emphasis added). Indeed, Congress recognized that the Secret Service's "protective mission" encompasses "securing the buildings and grounds where those protected *work or visit*." 112 Cong. Rec. H1,373 (daily ed. Feb. 28, 2011) (emphasis added); *see Puma*, 2022 WL 823079, at*17 (noting that the relevant legislative history "suggests that Congress intended Section 1752 to apply broadly and comprehensively, reinforcing the security of Secret Service protectees at a number of locations").3

3. Judd's various counterarguments lack merit. First, Judd contends (ECF 256 at 10) that the interpretation advanced above would "transform" the phrase "temporarily visiting" into a

---

https://sgp.fas.org/crs/homesec/R43522.pdf.

3 Judd is thus mistaken when he contends (ECF 256 at 9-10) that the "weight of history" (*id.* at 9) supports his narrow interpretation of "temporarily visiting."

"mere 'physical present' requirement." That contention is overstated. The full definition in Section 1752(c)(1)(B) makes clear, for example, that a restricted area must at a minimum be a "building or grounds," meaning that it would not cover a protectee traveling in a vehicle or walking along a street that is not enclosed in some "building or grounds." Moreover, the building or grounds must be "posted, cordoned off, or otherwise restricted." It follows, as the defendant notes, that a protectee in restricted portion of an airport hangar or a park, will fall within the ambit of Section 1752. *See* ECF 256 at 10-11 (citing *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005), and *United States v. Junot*, 902 F.2d 1580 (9th Cir. 1990) (unpublished)). Absent those characteristics, the protectee's mere physical presence would not be sufficient to trigger liability under Section 1752.

Second, in arguing that the unanimous conclusion from judges on this Court that the Vice President was temporarily visiting the Capitol on January 6, 2021 is "faulty," Judd advances (ECF 256 at 12-13) the claim that adopting that "commonsense conclusion," *McHugh*, 2022 WL 296304, at *21, would give rise to a vagueness problem. That claim is incorrect.

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV. An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'" *United*

*States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)).

For the reasons given above, the plain-language phrase "temporarily visiting" provides more than adequate notice. That term readily encompasses the Vice President's visit to the Capitol on January 6—as "anyone with a basic grasp of the English language" would understand. *Bingert*, *supra*, at 28. The Vice President was at the Capitol for a specific purpose—to preside over the Certification proceeding—and left the Capitol after he completed that purpose. As this Court has already concluded when rejecting a different vagueness challenge to Section 1752, "[t]his law is no trap awaiting the unwary." *United States v. Griffin*, 549 F. Supp. 3d 49, 57 (D.D.C. 2021).

### B. The rule of lenity is inapplicable.

Judd also invokes (ECF 256 at 14-16) the rule of lenity. "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 83 (1955). That principle underlies the "venerable" rule of lenity, *see United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021) (en banc) (Bibas, J., concurring)), which ensures that "legislatures and not courts" define criminal activity given the "seriousness of criminal penalties" and the fact that "criminal punishment usually represents the moral condemnation of the community." *United States v. Bass*, 404 U.S. 336, 348 (1971); *see Liparota v. United States*, 471 U.S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.").

The rule of lenity, however, does not come into play when a law merely contains some degree of ambiguity or is difficult to decipher. The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the

13

statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998); *Young v. United States*, 943 F.3d 460, 464 (D.C. Cir. 2019). In short, some ambiguity is insufficient to trigger the rule of lenity; instead, a court must find "grievous ambiguity" that would otherwise compel guesswork. *See Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (internal quotation marks omitted). "Properly applied, the rule of lenity therefore rarely if ever plays a role because, as in other contexts, 'hard interpretive conundrums, even relating to complex rules, can often be solved.'" *Wooden v. United States*, 142 S. Ct. 1063, 1074 (2022) (Kavanaugh, J., concurring) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)). As this Court observed, "[l]enity is 'a sort of junior version of the vagueness doctrine,'" that "comes into frame only when a court has exhausted all canons of statutory construction and is left with only a coin flip to resolve 'grievous ambiguity.'" *Griffin*, 549 F. Supp. 3d at 57 (citing *United States v. Lanier*, 520 U.S. 259, 266 (1997), and *Barber*, 560 U.S. at 488).

Understanding the term "temporarily visiting" in Section 1752 requires no such coin clip. Stated otherwise, the term is not ambiguous, let alone grievously so. Section 1752's plain text, context, purpose, and legislative history all point in the same direction, namely, that it covers a Secret Service protectee's visit to a place for a particular purpose for a limited time. As every judge in this District, including this Court, has concluded, Section 1752 thus applies to the Vice President's visit to the Capitol on January 6, 2021.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:     /s/
JOCELYN BOND
Assistant United States Attorney
D.C. Bar No. 1008904
Email: Jocelyn.Bond@usdoj.gov

KIMBERLY L. PASCHALL
Assistant United States Attorney
D.C. Bar No. 1015665
Email:Kimberly.Paschall@usdoj.gov