# UNITED STATES DISTRICT COURTFOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEVEN PHILLIP CAPPUCCIO,<br><br>Defendant. | Crim. Action No. 21-40-8 (TNM) |

**STEVEN CAPPUCCIO'S MOTION TO EXCLUDE EVIDENCE AT TRIAL**

Mr. Cappuccio respectfully files the following motions and moves to exclude the following matters and requests that the Court exclude such evidence from the trial.

1. **Motion to Exclude any Evidence or Argument to an "Insurrection", an "Attack", "Rioters" , the 'The Tunnel of Death", or any Similar Informal Reference.**

Mr. Cappuccio moves *in limine* to exclude any evidence, argument, or commentary about the public controversy surrounding what transpired on January 6, 2021 at the Capitol, including reference to an "insurrection", an "attack" on the Capitol, the individuals as "rioters", the Lower West Terrace dubbed as the "Tunnel of Death",  or any similarly informal reference to location, participants or events.

The government should not be permitted to offer evidence or argument about the public and political controversy surrounding January 6, 2021, including reference to an "insurrection" or an "attack" on the Capitol, calling individuals present as "rioters", dubbing the Lower West Terrace, as the "Tunnel of Death", and referring to the media coverage or political discussion regarding the same. This issue has been and continues to be the focus of political and media scrutiny and debate. For that reason, it is likely to be a uniquely sensitive issue with the jury. Such matters have no bearing on this case and would inflame and prejudice the jury and waste the Court's and the jury's time.

First, the only possible objective for alluding to such topics would be a manifestly improper one – namely to imply to the jury that, because Mr. Cappuccio was at the Capitol on January 6, 2021, he was there for unlawful reasons and because he was in a crowd with individuals who had nefarious intentions on that day, he too must have had those same intentions. Attempts by the government to tap into public sentiment regarding the "insurrection," or to liken Mr. Cappuccio's conduct to that of others who have been identified in the media or elsewhere as affiliated with the "insurrection" should not be permitted. As the D.C. Circuit has held:

> A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The

amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.

*United States v. Monaghan*, 741 F.2d 1434, 1441 (D.C. Cir. 1984); *see also United States v. Hawkins*, 595 F.2d 751, 754 (D.C. Cir. 1978) (prosecutors are not "at liberty to substitute emotion for evidence by equating, directly or by innuendo, a verdict of guilty to a blow against the drug problem"); *United States v. Vega*, 826 F.3d 514, 525 (D.C. Cir. 2016) ("a suggestion that the jury act as the 'community conscience' can constitute error"). References to the public controversy surrounding the individuals at the Capitol on January 6, 2021, would serve no purpose other than to imply to the jury that Mr. Cappuccio is "guilty-by-association" or that convicting Mr. Cappuccio would address a social problem.

Second, the unfair prejudice that would result from any effort to suggest that Mr. Cappuccio's conduct is in step with that of extremist groups such as the Proud Boys, whose conduct and actions have received public scrutiny, would clearly confuse the issues and inflame the jury. *See United States v. Johnson*, 231 F.3d 43, 47 (D.C. Cir. 2000) ("A prosecutor may not make comments designed to inflame the passions or prejudices of the jury. And a prosecutor may not ask jurors to find a defendant guilty as a means of promoting community values, maintaining order, or discouraging future crime."); *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (unfair prejudice relates to "an undue tendency to suggest decision on an improper basis") (quoting Fed. R. Evid. 403, advisory committee's note). Thus, it

would be improper, for example, for the government to liken Mr. Cappuccio's conduct to others' wrongful acts or to appeal to jurors' potential prejudice against anyone who was at the Capitol on January 6, 2021 to overthrow the government and promote chaos, based on the current public controversy. *See* Fed. R. Evid. 401-403.

Finally, such evidence and argument should also be barred because it would confuse the jury and delay the trial. See Fed. R. Evid. 403 (evidence should be excluded where "its probative value is substantially outweighed by a danger of . . . confusing the issues, misleading the jury, undue delay, [or] wasting time"). If it were offered, Mr. Cappuccio would be entitled to respond with context regarding the government's references to the "insurrection" or "attack" in order to correct the misimpression that such political controversies have anything to do with Mr. Cappuccio's reasons for being in the District of Columbia that day. This type of side dispute would be time consuming and would distract from the central issues of this case.[1]

Accordingly, Mr. Cappuccio respectfully requests that the Court preclude the government from offering evidence or argument related to the public and political

---

[1] Despite the fact the offense conduct transpired at the United States Capitol Building, and is quintessentially political in nature, this Court is respectfully asked to consider that references to political parties and respective views of the same lie at the heart of the 'insurrection' characterization.  Political parties and political views drive the fervor regarding the events of January 6, 2021.  This Court is respectfully asked to consider instructing parties to refrain from references to the political affiliation of any individual discussed during trial.  It is unclear how characterization of a witness or defendant as Democrat, Republican or Unaffiliated would have probative value.  The political climate in the United States is, however, frequently defined as "divisive".  As such, once identified, political associations can substantially and unfairly prejudice perceptions of that individual.

controversy surrounding what happened on January 6, 2021, including, but not limited to, reference to the "insurrection" or the "attack" on the Capitol, calling the individuals "rioters", and dubbing the Lower West Terrace as the "Tunnel of Death," and comparable terms of an informal nature used to describe the event, locations or participants involved in the events at the Capitol of January 6, 2021

## 2. Motion to Exclude Impermissible Hearsay Testimony on "Background" and Other Issues from Law Enforcement Agents.

Steven Cappuccio moves *in limine* to preclude evidence and law enforcement agent testimony related to the hearsay calls and tips that initiated the government's investigation against Mr. Cappuccio, as well as government witness testimony with any hearsay from friends of Mr. Cappuccio's who do not testify at trial. This evidence is impermissible hearsay that has no probative value to the extent it is not offered for the truth of the matter asserted. See Fed. R. Evid. 801, 802, 402. In addition, whatever limited probative value such evidence might have – and Mr. Cappuccio submits that it has none – is substantially outweighed by the danger of unfair prejudice. Therefore, the testimony is also inadmissible under Federal Rule of Evidence 403.

Law enforcement agents testified before the grand jury regarding statements made by friends of Mr. Cappuccio's who did not testify before the grand jury, and who were not even necessarily identified by name.[2]

The Federal Rules of Evidence prohibit the admission of an out-of-court statement offered in evidence to prove the truth of the matter asserted. See Fed. R. Evid. 801 (defining hearsay), 802 (making hearsay inadmissible). An out-of-court statement may be admitted if it serves a non-hearsay purpose. However, "[a]s with all evidence, such a statement, when offered for a permissible non-hearsay purpose, must be relevant to a 'fact . . . of consequence' in the case." *United States v. Williams*, 358 F.3d 956, 963 (D.C. Cir. 2004) (quoting Fed. R. Evid. 401). And even if relevant, such a statement may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

To the extent that the government seeks to introduce law enforcement testimony regarding the tips received that initiated the investigation of Mr. Cappuccio, the law of this Circuit is clear: Such testimony by law enforcement agents is inadmissible hearsay. In *United States v. Evans*, 216 F.3d 80 (D.C. Cir. 2000), the government introduced the testimony of an FBI agent that the FBI "had received . . . information that the defendant was involved in drug trafficking." *Id*. at

---

[2] All references are contained in the government's affidavit in support of the search and seizure warrant and the grand jury testimony of law enforcement agents. These documents have not been posted to the public docket, but Mr. Cappuccio will file them under seal if the Court would like to review these materials.

85. The information had come from a government informant who was not a witness and was not available for cross-examination. *Id*. Although the government argued that the statement was not hearsay, the Court concluded that the admission of the agent's testimony was erroneous. The Court held that the agent's testimony was inadmissible hearsay under Rules 801 and 802 because the statements were only relevant to the extent they went to the truth of the matter asserted, thus "the jury was effectively told that the testimony could be used for its truth." *Id.* at 85. The Court rejected the government's rationale that the statements were admissible to "explain why the government agents 'did what they did'" because that rationale "would be acceptable in almost any case involving an undercover operation, and in many others as well. That is a loophole this circuit has previously refused to open." *Id*. at 86.

Here, law enforcement agents' testimony regarding the tips that initiated the investigation of Mr. Cappuccio, or reports from friends of Mr. Cappuccio's who are not testifying, would be plainly inappropriate hearsay testimony at trial. The agents are not the individuals who made the reports, and if the friends or other individuals do not testify, they will not be available for cross-examination. *See Evans*, 215 F.3d at 85 ("Here, the government presented allegations of prior drug dealing, and the defendant was unable to cross-examine the person who made them."). The right to cross-examination is paramount to the Court's consideration precluding hearsay testimony. "When analyzing the underpinnings of the rule excluding hearsay, courts

have noted that '[c]ross-examination may be the greatest legal engine ever invented for the discovery of truth, but it is not of much use if there is no one to whom it can be applied.'" *Boca Investerings P'ship v. United States*, 128 F. Supp. 2d 16, 18 (D.D.C. 2000) (*quoting Evans*, 216 F.3d at 85).

Moreover, law enforcement agent testimony containing hearsay reports from friends of Mr. Cappuccio's or other individuals, who do not testify, is not relevant unless for the truth of the matter asserted. For evidence to be relevant, it must have a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The only possible reason for the government to offer such evidence is to explain why the government conducted an operation to investigate Mr. Cappuccio, and such evidence is only relevant to the extent it is offered for its truth. That the statements may provide background to the circumstances of the investigation or may inform the jury about the state of mind of the agents does not mean the statements are not hearsay and does not render the statements admissible. *See United States v. Stover*, 329 F.3d 859, 870 (D.C. Cir. 2003) ("that a statement provides context to other evidence does not mean that the statement is not hearsay"); *United States v. Sesay*, 313 F.3d 591, 600 (D.C. Cir. 2002) ("To accept appellant's 'state of mind' argument would be to permit a loophole in the hearsay rule large enough to swallow the rule itself."); *United States*

*v. Guerrero,* 650 F.2d 728, 736 (5th Cir. 1981) (holding the admission of hearsay evidence alone was sufficient grounds for reversal where government witness related out-of-court declarations concerning her knowledge of whether medication was actually dispensed by a physician to her family members and noting that such statements were relevant only for their truth and the witness's state of mind was not relevant to any issue in the case).

Thus, the government should be precluded from offering law enforcement agent testimony containing tips that initiated the investigation of Mr. Cappuccio or reports from friends of Mr. Cappuccio who do not testify at trial because such agent testimony would constitute inadmissible hearsay.

In addition, any testimony regarding tips that initiated the investigation or from Mr. Cappuccio's friends who do not testify is inadmissible because "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Mr. Cappuccio will suffer prejudice if agents testify regarding the tips that initiated the investigation, or about statements from Mr. Cappuccio's friends, because the jury is "likely to consider the statement[s] for the truth of what was stated with significant resultant prejudice." *Evans*, 216 F.3d at 87 (*quoting United States v. Reyes,* 18 F.3d 65, 70 (2d Cir. 1994)); 2 McCormick on Evid. § 249 (7th ed. 2016) (Police officers "should not . . . be allowed to relate historical aspects of the case, such as complaints and reports of others containing inadmissible hearsay. Such

statements are sometimes erroneously admitted under the argument that the officers are entitled to give the information upon which they acted. The need for this evidence is slight, and the likelihood of misuse great.").

There is considerable danger here that the jury would consider law enforcement agents' testimony about tips about Mr. Cappuccio for its truth, and therefore as evidence of his propensity to commit the crimes charged in the indictment.

For these reasons, Mr. Cappuccio respectfully requests that the Court preclude the government from offering evidence or argument related to hearsay tips that initiated the government's investigation against Mr. Cappuccio, as well as government witness testimony containing any hearsay from friends who do not testify at trial.

### 3. Motion to Exclude Government Agents From Providing Undisclosed Expert Testimony Based on Prior Investigative Experience.

If the government seeks to have testimony by its agents and investigators admitted as expert opinion, it needs to give notice by June 3, 2022, or it should be barred from doing so by the Court's scheduling order and the prejudice to Mr. Cappuccio that would result. Fair consideration of expert opinions requires prompt disclosure so that all parties may review and assess an expert's qualifications, methods, and conclusions.

Consequently, when a party fails to disclose expert witnesses, there is no "reason to allow, at this time, testimony by expert witnesses who were not properly disclosed. As a result, [a party] may not now rely on declarations or other testimony by putative expert witnesses . . . who were not disclosed before the applicable discovery deadline." *Austin Inv. Fund, LLC v. United States*, No. CV 11-2300 (CKK), 2015 WL 7303514, at *10 (D.D.C. Nov. 19, 2015) (Kollar-Kotelly, J.); *see also Shea v. Kerry*, 961 F. Supp. 2d 17, 49-50 (D.D.C. 2013), aff'd, 796 F.3d 42 (D.C. Cir. 2015) ("unexcused and inexcusable failure to timely designate an expert per the Court's deadlines disqualifies him as an 'expert,' and makes his . . . conclusions inadmissible to the extent they require expert testimony").

After June 3, 2022, if the government has not notified neither Mr. Cappuccio nor the Court that it intends to call its agents or officers as expert witnesses, the government would have made a deliberate determination not to seek expert testimony from these witnesses. The government, in turn, cannot contend that this evidence only recently came to light or became pertinent to its theory of the case as the result of a recent development, as the government has been long aware of the testimony it expects these witnesses to offer. This knowledge clearly implies a deliberate determination not to seek expert opinion testimony from these witnesses. The government should be held to that decision. Any other outcome would be unfairly prejudicial. If the government fails to notify Mr. Cappuccio that it will seek

expert testimony from these agents and officers, the Court should grant Mr. Cappuccio's motion to exclude any such testimony.

Finally, the use of these particular witnesses—who are also expected to testify as fact witnesses—to introduce expert testimony derived from investigative experience would exacerbate the prejudice. The government's reliance on its fact witnesses to provide such testimony would cause significant jury confusion as the jurors seek to distinguish fact testimony from expert opinion. This dual use of a fact witness "as a 'two-hatted' witness providing closely related lay and expert opinion testimony exacerbated these risks." *United States v. Williams*, 827 F.3d 1134, 1160 (D.C. Cir. 2016). Therefore, the government agents who will testify to the facts of the investigation of Mr. Cappuccio are particularly unsuited to provide expert opinion testimony. Even if such testimony were appropriate, the Court should not permit the government to offer it through these witnesses.

### 4.    Motion to Exclude Government Agents, Investigators,  and Officers from Testifying Based on Experience and Training.

The government agents and officers involved in this investigation are fact witnesses who may only testify to observations admissible under Federal Rule of Evidence 701 — that is, observations made in the course of this investigation. Only a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion[.]" Fed. R. Evid. 702. By contrast,

lay witnesses may testify only to information that is both "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *accord United States v. Hampton*, 718 F.3d 978, 981 (D.C. Cir. 2013). Despite this limitation, Mr. Cappuccio expects the government to elicit expert testimony from unqualified witnesses. Opinion testimony from these witnesses, whether based on prior investigative experience or otherwise, must be excluded.

Testimony by government witnesses that extends beyond direct observations during the investigation of Mr. Cappuccio is beyond the scope of testimony admissible under Rule 701. Testimony "based on 'specialized knowledge' [a witness] gained from working on other . . . investigations . . . constitute[s] expert testimony within the scope of Rule 702." *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011) ("[K]nowledge derived from previous professional experience falls squarely 'within the scope of Rule 702' and thus by definition outside of Rule 701.").

This prohibition applies to all opinion testimony based on specialized experience because, "[a]llowing opinion testimony without knowing whether [the] opinion testimony was based to some extent on scientific, technical, or specialized knowledge would leave the district court unable to determine whether the reliability and disclosure requirements of FRE 702 applied." *Williams*, 827 F.3d at 1160. Among the various categories of opinions, testimony "premised on [a witness's]

specialized knowledge as a criminal investigator, rather than his particularized knowledge of" a specific investigation constitutes expert testimony. *United States v. Miller*, 738 F.3d 361, 372 (D.C. Cir. 2013). Allowing these agents to testify to opinions rooted in that knowledge would be "plainly erroneous." *Id*. It is clear that the government may not rely on expert testimony provided by lay witnesses.

The agents and officers whom the government will call are being called as fact witnesses. The government has not designated them as experts and it does not appear that it intends to do so. Agents must therefore be limited to testifying to issues of which they have personal knowledge from their investigation of Mr. Cappuccio. *Athridge v. Aetna Cas. and Sur. Co.*, 474 F. Supp. 2d 102, 105 (D.D.C. 2007) ("Under Federal Rule of Evidence 602, witnesses must have personal knowledge about which they testify."). These fact witnesses, like other fact witnesses offered by the government, may not provide expert opinion testimony based on their investigative experience or any purported medical expertise. Admitting such evidence would unfairly prejudice Mr. Cappuccio, and it must be excluded.

Just as government agents may not provide expert testimony, neither may Officer Hodges. Officer Hodges is not an expert on medicine and injuries.  As such, he may offer evidence only of what happened to him and how he felt.

Officer Hodges, or other people lacking medical degrees, are generally considered unsuited to provide opinion testimony about medical care. Opinions about whether someone sustained a concussion or serious injuries, are all based on specialized knowledge and accordingly beyond the province of the layperson. Allowing officers to opine on the extent of their injuries and provide diagnosis for their injuries would be particularly problematic.

Despite this clear distinction, Mr. Cappuccio expects that Officer Hodges will be called to testify about his injuries as he did when he testified before Congress. This testimony is inadmissible opinion testimony. These purported opinions about what injuries were sustained are beyond the knowledge of these Officers who are not themselves physicians and who have not been designated as medical experts. Any such opinion testimony by any Officer should be excluded. The testimony of these witnesses must be strictly limited to their direct observations, not purported expert opinions.

For these reasons, Mr. Cappuccio respectfully requests that the Court exclude any purported expert testimony by government witnesses not designated as experts by limiting lay witness testimony to observations based on personal knowledge from the witnesses' interactions with Mr. Cappuccio.

**5.     Motion to Exclude Reference to Mr. Cappuccio's Invocation of his Right to Remain Silent.**

When law enforcement officials arrived at Mr. Cappuccio's residence, they asked him a series of "safety related" questions before providing him with his *Miranda* warnings. In response to defense counsel requests, the government has represented that no written report, officer notes, or other written memorialization of Mr. Cappuccio's statements exist. After subsequently receiving his *Miranda* warnings, Mr. Cappuccio invoked his right to remain silent and his right to counsel.

To allow the government or its witnesses to comment on Mr. Cappuccio's decision to remain silent and not answer questions post-*Miranda* would violate the Due Process Clause and is clearly prohibited under *Doyle v. Ohio*, 426 U.S. 610 (1976).

Mr. Cappuccio asks the Court to instruct counsel for the government that neither government counsel nor government witnesses may comment on Mr. Cappuccio's refusal to answer questions.

**6.     Motion to Exclude Evidence or Testimony of any Witness Regarding the Speculated Purpose or Motivation for their Actions on January 6, 2021.**

Mr. Cappuccio requests the Court to order the Government to refrain from eliciting testimony regarding the alleged purpose for Mr. Cappuccio's actions on January 6, 2022. In discovery defense counsel has received, witness statements

speculating as to the purpose of Mr. Cappuccio's actions. Specifically, Officer Daniel Hodges testified before Congress that Mr. Cappuccio would have dragged him out of the ground and would have lynched him. See Grand Jury Exhibit 71. While this represents a concrete example of impermissible speculation, one could envision similar impermissible speculation regarding Mr. Cappuccio's purpose for traveling to the District of Columbia and his presence at the Capitol.  It is beyond question that any exercise in speculation as to a defendant's mental processes lacks probative value and is dangerously prejudicial when stated in the presence of a jury.

Because that is merely speculative opinion testimony, Mr. Cappuccio asks that it be kept out at trial.

### 7. Motion to Exclude Prejudicial and Conclusory Terms.

"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Taylor v. Kentucky*, 436 U.S. 478, 483 (1978) (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)). In accordance with this presumption, Mr. Cappuccio requests that the Court exclude the use of the term, "victim," "assault," "robbery," and any similar terms the Court might identify, that are prejudicial, conclusory, and reach ultimate issues.

The jury ultimately must decide whether the events constituted an assault or a robbery, and whether D.H. was a "victim." Testimony, argument, or evidence that

uses those terms asks for legal conclusions by non-experts, invades the province of the jury, and should be excluded. *See* FED. R. EVID. 701, 704; *see also E*

*Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) (reasoning same in context of expert testimony). Competent witnesses may testify as to what they saw and describe those events using plain language, but "determinations of guilt or innocence are solely within the province" of the jury, and a "lay witness's opinion that defendant is guilty of the crime charged would be improper trial testimony." *See, e.g., United States v. Keys*, 747 F. App'x 198, 207-08 (5th Cir. 2018). Witnesses and Government counsel may not substitute themselves for the jury, by offering opinion testimony as to whether that conduct qualifies as the charges offense or otherwise satisfies the elements of a charged offense. *See, e.g., United States v. Rodriguez-Adorno*, 695 F.3d 32, 39 (1st Cir. 2012) (holding agent's characterization of event as "carjacking" during carjacking prosecution was inadmissible lay opinion testimony as to the ultimate issue of defendant's culpability). While law enforcement and the Government may have reached the conclusion that D.H. was a victim or that Mr. Cappuccio's conduct constituted "robbery" or "assault," those opinions are unhelpful to the jury.

Mr. Cappuccio has the right to be presumed innocent, and testimony and argument that labels any conduct as criminal deprives Mr. Cappuccio of this right. Accordingly, Mr. Cappuccio requests that the Court order the Government to refrain

from using and instruct its witnesses to refrain from using the terms "victim," "robbery," "assault," and any similar terms the Court might identify, that are prejudicial, conclusory, and reach ultimate issues.

8**. Motion to Exclude References to 'Conspiracy' or 'Co-Conspirator'.**

In its Memorandum Order denying the defendants' motions to sever (Doc. No. 290), this Court wrote "civil disorder . . . like a conspiracy, requires multiple people. Defendants worked together." Mem. Order at 4.  This Court added a joint trial was appropriate given allegations of "collective action but also a shared motive for that action." *Id.*  This Court's discussion was limited to the events of January 6, 2021, consistent with the present counts, and did not extend to discussion of events preceding that date.  As addressed in the Memorandum denying severance, there is no alleged conspiracy.

If witnesses were to suggest the existence of a conspiracy to engage in the conduct alleged to have taken place on January 6, 2021, the mere reference to the term "conspiracy" would be improper even if a conspiracy count were included in the present indictment. *See United States v. Espino*, 32 F.3d 253, 257 (7th Cir. 1994) (holding that defendant should not have been asked to testify as to whether conduct constituted "conspiracy" because it called for improper opinion testimony by a lay witness about a legal term of art); *United States v. Baskes*, 649 F.2d 471, 478-79 (7th Cir. 1980) (holding district court properly restricted questions asking whether

witnesses "unlawfully, knowingly, and willfully conspire[d]").However, in this age of "conspiracy theories" and a regular media diet of stories regarding violent extremist groups, utterance of the term "conspiracy" alone, aside from its legal implications, would likely invoke a highly prejudicial sentiment toward the defendant in the minds of jurors.  This Court appropriately limited its review to concerted activity on January 6, 2021.  Witnesses may, however, offer testimony regarding conspiracies, agreements or the like effectively accusing Mr. Cappuccio of participation in a conspiracy despite the absence of a conspiracy charge.

The events of January 6, 2021 have produced vigorous debate on conspiracy theories, such as QAnon, and the rise of right-wing extremist groups in the United States,  The prejudicial effect of testimony suggesting without evidence that Mr. Cappuccio's actions were a part of a preordained plan devised prior to January 6, 2021, or that co-defendants enjoy some preexisting relationship and role other than the "concerted activity" discussed by this Court limited to the same date, would be beyond cure.  In a culture seemingly starved for stories on underground conspiracies, the mere reference to a conspiracy in the context of the present allegations would be enough to taint the objectivity of a jury.

This Court is therefore respectfully asked to exclude testimony and evidence suggesting possible conspiracies existing prior to the events of January 6, 2021, and

instruct witnesses and the Government to refrain from using the term "conspiracy" and similar terms in testimony and evidence submitted to the jury.

Respectfully submitted,

_____/s/_____
Marina Thais Douenat
FEDERAL PUBLIC DEFENDER'S OFFICE
Western District of Texas
727 E. César E. Chávez Blvd., Suite B-207
San Antonio, TX 78206
210-472-6700
Tx. Bar #00798310
*Attorney for Defendant Steven Cappuccio*

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2022, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

_____/s/_____
Marina Thais Douenat
Assistant Federal Public Defender