UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID LEE JUDD,<br><br>　　　　　Defendant. | Crim. Action No. 21CR40(TNM) |

### MR. JUDD'S MOTION FOR COURT TO USE A JURY QUESTIONNAIRE

The defendant, David Lee Judd, through counsel, pursuant to his Fifth and Sixth Amendment rights to secure the right to trial by an impartial jury and to effective assistance of counsel, U.S. Const. amends. V, VI, respectfully moves this Court to permit expanded examination of prospective jurors before and during formal voir dire. Mr. Judd specifically asks (1) that the defense be allowed to prepare a questionnaire to be shared with counsel for the joined co-defendants[1] and the government that, after review and approval by the Court, is provided to summoned prospective jurors to complete prior to the oral voir dire examination; (2) that the parties be present for any pre-screening questioning of prospective jurors that the Court conducts before the beginning of formal voir dire.

### ARGUMENT

This case involves notorious events at the United States Capitol Building on

---

[1] The Court denied Mr. Judd's motion to sever. Mr. Judd maintains his objection to a joint trial.

January 6, 2021. The government alleges, *inter alia*, that Mr. Judd acted knowingly and with intent to impede and disrupt a Joint Session of Congress convened to certify the results of the 2020 Presidential election. There has been extensive media coverage – particularly local coverage within the Washington Post – of the January 6 event. Many potential jurors hold impressions and opinions about the day's events that will be disqualifying for service in this case and that will otherwise inform the parties' use of peremptory challenges. Regardless of the judicial district in which the jurors reside and the trial is held, a searching inquiry into pretrial publicity, pre-judgment as to January 6 event and the charges against Mr. Judd, and COVID-19 health and safety concerns is necessary to ensure that Mr. Judd receives effective assistance of counsel in the jury selection and a fair and impartial jury.

Rather than re-iterate that already submitted to this Court, Mr. Judd adopts and incorporates the arguments and authority submitted in his ECF No. 257, Motion to Transfer and focuses this motion on the specific remedy sought herein: a Court-approved, pre-trial questionnaire that the jurors complete in open court before the parties and that will inform the subsequent steps of the jury selection process. A written questionnaire will help to identify juror prejudice and conserve time for the parties and the Court itself. The parties can meet in advance and determine veniremembers who they agree should be stricken for cause. The questionnaire will advance and streamline the task of ferreting out prospective jurors' disqualifying biases and allow formal voir dire to be more focused in substance and more efficient for all involved.

The Due Process Clause and the Sixth Amendment guarantee the right to trial before an impartial jury. A searching jury selection process is critical to preserving that right. *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). The jury selection process "serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991). "Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). A thorough jury selection process is necessary because jurors "may have an interest in concealing [their] own bias" or "may be unaware of it." *Smith v. Phillips*, 455 U.S. 209, 221-22 (1982) (O'Connor, J., concurring). *See United States v. Haldeman*, 559 F.2d 31, 61 (1976) (en banc) (per curiam) (indifferent jurors can only be identified through revealing selection process). In high-profile and high-publicity cases federal courts regularly approve and implement the use of detailed juror questionnaires in advance of voir dire. *See, e.g.*, *United States v. Skilling*, 561 U.S. 358, 358-59 (2010) ("Rejecting the Government's sparer inquiries in favor of Skilling's more probing and specific questions, the court converted Skilling's submission, with slight modifications, into a 77-question, 14-page document."); *United States v. Tsarnaev*, 968 F.3d 24, 46-47 (1st Cir. 2020) (100-question questionnaire and 21 days of individual *voir dire*), *overruled on other grounds*, __ U.S. __, 142 S. Ct. 1024 (2022); *United States v. Jones*, 566 F.3d 353, 358

(3d Cir. 2009) ("District Court had pre-qualified approximately 40 potential jurors out of a pool of approximately 360 based on a detailed questionnaire"); *United States v. McVeigh*, 153 F.3d 1166, 1181 (10th Cir. 1998) (prospective jurors completed "extended questionnaire"); *United States v. Maldonado-Rivera*, 922 F.2d 934, 971 (2d Cir. 1990) (court used "written questionnaire consisting of 65 questions tailored to the facts of this case"); *United States v. Affleck*, 776 F.2d 1451, 1455 (10th Cir. 1985) (44-page questionnaire); *United States v. Wittig*, 2005 WL 758605 at *1, 2005 U.S. Dist. LEXIS 5736 at *4, 31 (D. Kan. Apr. 4, 2005) (court used "non-suggestive, comprehensive juror questionnaires to aid in the selection of an impartial jury"); *United States v. Felton*, 239 F. Supp. 2d 122, 125 (D. Mass. 2003) (potential jurors completed lengthy questionnaire); *United States v. Houlihan*, 926 F. Supp. 14, 16 (D. Mass. 1996) (*voir dire* included questionnaire); *United States v. Helmsley*, 733 F. Supp. 600, 610 & n.8 (S.D.N.Y. 1989) (prospective jurors completed "comprehensive juror questionnaires" and follow-up questions asked based in part on the prospective juror's answers on questionnaire).

      Judges in this District too use written questionnaires to aid in screening potential jurors in particular cases. *See, e.g.*, *United States ex re Westrick v. Second Chance Body Armor, Inc.*, 293 F. Supp. 3d 219, 123 (D.D.C. 2018 (Friedman, J.) (directing "parties shall confer and file one joint proposed jury questionnaire"); *United States v. Childress*, 731 F. Supp. 13 (D.D.C. 1990) (Richey, J.) (describing detailed jury selection plan and providing example of supplemental questionnaire used); *United States v. North*, 716 F. Supp. 652, 653–54 (D.D.C. 1989) (Gesell, J.)

4

(referencing use of questionnaire); *United States v. Stone*, Crim. Action No. 19-0018, 2016 WL 1892360, 2020 U.S. Dist. LEXIS 67359 (D.D.C. Apr. 16, 2020) (Berman Jackson, J.) (providing detailed information about jury questionnaire process used); *United States v. Lorenzana-Cordon*, No. 03-CR-331, 2016 WL 11664054, at *1, 23016 U.S. Dist. LEXIS 198453, at *4 (D.D.C. Apr. 16, 2020) (Kollar-Kotelly, J.) (multi-defendant drug conspiracy case).[2] *But see United States v. Quinn*, 401 F. Supp. 2d 80, 105 (D.D.C. 2005 (Bates, J.) (denying motion for jury questionnaire).

Counsel for Mr. Judd further understands that more than one district court has ordered, or has indicated an intent to order, the use of a questionnaire in a pending January 6 case. For example, in *United States v. Alford*, Case. No. 1:21-cr-00263-TSC, the court granted the defense's motion for the use of a jury questionnaire, over the government's objection. *See* ECF No. 46, Order, *United States v. Russell Alford*, Case. No. 1:21-cr-00263-TSC (Apr. 18, 2022). The parties then proposed to the Court a Joint Scheduling Order, which provided:

> The parties shall meet and confer regarding the defendant's proposed juror questionnaire, as directed in the Court's April 18, 2022, order. (Doc. 46 at 15.) The defense shall provide a proposed juror questionnaire to the government not later than May 18, 2022. The government shall communicate any objections to the defense not later than June 1, 2022. On or before June 8, 2022, the parties shall jointly file a proposed copy of the juror questionnaire, noting any unresolved objections and succinctly stating the parties' respective positions. The Court will rule on any unresolved objections, hearing argument as necessary. After the ruling on objections, the juror questionnaire shall be provided to the jury selection office forthwith for dissemination. On or before September 14, 2022, the parties will receive a copy of the juror questionnaire responses.

---

[2] On-line research identified one case in which a judge of this District refused a request to use a jury questionnaire.

5

ECF No. 47, Order, *United States v. Russell Alford*, Case. No. 1:21-cr-00263-TSC (May 13, 2022).

An extensive questionnaire will furnish the basis for agreements between the parties (with the consent of the Court) to excuse prospective jurors for cause, will dramatically increase the efficiency and accuracy of the jury selection process, and will enforce Mr. Judd's constitutional rights. As put by Judge Lambreth in a case in which he utilized a jury questionnaire: A questionnaire is "designed to assist the court and counsel in the voir dire process. The questions were intended to expedite and streamline the jury selection process by asking basic questions in every area in such a way that would allow the court and counsel to ask follow-up questions in any area of concern." *United States v. George*, Crim. Nos. 91-0521, 92-0215,1992 U.S. Dist. LEXIS 16882, at *3 (D.D.C. July 23, 1992).

Both in counsel's own experience in high-publicity, strong-opinion capital cases and from review of complex federal cases nationwide, such a process succeeds in excusing large numbers of unqualified jurors following the completion of extensive jury questionnaires so that the actual voir dire process can focus on those jurors more likely qualified to consider the case. The recent *Tsarnaev* jury selection is illustrative. In that case, 1,373 prospective jurors arrived at the courthouse to complete extensive jury questionnaires. *Tsarnaev*, 968 F.3d at 46. After both sides agreed to excuse "many" jurors, the district court called only 256 for in-person *voir dire*, and, after individual *voir dire*, deemed 75 of those provisionally qualified to sit on the jury. *Id.* at 47, 50. From that, the district court was able to select a jury to sit.

In short, the use of a questionnaire will both increase the efficiency of the jury selection process and will protect Mr. Judd's constitutional rights. As in the Alford, Mr. Judd will send a draft questionnaire to the government to identify concurrence and any disagreements and then provide a joint proposed questionnaire to the Court, noting any unresolved issues and points of differences for the Court's determination.

WHEREFORE, the defendant, David Lee Judd, respectfully moves this Court to authorize the use of a jury questionnaire for purposes of his trial.

>Respectfully Submitted,
>A.J. KRAMER
>FEDERAL PUBLIC DEFENDER
>
>
>\_\_\_\_\_/s/_____
>ELIZABETH MULLIN
>Assistant Federal Public Defender
>625 Indiana Avenue, N.W., Suite 550
>Washington, D.C.  20004
>(202) 208-7500
>
>
>\_\_\_\_\_/s/_____
>EDWARD J. UNGVARSKY
>Ungvarsky Law, PLLC
>114 N. Alfred Street
>Alexandria, VA 22314
>(571) 207-9710