IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.  Case No.: 21-cr-40-4 (TNM)

CHRISTOPHER QUAGLIN,

Defendant.

## MOTION IN LIMINE TO PRECLUDE CLAIM OF SELF-DEFENSE

The United States of America respectfully moves in limine to preclude the defendant from raising a claim of self-defense. The available facts, as a matter of law, do not support a claim of self-defense because they show that the defendant was the initial aggressor, attacking a police line that had only been established because the police had been forced to fall back due to the actions of the mob. In the alternative, the government requests that the defendant provide a pre-trial proffer of facts to allow the parties to argue, and the Court to decide, whether the defendant is entitled as a matter of law to assert self-defense.

## INTRODUCTION

Defendant Quaglin is charged with six counts of assaulting, resisting, or impeding a federal officer. In Counts 1, 3, and 11 of the indictment, Quaglin is charged with assaulting, resisting, or impeding a federal officer, in violation of 18 U.S.C. § 111(a)(1). In Count 2 of the indictment, Quaglin is charged with assaulting, resisting, or impeding a federal officer causing bodily injury, in violation of 18 U.S.C. § 111(a)(1) and (b). And, in Counts 23 and 26 of the indictment, Quaglin is charged with assaulting, resisting, or impeding a federal officer with a deadly or dangerous weapon, that is, OC spray and a shield, in violation of 18 U.S.C. § 111(a)(1) and (b).

To meet its burden of proof at trial, the government will seek to admit video evidence showing the defendant committing each of these separate instances of assaultive conduct. Specifically, as captured on multiple U.S. Capitol Police ("USCP") surveillance videos, around 1:06 p.m., numerous rioters first gathered on the grounds below the Lower West Terrace and attempted to breach the police line. Around 1:08 p.m., Quaglin can be seen pointing at a USCP Officer holding the perimeter around the Lower West Terrace. Quaglin then shoved that officer, as captured in the still shot below. (Count 1).



Then, in a subsequent USCP surveillance footage, Quaglin walked through the crowd and approached the USCP Officers located at the police line. Quaglin then verbally engaged a USCP Officer. Quaglin continued to get closer towards a USCP Officer while appearing increasingly agitated and pointing his finger towards USCP Sergeant Troy Robinson. Quaglin then grabbed at Sergeant Robinson's body armor, reaching for his neck. As Sergeant Robinson tried to stop Quaglin, he fell to the ground, injuring his knee in the process. (Count 2). A still from this video is shown below with a red arrow above Quaglin.



Approximately 1 minute later, as Quaglin yelled at the surrounding officers and shook a glove at them, another USCP Officer pushed Quaglin back. Then, as numerous rioters engaged in physical altercations with multiple law enforcement officers, Quaglin struck and shoved the USCP Officer. Several seconds later and as numerous law enforcement officers are responding to the various altercations, Quaglin pushed the USCP Officer again, as captured in the still below with a red arrow pointing to Quaglin.



Several seconds later, Quaglin pushed a Metropolitan Police Department ("MPD") officer and, shortly after, then walked towards another USCP Officer. Quaglin physically pushed and wrestled with that USCP Officer, as captured in the still below with a red arrow above Quaglin.(Count 3).

3



Around 1:36 p.m., as captured on police body-worn camera ("BWC") footage, numerous rioters were at the police line around the West Front of the Capitol, with fences separating the crowd and the officers. Quaglin approached the police line separated by the fence and started engaging with the MPD Officers at the line. Seemingly unprovoked, Quaglin shouts the following statements: "You don't want this fight. You do not want this fucking fight. You are on the wrong fucking side. You're going to bring a fucking pistol, I'm going to bring a fucking cannon. You wait! You wait! You wait! Stay there like a fucking sheep! This guy doesn't know what the fuck is going on." Several seconds later, Quaglin grabbed onto the fence and appeared to shake it and pushed against it while the MPD Officers are on the other side of the fence. A still from the body-worn camera video is below with a red box around Quaglin.



Then, around 2:34 p.m., as captured on BWC footage, an unidentified rioter pushed down a USCP officer. Another officer stepped in front of the fallen officer. Quaglin then lunged forward and pushed that officer down. (Count 11). Multiple officers then dropped their shields as they began to retreat backwards. Quaglin and other unidentified individuals can then be seen picking up the shields and passing them backwards, as captured in the stills below with a red box around Quaglin.



At approximately 3:03 p.m., Quaglin can first be seen on USCP surveillance footage entering the Lower West Terrace tunnel with the other rioters. At around 3:06 p.m., Quaglin made it to the front line of the rioters attempting to get past the law enforcement officers guarding the Lower West Terrace doors, as shown in the still from BWC footage below with a red box around Quaglin.



5

At approximately 3:06 p.m., Quaglin sprayed a chemical irritant at MPD and USCP officers trying to stop the rioters from entering the Capitol. Just before 3:07 p.m., Quaglin then again sprayed a chemical irritant directly into the face of an MPD Officer, who does not have a face shield or gas mask protecting him. (Count 23). This is captured in the still below, where the orange spray from the black canister can be seen headed straight for the officer's face.






At approximately 3:11 p.m., Quaglin can be seen with the rioters at the front of the line pushing up against that same MPD Officer whom Quaglin sprayed in the face, as well as other

law enforcement officers, with a shield. Quaglin then continued pushing as the entire group of rioters yelled "heave ho" and put their collective mass behind him and the others at the front of the line. Quaglin also used the shield to strike the MPD officer in the face. (Count 26).



This evidence shows that the defendant attacked the multiple police officers without provocation.

## ARGUMENT

Section 111 makes it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with" a federal officer in the performance of the officer's duties. 18 U.S.C. § 111(a)(1). A defendant charged under Section 111 may assert, as an affirmative defense, a theory of self-defense, "which justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger." *United States v. Middleton*, 690 F.2d 820, 826 (11th Cir. 1982).

"A defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself." *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018) (internal quotation

marks and citation omitted). That principle applies fully to Section 111 prosecutions. *See, e.g.*, *United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019) ("Mumuni was the initial aggressor in the altercation with Agent Coughlin; as such, he could not, as a matter of law, have been acting in self-defense."); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012) ("[A]n individual who is the attacker cannot make out a claim of self-defense as a justification for an assault.").

The proffered video evidence demonstrates that the defendant was the initial aggressor in each of the charged assaults this case. No officer applied force to the defendant at any point before these assaults, except one USCP officer who made incidental contact with Quaglin when trying to keep the crowd back, as described above in the time frame between Counts 2 and 3. Any contact made by officers attempting to push back the crowd were incidental contacts with the defendant when trying to keep order. Crowd control measures, like use of OC spray, batons, and shields, were not provocation, but defensive responses to stop the mob from entering the U.S Capitol building. Indeed, the video evidence shows that the defendant was the defendant who initiated these violent physical attacks. He therefore cannot, as a matter of law, seek acquittal on the Section 111 charge by asserting self-defense.

Other circumstances depicted in the videos do not bear on the elements of self-defense. Defendant may have objected to law enforcement's presence at the U.S. Capitol, their effort to detain other individuals at the scene, or their directives that he move from his position and leave the area. None of that matters. *See United States v. Urena*, 659 F.3d 903, 907 (9th Cir. 2011) (observing that "harsh words from another, insulting words, demeaning words, or even fighting words" does not provide license to "stab the offending speaker in the neck, bash their skull with a baseball bat, send a bullet to their heart, or otherwise deploy deadly force in response to the

8

insult"). Because the defendant "was the attacker" in this case, *ibid*., he cannot advance a self-defense theory.

## CONCLUSION

For these reasons, the United States respectfully moves the Court to preclude the defendant from raising a claim of self-defense or, in the alternative, require the defendant to make a pre-trial proffer of facts that would permit the Court to decide whether he is entitled as a matter of law to assert self-defense.

Dated June 3, 2022.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:  /s/
KIMBERLY L. PASCHALL
D.C. Bar No. 1015665
ASHLEY AKERS
Missouri Bar No. 69601
JOCELYN BOND
D.C. Bar No. 1008904
Assistant United States Attorneys
Capitol Siege Section
601 D Street, N.W.,
Washington, D.C. 20530
202-252-2650
Kimberly.Paschall@usdoj.gov