## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. Action No. 21CR40(TNM)** |
| **DAVID LEE JUDD,** | |
| **Defendant.** | |

## MR. JUDD'S MOTION FOR ATTORNEY-CONDUCTED VOIR DIRE AND FOR INDIVIDUAL, SEQUESTED VOIR DIRE OF JURORS

The defendant, David Lee Judd, through counsel, pursuant to his Fifth and Sixth Amendment rights to secure the right to trial by an impartial jury and to effective assistance of counsel, U.S. Const. amends. V, VI and Federal Rule of Criminal Procedure 24(a), respectfully moves this Court to authorize attorney-conducted, individual, sequestered voir dire of the potential jurors.

## ARGUMENT

This case involves notorious events at the United States Capitol Building on January 6, 2021. The government alleges, *inter alia*, that Mr. Judd acted knowingly and with intent to impede and disrupt a Joint Session of Congress convened to certify the results of the 2020 Presidential election. There has been extensive media coverage – particularly local coverage within the Washington Post – of the January 6 event. Many potential jurors hold impressions and opinions about the day's events that will be disqualifying for service in this case and that will otherwise inform the parties' use of peremptory challenges. Regardless of the judicial district in which the jurors

reside and the trial is held, a searching inquiry into pretrial publicity, potential hardship, pre-judgment as to January 6 event and the charges against Mr. Judd, and COVID-19 health and safety concerns is necessary to ensure that Mr. Judd receives effective assistance of counsel in the jury selection and a fair and impartial jury. To maximize the value of that searching inquiry, this Court should authorize attorney conducted, individualized, sequestered voir dire.

Rather than re-iterate that already submitted to this Court, Mr. Judd adopts and incorporates the arguments and authority submitted in his ECF No. 257, Motion to Transfer and his contemporaneously filed Motion for Jury Questionnaire, and focuses this motion on the specific remedy sought herein: that voir dire in the case is conducted by the attorneys and that the potential jurors are questioned individually and sequestered from each other to obtain full, necessary information relevant to for-cause strikes and peremptory challenges while minimizing the potential taint of other potential jurors by the answers of a questioned juror.

"[P]art of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992) (relying on *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981); *Dennis v. United States*, 339 U.S. 162, 171-172 (1950); *Morford v. United States*, 339 U.S. 258, 259 (1950)). Specifically, the U.S. Constitution entitles a defendant to a searching *voir dire* for both the government and the defendant to gather the information needed to exercise juror challenges—peremptory and cause—in a fair, intelligent and informed manner. A thorough *voir dire* also provides the Court with

sufficient information to rule accurately on the requested removal of a juror for cause. *Morgan*, 504 U.S. at 729-730 (quoting *Rosales-Lopez*, 451 U.S. at 188 ("Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled")). Thorough voir dire is necessary because jurors "may have an interest in concealing [their] own bias" or "may be unaware of it." *Smith v. Phillips*, 455 U.S. 209, 221-22 (1982) (O'Connor, J., concurring).

The fact that the exercise of peremptory challenges is subject to objection and court review further emphasizes the need for a thorough *voir dire. See, e.g., Georgia v. McCollum*, 505 U.S. 42 (1992) (defense challenges subject to equal protection scrutiny); *Batson v. Kentucky*, 476 U.S. 79 (1986) (prosecution challenges subject to equal protection scrutiny). The more the parties know about the potential jurors, the less likely they are, even unconsciously, to fall back on prejudice and stereotypes in the exercise of peremptory challenge. The voir dire process should be structured to maximize the relevant information from potential jurors. *See Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991) (dual purpose of voir dire is to provide enough information to exercise challenges for cause and peremptory challenges).

Consequently, federal courts recognize the importance of attorney participation in the jury selection process. *See, e.g., United States v. Ible*, 630 F.2d 389 (5th Cir. 1980). In *Ible*, the Fifth Circuit stated:

> [W]hile Federal Rule of Criminal Procedure 24(a) gives wide discretion to the trial court, voir dire may have little meaning if it is not conducted at least in part by counsel. The "federal" practice of almost exclusive voir dire examination by the court does not take into account the fact that it

is the parties, rather than the court, who have a full grasp of the nuances and the strengths and weaknesses of the case ... Experience indicates that in the majority of situations questioning by counsel would be more likely to fulfill the need than an exclusive examination in general terms by the trial court.

\*\*\*

More recently, records reviewed in this court reflect a new pattern by trial courts. The trial judge will explain the nature of the case in general terms, point out the parties and counsel, cover the most basic points of law (burden of proof, presumption of innocence, right to remain silent, etc.), explain the procedures and schedule to be followed and then turn the questioning over to trial counsel. We encourage this approach.

630 F.2d at 395 & n.8 (cleaned up). *See also United States v. Corey*, 625 F.2d 704, 707 (5th Cir. 1980) ("This court has previously stressed that voir dire examination not conducted by counsel has little meaning.").

Of equal import is the requirement that the trial judge be, *and appear to be*, neutral. Jurors look to the judge as the ultimate authority figure. Social science research and the experiences of trial attorneys reflect that jurors are less likely to be fully candid and complete when responding to questions from a judge as opposed to those from an attorney. Additionally, when the judge conducts the voir dire, it often consists of leading question that cause prospective jurors to agree unquestionably. It is not uncommon to hear a judge ask a prospective juror, "You can set aside your beliefs and be fair and impartial, can't you?" to which the obvious appropriate answer is "yes." Few jurors even dare to disagree. Prospective jurors want to please the judge and avoid disapproval. Even for less poorly framed questions, jurors often respond to the court's inquiries in a manner that they believe is acceptable to the court without truly considering their own individual and honest responses. *See* David Suggs &

Bruce D. Sales, *Juror Self-Disclosure in the Voir Dire: A Social Science Analysis*, 50 IND. L.J. 245, 253-58 (1981) (the difference in power structure enables attorneys to obtain more or different information from jurors than can judges elicit); Note, *Judges' Non-Verbal Behavior in Jury Trials: A Threat to Judicial Impartiality*, 61 VA. L. REV. 1266 (1975); Dale W. Broeder, *Voir Dire Examinations: An Empirical Study*, 38 S. CAL. L. REV. 503, 506, 513 (1965).

As the U.S. Supreme Court has noted, the influence of the trial judge on the jury "is necessarily and properly of great weight" and "his lightest word or intimation is received with deference, and may prove controlling." *Oeurcia v. United States*, 289 U.S. 466, 470 (1933) (*quoting Starr v. United States*, 150 U.S. 614, 626 (1894)). The disproportionate impact of a judge's perceived position can chill the searching inquiry to determine if a potential juror is properly seated on a jury. *See McGill v. Commonwealth*, 10 Va. App. 237, 242 (Va. Ct. App. 1990) ("When asked by the court, a suggestive question produces an even more unreliable response.")

A juror's desire to "say the right thing" or to please the authoritative figure of the judge, if encouraged even implicitly, creates doubt about the candor of the juror's responses. *See Irvin v. Dowd*, 366 U.S. 717, 728 (1961) (assigning "little weight" to prospective juror's statement that "he would be fair and impartial" because "[y]ou can't forget what you hear and see"); *Foley v. Commonwealth*, 8 Va. App. 149, 159-60, 379 S.E.2d 915, 921 (1989) ("for a prospective juror to be willing to remain perceived as biased or not 'impartial' involves a more delicate balance between maintaining one's opinion and simply responding in the desired manner to questions which

5

suggest a particular answer. We believe this is particularly true when such questions come from the court").

The social sciences provide additional and substantial support for the proposition that attorney-conducted voir dire is essential to a fair trial in this case. Jurors are often intimidated by the judge and are more apt to give candid answers to attorneys. *See* Jones, *Judge Versus Attorney-Conducted Voir Dire*, 11 LAW & HUMAN BEHAVIOR 131, 143 (1987) (in experimental setting, jurors responded more candidly to attorneys' questions than judge's). *Id.* Attorney-conducted voir dire is a more effective tool for eliciting bias than questioning from the Court alone.

Moreover, "[a] general question directed to the entire group of prospective jurors is inadequate." *United States v. Giese*, 597 F.2d 1170, 1183 (9th Cir. 1979). Individual and sequestered voir dire is invaluable and necessary here – at least as to particular areas of questioning such as pretrial publicity and views about the events of January 6th. *See United States v. Katallah*, 313 F. Supp. 3d 176, 194 (D.D.C. 2018) (to ensure defendant received fair trial "[t]he Court (and the parties) stressed this in jury selection, with the administration of a lengthy questionnaire and individualized voir dire that attempted to surface such predispositions"); *United States v. North*, 713 F. Supp. 1444, 1444-45 (D.D.C. 1989) (after certain jurors were excused based upon answers to questionnaire, jurors" underwent a searching inquiry conducted by the Court and counsel from both sides. This inquiry was conducted entirely on an individual basis, with each juror being questioned separately"); *Giese*, 597 F.2d at 1183 ("The district court should conduct a careful, individual examination of each

prospective juror, preferably out of the presence of other jurors"). On such areas, questioning in a group setting carries with it:

- a danger that other jurors, who listen to the answers of fellow potential jurors, may be contaminated or improperly influenced by those response;

- a danger that the other jurors may shade their answers based on what they hear;

- a danger that repeated exposure to questions about January 6th, with answers that presume guilt, will transfer to other jurors, undermining the presumption of innocence and creating a less than neutral jury; and

- ultimately, the risk that judge-dominated questioning is demonstrably inferior in identifying biased jurors.

In high-profile and high-publicity cases federal courts regularly approve and implement the use of attorney-conducted voir dire and individual, sequestered questioning of the jurors. *See, e.g.*, *United States v. Skilling*, 561 U.S. 358, 389 (2010) (using extensive jury questionnaire and follow-up voir dire about publicity with individual, sequestered jurors); *United States v. Tsarnaev*, 968 F.3d 24, 46-47 (1st Cir. 2020) (100-question questionnaire and 21 days of individual *voir dire*), *overruled on other grounds*, __ U.S. __, 142 S. Ct. 1024 (2022); *United States v. Jones*, 566 F.3d 353, 358 (3d Cir. 2009) (selection process included detailed questionnaire and "the attorneys were deeply involved in the process of questioning jurors," with many dismissed for cause given bias toward gangs); *United States v. McVeigh*, 153 F.3d 1166, 1184 (10th Cir. 1998) (extended questionnaire and "each of the seated jurors

was individually questioned about his or her ability to set aside the effects that any exposure to pretrial publicity may have had"); *United States v. Maldonado-Rivera*, 922 F.2d 934, 971 (2d Cir. 1990) (written questionnaire and defense counsel individually questioned prospective jurors); *United States v. Affleck*, 776 F.2d 1451, 1455 (10th Cir. 1985) (questionnaire and voir dire conducted by court and counsel); *United States v. Wittig*, 2005 WL 758605 at *1, 2005 U.S. Dist. LEXIS 5736 at *4, 31 (D. Kan. Apr. 4, 2005) (juror questionnaires and individualized, sequestered voir dire); *United States v. Felton*, 239 F. Supp. 2d 122, 125 (D. Mass. 2003) (potential jurors completed lengthy questionnaire); *United States v. Houlihan*, 926 F. Supp. 14, 16 (D. Mass. 1996) (questionnaire and attorneys conducted individualized voir dire of jurors); *United States v. Helmsley*, 733 F. Supp. 600, 610 & n.8 (S.D.N.Y. 1989) (prospective jurors completed "comprehensive juror questionnaires" and individual follow-up questions based in part on the prospective juror's answers on questionnaire).

To ensure that Mr. Judd receives a fair and impartial jury, this Court must be mindful of the flood of adverse publicity and the well's depth of strong feelings felt by those who watched, read, have talked about, and weigh the events of January 6, 2021. Mr. Judd's trial is one among the infamous "U.S. Capitol Breach" cases. He is accused of storming the Capitol, attacking Democracy, and serving an insurrection. See, e.g., [Carrollton man charged in US Capitol attack taken off home detention while awaiting trial (msn.com)](#) ("A Carrollton man who is charged in connection with the January 6th insurrection at the US Capitol has been taken off home detention while awaiting

trial."). David Judd's trial is atypical; and typical voir dire procedures are inadequate. Accordingly, this Court should permit extended attorney-conducted, individualized, and sequestered voir dire of the potential jurors.

WHEREFORE, the defendant, David Lee Judd, respectfully moves this Court to order that voir dire will consist of attorney-conducted, individual, and sequestered examination of the potential jurors.

Respectfully Submitted,
A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
ELIZABETH MULLIN
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500


_____/s/_____
EDWARD J. UNGVARSKY
Ungvarsky Law, PLLC
114 N. Alfred Street
Alexandria, VA 22314
(571) 207-9710