IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| v. | ) ) ) | Crim. No. 21cr40 |
|  | ) | Hon. Trevor McFadden |
| ROBERT MORSS, | ) | |
| Defendant. | ) ) | |

## MOTION TO COMPEL DISCOVERY

Comes now Defendant Robert Morss, by counsel, and moves the Court to compel the disclosure by the government of all communications between the Department of Justice and the House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Committee"). Defendant seeks such to supplement his pending motion for change of venue. The Committee's nationally televised hearings have irreparably poisoned the jury pool - most dramatically in this District, the jurisdiction that suffered the physical effects of the January 6th riot and the months of severe security measures imposed in its aftermath. Much of the video footage aired by the Committee appears to come from body worn cameras and CCTV, much if not most of which footage is designated "Sensitive" or "Highly Sensitive" in the discovery provided defendants. Dissemination of such footage is restricted by Protective Order of this Court (Doc 79). Defendant seeks discovery pertaining to possible collusion between the Committee and the Executive Branch, specifically the Department of Justice.

I.  **The Committee Hearings Have Poisoned the Jury Pool**

The Committee has spoon fed to the entire nation a precisely choreographed rendition of January 6th defendants as "insurrectionists" and murderous orchestrators of an attempted coup.

1

For instance, in his opening remarks on the first day of Committee hearings, Chairman Rep. Bennie Thompson said,

> "I'm from a part of the country where people justify the actions of slavery, the Ku Klux Klan, and lynching. I'm reminded of that dark history as I hear voices today try to justify the actions of the insurrectionists on January 6th, 2021.

*Here's every word of the first Jan. 6 committee hearing on its investigation*, NPR (June 10, 2022, 1:27 PM), https://www.npr.org/2022/06/10/1104156949/jan-6-committee-hearing-transcript.

Rep. Thompson compared January 6th with the burning of the Capitol in the War of 1812:

> "[U]nlike in 1814, it was domestic enemies of the Constitution who stormed the Capitol and occupied the Capitol, who sought to thwart the will of the people, to stop the transfer of power.

*Id.*

He further called January 6th:

> "[T]he culmination of an attempted coup, a brazen attempt . . . to overthrow the government… [and declaimed that] the lies that led to insurrection have put two and a half centuries of constitutional democracy at risk.

*Id.*

Towards the end of the first day's proceedings, Rep. Thompson told a law enforcement officer:

> "[I]f you and your fellow officers hadn't held the line against those violent insurrectionists, we can only imagine the disaster that would have ensued.

*Id.*

These emotionally charged and prejudicial descriptions—by the chair of the Committee no less—were aired to at least 19 million people. Matt Webb Mitovich, *Thursday Ratings: Jan. 6 Committee Hearing Draws 19 Million Viewers*, YAHOO! NEWS (June 10, 2022), https://news.yahoo.com/thursday-ratings-abc-msnbc-lead-192047653.html. The true number of

viewers, however, is larger as the 19 million viewer count does not include every TV channel or most web streaming.  Brian Stelter, *January 6 prime-time hearing watched by more than 20 million*, CNN BUSINESS (June 10, 2022, 6:39 PM),

https://www.cnn.com/2022/06/10/media/ratings-january-6-hearings/index.html.

Nor was Chairman Thompson the only Committee member to demonize the January 6th defendants.  Rep. Pete Aguilar expostulated:

> "[T]he Capitol was overrun, police officers lost their lives, and the Vice President was taken to a secure location because his safety was in jeopardy.

https://www.npr.org/2022/06/16/1105683634/transcript-jan-6-committee.

Purple prose was not restricted to Committee members.  Capitol Police Officer Caroline Edwards testified:

> "[W]hat I saw was just a war scene… there were officers on the ground.  They were bleeding.  They were throwing up… I saw friends with blood all over their faces.  I was slipping in people's blood.

https://www.npr.org/2022/06/10/1104156949/jan-6-committee-hearing-trab=nscript.

Neither Defendant nor any of the other 800+ January 6th defendants was able to cross examine any witness or Committee member as to the inflammatory statements demonizing them before the entire American public.  The hearings were conducted without any remote indication of any contrary view or possible grounds for skepticism.  Indeed, Chairman Thompson said that many people "have tried to whitewash what happened on January 6th, to rewrite history."  Committee Vice Chair Rep. Liz Cheney addressed her "Republican colleagues who are defending the indefensible."  *Here's every word of the first Jan. 6 committee hearing on its investigation*, NPR (June 10, 2022, 1:27 PM), https://www.npr.org/2022/06/10/1104156949/jan-6-committee-hearing-transcript.

Millions of people have therefore viewed hearings which not only portray Mr. Morss (and every other January 6th defendant) as a violent insurrectionist, an orchestrator of an attempted coup, and a threat to American democracy - but also proclaim that any counter narrative or defense is reprehensible.  The Committee's portrayal of the January 6th defendants as members of a seditious, murderous mob renders the notion of an impartial jury anywhere, but especially in the District of Columbia, risible.  The day's very unsettling events happened here – where the jury pool lives and works.  So too did the ensuing months of armed National Guardsmen and personnel carriers on our city's streets.

## II.     Discovery Will Illuminate Any Collusion Between the Committee and the Executive Branch

The Committee appears to have colluded with the Executive Branch, specifically the Department of Justice.  On June 9, 2022, the Committee released video footage from January 6th.  January 6th Committee, *Select Committee NEW Footage*, YOUTUBE (June 9, 2022), https://www.youtube.com/watch?v=MaLkM7Nun1E.  This footage was also shown during the first Committee hearing.  Much of the footage broadcast appears to comprise discovery born of body worn cameras or CCTV, which images are generally designated Sensitive of Highly Sensitive in the discovery and are therefore restricted as to their dissemination by this Court's Protective Order.  Should the Department of Justice be collaborating with the Committee further to poison the jury pool?   While a prosecutor "may strike hard blows, he is not at liberty to strike foul ones."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  The Department of Justice appears to have done just that.

Additionally, Committee member Rep. Jamie Raskin has articulated beyond cavil a fundamental motivation of the Committee:

> "[Former President Trump] has not been criminally charged yet for it [incitement to violent insurrection], but we're perfectly willing to turn over any evidence that we have of criminal acts, and we are turning over evidence of criminal acts to the Department of Justice.

The Dean Obeidallah Show, *Rep Jamie Raskin: the Jan 6 committee will turn over any evidence of Trump's crimes to DOJ*, YOUTUBE (September 25, 2021), https://www.youtube.com/watch?v=c126-Xl8NIY.

Rep. Raskin has clarified that the Committee is more than inclined, it is resolved, to collaborate with the Department of Justice and has, in fact, already done so.  The exhibits which the Committee has broadcast suggest that the Department of Justice, or officials within it, actively supports the Committee's design.

## Conclusion

The hearing remarks of Committee members, not to mention the earlier remarks of Rep. Raskin among others, belie a punitive purpose which presupposes a willingness on the part of Committee members to collaborate with members of the Department of Justice.  The evidence adduced by the Committee suggests an official source.  Taken in concert, these circumstances more than constitute "some evidence tending to show the existence" of impermissible government collaboration with the Legislative Branch for the purpose of precluding an impartial jury.  *United States v. Berrios*, 501 F. 2d 1207, 1211-12 (2nd Cir. 1974).[1]  The disclosure sought by Defendant will, at the least, supplement his pending motion for change of venue since the nationwide poisoning effect of the hearings is only amplified in this District for the reasons adduced in the venue motion.

The Court should order the Government to disgorge its communications with the Committee to enable an accounting of wrongdoing and a determination of appropriate relief.

Respectfully submitted,

---

[1] *Berrios* entailed a demand for internal government communications pursuant to a claim of selective prosecution.

ROBERT MORSS
By Counsel

_____/s/_____
John C. Kiyonaga

600 Cameron Street
Alexandria, Virginia 22314
Telephone: (703) 739-0009
Facsimile: (703) 340-1642
E-mail: john@johnckiyonaga.com

Counsel for the Defendant

Certificate of Electronic Service

I hereby certify that on June 27, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties

_____/s/_____
John C. Kiyonaga