UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-cr-40-TNM |
| | : | |
| FREDERICO GUILLERMO KLEIN | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL DISCOVERY IN SUPPORT OF SELECTIVE-ENFORCEMENT CLAIM**

Defendant Frederico Guillermo Klein seeks (ECF No. 312) to compel production of all internal government correspondence concerning its charging decisions in this case. Klein seeks such materials in aid of his allegation that the government selectively targeted him for prosecution due to his political affiliation. This Court previously denied a similar discovery request in *United States v. Judd*, No. 1:21-cr-40, 2021 WL 6134590 (D.D.C. Dec. 28, 2021), and the same course is warranted here.

**FACTUAL BACKGROUND**

The grand jury charged Klein by superseding indictment with four counts of assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. §§ 111(a)(1) and (2) (Counts 9, 17, 19, 27); two counts of assaulting, resisting, or impeding certain officers using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (2) (Counts 31 & 32); one count of obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count 34); one count of civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count 35); one count of disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Count 43); one count of engaging in physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A)

1

(Count 51); one count of disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count 52); and one count of engaging in physical violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count 53).  ECF No. 179.

These charges stem from Klein's conduct at the U.S. Capitol on January 6, 2021, as a Joint Session of Congress convened to certify the 2020 U.S. Presidential Election.  The Capitol Building and exterior grounds were closed to the public and surrounded by law enforcement officers, barricades, and signage.  As the congressional session convened, Klein and others attempted to enter the Capitol Building through the Lower West Terrace doorway.  Video footage depicts Klein entering the tunnel at 2:43 p.m., where a mob had gathered to confront the line of police officers protecting the entrance to the Capitol.  Klein remained inside the tunnel for 38 minutes.  *See United States v. Klein*, 533 F. Supp. 3d 1, 5 (D.D.C. 2021).

While inside the tunnel, Klein repeatedly placed himself at the front of the mob and used force against several officers in an effort to breach the Capitol entrance and maintain the mob's position.  *Id*.  He ignored verbal commands by officers to "back up" and "let it go now."  *Id*. (brackets omitted).  And he twice called to the crowd behind him: "We need fresh people, we need fresh people."  *Id*.  Around 2:55 p.m., Klein bent down to pick up a flagpole, which lay at the foot of the police line, and passed it back to other rioters.  *Id*.

Between 2:55 p.m. and 3:00 p.m., Klein acquired a plastic riot shield that had been taken from the police.  *Id*.  Klein and another unidentified individual wedged the shield between the doors to the Capitol in an apparent effort to prevent the officers from closing them.  *Id*.  Minutes later, Klein pushed the shield into an officer's body in an attempt to break the police line.  *Id*. at 5-6.  A YouTube video depicts Klein shoving the shield against an unidentified officer's body and against the shields of two MPD officers.  *Id*. at 6.

At 3:21 p.m., officers successfully drove Klein and the other rioters out of the tunnel and back onto the Terrace. *Id*. Klein lingered near the tunnel entrance and refused to move aside as an MPD officer tried to rescue a colleague who had been dragged into the crowd. *Id*. Klein, however, subsequently helped the fallen officer back toward the police line. *Id*.

## ARGUMENT

Klein's motion fails the threshold evidentiary showing for discovery on a selective-prosecution claim. His request should be denied.

### I.  Legal Framework

Because "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," a "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted). This presumption "rests in part on an assessment of the relative competence of prosecutors and courts." *Id.* at 465. "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* (citation omitted); *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is … at its most limited when reviewing the Executive's charging determinations" because "the Judiciary … generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted).

To overcome that presumption, a defendant must present "clear evidence" that a decision to prosecute was "based on 'an unjustifiable standard such as race, religion, or other arbitrary

3

classification.'" *Armstrong*, 517 U.S. at 464-465. "The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id*. at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

Concerned that selective-prosecution inquiries "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy," the Supreme Court has also imposed a "correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. The defendant must initially produce "some evidence tending to show the existence of the essential elements of" selective prosecution: "discriminatory effect and discriminatory intent." *Id*. (citation omitted). The defendant's evidence must also be "credible"—something more than "personal conclusions based on anecdotal evidence." *Id*. at 470. "If either part of the test is failed," the defendant cannot "subject[] the Government to discovery." *Att'y Gen. of United States v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982).

## II.     Discussion

Klein alleges that the government targeted him for prosecution because of his prior service as a presidential appointee in President Trump's Administration. But his motion fails to adduce any credible evidence—as *Armstrong* demands—supporting an inference that (1) the government has treated him differently than other similarly situated January 6 defendants, or (2) any such disparity implicates his political association.

### A.     Klein's motion adduces no evidence of discriminatory effect.

As Klein acknowledges, his co-defendant—David Lee Judd—previously sought to compel production of internal government communications about its charging decisions. Judd alleged that the government had charged him (a conservative who supported President Trump) more severely

4

than liberal-aligned defendants who participated in riots that plagued Portland in the summer of 2020. *See Judd*, 2021 WL 6134590 at *1.

This Court denied the motion. It first held that Judd was not similarly situated to his comparison class of Portland defendants. "Although both Portland and January 6 rioters attacked federal buildings," the Court observed that "the Portland defendants primarily attacked at night, meaning that they raged against a largely vacant courthouse." *Id*. at *5. "In contrast," the Court explained that "the January 6 rioters attacked the Capitol in broad daylight" as "[t]housands of congressional staffers," "hundreds of legislators and the Vice President" were inside. *Id*. Because "the[se] actions endangered hundreds of federal officials in the Capitol complex," *id*., the Court held that Judd "failed to make a credible showing of different treatment of similarly situated persons"—as *Armstrong*'s first prong demands. *Id*. at *6 (internal quotation marks omitted).

What was true in *Judd* is true here. Klein and others around him attacked, and attempted to enter, the Capitol Building as the Vice President, Members of Congress, and thousands of staffers convened inside. That conduct, and the "threat to civilians" it engendered, *id*. at *5, dispels any inference of disparate treatment. The Court should accordingly reaffirm its decision in *Judd*. *See Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995) ("'Law-of-the-case doctrine' refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided (i.e., established as the law of the case) by that court … in earlier phases.").

Klein's attempts to circumvent *Judd* lack merit. Klein first characterizes Judd's conduct—throwing a firework at a line of officers—as more serious. ECF 312 at 1. The government disagrees. Klein helped wedge a police shield between the Capitol doors in an apparent effort to stop officers from closing them and protecting the Capitol's interior. He then rammed the shield

against three different officers. In any event, the Court did not tether its decision to Judd's specific conduct in throwing the firecracker. It rather addressed "the January 6 rioters [who] attacked the Capitol" as a class. 2021 WL 6134590 at *5. And because that class encompasses Klein, this Court's analysis applies equally to him.

Klein next states that the government has charged "only a handful of individuals in the tunnel." ECF 312 at 2. That the government has not yet charged everyone who entered the tunnel says nothing. The government has not cleared them of criminal conduct; these individuals have not yet been charged because the government has had to marshal an unprecedented level of investigatory resources to identify and charge each defendant who participated in the U.S. Capitol attack. As this Court has correctly observed, "the Government continues to charge new individuals with offenses related to January 6." *United States v. Griffin*, 549 F. Supp. 3d 49, 58 (D.D.C. 2021). For that reason, Klein's effort to claim disparate treatment in comparison to an ever-expanding sample size is "unsupportable." *Id*.

Klein lastly references the Lafayette Square protest in June 2020—intimating that the government treated him more severely than individuals who engaged in vandalism and looting attendant to that protest. ECF 312 at 2-3. This contention fails to show disparate treatment because the cited instances of looting and vandalism did not threaten the safety of thousands. Klein's conduct, and the conduct of those around him, did. *See Judd*, 2021 WL 6134590 at *5.

All told, Klein has failed his threshold showing on *Armstrong*'s first element.

### B.     Klein's motion adduces no evidence of discriminatory purpose.

With respect to *Armstrong*'s second prong, Klein has failed to adduce any evidence that improper motives undergird this prosecution.

6

Klein speculates that the government charged him, but not other rioters in the tunnel, "based on his prior service as a Presidential appointee." ECF 312 at 2. But Klein's comparator class—the rioters alongside him in the tunnel—"presumably … share his 'politics.'" *Griffin*, 549 F. Supp. 3d at 58. That circumstance negates Klein's proffered inference that he has been singled out due to his political associations.

Klein similarly intimates that the government's decision to charge him, but not individuals who committed crimes around Lafayette Square in June 2020, reveals a discriminatory motive. ECF 312 at 2-3. That allegation is equally baseless. The decision whether to prosecute conduct occurring in June 2020 was made by the previous U.S. Attorney for the District of Columbia. *See Judd*, 2021 WL 6134590, at *6 n.9 (noting that [a] Republican-appointed U.S. Attorney (under the direction of a Republican-appointed Attorney General) was responsible for the initial prosecutorial decisions in Portland"). Likewise, the previous U.S. Attorney initiated many of the January 6 cases now on this Court's docket. *See id*. ("DOJ began arresting January 6 defendants while still under Republican leadership."). As this timeline shows, Klein's "narrative of Government malfeasance"—that "DOJ purposefully prosecuted him for his politics"—"does not fit reality." *Id*.

The U.S. Attorney for the District of Columbia—as an officer of this Court—further represents that Klein's political views played no role in his office's charging decisions in this case.

7

## CONCLUSION

For these reasons, Klein's motion to compel discovery should be denied.

>Respectfully submitted,
>
>MATTHEW M. GRAVES
>UNITED STATES ATTORNEY
>D.C. Bar No. 481052
>
>BY: \_\_\_/s/_____
>JOCELYN BOND
>Assistant United States Attorney
>D.C. Bar No. 1008904
>Email: Jocelyn.Bond@usdoj.gov