IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| : | **Case No.: 21-cr-40-8 (TNM)** |
| v. : | |
| : | |
| : | |
| **STEPHEN CAPPUCCIO,** : | |
| Defendant. | |

**UNITED STATES RESPONSE TO DEFENDANT'S EXPERT NOTICES**

The United States of America respectfully responds to defendant Stephen Cappuccio's expert notices of Dr. Brian Cutler, (ECF No. 305), and Dr. Stephen Nicholas Xenakis (ECF No. 306), and hereby moves to exclude the defendant from calling either witness at trial.

**PROCEDURAL POSTURE**

The Defendant, Stephen Cappuccio, is one of nine codefendants charged in a 53-count indictment with crimes related to the breach of the United States Capitol on January 6, 2021. Specifically, defendant Cappuccio is charged with one count in violation of 18 U.S.C. §§ 111(a)(1), 2 (Assaulting, Resisting, or Impeding Certain Officers and Aiding and Abetting); one count in violation of 18 U.S.C. §§ 111(a)(1), (b) (Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon); one count in violation of 18 U.S.C. §§ 2111, 2 (Robbery and Aiding and Abetting); one count in violation of 18 U.S.C. §§ 1512(c)(2), 2 (Obstruction of an Official Proceeding and Aiding and Abetting); one count in violation of 18 U.S.C. § 231(a)(3) (Civil Disorder); one count in violation of 18 U.S.C. §§ 1752 (a)(2) and (b)(1)(A) (Disorderly and

1

Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon); one count in violation of 18 U.S.C. §§ 1752 (a)(4), (b)(1)(A) (Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon); one count in violation of 40 U.S.C. § 5104 (e)(2)(D), 18 U.S.C. § 2 (Disorderly Conduct in a Capitol Building); and one count in violation of 40 U.S.C. § 5104 (e)(2)(F), 18 U.S.C. § 2 (Act of Physical Violence in the Capitol Grounds or Buildings).

The case is currently set for two separate jury trials for "Group 1" and "Group 2." Cappuccio, who is in Group 2, is scheduled to begin trial on October 3, 2022. On June 3, 2022, the Defendant filed expert notices seeking to introduce expert testimony from two experts: (1) Dr. Brian Cutler regarding eyewitness recollection factors; and (2) Dr. Stephen Nicholas Xenakis regarding Defendant's PTSD diagnosis. *See* Def.'s Notice of Expert Witness 1-2; Def.'s Notice of Expert Witness and of a Mental Condition 1-3.

## FACTUAL BACKGROUND

The government expects the evidence to demonstrate that Defendant committed at least two separate instances of assaultive conduct when he joined the mob in overwhelming law enforcement on the West Front of the U.S. Capitol and forced his way into the "tunnel" created by the structures present on the Lower West Terrace. Specifically, at approximately 3:06 p.m., Defendant joined other rioters at the entrance of the tunnel, and at approximately 3:08 p.m., as seen on U.S. Capitol Police surveillance and footage captured by other rioters, Defendant joined the group as the rioters pushed in unison against the police officers guarding the Lower West Terrace door. The government expects the evidence to show that Defendant ultimately ended up in front of Metropolitan Police Department officer D.H., whom his co-defendant Patrick McCaughey then assaulted by crushing him in between the door and a police riot shield.

Defendant Cappuccio then grabbed the officer's gas mask, violently yanking on it in an attempt to rip it off. This attack was caught on video by journalist Jon Farina and posted to YouTube.

## ARGUMENT

**I.    This Court should exclude Dr. Cutler's and Dr. Xenakis's testimony because the expert notice is deficient.**

    **a.  Legal Standard**

This Court should exclude expert witness testimony by Dr. Brian Cutler and Dr. Stephen Nicholas Xenakis unless significant supplemental notice is provided in sufficient time for the United States to prepare for trial. When a defendant gives notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition, they must provide the government a written summary of any testimony they intend to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. Fed. R. Crim. P. 16(b)(1)(C). Further, this summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications. Id. The notices filed by defendant Cappuccio are deficient for their failure to provide both the proposed expert's opinions and the bases and reasons for those opinions. Therefore, this Court should exclude the testimony at trial absent significant supplemental notice provided in sufficient time for the United States to effectively use the supplement in advance of trial.

The purpose of the notice requirement is to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 (Committee Notes 1993 Amendment). Notice is insufficient, and exclusion of an expert is warranted, where the notice fails to provide the information necessary for the opposing party to assess – and potentially counter – the proposed expert's testimony. For example, in Day, the D.C. Circuit found that exclusion of an expert was warranted when the expert's report

3

failed to state a conclusion from the tests and interviews he conducted. See United States v. Day, 524 F.3d 1361, 1371-72 (D.C. Cir. 2008) (noting that this, combined with the absence of a clinical diagnosis, made it virtually impossible for the Government to engage in meaningful cross-examination). Similarly, a defendant's notice failed to provide the required "bases and reasons" of proposed experts when it did not provide the underlying documents the experts relied on when preparing expert reports. United States v. Naegele, 468 F. Supp. 2d 175, 176 (D.D.C. 2007) (J. Friedman).

### b. This Court should exclude Dr. Cutler's testimony because Defendant's notice of his testimony was deficient.

Defendant's notice fails to provide Dr. Cutler's opinions as required by Rule 16(b)(1)(C) and the Government cannot reasonably prepare for cross-examination without significant supplemental notice provided in sufficient time to prepare for trial. Like the notice in Day which failed to state an expert's conclusion after examining the defendant, Defendant's notice fails to state Dr. Cutler's actual opinion about eyewitness recollection from his review of the evidence. Day, 524 F. 3d at 1371-72; Def.'s Notice of Expert Witness 1-2. The notice references "his opinions" and "factors" impacting eyewitness identification accuracy, without actually stating what the opinions or factors are. Def.'s Notice of Expert Witness 1-2. The vague reference to "opinions" and "factors" the notice provides does not give the Government a fair or reasonable opportunity to prepare a focused cross-examination, and therefore, the Court should exclude the testimony. Id. Defendant's notice fails to provide Dr. Cutler's conclusions about eyewitness testimony, the factors that impact its accuracy, or how it pertains to the specific witnesses in this case.

Even had the Defendant's notice provided Dr. Cutler's opinions about the accuracy of eyewitness identification, it still fails to comply with Rule 16(b)(1)(C) because it does not provide

4

the bases and reasons for an opinion. Fed. R. Crim. P. 16(b) (1) (C). As in Day, Defendant's notice does not state what specific evidence Dr. Cutler looked at to arrive at his *unstated* opinion and should similarly be excluded. Naegele, 468 F. Supp. 2d at 176-7; see generally Def.'s Notice 1-2. The bare reference to "evidence provided by the Government in discovery" does nothing to clarify the bases and reasons for Dr. Cutler's opinion as it does not specify which witnesses, videos, or even which statements he evaluated. Def.'s Notice 1-2. Moreover, the Government cannot reasonably be expected to ascertain what Dr. Cutler would testify to based on a simple passing reference to *all* of the information produced in discovery. Id. Therefore, since Defendant's notice failed to provide both Dr. Cutler's opinion and his bases and reasons for an opinion in violation of Rule 16(b)(1)(C), this Court should exclude the testimony absent significant supplemental notice that is provided significantly in advance of trial so as to be usable by government counsel

### c. This Court should exclude Dr. Xenakis' testimony because Defendant's notice of his testimony was deficient.

Defendant's notice also fails to provide Dr. Xenakis' opinions as required by Rule 16 (b)(1)(C) and the Government could not reasonably prepare for cross-examination without significant supplemental notice. Much like the Day notice, which failed to state the expert's conclusion from tests he did and give a clinical diagnosis, Defendant's notice does not say what opinions Dr. Xenakis reached about Defendant's PTSD diagnosis. Day, 524 F. 3d at 1371-72; see generally Def.'s Notice of Expert Witness and of a Mental Condition 1-3. In fact, it is not clear from the notice whether Dr. Xenakis was the one who diagnosed Defendant with PTSD – assuming there even is such a diagnosis – whether he conducted tests or interviews on him, or what his conclusions are about Defendant's PTSD and its bearing on his conduct on January 6, 2021. Def.'s Notice 1-3. Further, Defendant's notice fails to provide Dr. Xenakis' conclusion about how Defendant's PTSD pertains to the *mens rea* at issue.

Even if the notice did provide Dr. Xenakis' opinion, it is still deficient for its failure to provide the bases and reasoning for an opinion. Similar to the Naegele notice, Defendant's notice fails to state what documents Dr. Xenakis looked at in preparing his testimony. Naegele, 468 F. Supp. 2d at 176-7; see generally Def.'s Notice 1-3. Defendant's notice does not reference interviews or tests results and does not point to specific evidence that Dr. Xenakis reviewed for his testimony. See generally Def.'s Notice 1-3. As such, Defendant's notice failed to provide the reasons and bases for Dr. Xenakis unstated opinion in violation of Rule 16 (b)(1)(C) and, therefore, his testimony should be excluded.

## II.  In the alternative, this Court should exclude Dr. Xenakis' and Dr. Cutler's testimony because they are inadmissible under the Federal Rules of Evidence.

### a. Dr. Brian Cutler's testimony is inadmissible under the Federal Rule of Evidence 702 and should be excluded.

In the alternative, the Court should exclude Dr. Cutler's testimony because it does not comply with Federal Rule of Evidence 702. Rule 702 requires that a qualified expert witness may testify only if their scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702 (a). The Supreme Court ruled that to be admissible under Rule 702, expert testimony must be scientifically sound, and properly applied to the facts at issue. See Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 578, 592-93 (1993). The second prong of the Daubert test "goes primarily to relevance" of expert testimony under 702. Id. at 591. This Court should exclude Dr. Cutler's testimony because it violates Rule 702 by not serving to help the jury understand the evidence or determine a fact at issue.

Determining whether expert testimony will aid the jury in understanding the evidence or determining a fact at issue is a fact-intensive inquiry and courts look at factors like whether the

testimony subject matter is within the comprehension of the average juror, how specific the testimony is to the issue at hand, and whether the jury could make determinations absent the testimony. United States v. Libby, 461 F. Supp. 2d. 3, 5, 18 (D.D.C. 2006); Robertson v. McCloskey, 676 F. Supp. 351-52, 354-55 (D.D.C. 1988); United States v. Baylor, 537 F. App'x 149, 156, 159 (4th Cir. Aug. 1, 2013) (per curiam). For example, in Libby, Judge Walton excluded expert testimony about "thirteen scientific principles concerning human memory," reasoning that because the average juror could draw on their common knowledge of memory in conjunction with competent cross-examination of government witnesses, the testimony would not be helpful to a jury under Rule 702. Libby, 461 F. Supp.2d. at 5, 18; see also Robertson, 676 F. Supp. at 351-52, 354-55 ("It is no secret that memory decreases over time, that individuals can selectively remember or even fabricate events, or that stress can have an impact on memory or perception").

Significantly, in Baylor, the Fourth Circuit specifically addressed Dr. Cutler and concluded that a lower court properly excluded his testimony about "factors including . . . the effect of stress on the accuracy of identification, cross-race identification, and witness confidence versus accuracy." Baylor, 537 F. App'x at 156, 159 (explaining that because jurors can use common sense to judge eyewitness credibility and cross-examination can demonstrate eyewitness deficiencies, only a narrow set of circumstances should allow admission of expert testimony in this realm). The court reasoned in part that because jurors could have decided independent of eyewitness testimony that the defendants committed the crime, Dr. Cutler's testimony was properly excluded. Id. at 159-60 (explaining that the jurors had seen video evidence, DNA evidence, and pictures and videos of the car involved).

This Court should similarly exclude Dr. Cutler's testimony here because the deficient notice provides no basis to believe that it would aid the jury in understanding the evidence or

determining a fact in issue as required by Rule 702. Like the memory expert testimony in Libby, Dr. Cutler's testimony about eyewitness recollection is a topic on which jurors could easily draw on common knowledge and assess witness credibility during thorough cross-examination to do their job as fact finders. See Libby, 461 F. Supp. 2d. at 5, 18. Memory and eyewitness recollection are comparable because, like memory, personal eyewitness recollection is something people do every day and is therefore intuitive for the average juror. If Dr. Cutler's "factors" are the same that he proposed in Baylor – which the government does not know because the factors are not listed or described in the notice – this Court should similarly exclude his testimony here. Baylor, 537 F. App'x at 156; Def.'s Notice 1-2. Just as in Baylor, jurors in this case will watch video evidence of Defendant during the incident in question and, therefore, can make a factual determination even without eyewitness testimony. Baylor, 537 F. App'x at 156, 159-60. Because Dr. Cutler's testimony regarding eyewitness recollection is within the comprehension of the average juror, is not specific to the testimony of the witnesses in this case, and is not necessary to making the factual determination, it should be excluded under Rule 702. But see Parker v. United States, 249 A.3d 388 (D.C. 2021) (finding harmless error in robbery case where trial court applied incorrect standard in excluding identification expert); Jones v. United States, 262 A.3d 1114 (D.C. 2021) (vacating and remanding burglary and robbery charges for ineffective assistance where counsel failed to call identification expert).

    **b. Dr. Stephen Nicholas Xenakis' testimony is inadmissible under Federal Rules of Evidence 702 and 403 and should be excluded.**

This Court should exclude Dr. Xenakis' testimony because it is inadmissible under Federal Rules of Evidence 403 and 702. Rule 702 requires that an expert's knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. Although defendants may present expert testimony tending to negate the *mens rea*, that evidence must aid

8

the jury in reaching a decision on the ultimate issues. United States v. Childress, 58 F.3d 693, 728, 730 (D.C. Cir. 1995) (finding that this kind of testimony is permissible within the confines of the Insanity Defense Reform Act and Rule 704). This relevancy inquiry requires a "proffered link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case." Id. at 730 (quoting U.S. v. Cameron, 907 F.2d 1051, 1067 (11th Cir. 1990)). Defendant's notice fails to point to any link between the PTSD diagnosis and the intent elements relevant to the charges at issue in the case.[1] Therefore, Dr. Xenakis' testimony should be excluded under Rule 702.

Even if psychological testimony is potentially relevant to negate the *mens rea*, Rule 403 allows courts to exclude evidence when its probative value is substantially outweighed by the risk of confusing the issues or misleading the jury. Fed. R. Evid. 403; United States v. Rogers, No. 05-292 (RWR), 2006 WL 5249745, at 5* (D.D.C. July 17, 2006). The Childress court noted that concern about the potential for psychological expert testimony to present a confusing justification or excuse defense analog is best addressed through district court assessment and careful administration of the evidence. Childress, 58 F.3d at 730. Courts can exclude relevant psychological testimony under Rule 403 when the evidence only rarely negates specific intent, presents an inherent danger of distracting the jury's focus from actual presence or absence of *mens rea*, and can easily open the jury up to defense theories akin to justification. See Rogers, 2006 WL 5249745, at 5* (quoting Cameron, 907 F.2d at 1067). Dr. Xenakis' testimony's probative value is

---

[1] The United States submits that pursuant to 18 U.S.C. 111(a), the government must prove that the defendant acted "voluntarily and intentionally"; pursuant to 18 U.S.C. 1512(c)(2) the government must prove that the defendant acted "corruptly," and pursuant to 18 U.S.C. 231(a)(3) the government must prove that the defendant acted "knowingly."

9

substantially outweighed by the risk of confusing the issues and misleading the jury and, therefore, it should also be excluded under Rule 403.

For expert psychological testimony to be admissible under Rule 702, it must describe a mental condition that is sufficiently linked to the *mens rea* at issue. See Childress, 58 F.3d at 730; Rogers, 2006 WL 5249745, at 1*, 4-5*; United States v. Davis, 78 F. Supp.3d 17, 20-21 (D.D.C. 2015); United States v. Shorter, 618 F. Supp. 255, 260-61 (D.D.C. 1985). Expert psychological testimony was relevant when a defendant was found to be "effectively mentally retarded," and an element of the offense was acting with the specific intent to further the object of the conspiracy. See Childress, 58 F.3d at 728-30 (explaining that evidence of a person's inability to read words like "animal" and understand what a thermometer does could potentially have bearing on their ability to intend to further a conspiracy). Expert psychological testimony was inadmissible when the testimony was about how a defendant's life experiences caused his predisposition to overextend himself in his elder law practice and where the relevant *mens rea* was intent to deceive. See Rogers, 2006 WL 5249745, at 1*, 4-5* (noting that there was not a sufficient link between the psychological opinions offered and the specific element of the crime to make the evidence helpful to the jury or sufficiently relevant). A defendant's expert testimony about her ADHD was inadmissible under Rule 702 in relation to the *mens rea* of willfully committing conspiracy and tax fraud because the expert did not testify to her symptoms connecting to the conduct at issue. See Davis, 78 F. Supp.3d at 20-21. In Shorter, the court excluded expert testimony about a defendant's gambling addiction, reasoning that there was not a sufficient causal link between that addiction and his willful failure to pay taxes. See Shorter, 618 F. Supp. at 260-61 (noting that the defendant ran a successful litigation practice despite his claim that his gambling addiction precluded him from paying taxes during the same time period).

Even if expert testimony may be relevant to the mens rea at issue, courts can still exclude it under Rule 403 if its probative value is outweighed by the risk of confusing the issues or misleading the jury. In Rogers, the court found that because the expert's opinions could easily mislead the jury into accepting an impermissible quasi-diminished capacity defense, any relevance it had was substantially outweighed under Rule 403. Rogers, 2006 WL 5249745, at 5* (discussing proposed testimony about a defendant's life experiences and predispositions). In Davis, the court excluded expert's testimony because the high risk of misleading the jury into a justification defense outweighed its probative value under Rule 403. Davis, 78 F. Supp.3d at 21 (noting that the testimony about difficulty completing tasks and accurately filling out forms was the exact type of justification or excuse evidence that is impermissible).

Dr. Xenakis' testimony should be excluded under Rule 702 because it is not sufficiently linked to Defendant's intent at the time of the relevant conduct. Unlike the Childress defendant, whose expert gave specific examples of his cognitive challenges and how they could relate to his ability to intend to further a conspiracy, Defendant's notice only makes simple reference to the relationship between the PTSD diagnosis and Defendant's actions and his intent without any elaboration or detail. Childress, 58 F.3d at 728-30; Def.'s Notice of Expert Evid. and of a Mental Condition, 3 ("Dr. Xenakis will provide expert testimony relating to Mr. Cappuccio's mental condition . . . and how it relates to his actions"). Like the proposed expert whose testimony about a defendant's life experiences and predispositions was not sufficiently linked to the relevant *mens rea*, Defendant's notice fails to show any sort of link between his intent and PTSD other than referencing the connection. Rogers, 2006 WL 5249745, at 4-5*; Def.'s Notice, 3. Similar to the expert testimony which failed to connect a defendant's ADHD diagnosis to the *mens rea* of willfulness, Defendant's notice fails to demonstrate any connection between PTSD and

11

Defendant's intent during the conduct at issue in a meaningful way. Davis, 78 F. Supp.3d at 20-21; see generally Def.'s Notice, 1-3. Much like the expert testimony excluded for having an insufficient link between gambling addiction and willfulness, Dr. Xenakis' testimony does not demonstrate a sufficient link between PTSD and intent since the notice does not bother to explain with any specificity the relevance of the PTSD to intent and the conduct at issue. Shorter, 618 F. Supp. at 260-61; see generally Def.'s Notice, 1-3. Additionally, to the extent that Defendant is trying to use Dr. Xenakis' testimony to raise a self-defense claim, it seems that requiring testimony about PTSD is a concession that the self-defense was objectively unreasonable and, therefore, not a complete defense to the charge. United States v. Slatten, 395 F. Supp. 3d 45, 111 (D.D.C. 2019) (holding in a homicide case that if a defendant unreasonably resorted to self-defense, it is not a complete defense, but rather reduced the charge to voluntary manslaughter).

   Dr. Xenakis' testimony should also be excluded because its probative value is significantly outweighed by the high risk of misleading the jury and confusing the issues under Rule 403. It is extremely likely that testimony about Defendant's PTSD diagnosis would cause the jury to confuse the issue of intent and accept something akin to a justification defense, especially given the lack of any linkage between the diagnosis and the specific conduct at issue. Dr. Xenakis' testimony would be quite comparable to the excluded testimony in Davis and Rogers where the diagnosis and conduct were not related because it could easily confuse the jury into accepting a justification-like defense about Defendant's PTSD rather than making a fact-intensive inquiry as to the presence or absence of specific intent. Davis, 78 F. Supp. 3d at 21; Rogers, 2006 WL 5249745, at 5*.

## CONCLUSION

For these reasons, the United States respectfully moves the Court to exclude the testimony of Dr. Cutler and Dr. Xenakis at trial or, in the alternative, require the Defendant to immediately provide supplemental notice in compliance with Fed. R. Crim. P. Rule 16 allowing the government to prepare for cross-examination in advance of the looming trial date.

Dated July 15, 2022.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     __/s/ Jocelyn Bond_____
JOCELYN BOND
KIMBERLY PASCHALL
ASHLEY AKERS
Assistant United States Attorney
D.C. Bar No. 1008904
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 809-0793
Jocelyn.Bond@usdoj.gov