IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CASE NO. 21-cr-40 (TNM)** |
| | : | |
| **PATRICK MCCAUGHEY, et. al.** | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL DISCOVERY RELATED TO AND MOTIONS TO CONTINUE DUE TO HOUSE SELECT COMMITTEE HEARINGS

The United States respectfully submits this Opposition to multiple motions filed by defendants related to the House Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee"). The government opposes the motions to compel discovery of information related to the Select Committee hearings. ECF No. 355 ("Morss Mot. Compel"), No. 356 ("Sills Mot. Compel"), ECF No. 358 ("Judd Mot. Compel"), ECF No. 359 ("Cappuccio Mot. Compel"), ECF No. 364 ("Stevens Mot. Compel"). The government also opposes the motions to continue the trial date in light of the Select Committee hearings. ECF No. 360 ("Mehaffie Mot. Continue"), ECF No. 368 ("Judd Mot. Continue").

In these motions, the defendants seek to "supplement [their] pending venue motion"[1] and request discovery of all communications between the Select Committee and the Department of

---

[1] The government has addressed the initial motion for change of venue (ECF No. 257) in its opposition (ECF No. 292) and has supplemented those arguments to address defendant Klein's motion for change of venue (ECF No. 309) in its latest opposition, which addresses the impact of the Select Committee hearings on the venue analysis (ECF No. 373), and those arguments are

1

Justice for "possible collusion" between the Executive and Legislative Branches (ECF No. 355, at 1), as well as disclosure of (presumably all) "transcripts of witnesses produced in connection with the Committee Hearings." ECF No. 358, at 1. The defendants also seek to continue the trial dates in this matter because the "media extravaganza deliberately planned by the Committee" to "gain maximum public exposure" implicates the defendants' fair trial rights and materials released by the Committee in September 2022 may occur while the first trial is under way. ECF No. 360, at 2, 12. The defendants' motions should be denied.

### I.   Defendants Provide No Legal or Factual Basis for Their Discovery Requests.

#### A. Defendants Are Not Entitled To Communications Between DOJ and House Select Committee

Defendant Morss and those who join his motion contend (Morss Mot. Compel, at 4) that the Select Committee has "colluded with the Executive Branch," and that such collusion supports the request for additional discovery.  That contention is both factually and legally flawed.

As a preliminary matter, the defendants' request for an order compelling the production of communications between the Department of Justice and the Select Committee should be denied as premature.  Per Local Criminal Rule 16.1, "[n]o discovery motion shall be heard unless it states that defense counsel has previously requested that the information sought from the attorney for the United States and that such attorney has not complied with the request."  In this case, the defendants never requested the information sought from the government.[2]

---

incorporated here.

[2] Defendants Judd, Cappuccio, Mehaffie, Morss and Sills did request of the government the transcripts of witness testimony before the Select Committee, which is requested in Judd Mot. Compel. Therefore, this argument does not apply to that request.

2

Had the defendants made such request, however, they would have learned that as a factual matter, their speculation that the Select Committee coordinates—or, in their words, "colludes"—with the Executive Branch is inaccurate.  For one thing, the House of Representatives created the Select Committee to investigate the "facts, circumstances, and causes" related to the Capitol siege on January 6, 2021, and to make recommendations aimed to prevent any similarly violent acts in the future.  *See* H.R. Res. 503, 117th Con. §3-4 (2021); *see Trump v. Thompson*, 20 F.4th 10, 16 (D.C. Cir. 2021).  As such, the legislatively created Select Committee is distinct from the Executive Branch, including the Department of Justice.  *See, e.g.*, *Trump*, 20 F.4th at 16 (litigation involving Select Committee request from Archivist of the United States).  Moreover, as the Chief Judge recently noted, the Department of Justice has sought access to certain of the Select Committee's investigative materials, which would be unnecessary if the two entities were operating jointly.  *See United States v. Williams*, 21-cr-377, ECF No. 108 (D.D.C. June 23, 2022); *see also United States v. Nordean*, 21-cr- 2022 WL 2292062, at *2 (June 24, 2022) (noting that the Department of Justice was uncertain about the timing of the release of Select Committee interview transcripts).  In short, the defendants fail to establish any "impermissible government collaboration" (Morss Mot. Compel, at 5) with the Select Committee.

The defendants also fail to establish any legal ground that would entitle them to the discovery they appear to request.  The Federal Rules of Criminal Procedure provide that upon a defendant's request, the government must permit the defendant to "inspect and to copy or photograph" documents or objects, including buildings or places, that are within the government's possession, custody or control.  Fed. R. Crim. P. 16(a)(1)(E).  Rule 16 establishes "the minimum

amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." *United States v. Karake*, 281 F.Supp.2d 302, 306 (D.D.C. 2003) (quoting Fed. R. Crim. P 16 advisory committee's note to the 1974 amendments). Rule 16 does not, however, bestow on the defendant a right to unrestricted access to all documents and objects within the government's possession, custody, or control. *See United States v. Maranzino*, 860 F.2d 981, 985–86 (10th Cir. 1988) ("Rule 16 does not authorize a blanket request to see the prosecution's file"). Rather, it applies to those documents and objects that (1) are "material to preparing the defense;" (2) the government intends to use in its case-in-chief at trial; or (3) were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E).

Evidence is material under Rule 16 "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Marshall,* 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)). Material evidence includes both exculpatory and inculpatory evidence. *Id*. Nevertheless, to show materiality, the defense must demonstrate that the evidence bears "some abstract logical relationship to the issues in the case" and would enable "the defendant significantly to alter the quantum of proof in his favor." *Lloyd*, 992 F.2d at 351 (internal quotation omitted); *see also United States v. Slough*, 22 F. Supp. 3d 1, 4-5 (D.D.C. 2014) (observing that the movant bears the burden of demonstrating that the requested discovery bears "more than some abstract logical relationship to the issues in the case").

Any communications between the Department of Justice and the Select Committee does not meet this standard. The government would not use the communications in its case-in-chief nor would they be obtained from or belong to these defendants. As a result, the defense must show that these communications are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). But the defendants do not advance any arguments that such communications would be material to their defense. Nor is it remotely evident how such communications could be relevant, let alone material, to any issue at trial. The defendants make passing reference (Morss Mot. Compel, at 1) to footage from Select Committee hearings that appears to have originated with body-worn cameras or closed-circuit video at the Capitol, but they do not suggest that they seek any of that footage—footage which they would already have received through discovery.

*United States v. Berrios*, 510 F.2d 1207 (2d Cir. 1974), on which the defendants rely (Mot. 5), is inapposite. In *Berrios*, the Second Circuit vacated the district court's dismissal of the indictment on the ground that the district court exceeded its authority in requiring the government to disclose to the defendant an internal memorandum (and then dismissing when the government refused to do so). *Id.* at 1212. Moreover—and as the defendants note, Morss Mot. Compel, at 5 n.1—*Berrios* concerned a claim of selective prosecution, which only defendant Klein has advanced here, and he does not join this motion. The other defendants, who do join this motion, have already litigated and lost claims of selective prosecution in this case. *See* Memorandum Order, ECF No. 203.

### B. Defendants Are Not Entitled to Transcripts of All Witnesses Who Appeared Before the Select Committee.

5

The defendants also seek to compel "the transcripts of witnesses produced in connection with the Committee Hearings." Judd Mot. Compel, at 1. The defense's bare assertion that, because the government has stated in a separate case that the transcripts are discoverable, does not mean they are relevant or discoverable here. That matter, *United States v. Nordean, et. al.,* 21-cr-175 (TJK), involves a seditious conspiracy indictment against several defendants alleged to be leadership of the Proud Boys extremist group. The Proud Boys organization and their prosecution has received substantial attention at the hearings, including quoting from pleadings in the pending case and description of the conduct of those particular defendants (by name in some instances). Unlike the unique situation in *Nordean*, the government has no reason to believe that the Select Committee will release transcripts or other materials in the coming weeks that will have an impact on this case.

The trial in this case will focus on the conduct of these nine defendants, whom the government has no indication are affiliated with any larger organizations that played a role in the Capitol Riot.

At trial, the government anticipates calling witnesses who generally will testify on the following points:

- United States Capitol Police ("USCP") witnesses to describe the layout of the Capitol, general events of the riot, certain responses taken to the threats of the rioters, the restricted perimeter, the USCP CCTV camera system, the actions on the West Front and Lower West Terrace of the Capitol, and the Official Proceeding occurring before the Congress on January 6, 2021;

- United States Secret Service special agent to establish that the Vice President—a person protected by the secret service—was present at the Capitol on January 6, 2021, and thus that the Capitol building and grounds were a restricted area for purposes of 18 U.S.C. § 1752;

- Victims of various assaults by these defendants, to include both USCP and Metropolitan Police Department ("MPD") officers;

- The FBI Special Agents who conducted the investigation into these nine defendants, who retrieved evidence through search warrants or subpoenas, and who arrested or searched incident to arrest these nine defendants;

- Civilians who can independently identify these nine defendants and can speak to their state of mind and intent before and after coming to Washington, D.C. on January 6, 2021.

Two of the officer witnesses—USCP Officer Aquilino Gonell and MPD Officer Daniel Hodges—have testified before the Select Committee, and video footage of that testimony has been provided to the defense.[3] Any other transcripts by relevant witnesses to this litigation will be

---

3 In fact, these witnesses testified publicly on July 27, 2021, and videos and transcripts of their testimony are widely available to the public. See, e.g., Politico, *Officer Daniel Hodges' January 6 investigation full opening statements*, https://www.youtube.com/watch?v=V9PASf5-XK0 (last accessed July 14, 2022); C-SPAN, *U.S. Capitol Police Sergeant Aquilino Gonell on January 6th Attack at the U.S. Capitol*, https://www.youtube.com/watch?v=5gl6f5nH6Wg (last accessed July 14, 2022); CNN Live Event, *Investigating the Insurrection: Officers attacked at the U.S. Capitol Testify at Insurrection Hearing,* cnn.com/TRANSCRIPTS/2107/27/se.07.html*,* (last accessed July 14, 2022); *January 6 House Select Committee Hearing Investigation Day 1 Full Transcript,* https://www.rev.com/blog/transcripts/january-6-house-select-committee-hearing-investigation-day-1-full-transcript (last accessed July 14, 2022)

produced as *Jencks* material for those witnesses, if they have not been produced in discovery already. The additional hundreds of transcripts that the Select Committee has amassed in its investigation are unlikely to be probative of or relevant to the charges alleged against these nine defendants. Therefore, the Court should deny the motion.

> II. These Defendants' Rights Are Not Abridged By the Select Committee Hearings, And Therefore They Are Not Entitled to A Continuance.

The defendants claim in their motion that the publicity around the Committee's hearings gives rise to a presumption of prejudice that only can be remedied through a continuance or change of venue. Mehaffie Mot. Continue, at 8. But the limited circumstances in which courts have found presumptive prejudice to exist bear no resemblance to the defendants here; they involve intense and targeted pretrial publicity focused on the defendants at issue and their alleged crimes in particular. The defendants cite to *Sheppard v. Maxwell*, (Mehaffie Mot. Continue, at 7) where the defendant was accused of bludgeoning to death his pregnant wife. 384 U.S. 333, 335-36 (1966). There was then intense pretrial publicity centering on the defendant as the prime suspect, but also out-of-control publicity of the trial itself. *Id*. at 354-355 ("While we cannot say that Sheppard was denied due process by the judge's refusal to take precautions against the influence of pretrial publicity alone . . . [t]he fact is that bedlam reigned at the courthouse during the trial and newsmen took over practically the entire courtroom, hounding most of the participants in the trial, especially Sheppard.").

The defendants also cite to *Delaney v. United States*, 199 F.2d 107 (1st Cir. 1952), a case from which they attempt to draw support because it concerns a matter in which congressional hearings generated prejudicial pretrial publicity. But *Delaney* involved parallel criminal and

8

congressional investigations into the defendant, Denis W. Delaney, who had been the Collector of Internal Revenue for the District of Massachusetts, and his alleged crimes. *Id*. at 109. After Delaney was criminally indicted, a congressional committee began a series of public hearings "focused upon alleged derelictions of appellant Delaney." *Id*. at 110. The press coverage—specific to Delaney—was intense and focused on the committee's investigation and findings relating to the very crimes for which Delaney was to be tried. *Id*. at 111 ("The newspaper publicity was characterized by flamboyant, front-page headlines in large, heavy type, covering colorful feature stories emphasizing the more striking aspects of the testimony. This was supplemented by radio and television exploitation of the same material."). As described above, however, these defendants' case could not be more different from Delaney's—because the congressional hearings in question are not about or focused on them specifically nor their assaults, and neither is the media coverage surrounding them.

Far from being presumptively prejudicial, the pretrial publicity that the defendants cite in their motion is not about them. Nor do the defendants do more than reiterate the arguments advanced in their change of venue motion to state why the normal course of *voir dire* will not be sufficient to ensure him an impartial jury. As Chief Judge Howell recently ruled in *United States v. Anthony Williams,* 21-cr-377, ECF No. 108 (D.D.C. June 28, 2022): "Although the Committee Hearings are garnering public attention and appear to be continuing an investigation into the events of January 6 *writ large*, this is not sufficient reason… to delay *this* defendant's trial." The same is true here.

9

In *Williams*, the Chief Judge found that "the Committee Hearings have been methodically articulating an organized, high-level plot reaching the highest levels of government actors to disrupt Congress's certification of the 2020 presidential election results, with specific mention of the names of both certain government actors and certain far-right groups." *Williams*, ECF No. 108, at 2-3. None of those government actors nor far-right groups were at play in *Williams*; similarly, none are at play here. Additionally, the Chief Judge found no reason to continue the trial in *Williams* when the defendant offered "no reason other than bald speculation to believe that such Committee materials will bear in a material way on the evidence to be presented at trial concerning *this* defendant's offense conduct." *Id.*, at 3. The Chief Judge went on to distinguish *Delaney*, because, as noted above, the defendant himself was a principal subject of the concurrent proceedings; the *Williams* defendant, like those in this indictment, is "charged with only playing a small part" in the proceedings before the Congress. *Id.*, at 4. Finally, the Chief Judge distinguished *Williams* from *Nordean*, which the defendants cite (Mehaffie Mot. Compel, at 11-12) as analogous to this case. As the government argues above, the Chief Judge found *Nordean* "is entirely different from this case in kind, complexity, and profile before the Committee." *Williams*, ECF No. 108, at 4. The government asserts no such allegation here—these defendants are not even charged with conspiracy, but merely as co-defendants in their assaultive and obstructive behavior. "Taken to its logical endpoint, defendant's argument would preclude nearly *any* criminal trial on *any s*ubject, *ever*, from proceeding, as it is *always* possible that relevant information exists somewhere that is not fully known by or in the possession of the parties." *Id.*, at 5-6. That is not the standard.

For the same reasons articulated by the Chief Judge in *Williams*, the Court should deny the motion to continue.

## **CONCLUSION**

WHEREFORE, the Government respectfully requests that the Court deny the defendants' motions to compel and motions to continue.

    Respectfully submitted,

    MATTHEW M. GRAVES
    UNITED STATES ATTORNEY
    D.C. Bar No. 481052

    BY:   /s/
    KIMBERLY L. PASCHALL
    Assistant United States Attorney
    D.C. Bar No. 1015665
    Email:Kimberly.Paschall@usdoj.gov

    JOCELYN BOND
    Assistant United States Attorney
    D.C. Bar No. 1008904
    Email: Jocelyn.Bond@usdoj.gov