UNITED STATES DISTRICT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Case No. 21-cr-00040-TNM |
| ) | |
| PATRICK EDWARD MCCAUGHEY, ) | |
| III ) | |
| ) | |
| Defendant ) | |
| ) | |

# DEFENDANT DAVID MEHAFFIE'S REPLY TO GOVERNMENT OPPOSITION TO MOTION *IN LIMINE* NO.1— NARRATION OF VIDEO EVIDENCE

William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com
*Attorney for Defendant*

1

The basis of the Government's opposition seems to be that the pending motion doesn't explicitly link the objections to any proposed witness narration of videotape evidence to a specified Rule of Evidence. Narrative testimony regarding the content of video evidence played for the jury is irrelevant (Rule 401), lacks foundation (Rule 602), is improper lay opinion testimony without proper foundation (Rule 701), and/or may amount to improper expert opinion testimony for which no notice has been provided (Rule 702).

Beyond that, the cases cited in the Government's opposition support Mr. Mehaffie's motion in almost every respect.

<u>United States v. Begay</u>, 42 F.3d 846, (9th Cir. 1994)[1] is an instructive example. At issue there was the narration of an enhanced videotape that had been specially prepared by a government witness from the original video. <u>Id</u>. at 502. The original video was Exh. 1, The enhanced video was only a part of Exh. 1, and was separately marked and admitted as Exh. 105. <u>Id</u>.

The witness created Exh. 105 with portions of the video slowed down, the video quality enhanced, and color-coded circles and arrows added to trace the movements of identified subjects. <u>Id</u>.

The district court allowed Exh. 105 to be admitted on the basis that it was helpful to the jury, but only on the condition that witness testimony would explain the markings that were added, and the witness would be subject to cross-examination. <u>Id</u>. The witness was allowed to narrate only Exhibit 105

---

[1] The first issue the Court should take note of is that the video evidence in the pending case was taken in the digital age – captured in 2021 for publication to a jury in 2022. <u>Begay</u> concerned the use of video evidence from the early 1990s, and might just as well be discussing the use of cassette tapes and 8 mm home movies.

1

that he created regarding his markings and what they meant, not the original source video -- Exhibit 1.  Id.

The Ninth Circuit affirmed allowing the witness testimony as to Exh. 105 as "lay opinion" testimony under Rule 701, with the witness's personal knowledge coming from extensive study of Exh. 1 and hundreds of photographs of the same event which were the basis for the markings.  Id. at 503.

Unless the Government says to the contrary now, Mr. Mehaffie assumes that the Government intends to play the original video evidence produced in discovery and identified to the defendants in the Government's April 4, 2022, court-ordered disclosure.[2]  There are no enhanced video prepared by the FBI or anyone else – at least no such videos have been produced in discovery.

It wasn't the original video in Begay that was the subject of witness narration as would be the case here -- it was the enhanced video with the narration explaining what the enhancements were and why they were done.  The holding in Begay provides no support to the Government here.[3]

---

[2] If the Government has other video evidence in mind, that raises a host of different issues for trial.  The Government does confirm in its Opposition that it will not be offering expert witness testimony.

[3] Also worth noting is the following observation by the Ninth Circuit:

> "Although the jury viewed Exhibit 1 in its entirety, it is reasonable to assume that one viewing a videotape of a demonstration involving over 200 people would likely not see certain details, given the tremendous array of events all occurring simultaneously. Officer Calnimptewa spent over 100 hours viewing Exhibit 1. To have the jury do likewise would be an extremely inefficient use of the jury's and the court's time."

Defendant Mehaffie does not know what is the Court's practice with regard to video evidence going into the deliberation room with the jury. But this is not the early 1990s as was the case in Begay. Large screen monitors and simple video playback devices are ubiquitous in courtrooms in 2022.

United States v. Shabazz, 564 F.3d 280, 287 (3rd Cir. 2009) is equally unavailing for the Government's position but for a different reason.

The witness who gave the video narration in Shabazz was a co-perpetrator, not a law enforcement agent. The witness testified as a fact witness, not a witness offering lay opinion under Rule 701.

> "Patton identified Shabazz in images taken from surveillance video of events in which Patton himself took part. Indeed, the District Court expressly limited Patton's narration of the video to those incidents to which Patton was an eyewitness, excluding him from discussing what was happening in those portions of the video that depicted actions to which Patton's back was turned at the time."

Shabazz supports narration of video evidence by a percipient witness to the events captured on the video. The motion *in limine* here does not seek to preclude such testimony, only the narration by Government agents who were not present on January 6.

The next case cited by the Government, United States v. Torralba-Mendia, 784 F.3d 652, 659-60 (9th Cir. 2015) is first noteworthy for the fact that the Ninth Circuit pointed out that the defendant did not object to the narration of the video evidence at trial, and the Court reviewed the issue only for "plain error." The Government relies extensively on Torralba-Medina here.

The Court described the narration in general terms as follows:

> The government also called Agent Frazier as both an expert and lay witness. Frazier spent nine years patrolling the border near Nogales. Like Burrola, he explained how smugglers evaded checkpoints and provided ways to distinguish between a guide and a migrant.
>
> After giving expert testimony about the standard practices of alien smuggling organizations, Frazier began to offer lay testimony. The government transitioned from expert to lay testimony by asking, "[a]nd were you eventually assigned to an investigation involving Southern Arizona shuttle companies?" Frazier then testified intermittently over the next few days about his observations in this case. He narrated surveillance videos showing vehicles dropping off and picking up people

3

>from GS. He told the jury the duration of time lapses in the videos, pointed out the vehicles' identifying marks, tied the cars to various conspirators, and counted the number of people exiting and entering different vehicles. He also interpreted phrases in phone calls between shuttle drivers and GS. And he explained which conspirators he thought were the organization's leaders based on evidence that they controlled the migrants, recruited workers, and gave orders to the drivers.
>
><u>Torralba did not object</u> when Frazier narrated videos…

There was no objection when Frazier testified as a lay opinion witness. The *post hoc* justifications for not finding "plain error" in <u>Torralba-Medina</u> are not present here. The holding offered by Torralba-Medina is that it was not "plain error" to have allowed the narration in the absence of a defense objection. Here Mr. Mehaffie is objecting. <u>Torrabla-Medina</u> does not solve the Government's problem.

The videos to be shown to the jury in this case involve a discreet period of time over a short time-span on the same day. The jury is just as capable as a federal agent to watch a video, identify a defendant, and evaluate the defendant's actions – or inaction as may be the case. The Government can use still images of figures in the videos to identify particular defendants, and once identified the jurors are just as capable of following the video footage as a federal agent witness. Witness testimony about what a video shows is argument, not factual testimony. Such testimony invades the province of the jury to determine what the evidence shows when it offers no meaningful assistance beyond what the jury is able to see on its own.

Nearly every case cited by the Government had some unique circumstance(s) that justified allowing a witness to narrate some portion of the video evidence. In Footnote 1, the Government cites several cases beginning

4

with United States v. West, 877 F.3d 434, 437 (1st Cir. 2017). Based on the context and language, West appears to have involved "dash-cam" videos of a police pursuit. The trial judge redacted all but 8 minutes of a 30-minute video pursuant Rule 403. "The District Court also instructed the government to not elicit testimony regarding what happened in the redacted portions of the video from the law enforcement officer who would be called as a witness to narrate the video." Id. The context strongly suggests this was a fact witness, not a lay opinion witness under Rule 701. The Government is not offering a similar fact witness here.

The Government also cites United States v. Garcia-Zarate, 419 F.Supp.3d 1176, 1178-79 (N.D. Cal. 2020). That opinion is simply rulings on pretrial *motions in limine*, one of which involved an "edited and enhanced video." The ruling says only that "witnesses" may narrate and describe events in the video based on their perceptions, but they "may not speculate as to the intention of other actors captured in the video…" Id. (Emphasis added). The clear implication is that the witnesses expected to provide the narration were persons captured on the video, and they could testify to their own actions and thought processes, but not others.

Allen v. Klee, 2016 WL 5791189 (E.D. Mich. Oct. 4, 2016) is a habeas matter alleging ineffective assistance of counsel, where the opinion expressly states that admission of video narration was decided as a matter of Michigan law. "The Michigan Court of Appeals determined that the evidence was relevant and admissible under Michigan law. The failure to object to relevant and admissible evidence is not ineffective assistance of counsel." Id. at p. 6.

5

Hunt v. Davis, 2018 WL 2306900 (W.D. Texas, May 21, 2018) and James v. People of the Virgin Islands, 60 V.I. 311, 2013 WL 6585638 (S. Ct. of Virgin Islands, Dec. 12, 2013) both involved testimony by law enforcement officers about video evidence when they had firsthand knowledge of the events recorded on the videotape they narrated, making them fact witnesses and not lay opinion witnesses under Rule 701.

United States v. Foster, 743 Fed. Appx. 129 (3rd Cir. 2018) and United States v. Isaac, 763 Fed. Appx. 478 (6th Cir. 2019) (unpublished opinion), both held that it was error to allow law enforcement officers to narrate video evidence when they lacked personal knowledge because they were not percipient witnesses to the events on the video. The Government cites these cases because the outcome in each was that the appellate court determined that the error was harmless. Obviously, that doesn't justify allowing error that is preventable.

The Government also cites the decision granting summary judgement by Judge Contreras in Buraca v. District of Columbia 902 F. Supp. 2d 75 (D.D.C. 2012). As noted by the Government, the plaintiff in that civil case opposed a motion for summary judgment in a police shooting case by offering an affidavit, parts of which purported to narrate a videotape of the shooting. Judge Contreras ruled that the affidavit could not be considered because the video had not been submitted, and there was no record made that the video was unavailable under the "Best Evidence Rule." But nothing in the opinion states that offering the video would have made the narration by affidavit admissible.

> "Even if the best evidence rule did not apply, the court sees no independent reason to allow the plaintiff to narrate the videos' content. The plaintiff does not purport to be an expert, whose testimony could be

6

      based on the video footage. Fed.R.Evid. 703. Nor does the plaintiff claim that she has some unique knowledge that would be helpful to the jury's understanding of the video. See Fed. R. Evid. 701(b) (requiring testimony to be "helpful to clearly understanding ... a fact in issue").

Id. at 83.

      This is the same quoted text as is set forth in the Government's Opposition. But the import of the passage is that the party offering evidence has the obligation to lay a foundation for the evidence prior to it being admitted. Witness testimony is no different in this regard than physical evidence, whether by a live witness or an affidavit. Narrative testimony isn't "helpful" just because the Government says it's so. The Government needs to lay that foundation with regard to a particular witness based on specific reasons for why the narrative should be allowed.

      The Government's argument seems to be that the *motion in limine* is too broad, and the Court should wait for trial to determine whether to allow narration.

      But that ignores the purpose of *motions in limine* – they raise evidentiary objections prior to trial to proffered evidence on the basis that allowing the evidence would violate the rules. This *motion in limine* would apply to all witness narration of video on the basis that such testimony lacks foundation. If the Government wants to attempt to lay a foundation at trial for narration to be allowed under Rule 701, it should do so outside the presence of the jury. Without that foundation, all narration testimony should be precluded pursuant to this motion.

Date: July 15, 2022                                    Respectfully Submitted,

/s/ William L. Shipley
William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant David Mehaffie*

8

1