UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-40-8 (TNM) |
| v. : | |
| : | |
| STEVEN CAPPUCCIO, : | |
| : | |
| **Defendant.** : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT CAPPUCCIO'S
MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE

The United States of America now responds to defendant Steven Cappuccio's Motion in *Limine* to preclude the government from using certain evidence during the trial in this matter. ECF No. 304. Specifically, Cappuccio asks that this Court prohibit the government from using the following categories of evidence:

1) words and phrases, like "insurrection," "attack," "rioters," and "tunnel of death;" "victim," "robbery," and "assault;" "conspiracy" and "co-conspirator"

2) testimony from law enforcement regarding tips gathered during the investigation; "expert" opinion from prior investigative experience; purported medical opinions; and Cappuccio's invocation of his right to remain silent[1];

3) evidence or testimony of any witness regarding the speculated purpose or motivation for their actions on January 6, 2021;

ECF No. 304.  The Court should deny each of these requests.

---

[1] The government does not seek to admit any testimony about the fact that Cappuccio invoked his right to remain silent upon his arrest, and therefore does not address that argument here.

**ARGUMENT**

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, --- F.3d --- , 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022)  Additionally, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998).  Neither Rule 401 nor 403 supports Cappuccio's requested relief.

    **I.**    **The government should be permitted to use words and phrases adequate to describe the events and charges brought in this case.**

Cappuccio argues that the Court should exclude the terms "insurrection," "attack," "rioters," and "tunnel of death." ECF No. 304, at 1-4. What took place at the Capitol on January 6, 2021 may be properly described as a riot, breach, attack, assault, or insurrection.  Thousands of people forced their way into the Capitol building during the constitutionally mandated process of certifying the Electoral College votes, threatened the peaceful transfer of power after the 2020 presidential election, injured more than one hundred law enforcement officers, and caused more than two million dollars in damage and loss.  This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss).

Cappuccio is charged, in Count Thirty-Four of the operative Indictment, with Obstruction of an Official Proceeding, Aiding and Abetting. ECF No. 179. He is alleged to have done so by corruptly obstructing, influencing, and impeding the proceeding before Congress, specifically

2

Congress's certification of the Electoral College Vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. § 15-18, on or about January 6, 2021. ECF No. 179. That Congressional proceeding, which allows for the peaceful transfer of power, is at the heart of the American democracy; to ignore that fact is to hide information from the jury. Cappuccio is charged in Count Thirty-Five with Civil Disorder and is alleged to have committed an act that obstructed, impeded, or interfered with a law enforcement officer lawfully engaged in the performance of his official duties, incident to and during the commission of a civil disorder. ECF No. 179. That civil disorder was the attack on the U.S. Capitol on January 6, 2021. Additionally, Cappuccio is charged in Count Fifty-Two with Disorderly Conduct in a Capitol Building and in Count Fifty-Three with Acts of Physical Violence in the Capitol Grounds or Buildings. ECF No. 179.  In order for the government to prove its case beyond a reasonable doubt, the government and its witnesses must discuss the actions of the mob that attacked the Capitol building on that day, and Cappuccio's actions as a part of that mob.

Cappuccio asks that the Court preclude "conclusory" terms like robbery, assault, and "victim." ECF No. 304, at 17-19. Cappuccio has been charged with two counts of assaulting, resisting and impeding law enforcement in Counts Twenty-Eight and Twenty-Nine, as well as robbery in Count Thirty. The government must elicit specific testimony involving "robbery," "assaults" on officers who were victims of the defendant's actions.  Such testimony goes directly to the elements of many charges and to exclude these words would be to sanitize the conduct of Cappuccio beyond recognition.

Additionally, Cappuccio take issue with use of the words "conspiracy" and "co-conspirator." ECF No. 304, at 19-20. The government does not anticipate eliciting testimony regarding any conspiracies, legal or otherwise. However, Cappuccio can take comfort that this Court will, as it always does, instruct the jurors that the arguments of the lawyers are not evidence.

Redbook Criminal Jury Instruction 2.105 ("The statements and arguments of the lawyers are not evidence. They are only intended to assist you in understanding the evidence. Similarly, the questions of the lawyers are not evidence."); *see also Darden,* 477 U.S. at 182 ("The trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence."). The Court will also instruct the jury as to precisely what the defendant is charged with, and can even go a step further, if needed, and instruct the jury as to what the defendant is *not* charged with, such as conspiracy. Such decisions can be made in response to the evidence elicited at trial, rather than pre-empted with the ruling requested by Cappuccio here.

Cappuccio's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan).  While a jury will judge the defendant based on his own actions, the context of Cappuccio's actions will necessarily be placed before them.  And that context was an attack on the Capitol.

**II.     Law enforcement witnesses should be permitted to testify to their investigation, their observations, and their experiences.**

Cappuccio seeks to exclude evidence about how the investigation began, namely, tips that came into the FBI regarding his identity. ECF No. 304, at 5- 10. While the government would not seek to admit improper hearsay testimony, the government should be allowed to elicit information from investigating agents about the investigative steps taken, if they are not offered for the truth

4

of the matter asserted. The Confrontation Clause prohibits an out-of-court statement only if it is admitted for its truth. *See, Crawford v. Washington*, 541 U.S. 36, 60, n. 9 (2004); see also *Woods v. Etherton*, 578 U.S. 113, 117-119 (2016)(holding that a fairminded jurist could conclude that the defednant was not prejudiced when the tip and a witness's testimony corresponded on uncontested facts). So long as the agents do not testify that to the content tips as if the content are undisputed truth, they should be admissible under *Crawford.* Additionally, The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it, should the government choose to put on the declarant at trial. *Crawford,* 541 U.S. at 60, n. 9.

Cappuccio also argues that law enforcement witnesses should be precluded from giving expert testimony, (ECF No. 304, at 10-14), but does not specify exactly what testimony he believes falls within the purview of an expert that he expects the government will elicit. "Federal Evidence Rule 701 permits lay testimony in the form of an opinion when it meets the following criteria: it must be rationally based on the witness's perception and helpful to the jury in understanding the witness's testimony or the determination of a 'fact in issue,' and may not be based on the kind of specialized knowledge possessed by experts within the scope of Rule 702." *See*, *United States v. Robinson*, No. CR 16-98 (CKK), 2017 WL 2636517, at *2 (D.D.C. June 15, 2017) (citing *United States v. Hampton,* 718 F.3d 978, 981 (D.C. Cir. 2013)). The D.C. Circuit has issued a number of opinions carefully delineating what a law enforcement agent may and may not opine on as a lay witness. Crucially, "[l]ay opinion is proper when it is based upon personal knowledge of events that occurred in the case being tried," but not when it is based on knowledge from other law enforcement experience generally." *Robinson*, at *2 (D.D.C. June 15, 2017)(collecting cases). If the government were to elicit lay opinion testimony from agents (though about what topic is not abundantly clear), it would be permissible if it fell within the agent's personal knowledge of the investigation at issue here.

Finally, Cappuccio argues that Officer Daniel Hodges should be precluded from discussing the injuries he sustained on January 6, 2021. ECF No. 304, at 14-15. While the government does not expect to elicit any medical opinion testimony from Officer Hodges that would require an expert, Officer Hodges should be permitted to discuss what he experienced on that day at the hands of the defendant, as well as any subsequent effects he has suffered. The government need not prove the level of injury to meet the elements of 18 U.S.C. 111(a)(1) and (b), but must prove "such acts involve physical contact with the victim of that assault or the intent to commit another felony," and that the defendant "used a deadly or dangerous weapon …or inflicts bodily injury." *See* 18 U.S.C. 111(a) and (b). "Lay witness testimony, especially that of the alleged victim, is certainly relevant to the jury's determination of whether [the victim] suffered serious bodily injury." *See, United States v. Alvarado,* No. 2:10-CR-157 TS, 2011 WL 167069, at *1 (D. Utah Jan. 19, 2011)(holding that expert testimony not necessary to establish serious bodily injury). The defense provides no legal authority saying otherwise. Unlike cases where the injuries sustained are complex and require "involves specialized knowledge beyond the ken of a lay man," *see Lightfoot v. Rosskopf*, 377 F. Supp. 2d 31, 33 (D.D.C. 2005), Officer Hodges sustained a bloody lip, pain to his left hand, back pain, and a head contusion (through his police-issued helmet) causing headache. These are all injuries that a juror can understand as coming from assaultive actions and needs no specialized knowledge to explain.

### III. The government needs to establish the defendant's intent to disrupt the Congressional proceeding and should not be restricted as to who can testify regarding that intent.

Cappuccio requests the Court to order the Government to refrain from eliciting testimony regarding the alleged purpose for Mr. Cappuccio's actions on January 6, 2022. ECF No. 304, at 16-17. While the government would not seek to admit any speculation from witnesses, the

government does need to establish that the defendant had the proper *mens rea* for each charged offense. For the Obstruction of an Official Proceeding count, the government must prove the defendant had the corrupt intent to obstruct the Joint Session of Congress. 18 U.S.C. 1512(c)(2); See ECF No. 179. Direct evidence of knowledge is, of course, rarely available, but "[c]ircumstantial proof of specific intent may suffice." *United States v. Quinn*, 403 F. Supp. 2d 57, 66–67 (D.D.C. 2005) (citing *United States v. Tooker*, 957 F.2d 1209, 1214 (5th Cir.1992)). The government may need to elicit testimony from those who knew the defendant, his stated reasons for coming to Washington, D.C. for January 6th, and his attitude and demeanor at the Capitol, in order to prove the defendant's intent. The government should not be foreclosed from eliciting such evidence.

Dated: July 15, 2022.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

        BY:   /s/
        KIMBERLY L. PASCHALL
        Assistant United States Attorney
        Capitol Siege Section
        D.C. Bar No. 1015665
        601 D Street, N.W.,
        Washington, D.C. 20530
        202-252-2650
        Kimberly.Paschall@usdoj.gov