IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | Crim. No. 21cr40 |
| | ) | Hon. Trevor McFadden |
| ROBERT MORSS, | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY

Comes now Defendant Robert Morss, by counsel, and replies to the government's Opposition (Doc 374, "Opp") to his Motion to Compel Disclosure (Doc 355).

The government decries Defendant's Motion to Compel Discovery of all communications between the Department of Justice ("DOJ") and the House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Committee") - but misapprehends the record to do so.

**The Instant Motion Does Not Rely on Fed. R. Crim. P 16.**

The government states that Rule 16 does not contemplate the relief sought in the motion. Opp at 3-5. The motion, however, nowhere relies on Rule 16.

**The Instant Motion Does Not Allege Selective Prosecution.**

The government notes that Defendant has not made a claim of selective prosecution. Opp at 5. The motion, however, alleges a different variant of prosecutorial misconduct – namely, the intentional poisoning of the jury pool. The fact that two different branches of government, the Executive and the Legislative, Opp at 3, may have had a hand in the poisoning does not diminish the damage to Defendant's right to an impartial jury.

1

In fact, a prosecutor's poisoning of a jury pool stands among the most egregious examples of prosecutorial misconduct.

> "[Having done so] breached all standards of prosecutorial ethics, gave the government a surreptitious advantage in influencing public opinion, the venire panel, and the trial itself.

*United States v. Bowen*, 799 F. 3d 336, 353 (5th Cir. 2015).

Such conduct by a prosecutor falls within:

> "the category of errors capable of infecting the integrity of the prosecution to a degree warranting a new trial irrespective of prejudice.

*Id.*

The Committee's repeated publication of restricted discovery evidence and its members' express pronouncements of their intention to share the Committee's findings with the DOJ clearly suggest irregular decisions on the part of DOJ and/or the Committee. This evidence of irregularity resides in the Committee's own proceedings which connote an order of reliability exceeding that of evidence merely "personal" or "anecdotal" and which is sufficient, therefore, to defeat the "presumption of regularity" ordinarily attending prosecutorial decisions. *United States v. Armstrong*, 517 U.S. 456, 464, 470 (1996).

As "some evidence tending to show the existence" of inappropriate government conduct, the Committee's pronouncements render communications between the DOJ and the Committee susceptible to compelled disclosure. *United States v. Berrios*, 501 F. 2d 1207, 1211-12 (2nd Cir. 1974).

**The Scope of the Committee's Hearings Does Not Support a Denial of the Motion.**

The government incorrectly states that the pretrial publicity born of the Committee's hearings "is not about them [the defendants herein]." Opp at 9. As protesters

2

charged with violent felonies, however, all of the defendants at bar fall squarely within the people repeatedly vilified in the Committee hearings.

> "[I]t was domestic enemies of the Constitution who stormed the Capitol…

*Here's every word of the first Jan. 6 committee hearing on its investigation*, NPR (June 10, 2022, 1:27 PM), https://www.npr.org/2022/06/10/1104156949/jan-6-committee-hearing-transcript

> "[I]f you and your fellow officers hadn't held the line against these violent insurrectionists, we can only imagine the disaster that would have ensued.

*Id.*

> "The capitol was overrun.  Police officers lost their lives.

https://www.npr.org/2022/06/16/1105683634/transcript-jan-6-committee.

> "What I saw was just a war scene… I was slipping in people's blood.

https://www.npr.org/2022/06/10/1104156949/jan-6-committee-hearing-transcript.

Moreover, the government recurs, Opp at 9-10, to an inapplicable (and unbinding) decision to press its unavailing point.  The Chief Judge of this Court considered in *United States v. Anthony Williams*, 21cr377, a motion for continuance based on the pretrial publicity generated by the Committee's hearings.  In denying the continuance, Chief Judge Howell took pains to point out that "the Committee hearings have been methodically articulating an organized, high-level plot reaching the highest levels of government actors… " *Williams*, Doc. 108 at 2.

Mr. Williams, however, was charged "only with playing a small part." *Id*. at 4. Consequently, the Committee's focus, as interpreted by the Chief Judge, did not include him. Further, Mr. Williams was not charged with a violent felony.  The Committee's purple prose, therefore, was very unlikely personally to prejudice him.

3

On the other hand, the defendants herein, all charged with violent felonies, were precisely who the Committee members and witnesses had in mind when they decried, repeatedly and emotionally, the day's violence.

## CONCLUSION

More than anywhere else in the country, the events of January 6th continue to resonate here. The city's residents lived and worked among the events that were only a news story for everyone else. For them, the taint born of the Committee's hearings will not go away.

Respectfully Submitted,

ROBERT MORSS
By Counsel

_____/s/_____
John C. Kiyonaga

600 Cameron Street
Alexandria, Virginia 22314
Telephone: (703) 739-0009
Facsimile: (703) 340-1642
E-mail: john@johnckiyonagaa.com

Counsel for the Defendant

Certificate of Electronic Service

I hereby certify that on July 19, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties.

_____/s/_____
John C. Kiyonaga