```
1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
2
      * * * * * * * * * * * * * * *     )
3     UNITED STATES OF AMERICA,         )      Criminal Action
                                        )       No. 21-00040
4                    Plaintiff,         )
                                        )
5        vs.                            )
                                        )
6     CHRISTOPHER JOSEPH QUAGLIN,       )      Washington, D.C.
      STEVEN CAPPUCCIO and              )      March 21, 2023
7     FEDERICO GUILLERMO KLEIN,         )      3:35 p.m.
                                        )
8                    Defendants.        )
                                        )
9     * * * * * * * * * * * * * * *     )

10

11              TRANSCRIPT OF STATUS CONFERENCE
                     CONDUCTED VIA ZOOM
12         BEFORE THE HONORABLE TREVOR N. McFADDEN,
                  UNITED STATES DISTRICT JUDGE
13


14
      APPEARANCES:
15
      FOR THE GOVERNMENT:      ANTHONY W. MARIANO, ESQ.
16                             KAITLIN KLAMANN, ESQ.
                               UNITED STATES ATTORNEY'S OFFICE
17                               FOR THE DISTRICT OF COLUMBIA
                               601 D Street, Northwest
18                             Washington, D.C. 20530

19

      FOR THE DEFENDANT        JONATHAN GROSS, ESQ.
20         QUAGLIN:            THE CLEVENGER FIRM
                               2833 Smith Avenue
21                             Suite 331
                               Baltimore, Maryland 21209
22


23    FOR THE DEFENDANT        MARINA T. DOUENAT
           CAPPUCCIO:          FEDERAL PUBLIC DEFENDER'S OFFICE
24                             WESTERN DISTRICT OF TEXAS
                               727 Cesar E. Chavez Boulevard
25                             Suite B-207
                               San Antonio, Texas 78206
```

```
 1     APPEARANCES, CONT'D:

 2     FOR THE DEFENDANT        EDGAR H. HOLGUIN, ESQ.
               CAPPUCCIO:       FEDERAL PUBLIC DEFENDER'S OFFICE
 3                              WESTERN DISTRICT OF TEXAS
                                700 East San Antonio
 4                              Suite D-401
                                El Paso, Texas 79901
 5

 6     FOR THE DEFENDANT        STANLEY E. WOODWARD, JR., ESQ.
                  KLEIN:        BRAND WOODWARD LAW
 7                              1808 Park Road, Northwest
                                Washington D.C. 20010
 8
                                WILLIAM L. SHIPLEY, ESQ.
 9                              LAW OFFICES OF WILLIAM L. SHIPLEY
                                Post Office Box 745
10                              Kailua, Hawaii 96734

11
       REPORTED BY:            LISA EDWARDS, RDR, CRR
12                              Official Court Reporter
                                United States District Court for the
13                               District of Columbia
                                333 Constitution Avenue, Northwest
14                              Room 6706
                                Washington, D.C. 20001
15                              (202) 354-3269

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURTROOM DEPUTY:  Your Honor, this is
 2    Criminal Case 21-40, the United States of America versus
 3    Christopher Quaglin, Steven Cappuccio, Federico Klein.
 4              Counsel, please introduce yourselves for the
 5    record, starting with the Government.
 6              MR. MARIANO:  Good afternoon, your Honor.  Anthony
 7    Mariano for the United States, joined by my co-counsel,
 8    Katie Klamann.  Ashley Akers is in trial on another matter.
 9    I'll be here today.
10              THE COURT:  Good afternoon, folks.
11              MS. DOUENAT:  For Mr. Cappuccio, your Honor -- and
12    he's here -- Marina Douenat and my co-counsel, Ed Holguin.
13    We're here and present.
14              THE COURT:  Good afternoon, Ms. Douenat.
15              And good afternoon, Mr. Cappuccio.
16              DEFENDANT CAPPUCCIO:  Good afternoon.
17              MR. GROSS:  For Mr. Quaglin, Jonathan Gross.
18              THE COURT:  Good afternoon, Mr. Gross.
19              Good afternoon, Mr. Quaglin.
20              DEFENDANT QUAGLIN:  Hello.
21              THE COURT:  Are you both actually at the jail,
22    Mr. Gross?
23              MR. GROSS:  Yes.
24              THE COURT:  Oh, great.
25              MR. WOODWARD:  For Mr. Klein, Stanley Woodward and
```

1    Bill Shipley.  Mr. Klein waives his appearance with the

2    Court's indulgence.  He's aware of the proceeding and the

3    nature of the matters to be discussed.  And I have spoken

4    with him just about five minutes ago to confirm that he

5    waives his appearance.

6              THE COURT:  Thank you, Mr. Woodward.

7              Good afternoon, Mr. Shipley.

8              Good afternoon, folks.  We are here for a couple

9    different reasons, primarily related to Mr. Quaglin, but

10   which could impact the whole group.  So I wanted you all to

11   be available to weigh in.

12             We have our bench trial date coming up in about

13   three weeks on April 10th here.  And I was told by

14   Mr. Gross, who now represents Mr. Quaglin, that he might be

15   seeking a continuance.

16             Mr. Gross, I've seen you subsequently had sought

17   an extension of time to file a motion for continuance.  But

18   I think we need to deal with this today, given that we have

19   a number of attorneys and Defendants who are preparing for

20   trial and preparing to make their way here to D.C. in less

21   than three weeks' time.  So I wanted to try to get to the

22   bottom of this.

23             So, Mr. Gross, why don't you tell me where you're

24   at and what specifically you are requesting.

25             MR. GROSS:  What I'm requesting is for Mr. Quaglin

1    to be severed from the other two Co-Defendants.  He was

2    arbitrarily placed with the nine, which then arbitrarily

3    became the five, which now arbitrarily became the three.  I

4    don't see why it can't arbitrarily be two.

5         He has a very good case.  There were a lot of --

6    there were a lot of issues, let's just say, and I think for

7    the sake of just avoiding any kind of confusion, he should

8    be severed from it.

9         We should -- I would love for you to be able to

10   just grant a continuance today, grant it until April 17th to

11   set forth in a brief why I think it should be severed.  And

12   I think the Government can respond to that and then we can

13   reset the trial with no impact to the other two.

14        THE COURT:  So, Mr. Gross, your trial date is

15   supposed to start on the 10th and will start on the 10th

16   unless I grant a continuance.  So I'm certainly not going to

17   give you until the 17th to indicate why you need a

18   continuance.

19        Is there something specific about his case that

20   makes it incompatible with the other two cases?  As you're

21   probably aware, there's a presumption in favor of joinder

22   for efficiency purposes and otherwise.  And my impression is

23   that all of the current Defendants were alleged to have been

24   in the lower west terrace tunnel at the same time involved

25   in substantially similar activities.  So I'm disinclined to

1    grant a severance.  But if there's something specific that

2    takes this -- separates this from the others, I'm happy to

3    hear about it.

4              MR. GROSS:  Yes.  What makes it, I guess,

5    immediate that he needs a continuance is that -- and I think

6    that I put this on the record a number of times -- his lead

7    counsel, me, is Orthodox Jewish.  And I observe -- strictly

8    observe the holidays of the Torah, which includes Passover.

9    I've never gone to court on Passover.  I don't intend to go

10   to court this Passover.  I will not be in court on Passover

11   on April 10th if it's Passover this year.

12             So that's, I think, one very compelling reason to

13   sever and grant a continuance.  What I'd like for you to do

14   is to be able to grant a continuance today and hold it in

15   abeyance to reset the case and then give me time to brief it

16   because I think it needs a lot of time.

17             THE COURT:  Does the Government wish to be heard

18   on the severance question?

19             MR. MARIANO:  Only briefly, your Honor.

20             Obviously, this has been heavily litigated on the

21   docket.  There have been a series of motions to sever.

22   We've already briefed a response to that.  Your Honor has

23   ruled on it, I think, more than once.  So we'll rest on our

24   previous filings.  We think it's appropriate that these

25   cases proceed together.

1          THE COURT:  So what I'm hearing is Mr. Gross

2     really making a motion for a continuance and seeking a

3     severance to -- not to prejudice the other attorneys or the

4     other Defendants.  And I guess I understand the logic there.

5          So I think I want to hold in abeyance your motion

6     for severance.

7          I'm not going to give you until the 17th to argue

8     for a continuance.  I'm happy to hear you now, though, sir,

9     on why this case should not proceed to trial on the 17th --

10     sorry -- on the 10th.  And I'll just note this case was

11     originally set on the 10th with obviously not you, but his

12     predecessor attorney, and we waited this long specifically

13     for Mr. Quaglin and for Mr. Quaglin's defense.

14          I'm frankly quite surprised that you would join

15     the case and then Mr. McBride would leave, both of you

16     apparently knowing that you wouldn't be available on the

17     10th.

18          MR. GROSS:  I joined the case -- I joined the

19     criminal case actually inadvertently.  I joined for the

20     habeas case, which is a civil case.  As I mentioned in my

21     brief, I am a civil attorney.  I've never practiced criminal

22     law.  Mr. Quaglin's detention is *sui generis* for even

23     January 6ers.

24          As you know, he's been in nine different jails.

25     He has celiac disease and they haven't gotten him a

1      gluten-free diet.  And that's why I joined this case.

2              I stayed on.  You had said you couldn't get

3      his discovery because Superintendent Hull, the warden of

4      Northern Neck Regional Jail, would not communicate with Mr.

5      McBride under any circumstances.  Then I tried to speak with

6      Superintendent Hull, and he wouldn't communicate with me --

7      and that's on the record -- as being very unreasonable.  And

8      it was impossible to --

9              THE COURT REPORTER:  (Indicating.)

10              THE COURT:  Sir, I think Ms. Edwards is having a

11      hard time.

12              THE COURT REPORTER:  Counsel, could you perhaps

13      sit closer to the microphone?  I'm having trouble hearing

14      you.

15              MR. GROSS:  Sure.  That's better.

16              THE COURT REPORTER:  Thank you.

17              DEFENDANT QUAGLIN:  Could I make an comment?  Are

18      you on the camera?

19              MR. GROSS:  Can you hear me now?  Is that better?

20              THE COURT:  Thank you.

21              MR. GROSS:  I don't know where to back up to.

22              But his case is *sui generis*.  I joined as his

23      civil attorney.  It was completely reasonable for him to

24      hire a second attorney to deal with his conditions of

25      confinement, which were a very complicated matter.

1          Mr. McBride and I are not associated with one

2     another.  He withdrew from the case, and you allowed that

3     without consulting with me to ask if I was prepared to try

4     this case.  I was not involved in scheduling the case.

5          And I reached out to the Government a long time

6     ago to ask them -- I let them know I couldn't be there for

7     Passover.  At that time, Mr. McBride had every intention and

8     my understanding was he had every intention of being there

9     for trial.

10          I was hoping that I could join to assist as a

11     courtesy.  The Government said they were not going to

12     continue.

13          So I told Mr. Quaglin and Mr. McBride that I would

14     not be attending the trial at that time.  Mr. McBride only

15     on March 6th withdrew from the case.

16          And now what I would like to do is to have some

17     time to be able to build a defense team for Mr. Quaglin that

18     has a criminal attorney.  And I've been reaching out to

19     attorneys.  It's not so easy.  But that's why I want a

20     continuance for him.  And I'm happy to withdraw from the

21     case and not be his criminal attorney at trial or at least

22     be second chair.  I'd like to be able to assist, if

23     possible.

24          But I will not be at the trial on April 7th [sic].

25     My understanding is that I can't be forced to.  That's my

 1   constitutional right.  And I think Mr. Quaglin is in a

 2   difficult situation that is really the making of the Court

 3   by allowing Mr. McBride to withdraw without consulting.

 4         My understanding in ordinary circumstances is when

 5   an attorney wants to withdraw this close to trial, the judge

 6   will consider the motion, maybe call a status conference and

 7   then make a decision.  It's not just automatic that the

 8   attorney is allowed to withdraw.

 9         So with all that, we're in this situation.

10   Certainly not my fault.  I do not take responsibility for

11   this.  And Mr. Quaglin will be at trial alone on April 10th

12   if it goes April 10th.  We would like a continuance so that

13   doesn't have to be.

14         THE COURT:  So, Mr. Gross, I understand you might

15   not be able to control Mr. McBride.  Frankly, I discouraged

16   your client from proceeding with Mr. McBride, but he was

17   adamant that he wanted Mr. McBride.  I'm a little surprised

18   to learn Mr. McBride had not consulted with you all.  It was

19   certainly the suggestion that Mr. -- my recollection is

20   Mr. McBride indicated that you were prepared to take over

21   when he said that.

22         So perhaps there is a guilty absent third party

23   here who cannot speak for himself.  But I very much resent

24   the implication that this is somehow my fault for granting

25   your client's motion.

```
1            So, Mr. Gross, am I correct that you've never
2    tried a criminal case?
3            MR. GROSS:  I've sat as fourth chair for Richard
4    Barnett, which I joined around the same time, also through
5    Mr. McBride.  And I was there for constitutional issues.  So
6    that is the extent of my criminal -- yeah.  I've never
7    actually tried a criminal case.  I have not really
8    participated in any criminal trials.
9            THE COURT:  Well --
10           DEFENDANT QUAGLIN:  Judge?  I'm not trying to cut
11   you off, but this is -- I'm with you.  It's getting a little
12   crazy.  This all stems from a year --
13           THE COURT REPORTER:  (Indicating.)
14           DEFENDANT QUAGLIN:  Is this better, Ms. Edwards?
15           And this all stems from -- don't quote me -- a
16   year and a half ago.  Okay?  So I'm not pointing fingers.
17   But, Judge, you've said that, Hey, I want Quaglin out of
18   Jersey and I want him to be in D.C. so that he can -- so we
19   can meet each other in person, which I agree with.  We're
20   all there.
21           Then they moved me from D.C.  Now they put me at
22   D.C.  I have never [indiscernible] there.  I did have grave
23   issues with my diet at that time that they couldn't handle.
24   In fact, I would want to put this out here.  Now there are
25   over 2,000 pages' worth of documentation that I have, mostly
```

1     about the [indiscernible] --

2             THE COURT:  Sir, we're having trouble with your

3     microphone.  But anyway, I'm not addressing the diet issue

4     right now.

5             So, Mr. Mariano, I would be interested in the

6     Government's position here.  I think maybe I need to inquire

7     of Mr. Quaglin on his desire in representation.  But I do

8     have very serious concerns about proceeding with the current

9     representation for Mr. Quaglin at any point.  And frankly,

10    I've never faced this situation before.

11            MR. MARIANO:  Yes.  So to begin, I think it is

12    prudent to speak with Mr. Quaglin regarding his desire for

13    representation, given what Mr. Gross has been saying both in

14    his filings and today about his experience with criminal

15    law.

16            Separately, I want to corroborate, I looked at the

17    motion to withdraw from Mr. McBride while we were speaking.

18    He does say at the end:  Mr. Gross will file a motion to

19    withdraw from the *U.S. v. Nichols* case today and devote his

20    time and attention to Mr. Quaglin.  It is respectfully

21    submitted that this request will not prejudice Defendant

22    Quaglin because Mr. Gross, who knows Quaglin's case well,

23    will assume the duties of lead counsel going forward.

24            And obviously, I don't believe Mr. Gross signed it

25    himself, but he would have received a notice of it when it

1    was put on the docket.

2              But as to the continuance issue, again, your

3    Honor, we oppose severance for the reasons we've already

4    briefed.  But in addition, we think it would be wildly

5    inefficient to try very similar cases twice.

6              Now, the victims of particular assaults may be

7    different.  But as your Honor noted, these are individuals

8    that were in the tunnel at the same time on the lower west

9    terrace at the same time.  So we'll be relying on a number

10   of the same witnesses to produce their body-worn camera

11   footage, to testify as to what was happening at that time.

12   So we think severance is inefficient.

13             Our position on the continuance is we oppose it

14   beyond that of a brief period to allow for the religious

15   observance.  But anything beyond that, this case has already

16   been continued at length.

17             THE COURT:  Mr. Quaglin, I have a specific

18   question for you.  I am looking now at Mr. McBride's motion

19   to withdraw as counsel.  It says:  I recently notified

20   Mr. Quaglin and his family of my conflict and agreed that

21   Attorney Jonathan S. Gross, currently the second chair in

22   this case, should take over as lead counsel.

23             Is that correct?  Did you discuss this with

24   Mr. McBride?

25             DEFENDANT QUAGLIN:  I discussed -- Mr. McBride --

1    we had a falling-out, your Honor, which I would like to keep

2    lawyer-client --

3              THE COURT:  That's fine.

4              THE DEFENDANT:  -- confidential.

5              THE COURT:  That's why I was trying to ask you a

6    specific question.

7              DEFENDANT QUAGLIN:  Mr. Gross always told me that

8    he was a civil attorney.  I had never anticipated going to

9    trial just strictly with Mr. Gross.  I think Mr. Gross is a

10   great attorney.  However, he's not a criminal attorney.

11   That is not why I hired Mr. Gross.

12             I hired Mr. Gross for a civil action for

13   unconstitutional or -- or a constitutional violation.

14   That's it.

15             THE COURT:  All right.

16             DEFENDANT QUAGLIN:  This is -- this is crazy.  And

17   it all -- again, this all stems to me not getting -- not

18   getting access to evidence.com, Relativity and also my

19   discovery.

20             THE COURT:  No, sir.  That's not correct at all.

21   I have flagged concerns about Mr. McBride repeatedly.  You

22   stuck by him.  You wanted to have him.  And now again this

23   situation is frankly, sir, largely of your own making and

24   really a result of a series of bad choices by you.

25             And it's unfortunate that you are going to be the

1    one who is largely dealing with this.  But you're the one

2    who's incarcerated here.  Mr. McBride, who you wanted, has

3    now left.  And you are left now with an attorney who you are

4    not comfortable with, and I can understand why.

5              So, Mr. Mariano, I think we need to find new

6    counsel for Mr. Quaglin.  I just --

7              DEFENDANT QUAGLIN:  Doesn't the --

8              THE COURT:  It doesn't sounds like he or Mr. Gross

9    are comfortable proceeding as is.  And frankly, I'm not

10   either.

11             DEFENDANT QUAGLIN:  We're working on getting new

12   counsel.  Again, with the 15-minute time intervals of the

13   D.C. Jail, on 15 minutes, off 15 minutes, it's hard

14   having -- you know, a 30-minute conversation takes you an

15   hour, an hour and a half to do because then there's lines

16   for the phones.

17             With that being said, and with all due respect,

18   I've never had internet access or access to evidence.com.

19             THE COURT:  Again, sir, that's really -- we're not

20   talking about your ability to look at evidence.  We're

21   talking about you having a competent attorney who is

22   prepared to proceed, which is what I have been trying to get

23   you.

24             I don't know if you realize this is how the

25   American criminal justice system works.  An attorney

1    represents you in court.  And you have insisted on

2    Mr. McBride, and now you are with an attorney -- here we

3    are, two years into this case.  It should have gone to trial

4    long ago.  And instead you're still here in pretrial

5    detention because of your decisions in the attorneys you've

6    chosen to hire.

7              So, Mr. Mariano, my question for you:  Do I need

8    to appoint him counsel or do I give him time to find a new

9    attorney?

10             MR. MARIANO:  I think if he has means, you can

11   extend him a brief period of time to retain counsel of his

12   choosing.  But certainly this can't go on forever, and there

13   should be a point in the near future where the Court should

14   appoint new counsel.

15             THE COURT:  So are you suggesting that he

16   should -- do you think he should proceed *pro se* at trial or

17   do we need to continue him?

18             MR. MARIANO:  No.  We don't think that he can go

19   to trial without an attorney at this point.

20             THE COURT:  I agree.

21             So are you seeking a continuance, therefore, for

22   the other Defendants as well?

23             MR. MARIANO:  Yes.  We think they should stay

24   together for whatever continuance is granted.

25             THE COURT:  So let me hear from the other

1    attorneys on that.

2              Ms. Douenat, do you oppose a continuance?

3              MS. DOUENAT:  We do, your Honor, just because our

4    experts have known since October this is the trial date and

5    this is when they're available.  I know that Dr. Xenakis

6    will be in Guantanamo right after that and Dr. Cutler also

7    has other trials he's going to be attending.  So they had

8    made -- they had planned on the April 10th setting and the

9    two weeks between April 10th and April 23rd, basically.  So

10   for two weeks in April, they have made themselves available

11   to be present.

12             Also, our experts' availability is an important

13   matter.  And I know that our client, Mr. Cappuccio, has had

14   to make arrangements for his children.  And it took a lot

15   for him to get those worked out so he could be present.  So

16   we're opposing the continuance, your Honor.

17             THE COURT:  And, Mr. Woodward, do you wish to be

18   heard on behalf of Mr. Klein?

19             MR. WOODWARD:  We do not oppose a continuance,

20   your Honor.

21             THE COURT:  So I'm denying the motion to sever.  I

22   think the motion for severance has largely been based on the

23   motion for -- the need for a continuance.  And I reluctantly

24   agree that Mr. Quaglin is not in a position to go to trial

25   in ten days, given his retained attorney situation.  That

1  again is really his choice, not mine, and very much not how

2  I wanted this to go.

3          I'm going to therefore grant a continuance as to

4  all three Defendants.

5          I understand Ms. Douenat's points.  I'll say I

6  just granted a continuance, I think, yesterday over

7  Government objection in a different case where the

8  Government had an expert witness lined up.  I realize this

9  is frustrating for everyone.  But ultimately, unfortunately,

10  that's sometimes how these go.

11          I will certainly be -- take into consideration,

12  Ms. Douenat, your concerns when we are setting a new trial

13  date to make sure that we can accommodate your experts

14  there.

15          And unfortunately, I think this will mean that

16  once again Mr. Quaglin is going to spend a significant

17  period of time in pretrial detention because we're not going

18  to be able to just snap our fingers and find a trial date

19  that works for everyone and their various witnesses.

20          But, Mr. Quaglin, all I can say is these are your

21  decisions that have landed you where we are.

22          I'm going to vacate the trial date.  I'm going to

23  set a new status conference date.  Really, this is going to

24  be an ascertainment of counsel date.  But also I do want to

25  have all attorneys there because I want to try to set a new

1    trial date.

2              Mr. Quaglin, how long do you think you need to

3    find an attorney?

4              MR. GROSS:  We started on March 6th, when

5    Mr. McBride withdrew.  We already started looking for an

6    attorney.  We met with somebody yesterday, and hopefully

7    we'll have one soon.  It's possible to say that we are on

8    the search and we have a potential candidate.

9              THE COURT:  Well, we all have April -- you're not

10   available.

11             So are you planning to stay on, Mr. Gross?

12             MR. GROSS:  I mean, if you'll have me, I would

13   love to assist whichever attorney ultimately he chooses.

14             THE COURT:  Mr. Quaglin, are you looking to

15   continue to retain Mr. Gross?

16             DEFENDANT QUAGLIN:  Yes.  As second chair.

17             THE COURT:  So when does Passover finish,

18   Mr. Gross?

19             MR. GROSS:  I believe the final date is Thursday.

20   That's the 13th.

21             THE COURT:  So how about 10:00 a.m. on -- well,

22   I'm sorry.  Mr. Shipley, are you going to be on April

23   17th -- do you need an afternoon time?

24             MR. SHIPLEY:  (No audible response.)

25             THE COURT:  You're on mute, sir.

```
 1           MR. SHIPLEY:  Yeah, your Honor.  Whatever works
 2    for everybody else.  I'll make it work.  You know that.
 3           THE COURT:  Why don't I just suggest 2:00 p.m. on
 4    April 17th for a status conference and ascertainment of
 5    counsel.
 6           Mr. Mariano, does that work for the Government?
 7           MR. MARIANO:  Yes, it does.
 8           THE COURT:  Ms. Douenat, does that work for you?
 9           MS. DOUENAT:  It does, your Honor.
10           Could Mr. Cappuccio just waive appearance at that
11    hearing or just show up by video?
12           THE COURT:  Yes.  Yes.  I'm looking for -- this
13    would be a virtual appearance.
14           MS. DOUENAT:  Oh, okay.  Good.
15           THE COURT:  Yes.  But he can waive his appearance.
16           And, Mr. Woodward, does that work for you?
17           MR. WOODWARD:  We are available at the Court's
18    beckon, your Honor.
19           THE COURT:  So Monday, April 17th, 2:00 p.m. for a
20    status conference and ascertainment of counsel.
21           Mr. Quaglin, to be clear, I'm going to be looking
22    for you to have retained an attorney by that time and I'm
23    going to be anticipating setting a trial date at that time.
24    If you don't have an attorney by then, I'm going to
25    determine whether you're indigent and therefore appoint you
```

1    an attorney or proceed and have you proceed *pro se*, that is,

2    without an attorney.  But we do need for your Co-Defendants'

3    benefit even if not for your own to set a trial date and

4    finally come to a conclusion here.

5              So I'll ask for the attorneys to all come with

6    your calendars.

7              Ms. Douenat, if you can try to be in touch with

8    your witnesses so you have a sense of their availability.

9    Feel free to check in with my chambers.

10             Honestly, I'll tell you, I'm looking at probably

11   the fall at this point.  I think it's possible, but

12   unlikely, that we could all get on the same page between now

13   and then.  But you can feel free to check with my chambers

14   to get specific dates.

15             Mr. Mariano, do you have a motion?

16             MR. MARIANO:  Yes.  We have a motion to exclude

17   time in the interest of justice, given the continuance on

18   defense's motion.

19             THE COURT:  Mr. Gross, do you wish to be heard on

20   that?

21             MR. GROSS:  No.

22             THE COURT:  Ms. Douenat?

23             MS. DOUENAT:  No, your Honor.

24             THE COURT:  Mr. Woodward?

25             MR. WOODWARD:  No, your Honor.

```
1              THE COURT:  I am granting the motion to toll the

2     speedy trial clock until April 7th in light of the Defendant

3     Quaglin's, well, change in attorneys.  And very clearly, he

4     is going to be unable to proceed to trial on April 10th.  So

5     I'm going to toll the speedy trial clock until then and find

6     that the interests of justice outweigh the interests of the

7     public and the Defendants in a speedy trial to the extent

8     that we'll toll until April 17th.

9              Mr. Mariano --

10             MR. MARIANO:  Your Honor, I think you said April

11    7th.  I believe you meant April 17th?

12             THE COURT:  I did.  Yes.  So April 17th for the

13    status conference and April 17th is when the speedy trial

14    clock is tolled until.

15             Mr. Mariano, anything further for the Government?

16             MR. MARIANO:  Nothing further.

17             THE COURT:  And, Mr. Gross, for Mr. Quaglin?

18             MR. GROSS:  No.

19             THE COURT:  And Ms. Douenat?

20             MS. DOUENAT:  Nothing further, your Honor.

21             THE COURT:  And Mr. Woodward?

22             MR. WOODWARD:  No, your Honor.  Thank you for your

23    time.

24             THE COURT:  Thanks, folks.  See you then.

25             (Proceedings concluded.)
```

**CERTIFICATE**

I, LISA EDWARDS, RDR, CRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings produced to the best of my ability.

Dated this 25th day of March, 2023.

/s/ Lisa Edwards, RDR, CRR
Official Court Reporter
United States District Court for the
  District of Columbia
333 Constitution Avenue, Northwest
Washington, D.C. 20001
(202) 354-3269