```
 1                UNITED STATES DISTRICT AND BANKRUPTCY COURTS
                       FOR THE DISTRICT OF COLUMBIA
 2

 3    UNITED STATES OF AMERICA       Criminal No.  21-cr-00040

 4            v.                     Washington, D.C.

 5    PATRICK MCCAUGHEY, III,        December 17, 2021
      TRISTAN STEVENS,
 6    DAVID JUDD,
      CHRISTOPHER QUAGLIN,
 7    ROBERT MORSS,
      GEOFFREY SILLS,
 8    DAVID MEHAFFIE,
      STEVEN CAPPUCCIO,
 9    FEDERICO KLEIN,

10               Defendants.      2:00 p.m.

11    -------------------------/

12                 TRANSCRIPT OF STATUS CONFERENCE
                 BEFORE THE HONORABLE TREVOR N. MCFADDEN
13                  UNITED STATES DISTRICT JUDGE

14    APPEARANCES:

15    For the Government:     JOCELYN BOND, ESQUIRE
                              MELISSA JACKSON, ESQUIRE
16                            JAMES PEARCE, ESQUIRE

17    For the Defendants:     LINDY URSO, ESQUIRE
                              LAUREN COBB, ESQUIRE
18                            ELIZABETH MULLIN, ESQUIRE
                              RYAN MARSHALL, ESQUIRE
19                            JOHN KYIONAGA, ESQUIRE
                              STEPHEN METCALF, ESQUIRE
20                            MARINA DOUENAT, ESQUIRE
                              STANLEY WOODWARD, JR., ESQUIRE
21
      Court Reporter          Lisa K. Bankins RMR FCRR RDR
22                            United States District Court
                              District of Columbia
23                            333 Constitution Avenue, NW
                              Washington, D.C. 20001
24

25    Proceedings recorded by mechanical stenography,
      transcript produced by notereading.
```

```
1                    P R O C E E D I N G S
2              THE CLERK:  Your Honor, this is Criminal Case 21-40,
3    McCaughey -- United States of America versus McCaughey, et.
4    al.  Counsel, please come forward to identify yourself for the
5    record starting with the government.
6              MS. BOND:  Good afternoon, Your Honor.  Jocelyn Bond
7    on behalf of the United States.
8              THE COURT:  Good afternoon, Ms. Bond.
9              MS. JACKSON:  Good afternoon.  Melissa Jackson on
10   behalf of the United States.
11             THE COURT:  Good afternoon, Ms. Jackson.
12             MR. PEARCE:  Good afternoon, Your Honor.  James
13   Pearce on behalf of the United States.
14             THE COURT:  Good afternoon, Mr. Pearce.
15             MR. KIYONAGA:  Good afternoon, Your Honor.  John
16   Kiyonaga for Mr. Morss and Mr. Sills.
17             THE COURT:  All right.  And they are both present.
18   Is that correct, Mr. Kiyonaga?
19             MR. KIYONAGA:  That is correct, sir.  They are.
20             THE COURT:  All right.  Good afternoon, gentlemen.
21             MR. URSO:  Good afternoon, Your Honor.  Lindy Urso
22   for Mr. McCaughey.
23             THE COURT:  Good afternoon, Mr. Urso.  And good
24   afternoon -- Mr. McCaughey is here.
25             MR. URSO:  By phone, Your Honor.
```

1           THE COURT:  Okay.  And Mr. Urso, he's waived his

2    appearance?

3           MR. URSO:  Yes, Your Honor.

4           THE COURT:  Thank you.

5           MR. MARSHALL:  Good afternoon, Your Honor.

6    Mr. Marshall for Mr. Mehaffie.

7           THE COURT:  All right.  Good afternoon,

8    Mr. Marshall.  Good afternoon, Mr. Mehaffie.

9           MS. COBB:  Good afternoon, Your Honor.  Lauren Cobb

10   for Tristan Stevens.  He is listening by phone and he is

11   waived his appearance.

12          THE COURT:  All right.  Good afternoon, Ms. Cobb.

13   And he is waived his presence to be here in person today.

14          MS. COBB:  Yes, Your Honor.

15          THE COURT:  All right.  Thank you, Ms. Cobb.

16          MR. METCALF:  Stephen Metcalf on behalf of

17   Christopher Quaglin.  Good afternoon, Your Honor.

18          THE COURT:  Good afternoon, Mr. Metcalf.  Sorry.

19   Your client's name again, sir?

20          MR. METCALF:  Christopher Quaglin.  I'm here on

21   behalf of Attorney Joseph McBride.

22          THE COURT:  Okay.  Say your last name again one more

23   time.

24          MR. METCALF:  Metcalf.  M-E-T-C-A-L-F.

25          THE COURT:  All right.  Good afternoon, Mr. Metcalf

1      and good afternoon, Mr. Quaglin.

2                MR. METCALF:  Thank you.

3                MS. MULLIN:  Good afternoon, Your Honor.  Elizabeth

4      Mullin on behalf of David Judd.  I filed a waiver of his

5      appearance.

6                THE COURT:  All right.  Good afternoon, Ms. Mullin.

7                MR. WOODWARD:  Good afternoon, Your Honor.  Stanley

8      Woodward on behalf of Federico Klein who is also present.

9                THE COURT:  All right.  Good afternoon,

10     Mr. Woodward.  Good afternoon, Mr. Klein.

11               MS. DOUENAT:  Good afternoon, Your Honor.  Marina

12     Douenat on behalf of Mr. Steven Cappuccino and I'm here with

13     my second chair, Edgar Holquin who is going to enter a notice

14     of appearance today or this weekend.  He is licensed and he

15     can practice in D.C., Your Honor.  He's just needs to enter an

16     appearance.

17               THE COURT:  All right.  Good afternoon, folks.  And

18     your client is here as well?

19               MS. DOUENAT:  He is, Your Honor.

20               THE COURT:  Got you.  All right.  Thank you.

21               All right.  Looks like that's all of us.  Let me

22     tell you what my order of business is for today.  I see

23     there's a yet another superseding indictment.  So we'll

24     proceed with the arraignment in a moment.  I then want to

25     address Mr. Judd's motion to dismiss and Mr. Morss' motion to

```
1    revoke his detention status.  I'm going to be interested in
2    hearing from the government on Mr. Cappuccio's motion for
3    changing his release conditions.  Is someone from pretrial
4    services here?  Good afternoon, Ms. Schuck.
5              MS. SCHUCK:  Good afternoon.  Good afternoon, Your
6    Honor.  Christine Schuck, Pretrial Services.
7              THE COURT:  Good afternoon, ma'am.  And I'd like to
8    hear from you as well when the time comes on Mr. Cappuccio's
9    bond, ma'am.
10             I also want to talk briefly with the government
11   regarding Mr. Sills' motion for release from custody about
12   what the government's position on Mr. Klein's request to close
13   his related case.  I want to hear from the government on
14   status of the case and figure out where we're going from here.
15   And then finally, I'll hear the motion hearing on -- from
16   Mr. Judd's attorney on motion to compel discovery.
17             All right.  So first order of business, Ms.
18   Chachlan, can you arraign the defendants?
19             THE CLERK:  Mr. Quaglin and your attorney, come
20   forward.  Christopher Joseph Quaglin, in Criminal Case 21-40
21   in which you are charged by a superseding indictment on Counts
22   One and Three, assaulting, resisting or impeding certain
23   officers; Count Two, inflicting bodily injury on certain
24   officers; Counts Four and Twenty, robbery and aiding and
25   abetting; Count Eleven, assaulting, resisting or impeding
```

1    certain officers and aiding and abetting; Counts Twenty-three
2    and Twenty-six, assaulting, resisting or impeding certain
3    officers using a dangerous weapon; Count Thirty-four,
4    obstruction of an official proceeding and aiding and abetting;
5    Count Thirty-five, civil disorder; Count Thirty-nine,
6    disorderly and disruptive conduct in a restricted building or
7    grounds with a deadly or dangerous weapon; Count Forty-seven,
8    engaging in physical violence in a restricted building or
9    grounds with a deadly or dangerous weapon; Count Fifty-two,
10   disorderly conduct in a Capitol building; Count Fifty-three,
11   active physical violence in a Capitol grounds or building.  Do
12   you waive the formal reading of the superseding indictment?
13   And how do you wish to plead?
14           MR. METCALF:  Yes.  We waive formal reading and wish
15   to enter a plea of not guilty to all counts at this time.
16           THE COURT:  Okay.  Thank you, gentlemen.
17           THE CLERK:  Mr. Robert Morss.  Robert Morss, in
18   Criminal Case 21-40 in which you are charged by a superseding
19   indictment on Count Five, robbery; Count Six and Twenty,
20   robbery and abetting and abetting; Counts Ten and
21   Twenty-seven, assaulting, resisting or impeding certain
22   officers and aiding and abetting; Count Thirty-four,
23   obstruction of an official proceeding and aiding and abetting;
24   Count Thirty-five, civil disorder; Count Forty-one, disorderly
25   and disruptive conduct in a restricted building or grounds

1      with a deadly or dangerous weapon; Count Forty-nine, engaging

2      in physical violence in a restricted building or grounds with

3      a deadly or dangerous weapon; Count Fifty-two, disorderly

4      conduct in a Capitol building; Count Fifty-three, active

5      physical violence in a Capitol grounds or building.  Do you

6      waive the formal reading of the superseding indictment and how

7      do you wish to plead?

8              MR. KIYONAGA:  We'd waive formal reading, Your

9      Honor, and Mr. Morss enters a plea of not guilty to all counts

10     and we'd request a trial by jury.

11             THE COURT:  Thank you, gentlemen.

12             MR. KIYONAGA:  Thank you.

13             THE CLERK:  Mr. Jeffrey Sills, please.  Jeffrey

14     William Sills, in Criminal Case 21-40 in which you are charged

15     by an indictment on Count Seven, Eight, Fifteen and Eighteen,

16     assaulting, resisting or impeding certain officers using a

17     dangerous weapon; Count Thirteen, robbery and aiding and

18     abetting; Count Thirty-four, obstruction of an official

19     proceeding and aiding and abetting; Count Thirty-five, civil

20     disorder; Count Forty, disorderly and disruptive conduct in a

21     restricted building or grounds with a deadly or dangerous

22     weapon; Count Forty-eight, engaging in physical violence in a

23     restricted building or grounds with a deadly or dangerous

24     weapon; Count Fifty-two, disorderly conduct in a Capitol

25     building; and Count Fifty-three, active physical violence in a

1    Capitol grounds or building.  Do you waive the formal reading

2    of the superseding indictment and how do you wish to plead?

3              MR. KIYONAGA:  We'd waive formal reading.  Mr. Sills

4    enters a plea of not guilty to all counts and demands a trial

5    by jury.

6              THE COURT:  Thank you, gentlemen.

7              MR. KIYONAGA:  Thank you.

8              THE CLERK:  Mr. Steven Cappuccio.  Steven Cappuccio,

9    in Criminal Case 21-40, in which you are charged by an

10   indictment on Count Twenty-eight, assaulting, resisting or

11   impeding certain officers and aiding and abetting; Count

12   Twenty-nine, assaulting, resisting or impeding certain

13   officers using a dangerous weapon; Count Thirty, robbery and

14   aiding and abetting; Count Thirty-four, obstruction of an

15   official proceeding and aiding and abetting; Count

16   Thirty-five, civil disorder; Count Forty-two, disorderly and

17   disruptive conduct in a restricted building or grounds with a

18   deadly or dangerous weapon; Count Fifty, engaging in physical

19   violence in a restricted building or grounds with a deadly or

20   dangerous weapon; Count Fifty-two, disorderly conduct in a

21   Capitol building; Count Fifty-three, active physical violence

22   in a Capitol grounds or building.  Do you waive the formal

23   reading of the superseding indictment and how do you wish to

24   plead?

25             MS. DOUENAT:  Mr. Cappuccio does waive the formal

1    reading of the indictment and he pleads not guilty to all

2    charges.

3              THE COURT:  Thank you.

4              THE CLERK:  Mr. Federico Klein.  Federico Guillermo

5    Klein, in Criminal Case 21-40 in which you are charged by an

6    indictment on Counts Nine, Seventeen, Nineteen and

7    Twenty-seven, assaulting, resisting or impeding certain

8    officers and aiding and abetting; Counts Thirty-one and

9    Thirty-two, assaulting, resisting or impeding certain officers

10   using a dangerous weapon; Count Thirty-four, obstruction of an

11   official proceeding and aiding and abetting; Count

12   Thirty-five, civil disorder; Count Forty-three, disorderly and

13   disruptive conduct in a restricted building or grounds with a

14   deadly or dangerous weapon; Count Fifty-one, engaging in

15   physical violence in a restricted building or grounds with a

16   deadly or dangerous weapon; Count Fifty-two, disorderly

17   conduct in a Capitol building; Count Fifty-three, active

18   physical violence in a Capitol grounds or building.  Do you

19   waive the formal reading of the superseding indictment and how

20   do you wish to plead?

21             MR. WOODWARD:  Mr. Klein does waive formal reading

22   of the indictment.  He would respectfully ask the Court to

23   enter a plea of not guilty as to all counts and would assert

24   all of his rights under the Constitution.

25             THE COURT:  All right.  Thank you, gentlemen.  Since

1    you both are up here, I noticed pretrial services said that

2    there's been some issues getting -- charging Mr. Klein's

3    monitoring device.  Do you have any representations about

4    that, Mr. Woodward?

5              MR. WOODWARD:  Yes, Your Honor.  Mr. Klein

6    understands the importance of making sure that his device

7    remains charged at all times.  He understands that pretrial

8    would like him to charge his device at least once every 24

9    hours.  During the duration of the time that he has been on --

10   by way of explanation, I will offer that during the duration

11   of the time that he has been on monitoring, he has charged the

12   device only when he received the low battery indicator as,

13   frankly, one does when their device is running out of battery.

14   He understands the significance of making sure that that

15   device remains charged and it will not go into low battery

16   status again as long as he can help it.

17             THE COURT:  All right.  So it sounds likes you

18   should not be waiting until the low battery signal.

19             MR. WOODWARD:  Yes, Your Honor.  It will be charged

20   once a day as instructed by pretrial services.

21             THE COURT:  Great.  All right.  I know there have

22   been some friction between you, Mr. Klein, and your probation

23   officer.  Let's not find a reason for there to be any

24   additional issues in the future.  Okay, sir?

25             DEFENDANT KLEIN:  Yes, Your Honor.

1              THE COURT:  All right.  Thank you, gentlemen.  You

2    may have a seat.

3              Mr. Urso, I understand Mr. McCaughey is waiving his

4    appearance and waiving arraignment.  Is that correct, Mr.

5    Urso.

6              MR. URSO:  That is correct, Your Honor.

7              THE COURT:  All right.  Ms. Cobb, am I correct that

8    Mr. Stevens is also waiving arraignment on the superseding

9    indictment?

10             MS. COBB:  Correct, Your Honor.

11             THE COURT:  And Ms. Mullin, am I correct that your

12   client is waiving superseding or arraignment?

13             MS. MULLIN:  Yes, Your Honor.

14             THE COURT:  Okay.  And, Mr. Marshall, am I correct

15   that your client is also waiving arraignment on the

16   superseding indictment?

17             MR. MARSHALL:  Yes, Your Honor.

18             THE COURT:  All right.  Thanks, folks.  Before the

19   Court is Mr. Judd's motion to dismiss multiple counts of the

20   indictment alleging that he used a dangerous weapon on

21   January 6th, namely, a fire cracker.  The defendant must meet

22   a high standard to dismiss counts in the indictment.  The D.C.

23   Circuit has said that indictments should be dismissed only in

24   "unusual circumstances."  That's United States versus Yakou,

25   428 F.3rd 241, page 247 from 2005.  The court assumes the

1    truth of the allegations in the indictment according to United

2    States versus Ballestas, 795 F.3rd 138, page 148 out of the

3    D.C. Circuit in 2015 and then determines whether the

4    indictment informs the defendant of the precise offense of

5    which he is accused.

6              Critically, a motion to dismiss a count is not a

7    permissible vehicle for addressing the sufficiency of the

8    government's evidence.  That's according to United States

9    versus Muscrera Morillo, 153 Federal Supplement 3rd 130, page

10   154 out of this district in 2015.  That's what we have trials

11   for.  The court thus cannot dismiss a count based on factual

12   questions to be -- that need to be developed at trial.  The

13   defendant's motion asserts that a fire cracker is not as a

14   matter of law a dangerous weapon as contemplated under 18 USC

15   111(b).  For an object not inherently deadly to be considered

16   "dangerous," it must be "capable of causing serious bodily

17   injury to another person."  That's according to United States

18   versus Arrington, 309 F.3rd 40, page 45 from the D.C. Circuit

19   in 2002.

20             It's conceivable to me that a lit fire cracker when

21   tossed at someone else would be capable of causing serious

22   bodily injury.  That is the allegation against the defendant.

23   As the government points out, there are many reports every

24   year usually the week after 4th of July about injuries to

25   people caused by fire crackers.  True, there's no allegation

1    that the defendant's fire cracker actually injured anyone

2    here, but it need only be capable of such an injury.  As

3    described in the indictment, the object thrown by the

4    defendant had that capability.

5          Of course, the defense might offer testimony at

6    trial to argue that some feature of this particular firework

7    meant that it could not cause serious bodily injury.  And I

8    suppose it's conceivable to me that an extremely small fire

9    cracker might not be able to create great bodily injury or

10   serious bodily injury.  But it seems to me that that's the

11   factual question to be developed at trial, not decided at this

12   preliminary stage.  The Court, therefore, cannot say as a

13   matter of law that a fire cracker is not a dangerous weapon as

14   mentioned in 18 USC 111(b).  Therefore, I will deny the motion

15   to dismiss.

16         Also before the Court is Robert Morss' motion for

17   release or review of his detention.  I've carefully reviewed

18   his filings and the government's filing as well which includes

19   a number of pictures and other detailed evidence about what

20   happened on January 6th.  I review a magistrate judge's

21   determination on bond de novo.  I'm also certainly aware that

22   there's a general presumption against detention in criminal

23   cases.  Of course, this comes before the Court on the

24   government's motion pursuant to 18 USC, 3142(f)(1) and I do

25   believe the government is right that there's a rebuttable

1    presumption here under 18 USC, 3142(f), specifically that the

2    defendant has been charged with a crime of violence; that is

3    to say, robbery which would create a rebuttable presumption in

4    favor of detention in this case.

5          Having said that, I do believe that the government

6    or the defense has presented evidence sufficient to rebut the

7    presumption.  But after considering the presumption and the

8    other factors discussed that I'll discuss in a moment, I find

9    that detention is nonetheless warranted.  I think the rebuttal

10   evidence, I look primarily to the defendant's lack of criminal

11   history and his steady employment.

12         Nonetheless, I find by clear and convincing evidence

13   that no condition or combination of conditions of release will

14   reasonably assure the safety of any other person in the

15   community.  I look among other things to the weight of the

16   evidence against the defendant here and the fact that the

17   defendant is subject to a lengthy period of incarceration if

18   convicted.

19         Under the Bail Reform Act, I consider four factors.

20   First, the nature and circumstances of the offense.  I find

21   that that factor is strongly in favor of detention here.  I'm

22   not going to go into what we all know about the general facts

23   of the Capitol riot on January 6th.  But I do think the

24   evidence against the defendant in particular puts him at

25   really a one end of the alleged conduct and frankly, at the

1    extreme end.  I think the government has suggested that he
2    tried to rob officers of their shields, leaving them
3    unprotected against a violent mob that was encroaching on
4    them.  I realize there are various degrees of robbery and
5    force used in robbery, but it is pretty shocking that someone
6    would try to take away a police officer's shield, his
7    defensive weapon in a situation where he's being faced by a
8    violent mob.

9            I also think the government has presented evidence
10   that the defendant took a leadership role in the attempted
11   breach of the lower west terrace, shouting directions and
12   organizing people to attempt to breach the Capitol building.

13           I also take seriously the evidence that the
14   defendant entered a senator's private office through a broken
15   window.  The fact that the office was not being used at the
16   time frankly doesn't matter much in this analysis.  The
17   evidence is nonetheless that the defendant essentially broke
18   and entered into the Capitol building and a private part of
19   the Capitol building.

20           I also consider the evidence that the defendant
21   prepared for a fight.  I think he came wearing tactical gear
22   with a lot of paraphernalia that's not at all consistent with
23   someone who's just going for a rally or a peaceful protest.  I
24   think he came preparing for a fight.

25           I do acknowledge the defense point that he had

1    access to a number of weapons and guns and didn't bring them
2    and I think that counts in his favor and I certainly don't
3    hold against him the fact that he did own weapons.  But this
4    is someone who looks like he came spoiling for a fight and he
5    got one.  It's all suggestive that this wasn't some sort of
6    spur of the moment thing.
7            I also look to the weight of the evidence.  I think
8    that favors detention as well.  The evidence here seems to be
9    extremely strong against the defendant and is laid out in
10   technicolor in the government's motion.
11           I look to the defendant's history and
12   characteristics.  On this point I would disagree with the
13   magistrate judge.  I think the defendant's history and
14   characteristics favors release.  I give the defendant credit
15   for having no criminal history.  I think his military service
16   speaks in his favor.  I don't think that counts against him
17   and I do take into consideration the fact that the defendant
18   was employed and has an offer of employment.  In short, I
19   think his history and characteristics all would weigh in favor
20   of release.
21           Nonetheless going to the final factor,
22   dangerousness, I think that also favors detention.  A lot of
23   the things that I just discussed in the nature and
24   circumstances of the offense are also applicable here.  But in
25   addition, I consider the government's evidence that the

1    defendant had a militia handbook.  I take defense's point that

2    being interested in militias or even part of a militia is not

3    in itself dangerous.  But again putting that combined with

4    what the defendant apparently did on January 6th certainly

5    does add to my concerns about his dangerousness and the

6    potential that he will -- that this was not some sort of

7    spur-of-the-moment thing completely out of character with the

8    defendant where he got swept up in a mob.  But actually

9    something that is reflective of a general ideology or interest

10   of the defendant.

11          I also considered the draft statement that he

12   apparently wrote to tell a judge and I agree with the

13   government it suggests a real lack of remorse, a lack of --

14   again a lack of concern about the danger that he and others

15   pose to the community.  And it is also suggestive that the

16   defendant would be an ongoing danger to the public if he were

17   released.

18          I have considered the defense argument about the

19   differential treatment among January 6 defendants.  Obviously,

20   there are a number of judges in this building who are all

21   doing our best to try to make determinations based on a -- in

22   a case-by-case analysis.  Different people's backgrounds and

23   what they did on that date are all going to point in different

24   directions.  But I have probably 30-some defendants.  Most of

25   my defendants are not locked up.  But I think the defendant's

1    conduct here as I said as alleged really puts him at one end

2    of the defendants I've seen in terms of the conduct that was

3    exhibited on January 6th and also the surrounding indicia that

4    rather than this being a one-off awful mistake by the

5    defendant, that he poses an ongoing danger to the community.

6         In that vein, I look to the Hale Cuccinelli case,

7    one of my cases where the D.C. Circuit upheld my detention

8    decision at 3 Federal Reporter Fourth, page 449.  There the

9    defendant was not engaged in any violent behavior on

10   January 6th.  But nonetheless, I look to his -- the

11   surrounding circumstances of his background to find that he

12   had posed an ongoing danger to the community.  Here, of

13   course, the defendant was engaged in violent conduct.  As the

14   D.C. Circuit found in United States versus Munchel, 991 F.3rd

15   1273 also from this circuit this year that assaults on police

16   officers really do put a January 6th defendant in kind of a

17   different category from defendants who are just accused of

18   trespassery crimes.

19        All that's to say that I don't find the argument

20   regarding differential treatment to be compelling here.  The

21   cases the defense points to are all district cases, district

22   judge cases trying to make decisions on a case-by-case basis.

23   But I think that the D.C. Circuit has recognized that someone

24   in this posture who was engaged in violent conduct on

25   January 6th and whose surrounding indicia points to

1    dangerousness is someone who really does fall out of the mine

2    run of cases and is suggestive of someone who needs to be

3    detained.

4           I've also considered the allegations regarding the

5    treatment he received at the Central Treatment Facility.  Of

6    course at the defense request at the last hearing, I ordered

7    him transferred to a different jail, but I don't think that

8    favors any further change in his conditions.

9           I've also considered the argument regarding some

10   sort of entrapment defense or that he was spurred on to do

11   this by statements of political leaders at the time that may

12   or may not be up for appropriate consideration down the road.

13   But it certainly does not convince me to change his release

14   conditions now, especially in light as I said of the evidence

15   that this was not a spur-of-the-moment thing.  But

16   representative of greater concerns about the danger posed by

17   the defendant to the community.

18          For all those reasons, I'm denying the defense

19   motion and I'm affirming the detention decision made by the

20   magistrate judge.

21          I'll hear the government on Mr. Cappuccio's motion

22   for a change in his release conditions.

23          MS. BOND:  Your Honor, we oppose removing Mr.

24   Cappuccio from home detention -- I'm sorry.  We defer to

25   pretrial of removing Mr. Cappuccio from home detention, but we

1    do not -- I'm so sorry, Your Honor.  I had a mental lapse.  We

2    defer to pretrial on removing him from home detention, but we

3    would oppose removing him from GPS monitoring.  GPS monitoring

4    is a reasonable condition given the allegations and also

5    ensures that the community is protected from any potentially

6    violent or riotous engagement on Mr. Cappuccio's part.  So

7    that's our position, Your Honor.

8           THE COURT:  Okay.  Ms. Schuck, do you wish to be

9    heard on this?

10          MS. SCHUCK:  Good afternoon, Your Honor.  Christine

11   Schuck, Pretrial Services.  Pretrial Services for the District

12   of Columbia requests no change in the defendant's current

13   conditions of release.  And we did speak to the Western

14   District of Texas.  I spoke to them right before the hearing

15   and they are deferring to our office regarding the conditions.

16   They did note he is compliant.  But because they are only

17   providing courtesy supervision, they will defer to our office

18   regarding any modifications of those conditions of release.

19          THE COURT:  Okay.  Thank you ma'am.  Ms. Douenat, do

20   you wish to be heard?

21          MS. DOUENAT:  Yes, Your Honor.  Mr. Cappuccio is a

22   52-year-old man who is pretty much Mr. Mom in the house.  He

23   has four children who are under the age of 18, who he takes to

24   all the extra curricular activities.  He also takes them to

25   school, takes them to basketball practice, takes them to all

1    the places they need to be.  His wife works full time at HEB,

2    which is a grocery store chain there in San Antonio, Texas.

3    So she's unable to do that.  So he's the one that is supposed

4    to do that and does that.

5            He also was before COVID, Your Honor, getting a

6    degree in kinesiology and a teacher's certificate out of Texas

7    state in St. Marcus, which is about 30 minutes away from --

8    St. Marcus, Texas which is about 30 minutes away from where he

9    lives -- he was going to the university there.  He is a

10   senior.  He has five classes he needs to take to finish his

11   degree as well as the teacher certification program which

12   requires six more classes.  He would like to finish that

13   degree and is asking for that as well.  He does -- I mean for

14   those reasons, I mean he's a busy individual and he is trying

15   to better himself.  And in that sense, he's not -- he has no

16   history of violence.  He is a --

17           THE COURT:  He has no criminal history at all.  Is

18   that --

19           MS. DOUENAT:  No criminal history at all.  Correct.

20   And he's --

21           THE COURT:  Any reason why the government's

22   suggestion is not sufficient?

23           MS. DOUENAT:  I mean the allegations on January 6th

24   is what their -- is their reasoning I'm guessing.

25           THE COURT:  So they're not opposing his release from

1    home detention, but that he remains --

2           MS. DOUENAT:  On GPS monitor.  That is correct.  I

3    would ask for both of them to be removed just because of the

4    fact that St. Marcus is 30 minutes away and if he has to take

5    classes there, they would be after the kids are home when his

6    wife comes back from working all day.  So the hours are just

7    different.

8           THE COURT:  What does that have to do with the GPS

9    monitoring?

10          MS. DOUENAT:  Well, you're right.  It doesn't have

11   anything to do.  But we just talked about it being charged

12   every 24 hours and I guess -- you're right.  It has nothing to

13   do with GPS monitor.  It just is inconvenient.  It's, you

14   know, people look at you differently and this would be in a

15   college setting so.

16          THE COURT:  Okay.  I'm granting the motion in part.

17   I'm going to release him from home detention and all other

18   conditions remain as previously stated.

19          Ms. Schuck, do you need an order to that effect?

20          MS. DOUENAT:  Thank you, Your Honor.

21          MS. SCHUCK:  Are you placing him on just stand-alone

22   monitoring or -- because we don't do that in this district.

23   Or are you going to -- would the Court consider a curfew such

24   as -- the standard curfew is 10 p.m. to 6 a.m.

25          THE COURT:  All right.  Any reason that doesn't

1    work, Ms. Douenat?

2              MS. DOUENAT:  Your Honor, I would have to check with

3    my client to find out at what time he's taking the kids to

4    school and so forth.  That's the only restriction I was

5    talking about GPS monitoring is the curfew thing.  Is

6    depending on the classes, returning home from school, at what

7    time he'd be back and then also taking the kids to school and

8    there's more than one school.  So they are different ages.

9    From middle school to elementary school to high school.

10             THE COURT:  All right.  I'm directing him to stay on

11   curfew from 10 p.m. to 6 a.m.  Is that what you need, Ms.

12   Schuck?

13             MS. SCHUCK:  Yes, Your Honor.  That is fine.

14             THE COURT:  Thank you, ma'am.  All right.  How long

15   does the government need to respond to Mr. Sills' motion for

16   release from custody?

17             MS. BOND:  Your Honor, may the government have until

18   January 7th to respond to Mr. Sills' motion?

19             THE COURT:  That feels like a long time.

20             MS. BOND:  It is slightly more than the two weeks

21   that we normally request.  But we are requesting that due to

22   the holiday season and I don't think it's unreasonable.

23             THE COURT:  All right.  I'll give you until

24   January 5th.  Mr. Kiyonaga, you're going to be seeking to file

25   a reply?

1           MR. KIYONAGA:  Yes, Your Honor.

2           THE COURT:  Okay.  I'll ask for that to be filed by

3    January 12th.

4           MR. KIYONAGA:  Very well, sir.

5           THE COURT:  All right.

6           MR. KIYONAGA:  Thank you.

7           THE COURT:  Thank you.  So the government is

8    directed to respond to the defendant's motion by January 5th

9    and the defense can file a reply by January 12th.

10          What is the government's position on closing

11   Mr. Klein's related case?

12          MS. BOND:  Your Honor, we haven't received any

13   written notification of that.  But we don't oppose closing

14   that other case.

15          THE COURT:  Okay.  All right.  Is there anything --

16   so what do I need to do?  Do you know?

17          MS. BOND:  I don't know the answer to that, Your

18   Honor.  But I can certainly find out.

19          THE COURT:  All right.  I'm going to direct the

20   clerk's office to close the related case.

21          Ms. Bond, where do things stand otherwise on our

22   case?  Yes, sir?

23          MR. WOODWARD:  May I be heard briefly on that?

24          THE COURT:  So I think I'm granting your request.

25          MR. WOODWARD:  There is a pending motion that is

1   ripe for review.

2          THE COURT:  All right.  Why don't you approach the

3   podium, sir?

4          MR. WOODWARD:  Your Honor, there's a pending motion

5   that is ripe for review in Mr. Klein's other case that Judge

6   Bates has not addressed.

7          THE COURT:  What is that?

8          MR. WOODWARD:  There's a motion for the release of

9   his cell phone from the government's custody.  It has been

10  fully briefed.  I can file it again in this action if Your

11  Honor would like.

12         THE COURT:  Yes.

13         MR. WOODWARD:  Very good.

14         THE COURT:  Okay.  Ms. Bond, I take it you are

15  opposing that motion.

16         MS. BOND:  We are and we have already filed our

17  response before Judge Bates and we can simply refile in front

18  of Your Honor.

19         THE COURT:  Okay.  I think it just makes sense to

20  put it on this docket.

21         MS. BOND:  Certainly.

22         THE COURT:  Ms. Bond, why don't you tell me where we

23  are?

24         MS. BOND:  Okay.  Progress on the case.  So the

25  first big issue we want to address are plea offers.  We have

extended plea offers to all nine co-defendants in this case.
They have all been open for multiple months at this point.  I
emailed all counsel earlier this week and let them know that
the deadline for those plea offers will be January 21st of
2022.  That should be sufficient time for everyone to consider
them to decide whether they want to resolve the case or to set
a trial date.

So in light of withdrawing those plea offers in late
January, we are asking for a status hearing to be set in late
January or early February so that every defendant can either
accept or reject those offers on the record.  So that's point
number one.

Point number two is at this point we are requesting
a trial date.  And, of course, we have indicted all nine
together and our, you know, initial hope had been to try all
nine together.  Your Honor suggested at the last hearing that
that was not logistically viable and we understand that.  So
if we are being required to divide it into two groups, we have
proposed -- we have prepared to separate the two groups and
what we would propose is for Group 1 to be Mr. Morss and Mr.
Quaglin, Mr. McCaughey --

THE COURT:  Whoa, whoa.  All right.  Keep going.

MS. BOND:  So group 1 is Mr. Morss, Mr. Quaglin, Mr.
McCaughey, Mr. Stevens and Mr. Klein.  Group 2 we propose to
be Mr. Sills, Mr. Judd, Mr. Cappuccio and Mr. Mehaffie.

1          Now I know that logistically getting a trial date

2     for all nine co-defendants might be tricky, but we did reach

3     out and were able to talk to some of defense counsel about

4     their preferences.  And based on government's trial schedule

5     as well as the counsel we did speak with, we are requesting a

6     trial date in late August and early September for the first

7     group.  With the second group to be set approximately six

8     weeks later.  We think that this will probably be about a

9     three-week trial and I think having a sufficient time to

10    complete trial number 1, have a recovery period and get ready

11    for trial number 2 is reasonable.  And of course, we would be

12    asking the Court to exclude the time between now and those

13    trial dates.

14          THE COURT:  Okay.  Okay.  Keep going.  What else do

15    you want to talk about?

16          MS. BOND:  So plea offers and trial date are big

17    things.  I can update the Court on the status of discovery

18    which continues to be ongoing.  All defendants have received a

19    tremendous amount of discovery.  With our global production,

20    we have produced most of the body camera footage, thousands of

21    hours of CCTV.  There are still things to produce, but we have

22    no reason to believe that won't be done well in advance of any

23    trial dates in these cases.

24          THE COURT:  And so they are actually receiving it.

25    Right?  It's not just with the FPD and that FPD is waiting to

1    get it to them.

2              MS. BOND:  So I can't speak to whether each person

3    is licensed.  But I know that they have had the opportunity to

4    get those license to actually engage and look at the materials

5    themselves.  Beyond that, I don't know whether they have

6    actually done that.

7              THE COURT:  Okay.  Okay.  Anything else for the

8    government, Ms. Bond?

9              MS. BOND:  No, Your Honor.  Those were the issues we

10   wanted to address today.

11             THE COURT:  All right.  So you've talked with

12   attorneys about the dates.  You think you've got a group who's

13   free for the you said late August?

14             MS. BOND:  So certainly we have not spoken to every

15   defense attorney.  I let every defense attorney know at the

16   beginning of this week that we would be asking for a trial

17   date and opened those discussions.  Some responded and some

18   didn't.  But the ones that I have spoken to seem very

19   comfortable with a late summer or early fall trial date.

20             THE COURT:  Okay.

21             MS. BOND:  And I'm hearing not everyone over my

22   shoulder.

23             THE COURT:  And is that -- I mean I don't have a lot

24   of availability before that.  I do have some.  Though are

25   you -- I can understand how some of these defendants have been

1    held for some time now and are probably going to be eager to

2    go before August.  Are you saying that you're not going to be

3    able to be ready or were you picking that timeframe just

4    because you didn't think you can get everybody on the same

5    page before then?

6            MS. BOND:  So a couple of issues, Your Honor.  One,

7    I -- for my availability, I will be ready by the summertime.

8    But looking at the mountain of discovery that we have and the

9    complexity of this issue, my preference is to set a trial date

10   that's actually reasonable that all defense counsel can

11   actually meet and I know how much is out there.  I know how

12   many videos are out there that I have never even previewed.

13   And so my belief due to the complexity of the case and the

14   number of the defendants in this, it would be unrealistic to

15   set that earlier trial date because I imagine that it would be

16   continued.

17           THE COURT:  Okay.  Yeah.  I guess I'll tell defense

18   honestly I think it's going to be hard for me find three weeks

19   on my schedule to get a trial much before then.  You can look

20   at potentially earlier in the summer.  But it's going to be

21   around that time I think given a trial of that length.  So I

22   guess I am inclined to proceed more or less as the government

23   is suggesting.  So while you're up, Ms. Bond, you're

24   basically -- you're free and available any time after into

25   late August.

```
1              MS. BOND:  I'm sorry?

2              THE COURT:  After late August, early September?

3              MS. BOND:  Yes.  I don't have any trial dates on my

4    calendar August or beyond.

5              THE COURT:  Okay.  And why don't you and I talk

6    about a next status conference while you're up?

7              MS. BOND:  I was going to propose the week of

8    January 24th, but I understand that at least one defense

9    counsel is in trial in and around that time.  So I would just

10   request generally late January or early February.  And we have

11   no opposition to this being done via Zoom, but we would ask

12   that defendants be present and not waive their presence so

13   that they can accept or reject on the record.

14             THE COURT:  All right.  How about 10 a.m. for

15   February 21st, Ms. Bond?  Does that work for you?

16             MS. BOND:  You said --

17             THE COURT:  10 a.m. for Friday, February -- I'm

18   sorry.  I guess I was looking in January.

19             MR. KIYONAGA:  I'll be in trial January, Your Honor.

20             THE COURT:  The court sits on Fridays as well?

21             MR. KIYONAGA:  It's unclear.  So he may sit on

22   Friday.  It's a three-week trial.

23             THE COURT:  All right.  How about Friday,

24   February 4th --

25             MS. BOND:  That's fine for the government.
```

1          THE COURT:  -- at 2 p.m.?  Does that work for the

2     government?

3          MS. BOND:  Yes, Your Honor.

4          THE COURT:  All right.  Any defense counsel not

5     available on Friday, February 4th at 2 p.m.?  Please raise

6     your hand.  Mr. Kiyonaga, you are very tall and I need you to

7     sit down.

8          MR. KIYONAGA:  I'm fine on the 4th, Your Honor.

9          THE COURT:  All right.  Going once, going twice.

10    All right.

11         MR. MARSHALL:  I'm filling in for John Pierce who is

12    the attorney of record in the matter as well and he's located

13    in California.  So at the next status conference, could he at

14    least appear by Zoom or do I need to make the physical

15    appearance?

16         THE COURT:  No.  No.  Sit down, please, sir.

17         MR. MARSHALL:  Okay.  Thank you.

18         THE COURT:  All right.  I'm setting this for

19    February 4th at 2 p.m. for status conference.  Let me say it

20    will be in person.  Anyone who wishes to plead needs to be

21    here in person.  Anyone who wishes to reject the plea offer

22    needs to file something signed by the defendant saying that he

23    is rejecting that plea offer by then.  Does that work for you,

24    Ms. Bond?

25         MS. BOND:  Yes.  Thank you, Your Honor.

1          THE COURT:  Okay.  Mr. Urso, anything that you wish
2    to address?
3          MR. URSO:  Yes, Your Honor.  In terms of the trial
4    schedule, I'm -- personally, I'm no further along in the
5    discovery dispute on my own trial schedule.  I haven't -- and
6    I haven't begun to get into the license issue.  I'm looking at
7    the global discovery.  And obviously, Mr. McCaughey is not
8    incarcerated.  So we are in absolutely no rush to go to trial
9    and I've still got a lot of discovery to go through.
10          In terms of the grouping, Your Honor, it seems to
11   make sense -- I know we're -- I don't know how the government
12   came to their grouping.  But it might seem to make sense to me
13   to group three incarcerated defendants instead of the ones
14   that are going to be more antsy to go to trial.
15          THE COURT:  I understand that inclination.  So Mr.
16   Urso, I think I'm -- are you available August 29th for trial,
17   sir?
18          MR. URSO:  August 29th?  Yes, Your Honor.
19          THE COURT:  Okay.  Okay.  Nothing else -- oh, do you
20   wish to be heard on tolling the speedy trial clock?  Ms. Bond,
21   I think you asked for that.
22          MS. BOND:  I did, Your Honor.
23          THE COURT:  Yes.
24          MR. URSO:  No objection, Your Honor.
25          THE COURT:  Okay.  Thank you, Mr. Urso.  Ms. Cobb?

1          MS. COBB:  I'm available on August 29th, Your Honor.

2          THE COURT:  Okay.

3          MS. COBB:  I agree with Mr. Urso that it seems like

4   it would maybe make a little more sense to do the incarcerated

5   defendants first.  But I am available on that date.  And I

6   don't have any objection to tolling the time.

7          THE COURT:  Okay.  Thank you, ma'am.  Ms Mullin?

8   Actually, sorry, ma'am.  Let me handle the suggested Group 1

9   first.

10          Mr. Metcalf?

11          MR. METCALF:  We have no objections to tolling the

12   speedy trial to the next date of February 4th.  However, Your

13   Honor, I wish to be heard and make a record on a couple of

14   matters that have been going on with Mr. Quaglin with regards

15   to the trial date --

16          THE COURT:  Okay.

17          MR. METCALF:  -- for August 29th.  Now there's two

18   main issues here.  Number one is his Celiac Disease.  There

19   have been unusual circumstances with his confinement

20   throughout this time.  I mentioned his Celiac Disease briefly

21   at our last status conference.  But it's taken on a whole new

22   form.  It's taken on a form where he has to speak out about

23   his food at least sometimes three times a day and this is a

24   serious scenario, a serious disease that substantially affects

25   his every day well-being.  He --

1          THE COURT:  Is he at the D.C. Jail, sir?

2          MR. METCALF:  No.  Right now he is not.  So he has

3    been transferred.  He started in Essex.  He then was

4    transferred I think to Ohio, went to D.C.  Then after

5    Congresswoman Greene spoke out about his Celiac Disease and

6    his confinement at the D.C. Jail, he was then transferred to

7    Lewisburg and now he is in Alexandria for the last two days.

8          So this then transforms into us being able to speak

9    to him, us being able to speak to him with regards to the

10   discovery.  My understanding is that on October 7th, Attorney

11   McBride dropped off a disc with all of his discovery at the

12   D.C. Jail.  He still has not received that disc.  He still has

13   not been able to review any of the materials that were on

14   there and has since then been transferred to two different

15   jails.  Jails which from our understanding and according to

16   conversations with the U.S. Marshal never should have been

17   done in the first place.  It was conveyed to Attorney McBride

18   that Mr. Quaglin never should have been transferred from D.C.

19   or Lewisburg to begin with and that it's still up in the air

20   as to those reasons why.

21          So with that being said, Your Honor, and with

22   everything that's going on, we have various different issues

23   with regards to due process right violations, with regards to

24   Sixth Amendment violations and his ability to assist in his

25   own defense, communicate with us, access to discovery --

1          THE COURT:  What are you asking me to do, sir?

2          MR. METCALF:  I'm asking Your Honor to not schedule

3   a trial date for August 29th because Mr. Quaglin in particular

4   who has been framed or has been part of Group 1 now has not

5   even reviewed his discovery to date.

6          THE COURT:  Okay.  August 29th is over eight months

7   from now.

8          MR. METCALF:  Understood.  But we're talking about

9   voluminous discovery over gigabytes in volume that has to be

10  gone through and with the treatment that he's been receiving

11  right now, eight months does sound like a long time, but

12  months ago we thought we were going to be in a better position

13  than we are today.

14         THE COURT:  All right.  So you think that's too

15  soon?

16         MR. METCALF:  Yes.  I think that at the next status

17  conference, just hold that trial date for Group 1 that would

18  classify or put Mr. Quaglin in that Group 1, hold that date in

19  abeyance until the next status conference where we could then

20  come back to Your Honor, potentially file a motion in regards

21  to some of these violations and set forth in writing all the

22  conditions and everything that's been going on with Mr.

23  Quaglin.  We'd ask for that opportunity before we address an

24  actual trial date.

25         THE COURT:  Okay.  So I think the second date I

1     would be looking at would be August -- I'm sorry --
2     September 26th.  Are you available then, sir?
3              MR. METCALF:  We are available then.  My request
4     remains the same, that we don't set that date until the next
5     status conference of February 4th.  But if Your Honor wants to
6     set dates today, then we would definitely object to the August
7     date and we will make ourselves available for the end of
8     September.
9              THE COURT:  All right.  Thank you, Mr. Metcalf.
10    Anything else you wanted to be heard on?
11             MR. METCALF:  Nothing further, Your Honor.
12             THE COURT:  All right.  Thank you, sir.
13             MR. METCALF:  Thank you.
14             THE COURT:  Mr. Kiyonaga, why don't you address Mr.
15    Morss?
16             MR. KIYONAGA:  Your Honor, Mr. Morss asserts his
17    speedy trial rights.  By my calculation, he's been locked up
18    at this juncture for six months.  So I understand the Court's
19    scheduling difficulties, but I would ask for a trial date in
20    March or April.
21             THE COURT:  Okay.  Notwithstanding that, are you
22    available on August 29th?
23             MR. KIYONAGA:  Yes, I am, sir.
24             THE COURT:  And I'll go ahead and ask you are you
25    available on September 26th?

```
1              MR. KIYONAGA:  Yes, I am, sir.

2              THE COURT:  Okay.  Anything else you wanted to say

3   on Mr. Morss?

4              MR. KIYONAGA:  No, sir.

5              THE COURT:  Anything you wish to address on

6   Mr. Sills?

7              MR. KIYONAGA:  Your Honor, as to Mr. Sills, I would

8   rather not commit to a trial date until the matter of his

9   pretrial confinement is resolved.  So I would suggest that we

10  take that up at the next -- if the Court would permit it at

11  the next status hearing.  I am available both days.  If he's

12  confined which is my sincere hope that he will not be, then

13  I'm not going to be inclined for a very early trial date.  But

14  if he is --

15             THE COURT:  I understand what you are saying.

16             MR. KIYONAGA:  I want to go fast.  If not, I don't

17  mind waiting.  He would waive his speedy trial rights if he is

18  released.  So I would ask the Court to enable me to address

19  that concern at our next status conference.

20             THE COURT:  All right.  Thank you, sir.

21             MR. KIYONAGA:  Thank you.

22             THE COURT:  Mr. Woodward?

23             MR. WOODWARD:  Thank you, Your Honor.  If I may,

24  preliminarily we have a few concerns about the representations

25  that the government made about the status of this case.  I
```

1    think it starts really with the notion that Ms. Bond stated

2    that she had provided us with an email earlier in the week.

3    She sent us an email Wednesday after 4:00 asking us about

4    trial dates and it's curious to us about the aggression with

5    which the government is seeking a trial date.  She made a

6    representation about her access to discovery.  I have signed

7    up and have gotten access to the Evidence.Com database.  I am

8    reviewing that discovery.  But there's also a relativity

9    database that I assume Your Honor is aware of that no

10   defendant has been given access to yet.

11            I appreciate that August and/or September are eight

12   or nine months away from now.  But we're also ten, almost

13   eleven months into this case and things just seem to be moving

14   glacially slow.  In our case, for example, I don't believe

15   that any defendant has received any discovery from the

16   government in over a month.

17            Yes, Ms. Bond has provided or the government rather

18   has provided us with several productions of global discovery.

19   But as a defense counsel who represents multiple defendants

20   related to events of January 6th, I can tell you that that's

21   all sort of perfunctory.  The office is making that data

22   available and we get the same letters in each of those cases.

23   I don't believe the government in this case has made a

24   representation to the Court as to the status of discovery

25   again in over a month.

1          And so it's unclear to me at least -- I won't speak

2     for my colleagues -- but where do we stand on the case

3     specific discovery?  When can we expect the case specific

4     discovery to be concluded as with respect to all of the

5     defendants because, of course, to the extent that we are going

6     to be tried together, we have an interest in knowing what the

7     discovery is as to the others.

8          I would then turn to the government's requested

9     dates.  Your Honor, if the government -- if the Court tells me

10    to be available on August 29th, I will do that.  I will also

11    represent to the Court that it will be very difficult for me

12    to be prepared for Mr. Klein's trial on that date.  I

13    understand it is some time from now.  But Judge Kelly has

14    asked me to hold three weeks leading into the beginning of

15    August for another trial.  I also am previously scheduled to

16    be outside of the district for two weeks in August.  And as

17    Ms. Bond well knows in the case that Mr. Klein had previously

18    been in that Your Honor just dismissed, we had set a trial

19    date tentatively for September 12th.

20         And so respectfully if Your Honor is inclined to set

21    a trial date, we'd ask for that later September date rather

22    than the end of August date.

23         THE COURT:  I'm sorry.  Can you go back?  I

24    missed -- what did we set for September 12th?

25         MR. WOODWARD:  Mr. Klein's trial in the case that

1    Your Honor just dismissed prior to his being superseded and
2    brought into this case, that was set for later in September
3    with the agreement of the government.  And so we'd ask not to
4    have that trial date be pushed out even though I appreciate
5    this is a new case.  But that's the date that we had all
6    agreed upon.  And so pushing it up would be prejudicial to at
7    least defense counsel, Your Honor.
8            THE COURT:  Are you available on September 26th?
9            MR. WOODWARD:  Yes, sir.
10           THE COURT:  Okay.  Anything else you wish to be
11   heard on, sir?
12           MR. WOODWARD:  No.  Thank you, Your Honor.
13           THE COURT:  Okay.  Ms Mullin?
14           MS. MULLIN:  Yes, Your Honor.  I was placed in the
15   second group.
16           THE COURT:  Yes.  Does that work for you and would
17   you prefer to be in the first group?
18           MS. MULLIN:  I prefer to be in the second group, but
19   the first group works for me as well.
20           THE COURT:  Okay.  Anything you wish to be heard on?
21           MS. MULLIN:  Yes, Your Honor.  If I may at this
22   point, since I'm up here, clarify the record as to Mr. Judd's
23   position on his motion to dismiss.  I understand the Court's
24   ruling.  I just want to clarify this for the record because it
25   may become relevant down the road.  I just want to make clear

1    that Mr. Judd does not concede that the object that he had is
2    a fire cracker.
3         THE COURT:  That's just fine.  You understand that
4    I'm assuming that the government is right at this point.
5         MS. MULLIN:  Yes.  I just want to make that very
6    clear that, you know, the object wasn't recovered.  We're not
7    conceding it was a fire cracker and I understand the Court's
8    ruling that that's an issue for trial.  Thank you.
9         THE COURT:  Thank you.  Did you address tolling?
10        MS. MULLIN:  Your Honor, we waive speedy trial.
11        THE COURT:  Okay.  Thank you, ma'am.  Mr. Marshall?
12        MR. MARSHALL:  Yes, Your Honor.  We're in the second
13   group and we are available for trial at that time.  If it
14   would help the Court or the -- if it would help the Court we
15   would also be available to be in the first group as well.
16        THE COURT:  Okay.
17        MR. MARSHALL:  We also waive time under the Speedy
18   Trial Act and one note we would like to bring up though as
19   well regarding discovery is while we have been receiving
20   global discovery, to my knowledge, we have not received
21   specific discovery yet as to our client either.
22        THE COURT:  Okay.  Thank you.
23        MR. MARSHALL:  Not at all.  Thank you, Your Honor.
24        THE COURT:  All right.  And Ms. Douenat?
25        MS. DOUENAT:  Good afternoon, Your Honor.  So we do

1    waive speedy trial.  We would prefer the second group and
2    September 26th works great.  We would be amenable to
3    August 29th as well if the Court -- that's not a problem.  So
4    those two trial dates are fine.  But we would prefer the
5    second group.
6              THE COURT:  Okay.  Anything else you wish to be
7    heard on?
8              MS. DOUENAT:  No, Your Honor.  I think that's it.
9    Discovery is ongoing.  I'm waiting right now for some
10   discovery.  My client's cell phone dump, that's supposed to be
11   tendered this afternoon.  So that's been ongoing and we're
12   working on that.
13             THE COURT:  Okay.  Thank you.  Ms. Bond?
14             MS. BOND:  Yes, Your Honor.
15             THE COURT:  So I hear a couple of defendants in the
16   first group who want to move to the second group and I think
17   at least Mr. Marshall indicates that Mr. Mehaffie is willing
18   to move to the first group.  Any reason we shouldn't
19   accommodate them?
20             MS. BOND:  Mr. Mehaffie specifically?
21             THE COURT:  Well, to make a swap.  So moving Mr.
22   Quaglin and Mr. Klein to the second group and Mr. Mehaffie to
23   the first group.
24             MS. BOND:  Give me just one moment to consult with
25   co-counsel.  I believe that that is viable, Your Honor.

1          (Pause.)

2          MS. BOND:  Yes, Your Honor.  We can make that work.

3     There is a tremendous amount of overlapping evidence again

4     which is why we indicted them together and I anticipate that

5     many of the witnesses will be the same for both trials.

6          THE COURT:  Okay.  So I'm setting the following

7     trial dates for Mr. McCaughey, Mr. Stevens, Mr. Morss, Mr.

8     Mehaffie.  Their trial date will be on August 29, 2021 at 9

9     a.m.  For Defendant Judd, for Defendant Quaglin, for Defendant

10    Sills, for Defendant Cappuccio and Defendant Klein, their

11    trial dates will be on September 26, 2021.  We've got a status

12    conference date.  Ms. Bond, remind me what date we set that?

13         MS. BOND:  I believe we selected February 4th.

14         THE COURT:  Okay.  I'm setting February 4th for the

15    next status date.  I'm not going to set other -- I'm not going

16    to set a motions schedule now or pretrial conferences.  We'll

17    set that at the next status conference.  I do find that the

18    interest of justice outweigh the interest of the defendants

19    and the public to the extent that I'm going to toll until the

20    February status conference.  I understand most defendants have

21    agreed to this.  A few have not.  Notwithstanding the

22    objections of the defendants who are not willing to waive

23    their speedy trial clocks, I think there's a lot of discovery

24    that's gone over.  More that needs to be submitted.  They are

25    outstanding plea offers and these are -- well, really one very

1    large case with a lot of moving parts that I think justifies

2    ensuring that all attorneys and defendants have time to review

3    discovery and be adequately prepared.  For all those reasons,

4    I am waiving -- tolling the speedy trial clock until the

5    February date.

6            Ms. Bond, I heard some concerns about discovery here

7    and case specific discovery and access to the relativity

8    database.  Can you speak to that, please?

9            MS. BOND:  So, Your Honor, with respect to Mr.

10   Mehaffie's discovery, his whole case, specific discovery has

11   been turned over.  And I'm realizing as I sit here, perhaps

12   the issue is it was provided to prior counsel and I can

13   certainly provide that to Mr. Pierce and Mr. Marshall.  So

14   that they have the access to that directly.

15           But Mr. Mehaffie does -- prior counsel was provided

16   almost his entire file.  The only thing Mr. Mehaffie has not

17   yet received is the contents of his phone yet.  That is still

18   in progress.  But that will be forthcoming.

19           With respect to Mr. Klein, of course, we have not

20   provided Mr. Woodward any additional discovery in the last

21   month because there hasn't been anything new in Mr. Klein's

22   case in the last month.

23           So Mr. Klein has the contents of almost all of his

24   case specific discovery, not just his, but every single

25   defendant who is sitting in this room and there's no point

1    that discovery in this case is going to be done and closed.

2    The investigation continues to be ongoing with all of the

3    other January 6th defendants.  So we will continue to turn

4    things over as we have them.

5            As far as the relativity database, I can't speak to

6    that at the moment, but I can certainly speak with Mr.

7    Woodward to figure out what specific --

8            THE COURT:  All right.

9            MS. BOND:  Ms. Jackson can speak to that.

10           THE COURT:  All right.  Ms. Jackson?

11           MS. JACKSON:  I wanted to supplement that.  We do

12   regularly talk to the agents to supplement any new additions

13   to the case files.  There will be an additional sweep with

14   additional information coming for every defendant if there has

15   been any new things added to their case file.

16           As to the relativity database, that's addressed

17   monthly for the whole office in these status updates.  And my

18   understanding is the discovery team on January 6th is planning

19   on filing an update on that issue soon.  I don't know if it's

20   today or early next week which will lay out the exact state of

21   play and we are not informed enough about that to accurately

22   describe the current state.  But I do believe and do know that

23   a new update will be filed very shortly.

24           THE COURT:  Okay.  So we need to make sure that the

25   defense attorneys get access to relativity database.  Also I

1    understand the government has been working with FPD which is
2    wonderful.  But these defense attorneys represent these
3    defendants.  You all need to make sure these defense attorneys
4    have access to the relativity database.
5                   MS. JACKSON:  Understood.
6                   THE COURT:  Thanks.  All right.  I expect that will
7    be taken care of by the next status conference.
8                   MR. KIYONAGA:  Your Honor, can I trouble the Court
9    with a quick question?
10                  THE COURT:  Yes, sir.
11                  MR. KIYONAGA:  I couldn't hear what was being said.
12   The members of Group 1 are Morss, Quaglin, McCaughey and
13   Stevens.  Is that correct, sir?
14                  THE COURT:  McCaughey, Stevens, Morss and Mehaffie.
15                  MR. KIYONAGA:  I see.  And Mr. Quaglin is moving to
16   Group 2.
17                  THE COURT:  That is correct.
18                  MR. KIYONAGA:  Your Honor, will you be issuing a
19   written opinion on the Morss detention or pretrial release
20   motion?
21                  THE COURT:  No.
22                  MR. KIYONAGA:  Very well.
23                  THE COURT:  All right.  I believe the only thing
24   left is on Mr. Judd's motion to compel.  Ms. Bond, do you
25   think I'm missing anything?

```
1              MS. BOND:  No, Your Honor.

2              THE COURT:  All right.  Any attorneys or defendants

3      who are not involved in that, you are welcome to leave.  And I

4      will hear from Ms. Mullin.

5              MS. MULLIN:  Thank you, Your Honor.

6              MR. KIYONAGA:  Your Honor, I've adopted the motion.

7              THE COURT:  Yeah.  If you've adopted, I'm not going

8      to hear from you.  But you are welcome to stay as is your

9      attorney or as your clients.

10             MS. MULLIN:  Your Honor, Mr. Judd has made a prima

11     facie case of selective prosecution.  As an initial matter,

12     under Armstrong and controlling precedent, Mr. Judd need only

13     make a "colorable claim of discriminatory effect and purpose

14     in order to compel discovery."

15             THE COURT:  So --

16             MS. MULLIN:  That's been defined as some evidence.

17             THE COURT:  Right.

18             MS. MULLIN:  Yes.

19             THE COURT:  I mean there's kind of a funny mismatch

20     here between kind of some evidence.  But when you look at the

21     case law, it's actually a pretty high burden.  Isn't it?

22             MS. MULLIN:  Well, Your Honor, I don't -- I think to

23     dismiss for selective prosecution, yes, the burden is quite

24     high.  But in order to get discovery, to compel discovery,

25     it's a colorable claim which is some evidence.  And I think
```

1    that we have presented that here.

2            Mr. Judd has cited to numerous cases stemming from

3    riots that took place in Portland in the summer of 2020

4    following the death of George Floyd.  Those riots were

5    indisputably associated with left leading causes and in those

6    cases, defendants who struck and injured officers and in one

7    case threw a large cylindrical fire work at a police officer

8    either had their cases dismissed or were offered deferred

9    resolution agreements.  In the case of the man who threw a

10   firework, he was not charged with assault with a dangerous

11   weapon with the attendant sentencing enhancement.

12           So I think this category of cases is a colorable --

13   does present a colorable claim, Your Honor.  And I'd like to

14   make one point here unless the Court has a question at this

15   point.

16           THE COURT:  So I'll tell you, it struck me that you

17   were a little light on the second prong.  There's the two

18   different prongs and --

19           MS. MULLIN:  Improper motivation?

20           THE COURT:  Yes.  And just looking back at colorable

21   claim, that standard is significant and rigorous, not easily

22   surmounted.  So again I hear you that it says colorable claim,

23   but I think the case law has actually put a fair amount of

24   weight in that term.

25           MS. MULLIN:  But even under that standard, we think

1    we've met it here, Your Honor.  The government argues that

2    because some of the Portland defendants were initially

3    prosecuted and charged with felonies, that Mr. Judd can't meet

4    that exacting claim.

5           But we submit that the government conflates charging

6    with prosecution outcome and effect, which is really what the

7    case law talks about.  So even though initially some

8    defendants were charged with felonies, a vast majority of them

9    are offered deferred resolution agreements.  In some cases

10   even where actual injury occurred to police officers,

11   favorable plea offers.

12          And I'll tell the Court that the exact opposite has

13   happened here.  The government has extended plea offers that

14   involve stipulating to years in prison with no regard for the

15   individual characteristics of our defendants.  Mr. Judd has no

16   prior record and so if he accepted that plea offer and the

17   Court sentenced him accordingly, I understand the guidelines

18   are not mandatory, he would be saddled with a felony

19   conviction, prison time and all of the attendant losses of

20   rights that come with a felony conviction.

21          Your Honor, regarding the improper motivation prong,

22   of course, under Branch Ministries and other precedent, the

23   defendant need not show direct evidence of intent.  The

24   defendant -- I mean because it's basically impossible to show

25   direct evidence of intent.  The defendant can show other --

1          THE COURT:  Well, sometimes it's not.

2          MS. MULLIN:  Sometimes it's not if there is a memo

3     specifically directing, you know, selective prosecution.  But

4     that's rare.  A defendant typically can show statistical

5     disparities and other indirect evidence.  And that's Branch

6     Ministries, Your Honor.

7          And indeed we submit that we've shown that other

8     indirect evidence.  And I would submit here that I think the

9     fact that the Portland cases were initially charged as

10    felonies under the Trump administration.  And then after the

11    change of administration, many of those cases resolved in nol

12    prossed or DRA's is more evidence of improper motivation.

13         THE COURT:  Isn't it a little more complicated than

14    that?  I mean it looked to me like a lot of the cases were

15    dismissed or you had DPA's even under the last administration.

16         MS. MULLIN:  Your Honor, many of the cases were

17    resolved -- that's true, Your Honor.  But I think it just goes

18    to show -- I mean, of course, we don't know how the Trump

19    administration would have handled the January 6th cases

20    because --

21         THE COURT:  Well, we have some indication.  They

22    started arresting people pretty quickly.  I mean there were a

23    couple of weeks left in the administration and I think -- I

24    don't know if any of the defendants here, but there are

25    certainly some defendants who were charged in days afterwards.

1          MS. MULLIN:  Well, the vast majority have been
2    charged under the current administration, Your Honor.  And I
3    would submit that it's the approach to resolving these cases
4    that I think is really pertinent here.  Any attempt to
5    negotiate a more favorable plea like a DRA for someone like
6    Mr. Judd who has no prior record, who has never been in
7    trouble before is just met with almost like categorical
8    resistance.
9          And then you compare that to the Portland cases
10   where you have individuals who were charged with injuring,
11   causing injury to officers and engaging in violent conduct.
12   And while their cases may have initially been charged with
13   felonies, subsequently down the road, they are offering DRA's,
14   nol prossed, very favorable plea offers, misdemeanor plea
15   offers.  And I think that that shows -- these category of
16   cases are similarly situated.  And the way that the government
17   has handled the resolution of those cases shows discriminatory
18   motivation.
19          And I would point out, Your Honor, that Mr. Judd is
20   not alone in observing the disparity in charging and
21   resolution decisions between the Portland rioters and the
22   January 6th defendants.  Indeed, federal law makers have
23   expressed their concern about the government's apparently
24   partisan and draconian approach to the January 6th defendants
25   as compared to the Portland rioters.

1          THE COURT:  I saw your letter or the letters.  What
2    do you think about the idea that maybe the Oregon U.S.
3    Attorney's Office is, you know, particularly lenient and, you
4    know, maybe there are really hard chargers here in D.C. and
5    maybe it just has to do with the fact that you are dealing
6    with a different U.S. Attorney's Office?
7          MS. MULLIN:  Well, they all take their orders from
8    Main Justice.  And it's still the United States -- I mean it's
9    the Department of Justice.  I don't think you can parse out a
10   different U.S. Attorney's offices and I would assume that
11   there were some direct -- and that's why Mr. Judd is actually
12   requesting discovery because we don't know.
13         But I would assume that there were some directives
14   from Main Justice to the Portland AUSA's and I think this is
15   obvious to the D.C. AUSA's in the January 6th cases.  But it's
16   the same prosecuting body, Your Honor.
17         Your Honor, with respect to Mr. Judd and I think
18   this is relevant to whether he is similarly situated to those
19   cases cited in my motion, you know, he's a college graduate.
20   He's not a member of any fringe racist group.  He is a devout
21   Christian and churchgoer.  He's been released over the
22   government's strenuous objection.  Hasn't violated a single
23   condition of release.  You know, he didn't go there to cause a
24   riot.  He went there under his then belief that there was
25   election fraud based on what politicians were telling him.  He

1    didn't strike an officer.  He didn't damage property.  He

2    didn't start a fire.  He did not enter the Capitol building

3    and he didn't cause any injury.  And yet, he stands charged

4    with multiple felonies including assault on a police officer

5    armed with a dangerous weapon.

6          And again I point to two cases where individuals

7    lobbed fireworks at police officers and were not charged with

8    the assault with a dangerous weapon enhancement and all the

9    attendant enhancements that apply.

10          THE COURT:  So, you know, the government argues that

11    the attack on the Capitol is sui generis.  You know, there are

12    hundreds of federal court buildings.  Only one U.S. Capitol.

13    This was a event that only occurs once every four years

14    constitutionally mandated.  There's a lot of special factors

15    that take this from the mind run of assault on police

16    officers.

17          MS. MULLIN:  Your Honor, I think that the problem

18    here is the government is defining the class or intending to

19    and it's defining it as unique.  But instead of looking at

20    whether defendants are similarly situated for the purpose of

21    selective prosecution, courts tend to look at the underlying

22    fact that give rise to the charged offenses, to the elements

23    of the charged offenses.  And we submit the Court should not

24    look to the broader context because that would lead to an

25    untenable result and that is that there would be -- I mean no

defendants are going to be identically situated and courts
have recognized that.  Similarly situated does not mean
identically situated.  So of course, January 6th is not going
to replicate itself.  So it's going to be hard to find a
category of defendants that are identical to the January 6
defendants.

But the standard is similarly situated.  Did they
commit the crime in substantially a similar manner?  And the
Portland cases where there was rioting, a federal courthouse
was under siege, federal officers were attacked, those
offenses, we submit, were committed under similarly --
substantially similar circumstances.

And I offered an analogy to the Court here about the
sort of untenable -- how it's not proper to examine the
broader context really.  It really just should focus on the
elements of the offense.

Imagine the Court we're looking at where the
defendants had a claim of selective prosecution for crack
distribution offenses.  It wouldn't be proper for the Court to
look at categories of individuals based on, for example, where
they lived.  Here the Court must look at the offenses, whether
they were committed and how they were committed and I think
that analogy extends to these two categories of defendants.
These were offenses that arose out of protests, political
protests, involved a federal courthouse and involved federal

1    officers and alleged violence against federal officers.  So we

2    think if you look at those circumstances, those similarities,

3    these two categories of defendants are similarly situated for

4    purposes of selective prosecution.

5              THE COURT:  Okay.  So give me your best evidence on

6    the second prong.  You know, the purpose -- the purpose prong.

7              MS. MULLIN:  The improper motivation?  Well, Your

8    Honor, I would think -- so first of all, I mean the government

9    argues that, you know, you can't really tell, you know, what

10   politics these different protests were associated with.  I

11   mean it's obvious that the January 6th protests were

12   associated with then President Trump and more conservative

13   causes and the Portland riots were associated with Black Lives

14   Matter and other left leading causes.

15             And again I would submit we don't have to show

16   direct evidence.  Just other indirect evidence.  And again I

17   will submit that the way that the offices, the U.S. Attorney's

18   Offices handled the Portland riot cases after the change in

19   administration in particular, offering deferred resolutions in

20   serious felony cases, dismissing cases outright, that is

21   indirect evidence of improper motivation.

22             THE COURT:  So on that, I mean maybe I missed it.  I

23   didn't really feel like there was that demarcation that you

24   suggest.  I mean I really I appreciated your chart.  I thought

25   that was very helpful and certainly raises some troubling

1    implications.  But I don't see -- certainly, I don't think

2    your chart makes any attempt to distinguish between pre kind

3    of Trump administration decisions versus Biden administration

4    decisions.

5            MS. MULLIN:  Just looking at the timing of the nol

6    pros and the DRA's, I mean even the government states in its

7    response that these resolutions were offered after months and

8    months when defendants waived their speedy trial and were on

9    release which is exactly the posture that Mr. Judd is in.  So

10   I don't -- I would ask the Court to just I guess take judicial

11   notice that after months and months, the administration

12   changed over.

13           But certainly, if the Court wants me to go back and

14   provide the dates of the dismissals and nol pros, I would be

15   happy to do so.  But again even the government stated that,

16   you know, after months and months and months, these cases were

17   dismissed.

18           And again, you know, that's the same situation we

19   have here and we've asked for a better plea offer, you know, a

20   resolution that would allow Mr. Judd to not have a felony

21   conviction, not go back to prison.  And the response has been

22   categorical denial.  And I think I speak -- I know I speak for

23   other January 6th defendants' attorneys when I say that.

24           THE COURT:  Yeah.  No.  I think a number of the

25   attorneys here have joined on and, you know, I think you have

1    a powerful motion.

2           Help me think -- I know I mentioned the last time

3    I'm -- some big FOIA request of all communications between

4    U.S. Attorney's Offices and Main Justice strikes me as kind of

5    categorically different from anything that's ever been

6    authorized in a selective prosecution case before.

7           What's the heart of what you are looking for and,

8    you know, how realistic is it for us to get that?

9           MS. MULLIN:  Well, Your Honor, I think the Court

10   could narrowly tailor discovery and I did try to address that

11   somewhat in my reply.  For example, guidance memos from Main

12   Justice to the AUSA's in Portland and D.C. about charging

13   decisions and plea offers.  You know, oftentimes my

14   understanding is a memo is promulgated from the Department of

15   Justice and disbursed among the AUSA's about how to handle

16   certain categories of cases.  If that exists, we would request

17   that.

18          You know, I agree with the Court that emails between

19   line assistants and their individual bosses would be too much.

20   But I think, you know, guidance from Main Justice to the line

21   assistants on both categories of cases would shed a lot of

22   light on why in the January 6 cases, we submit a hard line and

23   a categorical approach, so to speak, has been taken against

24   our defendants.

25          THE COURT:  Back again on the timing, I mean -- so I

1      guess -- it sounds like you are arguing that I should really

2      be keen in to when the Portland cases were getting dismissed.

3      That if there is a real change in attitude, you know, the

4      Trump administration is bringing all these felony cases and

5      then the Biden administration starts dropping them, that

6      that's going to be strongly suggestive of selective

7      prosecution.

8              MS. MULLIN:  Yes.  But I also think regardless of

9      the timing, just the way that the cases have unfolded is

10     suggestive of selective prosecution.  But I understand it is

11     selective or indicative of improper motivation because

12     obviously, these defendants are being -- I know some initial

13     cases were brought under the Trump administration, but in the

14     waning days of the Trump administration.  But I mean there's

15     no question, obviously, that these cases are being brought

16     under the direction of Attorney General Garland.  And so, yes,

17     I think the timing would lend to our argument of showing

18     improper motivation, but I don't think the Court needs it

19     because again you've got similar conduct and just looking at

20     the conduct alone and defendants who are getting their cases

21     dismissed and then defendants who are facing years in prison

22     under the plea agreements proposed by the government.

23             And we submitted in our reply brief, but we also

24     submit that the way the U.S. Attorney's Office has handled

25     some of the D.C. protests add to our colorable claim of

1    selective prosecution.

2            THE COURT:  Yeah.  But kind of public you were

3    sandbagging their bringing all that in to the reply brief.

4    Why should I consider that?

5            MS. MULLIN:  Well, Your Honor, I didn't change the

6    argument.  First of all, I would note that in my initial

7    brief, I did raise one of the D.C. cases.  It was a woman who

8    threw a fire cracker at a police officer.  She was initially

9    charged with felony rioting.  That was dismissed.  Then she

10   was charged with assault with a dangerous weapon.  The

11   government is correct.  However, even though there is an

12   eyewitness and a direct eyewitness who I.D.ed her and she --

13   the fire cracker actually detonated and burned the police

14   officer's pant, that case was entirely dismissed.  So I did

15   bring up a D.C. Superior Court case in my initial pleading.

16           But we just think -- I mean we -- I stand by my

17   position that the Portland riots are the best comparative

18   group as to the January 6th defendants.  But I just submit

19   that the way that the U.S. Attorney's Office in this district

20   has handled the D.C. cases just adds to our argument that we

21   have shown a colorable claim of discriminatory effect.

22           THE COURT:  Thank you, Ms. Mullin.  Government?

23           MR. PEARCE:  Good afternoon, Your Honor.  The

24   defendants here have not overcome the strong presumption of

25   prosecutorial regularity under Armstrong.  And I think perhaps

1    one of the clearest ways to -- one of your first questions was
2    sort of the tension between some evidence standard and the
3    strain -- the rigorous standard.  The only case in the more
4    than 25 years at this point that I think a court has called
5    for discovery is the Tuitt case out of the District of
6    Massachusetts.  The defendant here also raises the Paxton
7    case.  That's a selective enforcement case.  So that's
8    different.  But even if you were to add that, that's two cases
9    in the 25-plus years.
10            Pausing for a moment on the Tuitt case, I heard the
11   defendant to argue you can't have a similarity so narrow that
12   it's just people who live in a particular place at a
13   particular time.  Well, that's precisely what the Tuitt case
14   did.  Right?  It focused on all of the -- and that was a
15   race-based claim as -- you know, drug case where the argument
16   that it was improper -- improperly motivated on race basis.
17   Right?  And so what the court did was look at statistics as to
18   the specific difference in drug enforcement and the sort of
19   population as to those who were white and those who were
20   black.
21            But I want to back up to what the Court alluded to
22   which is the two-part question.  Right?  Similarly situated
23   motive, whether someone has been singled out and then the
24   second part about improper motivation.  The events on
25   January 6th as the Court noted are categorically different

1    from anything else, the Portland riots, what happened in

2    Washington in the summer of 2020.  The Munchel case which Your

3    Honor cited earlier said that this was a great threat to our

4    democracy.  Colleagues on the bench have made similar notes.

5    Judge Moss called it a singular and chilling event in U.S.

6    history.  Judge Howell talked about this being an attack on

7    the democratic process.  Your Honor, in the Cuccinelli Hale

8    detention hearing also referred to it as sui generis.

9              This was an attack.  And I want to pause for a

10   moment where it happens once every four years.  It's rooted in

11   the Constitution.  It's rooted in federal statutory law.  It

12   involves every single lawmaker in the building engaged in the

13   certification of the electoral college vote.  And it is the

14   encoding both constitutionally and statutorily of the peaceful

15   transition of presidential power.  That is the apex of federal

16   interest.  And so having, you know, sort of focusing on those

17   prosecutions is important, but also that means that these are

18   not similarly situated to those folks that happened -- events

19   that happened in Portland or in the summer of 2020.

20             THE COURT:  So I hear what you are saying, Mr.

21   Pearce, but it occurs to me that we have a panoply of statutes

22   that get at kind of Capitol events.  We have the various

23   trespassery misdemeanors that the -- your office has brought.

24   We also arguably have something like insurrection which, you

25   know, 700 defendants later you have not brought against one

1    person.  And the lead counts here are assault on a law

2    enforcement officer.  Why should it matter what building that

3    law enforcement officer is guarding?  Why shouldn't you just

4    as vigorously protect a protective services officer guarding a

5    federal courthouse out in Portland as you would a Capitol

6    police officer in front of the Capitol building?

7            MR. PEARCE:  So I agree and I think that in fact

8    that both in the matter of federal prosecution and on the

9    Portland side state prosecution, there is an absolute

10   attention to protecting officers and there are the charges and

11   the prosecutions that bear that out.  But at the same time, we

12   are here talking about -- the similarly situated tests as

13   Judge Berman Jackson said in Stone as the Court also said in

14   Blackney is very narrowly confined.  So here it's not only

15   focused on January 6th, but these defendants were in the lower

16   west terrace tunnel.  Right?  And this is -- I mean frankly,

17   referring to that as a riot or a breach is a euphemism.  I

18   mean you have the congressional testimony from Officer Fanone

19   saying it was absolutely brutal there.  You have Sergeant

20   Aquilino Gonnell saying it was a medieval battle down there.

21   Right?  And so that similarly situated inquiry -- and I don't

22   disagree with the Court's premise at all.  I think protecting

23   federal officers or protecting officers is important wherever

24   that happens.  But that's not the question when it comes to

25   selective prosecution.  It is the similarity of the defendants

1   in question and the similarity of the conduct that we're

2   talking about.

3          And that is not for a moment to say that prosecuting

4   what occurred at the courthouse in the summer of 2020 in

5   Portland or in the district in the summer of 2020 is

6   unimportant and there were prosecutions that bore that out.

7   But these are not similarly situated and that or the

8   defendants --

9          THE COURT:  What about -- I mean Ms. Mullin points

10  out again and again the Justice Department has dismissed or

11  charged down what you say strike me as pretty serious offenses

12  out there where law enforcement officers are being injured.  I

13  mean how isn't that very similar to what we're facing here?

14         MR. PEARCE:  Well, I mean a couple of things.  One

15  is the timing point that Your Honor has already mentioned

16  which is there is not some sort of overlap as to when this

17  happens.  But second, there are a couple of different ways to

18  draw those distinctions.  One is the one I've already

19  mentioned in terms of the difference of the events.  The other

20  is the evidence that we have in the January 6th cases by and

21  large is sufficiently stronger.  We've got video captured from

22  those four angles.  Right?  So there are at times evidentiary

23  reasons that are made.  And, of course, I said this at the

24  top, but I think it's important this is always seen through

25  the guise of a presumption of regularity and the amount of

1    discretion that is vested to the prosecution to make decisions

2    based on things like strength of the case and, you know, how

3    strong the evidence is and perhaps other considerations.

4              Now it's possible to go through the list and

5    identify particular things.  I mean so, for example, I think

6    probably the most analogous case in Portland is the Isaiah

7    Maza case.  Right?  That's an individual most analogous to

8    Defendant Judd.  You know, Mr. Maza goes up and he's got

9    basically a five cracker.  It detonates and it wounds I don't

10   remember if it was a deputy U.S. marshal or if it was another

11   federal protective service officer.  He was charged with

12   111(b) just as the defendant is here.  Mr. Maza was killed.

13   He was a 19-year old who was killed and so the charges against

14   him were dismissed for that reason.  But I think that is a

15   better example of the seriousness -- I mean again I don't

16   think it's similarly situated for the reasons of January 6th

17   versus Portland, but I think that that shows that you have --

18   that's the most similarly situated individual and you have

19   identical treatment in that case.

20             THE COURT:  So, you know, I get the point that

21   Portland is happening at night and the Portland rioters were

22   smart enough to actually wear masks and not live tweet

23   everything they were doing.  But and so, you know, I think

24   that can go a long way toward explaining how you've been able

25   to identify hundreds of rioters here and not out in Portland.

1    But we're talking about the subset of defendants out in

2    Portland who you did identify and who presumably, you know,

3    according to the Justice Department manuals that some

4    prosecutor believed had a good faith belief that you had

5    evidence beyond a reasonable doubt to indict.  Otherwise, you

6    wouldn't have brought that case.  Right?

7              MR. PEARCE:  That's correct.

8              THE COURT:  So under that subset of people, how can

9    the evidentiary issues so drastically lead to dismissal after

10   dismissal out in Portland and, yet, you know, I don't know

11   that you've -- I think I've heard an article that maybe your

12   office has dismissed one case here.  I mean it's just been an

13   incredibly starkly different scenario in how these cases are

14   playing out.

15             MR. PEARCE:  Well, I mean again, resisting the

16   notion that they are similarly situated, those are going to be

17   case specific determinations and I think that Your Honor

18   suggested earlier the idea of the lenience of the Oregon U.S.

19   Attorney's Office.  It is one government.  But offices will at

20   times make different charging determinations.  And much like

21   at sentencing when you have folks who are seemingly similarly

22   situated, there is a way to sort of drill down into those

23   facts and make a determination that, look, maybe there are

24   incremental differences that require different approaches.  So

25   Your Honor said this in Griffin that this is the kind of thing

1    that can be taken account of at sentencing.  The defendant

2    here made arguments about the various aspects about his person

3    or his background that warrant the kind of lenience that he

4    perceives to be existing in Portland.  Fine.  If ultimately

5    there is a conviction in this case, those are all the kinds of

6    considerations that are appropriate there, but not in this

7    sort of charging prosecution process.

8         THE COURT:  Now your motion -- and I know, Mr.

9    Pearce, you weren't on the briefs I don't think anyway.

10        MR. PEARCE:  I was not.

11        THE COURT:  Your motion suggested that all that

12   matters is the Portland defendants were indicted with serious

13   cases or serious charges and I really shouldn't be looking at

14   what happened after that.  You are not standing behind that

15   claim now, are you?

16        MR. PEARCE:  No is the bottom line.  I think it's

17   got to be a bit more nuanced than that.  But I will say that

18   there are, you know, there's a whole body of doctrine that

19   backs this up and I am not aware of any cases and I don't read

20   the other side to be pointing to any cases that says, you

21   know, it has to do with more than the charging consideration.

22   But surely, I mean to draw just a hypothetical, if ten

23   defendants were charged and all of the charges against the

24   black defendants were dismissed and only the white defendants,

25   you know, I don't think there would be any question that

1    there's at a minimum a prima facie case.  But I do think that
2    doctrinally the focus has been on the charge.  And certainly
3    we don't have anything and the defendant hasn't pointed to
4    anything here that suggests the kind of facts that I've just
5    posited in my hypothetical.
6              THE COURT:  So on your argument that, you know,
7    January 6 is different feels a little convenient.  Right?  I
8    mean that just kind of defeats any ability for a court to do a
9    selective prosecution analysis if you are able to define the
10   universe so tightly that it just encompasses the defendants
11   who are being considered.  I mean, you know, you can make a
12   similar argument that only drug dealers in southeast D.C.
13   we're just considering them and we ignore all the white drug
14   dealers up in northwest.  I mean that wouldn't fly.  Right?
15   You've got to define the universe broadly enough that some
16   people other than the defendants at issue are included.
17             MR. PEARCE:  So a couple of responses.  One is this
18   Court and many others have talked about January 6 as sui
19   generis sustained unlike anything else.  I don't think that's
20   convenience.  But broader than that, there are north of 700
21   people charged right now.  That's a pretty big comparator pool
22   in and of itself.  Right?
23             THE COURT:  But are they not all -- wouldn't they
24   all be the kind of conservative types that Ms. Mullin is
25   describing?

1          MR. PEARCE:  Well, I mean and that moves us into the

2     second category.  I am happy if the Court wants to go there.

3     But the question that I took the Court to start with is, you

4     know, are we talking -- is this just you can draw your

5     similarly situated box so narrowly that nothing else ever

6     comes close to it and the point is no, that's not how it

7     works.

8          I mean again the Tuitt case, by the way, did say if

9     we were going to focus on this in a geographic area, we're not

10    going to say, hey, we're going to look at drug defendants

11    throughout the whole country.  I mean there have got to be

12    some limits on it.  And January 6th as a sample size with 700

13    and growing is its own world.  I mean, of course, in the

14    Griffin case, a defendant brought that up.  Your Honor denied

15    it.  We might see other ones.  I am confident that we would be

16    able to defeat selective prosecution claims that are

17    brought -- if they were brought to say, look, you know, these

18    other January 6th defendants were treated differently.  But

19    that --

20         THE COURT:  And so, you know, Mr. Griffin was

21    claiming that he was being treated differently than other

22    January 6th rioters and so he drew the universe to just

23    include January 6th rioters.

24         MR. PEARCE:  And we wouldn't resist that.  That's

25    the point.  I mean I think that that is like -- and I

1    shouldn't -- maybe should be a bit more granular.  I think
2    that you would want to look at what people are doing.  Right?
3    I mean I think everybody -- like these defendants, everybody
4    in the lower west tunnel would certainly be a fair comparator
5    pool if one were to say, hey, wait a minute, there were eight
6    of us here pushing against officers and seven got charged with
7    aggravated assault and one of them got charged -- didn't get
8    charged at all or one of them got charged with a trespassery
9    offense as Your Honor suggested, I think that's a lot harder
10   case for us and I think that that's how under Armstrong and
11   certainly, the way that the courts have interpreted the
12   similarly situated analysis to work is to focus on something
13   like that, not to try to -- it's supposed to be hard.  It's
14   supposed to be a rigorous standard.  It's not something where
15   the government just on convenience can come up with a
16   scenario.  It's something where the defendants need to
17   overcome that strong presumption of regulatory.

18           And when you've got a sample size of 700 and yet,
19   you've got to be going to events, sort of these amorphous
20   protest events and January 6th, you know, the government does
21   not consider a protest of any -- considers it an attack and a
22   riot and a breach, those are not similarly situated and that's
23   not a matter of convenience.  That's sort of doctrinally
24   included and I think very clearly established as colleagues on
25   the court I think have recognized.

1              THE COURT:  Yeah.  I mean you see the issue here

2     though.  That as it turns out, everybody in your universe that

3     you're describing is presumably kind of supporting this

4     conservative cause.  I mean that doesn't give the defense much

5     room to argue and, you know, maybe that works out nicely for

6     you.  But I don't know that that's how the Court is supposed

7     to view it.

8              MR. PEARCE:  Well, and to be clear, so now we're

9     talking about the second step.  Right?  I mean now and one

10    only gets there if one says that we are all similarly

11    situated.  And, you know, there isn't really record evidence

12    other than just this notion that there are people of one

13    political persuasion we're doing this and some group of

14    another political persuasion were involved in Portland events

15    or the other District of Columbia event.  I mean I think that

16    that's not something that they have -- that the defendants

17    here have established on the record --

18              THE COURT:  I'm sorry.  They haven't established

19    what?

20              MR. PEARCE:  That we've got, you know, political

21    group A in one box and political group B in another box.

22              THE COURT:  Okay.  I mean --

23              MR. PEARCE:  I mean, look, I recognize that --

24              THE COURT:  It feels like you are asking me to blink

25    reality here.  Senators have noted this.  News media have

1    noted this.  I have raised concerns in the past about the U.S.

2    Attorney's Office treating riots similarly to other riots.  I

3    don't know.  What more do you want from them?

4             MR. PEARCE:  And to be clear, although these are

5    events -- and I just want to mention the first category and

6    talk about the second for a second.  Although for the reasons

7    I've already argued, they are not similarly situated.  From

8    the perspective of the government, right, these are attacks on

9    federal property or efforts.  And the notion that the

10   political background of the individuals engaged in it is

11   something that you have people prosecuted for -- if one were

12   to just assume, okay, we've got political box, you know,

13   representation here and there, they are both prosecuted, they

14   are both taken seriously by the government.  The acting U.S.

15   Attorney has affirmed that which I think would hopefully be

16   self-evident that the political affiliation of a defendant is

17   never a relevant consideration --

18             THE COURT:  I mean that's what makes the Portland

19   cases just so astounding.  I mean you look through Ms.

20   Mullin's list and literally it's, you know, page after page of

21   defendants charged with felonies, felony assault on a law

22   enforcement officer.  And time after time it's dismissed,

23   dismissed, you know, sometimes with prejudice, sometimes

24   without.  That seems to be the only, you know, difference

25   here.  I've never seen that.  Have you?  You know, dozens of

1    felonies just kind of tossed out willy-nilly.  That seems very

2    unusual.

3              MR. PEARCE:  So I want to resist a little bit that

4    this is just tons and tons.  Right?  I mean I think that when

5    you look at the number of cases as a whole, I don't think

6    that's a representative sample.  But it is -- no, it is not

7    particularly unusual for the government to be dismissing cases

8    if there are evidentiary problems that --

9              THE COURT:  Felonies.

10             MR. PEARCE:  Sure.  To either dismiss or to plead

11   them down to misdemeanors if there are problems in the cases.

12   I don't want to suggest that it happens, you know, all the

13   time, but it is not unusual to have either through a plea

14   resolution or if there are problems with a case or for the

15   case to be dismissed.  I mean it's certainly not happening all

16   the time.

17             THE COURT:  Yeah.  No.  You know, I've been a judge

18   four years.  I'm trying to remember if I've ever seen a AUSA

19   just dismiss a felony indictment.  That doesn't happen very

20   often at all, sir.

21             MR. PEARCE:  I agree.  That as I said, I mean it

22   happens.  It doesn't happen with regularity.  But I mean

23   there's a huge jump between saying it's unusual that it was

24   dismissed and that it was dismissed as a result of some kind

25   of improper motivation and some interest in protecting one

1    group and -- favoring one group and disfavoring another.

2    Under Armstrong with that operative presumption, that's not

3    the background against which the Court views these very fact

4    specific determinations.

5               THE COURT:  What do you think Ms. Mullin would need

6    to show for the second prong?

7               MR. PEARCE:  So, you know, again I think if there

8    were stronger evidence on say that you have a group that

9    clearly identifies -- I should back up.  For what it's worth,

10   again, you know, granting the motion here would step us into

11   new territory because no court has ever relied on political

12   affiliation.  I think that that would be an improper

13   motivation if a prosecutorial office were to say we're going

14   to go for -- you know, any supporter of Politician X we're

15   going to prosecute.  Any supporter of Politician Y, we're not

16   going to.  But I think that you've got to point to in the case

17   of the Portland cases at least some indication that this had

18   to do with political motivations at all.  I mean I get it.  We

19   all can read the news and we all can say, boy, it seems like

20   what was going on there had to do with some sort of -- I think

21   the defendant uses the word left leaning causes.  Right?  But

22   the actual --

23              THE COURT:  Do you deny that?  Do you think there

24   were a bunch of like MAGA supporters out there attacking the

25   federal courthouse in Portland?

1              MR. PEARCE:  No.  I'm not being heard to say that.

2    I'm saying that I think given the rigor in the debate into the

3    Armstrong standard, you've got to do more than just say, oh,

4    it's got to be like that.  Right?  I mean if you actually read

5    some of -- and we put some of this in our briefing.  Right?

6    The motivations identified by some of the defendants is not

7    I'm doing this because I want to oppose the president or I

8    want to oppose, right, I mean if we are trying to set up a

9    continuum.  I think it's probably fair to concede that the

10   bulk of the January 6th defendants were those who were

11   supporters of the president.

12             Query for a moment though, right, this is not a

13   political affiliation, but plenty of individuals there who may

14   have been supporters of the president, but maybe not perhaps

15   political affiliates of the president's party.  I mean it's

16   certainly widely known that there were individuals there

17   talking about hanging or otherwise attacking the vice

18   president.  Right?  And so again I don't think it's such a

19   clear picture of the sort of the group that you got as to

20   January 6th.

21             But even if you were to say we've got a little bit

22   of a clear picture there, I think the evidence as to what's

23   going on in Portland on this record to answer the question

24   about what would Ms. Mullin need to do, I think you've got to

25   flesh that out in some way rather than just say, hey, we all

1    read the papers, it's clear these are just kind of leftists
2    going in and attacking the courthouse.
3              You can develop that record.  I think it becomes a
4    closer case.  Again I think you get knocked down on similarly
5    situated and don't get to that question.  But I do think that
6    would be the type of evidence that would need to be adduced on
7    the second prong.
8              THE COURT:  It sounds to me like you're making for
9    her an impossible burden.  I mean obviously kind of political
10   affiliation is harder to prove than race or gender or
11   something like that.  I don't know how a defense attorney can
12   possibly establish some sort of breadth of an art --
13   comparators if you want.  And, of course, I don't need to
14   establish.  Right?  It is kind of, you know, a colorable
15   argument.  If you can't take the tenor of two riots into
16   account, I don't know what that leaves us with.
17             MR. PEARCE:  I'm not saying, just to be clear, I'm
18   not saying you can't take the tenor.  But it's not that I am
19   imposing an impossible burden.  Instead Armstrong says this is
20   a very hard mountain to get over.  And if there have been two
21   cases in 25 years that have granted that -- that have actually
22   allowed for discovery, I mean I think again it's the way the
23   doctrine works.  And impressions is one thing, but kind of
24   drilling a little bit deeper, I think that maybe gets you
25   there, but we are far from that point in this case.

1          THE COURT:  All right.  Thank you, Mr. Pearce.

2          MR. PEARCE:  Thank you.

3          THE COURT:  Ms. Mullin, do you wish to be heard?

4          MR. URSO:  Can I be heard on this, Your Honor?

5          THE COURT:  No.  Thank you.  You have an excellent

6   advocate in Ms. Mullin.  You don't need to be tag teamed.

7          MS. MULLIN:  I would respond to three points.

8   First, I respectfully submit that even the way the government

9   characterizes January 6th is indirect evidence of improper

10  motivation.  I mean there's steadfast refusal to allow that

11  the vast majority of defendants are there to protest.  Now

12  things got out of control, yes, but they were there for

13  political protests.  They were there.  Mr. Judd was there.  I

14  don't have any problems saying this.  He was there because he

15  then believed that there was election fraud going on and he

16  believed it because the president told him that was going on.

17  So, you know, just even the way they characterized the

18  January 6th defendants, I think -- I submit shows evidence of

19  improper motivation.

20          Next, Your Honor, the government suggests that the

21  Portland cases that were dismissed might have been weak

22  because they weren't on video.  But these are cases where

23  there were multiple -- in some cases multiple law enforcement

24  eyewitnesses where literally defendants had, you know, an

25  officer in a head lock or kicked an officer or spit in the

1    officer's face.  So, yes, they might not have been on video.

2    But there was ample evidence, the kind of evidence that is

3    admitted by the government every single day in criminal

4    prosecution.  So I think that that argument fails.

5            THE COURT:  I mean the January 6th rioters did go to

6    tremendous efforts to make it easy for the government to

7    identify them.

8            MS. MULLIN:  They did.

9            THE COURT:  I'm not sure that you -- you know, I can

10   see how it was a harder thing to pick out and build cases

11   against defendants who are all wearing masks, who are all

12   wearing black who are attacking at night.

13           MS. MULLIN:  That's true.  But there were many

14   defendants who were just arrested in the middle of a scuffle.

15   So they were arrested as they were assaulting the police

16   officers.  So those defendants didn't need to be picked out of

17   a crowd by video.  And those cases mentioned -- described in

18   my reply were also dismissed.

19           With respect to the notion that, you know, there's

20   only been two cases in 25 years where courts have compelled

21   the government to provide discovery, well, this is a very --

22   this was a very unique year.  We had two, you know, sort of

23   seismic events.  You know, we submit that the protests that

24   occurred in the summer of 2020 -- I don't think there is any

25   dispute to this -- occurred after the murder of George Floyd

1    and were in response to that.  And then we had the

2    presidential election.  And so you have two categories of

3    defendants who were protesting and I would submit it's obvious

4    that the protestors in the summer of 2020 were associated with

5    left leading causes and the January 6th defendants are

6    associated with further support of then President Trump.

7              THE COURT:  So Mr. Pearce doesn't think it's

8    obvious.

9              MS. MULLIN:  Well --

10             THE COURT:  Why is he wrong?

11             MS. MULLIN:  Your Honor, I think that it's so

12   obvious that I don't even have a response to that question

13   because I mean -- I mean the January 6 rally was initiated by

14   President Trump and supporters of President Trump and many of

15   the defendants went there to hear President Trump and other

16   right wing, you know, conservative leaders speak.  There were

17   no democratic leaders speaking.  There were no Black Lives

18   Matter's leaders and communities of Black Lives Matter

19   supporters --

20             THE COURT:  Let's assume I agree with you on the

21   January 6th.

22             MS. MULLIN:  Okay.

23             THE COURT:  What about Portland?

24             MS. MULLIN:  Well, Your Honor, I cited to news

25   reports in my article.  I mean I just don't think there is a

1    question.  They were sparked right after the murder of George

2    Floyd.  There were individuals there with signs and banners

3    that would suggest that they were affiliated with Black Lives

4    Matter and other what -- people associated to be left wing

5    groups.

6              So, you know, I think to the Court's point, I think

7    it would be hard pressed to find a Trump supporter at one of

8    those -- one of the Portland protests.  But I think also to

9    the Court's point, if that's what the government would have me

10   do, go through the crowd and pick out, you know, and ascertain

11   whether every single person there was affiliated with left

12   leaning matters or groups or and do the same for the

13   January 6th defendants, then it's an impossible burden for me

14   to meet.  But I think that just the reporting on the two

15   protests, what we know about why they happened, it's obvious

16   what the political leanings of the individuals in the Portland

17   protest had and what the January 6th defendants have.

18             THE COURT:  I know you're from EDVA.  Have you ever

19   seen felony after felony dismissed --

20             MS. MULLIN:  Definitely not at the EDVA.

21             THE COURT:  I didn't think that's the way they

22   rolled there.

23             MS. MULLIN:  That's not how they roll in the EDVA.

24             THE COURT:  No.

25             MS. MULLIN:  And so -- no, Your Honor.  And not --

1    you know, again to the government's claim that the evidence in

2    those cases was weak, I cannot imagine with evidence that was

3    presented in the affidavits in some of the Portland riot cases

4    that I cited that the government in the EDVA would dismiss

5    those charges.  And we've got officers being kicked, officers

6    being put in head lock.  It's just -- no.  I've actually never

7    seen a felony indictment dismissed.

8              THE COURT:  Yeah.  It's pretty rare.

9              All right.  I'll take it under advisement.  I

10   appreciate the briefing and arguments from both counsel.  Very

11   well argued.  Thanks, folks.  See you in February.

12             (Proceedings concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1          <u>CERTIFICATE OF REPORTER</u>

2

3          I, Lisa K. Bankins, an Official Court Reporter for

4    the United States District and Bankruptcy Courts for the

5    District of Columbia, do hereby certify that I reported, by

6    machine shorthand, in my official capacity, the proceedings

7    had and testimony adduced upon the status conference in the

8    case of the United States of America versus Patrick McCaughey,

9    III, Criminal Number 21-cr-00040, in said court on the 17th

10   day of December, 2021.

11

12         I further certify that the foregoing 80 pages

13   constitute the official transcript of said proceedings, as

14   taken from my machine shorthand notes, together with the

15   backup tape of said proceedings to the best of my ability.

16

17         In witness whereof, I have hereto subscribed my

18   name, this 24th day of December, 2021.

19

20

21                           Lisa K. Bankins

22                           Lisa K. Bankins
                             Official Court Reporter
23

24

25

DEFENDANT KLEIN: [1]  10/25
MR. KIYONAGA: [25]  2/15 2/19 7/8 7/12
8/3 8/7 24/1 24/4 24/6 30/19 30/21 31/8 36/16
36/23 37/1 37/4 37/7 37/16 37/21 46/8 46/11
46/15 46/18 46/22 47/6
MR. MARSHALL: [7]  3/5 11/17 31/11 31/17
41/12 41/17 41/23
MR. METCALF: [14]  3/16 3/20 3/24 4/2 6/14
33/11 33/17 34/2 35/2 35/8 35/16 36/3 36/11
36/13
MR. PEARCE: [22]  2/12 59/23 62/7 63/14
65/7 65/15 66/10 66/16 67/17 68/1 68/24 70/8
70/20 70/23 71/4 72/3 72/10 72/21 73/7 74/1
75/17 76/2
MR. URSO: [8]  2/21 2/25 3/3 11/6 32/3 32/18
32/24 76/4
MR. WOODWARD: [13]  4/7 9/21 10/5 10/19
24/23 24/25 25/4 25/8 25/13 37/23 39/25 40/9
40/12
MS. BOND: [32]  2/6 19/23 23/17 23/20 24/12
24/17 25/16 25/21 25/24 26/23 27/16 28/2 28/9
28/14 28/21 29/6 30/1 30/3 30/7 30/16 30/25
31/3 31/25 32/22 42/14 42/20 42/24 43/2 43/13
44/9 45/9 47/1
MS. COBB: [5]  3/9 3/14 11/10 33/1 33/3
MS. DOUENAT: [12]  4/11 4/19 8/25 20/21
21/19 21/23 22/2 22/10 22/20 23/2 41/25 42/8
MS. JACKSON: [3]  2/9 45/11 46/5
MS. MULLIN: [34]  4/3 11/13 40/14 40/18
40/21 41/5 41/10 47/5 47/10 47/16 47/18 47/22
48/19 48/25 50/2 50/16 51/1 52/7 53/17 55/7
56/5 57/9 58/8 59/5 76/7 77/8 77/13 78/9 78/11
78/22 78/24 79/20 79/23 79/25
MS. SCHUCK: [4]  5/5 20/10 22/21 23/13
THE CLERK: [6]  2/5 5/19 6/17 7/13 8/8 9/4
THE COURT: [174]

0

00040 [2]  1/3 81/9

1

10 [3]  22/24 23/11 30/17
10 a.m [1]  30/14
111 [3]  12/15 13/14 64/12
1273 [1]  18/15
12th [4]  24/3 24/9 39/19 39/24
130 [1]  12/9
138 [1]  12/2
148 [1]  12/2
153 [1]  12/9
154 [1]  12/10
17 [1]  1/5
17th [1]  81/9
18 [5]  12/14 13/14 13/24 14/1 20/23
19-year [1]  64/13

2

20001 [1]  1/23
2002 [1]  12/19
2005 [1]  11/25
2015 [2]  12/3 12/10
2020 [7]  48/3 61/2 61/19 63/4 63/5 77/24 78/4
2021 [5]  1/5 43/8 43/11 81/10 81/18
2022 [1]  26/5
21-40 [6]  2/2 5/20 6/18 7/14 8/9 9/5
21-cr-00040 [2]  1/3 81/9
21st [2]  26/4 30/15
24 [2]  10/8 22/12
241 [1]  11/25
247 [1]  11/25
24th [2]  30/8 81/18
25 [3]  60/4 75/21 77/20
25-plus [1]  60/9
26 [1]  43/11

26th [4]  36/2 36/25 40/8 42/2
28 [1]  26/6
29th [9]  32/16 32/18 33/1 33/17 35/3 35/6
36/22 39/10 42/3
2:00 [1]  1/10

3

30 [3]  21/7 21/8 22/4
30-some [1]  17/24
309 [1]  12/18
3142 [2]  13/24 14/1
333 [1]  1/23
3rd [1]  12/9

4

40 [7]  2/5 5/20 6/18 7/14 8/9 9/5 12/18
428 [1]  11/25
449 [1]  18/8
45 [1]  12/18
4:00 [1]  38/3
4th [9]  12/24 30/24 31/5 31/8 31/19 33/12 36/5
43/13 43/14

5

52-year-old [1]  10/22
5th [2]  23/24 24/8

6

6th [38]  11/21 13/20 14/23 17/4 18/3 18/10
18/16 18/25 21/23 30/8 45/3 45/18 50/19
51/22 51/24 52/15 54/3 55/11 56/23 59/18
60/25 62/15 63/20 64/16 68/12 68/18 68/22
68/23 69/20 74/10 74/20 76/9 76/18 77/5 78/5
78/21 79/13 79/17

7

700 [4]  61/25 67/20 68/12 69/18
795 [1]  12/2
7th [2]  23/18 34/10

8

80 [1]  81/12

9

991 [1]  18/14

A

a.m [5]  22/24 23/11 30/14 30/17 43/9
abetting [14]  5/25 6/1 6/4 6/20 6/20 6/22 6/23
7/18 7/19 8/11 8/14 8/15 9/8 9/11
abeyance [1]  35/19
ability [3]  34/24 67/8 81/15
able [9]  13/9 27/3 29/3 34/8 34/9 34/13 64/24
67/9 68/16
about [52]  5/11 10/3 12/24 13/19 14/22 17/5
17/14 17/18 19/16 21/7 21/8 22/11 23/5 27/3
27/8 27/15 28/12 30/6 30/14 30/24 33/22 34/5
35/8 37/24 37/25 38/3 38/4 38/6 44/6 45/21
49/7 51/23 52/2 54/13 57/12 57/15 60/24 61/6
62/12 63/2 63/9 65/1 66/2 66/2 67/18 70/9 71/1
71/6 74/17 74/24 78/23 79/15
absolute [1]  62/9
absolutely [2]  32/8 62/19
accept [2]  26/11 30/13
accepted [1]  49/16
access [9]  16/1 34/25 38/6 38/7 38/10 44/7
44/14 45/25 46/4
accommodate [1]  42/19
according [5]  12/1 12/8 12/17 34/15 65/3
accordingly [1]  49/17
account [2]  66/1 75/16
accurately [1]  45/21
accused [2]  12/5 18/17
acknowledge [1]  15/25
Act [2]  14/19 41/18

acting [1]  71/14
action [1]  71/10
active [5]  6/11 7/4 7/25 8/21 9/17
activities [1]  20/24
actual [3]  35/24 49/10 73/22
actually [16]  13/1 17/8 27/24 28/4 28/6 29/10
29/11 33/8 47/21 48/23 52/11 59/13 64/22 74/4
75/21 80/6
add [3]  17/5 58/25 60/8
added [1]  45/15
addition [1]  16/25
additional [4]  10/24 44/20 45/13 45/14
additions [1]  45/12
address [10]  4/25 25/25 28/10 32/2 35/23
36/14 37/5 37/18 41/9 57/10
addressed [2]  25/6 45/16
addressing [1]  12/7
adds [1]  59/20
adduced [2]  75/6 81/7
adequately [1]  44/3
administration [14]  50/10 50/11 50/15 50/19
50/23 51/2 55/19 56/3 56/3 56/11 58/4 58/5
58/13 58/14
admitted [1]  77/3
adopted [2]  47/6 47/7
advance [1]  27/22
advisement [1]  80/9
advocate [1]  76/6
affects [1]  33/24
affidavits [1]  80/3
affiliated [2]  79/3 79/11
affiliates [1]  74/15
affiliation [4]  71/16 73/12 74/13 75/10
affirmed [1]  71/15
affirming [1]  19/19
after [19]  12/24 14/7 22/5 29/24 30/2 34/4 38/3
50/10 55/18 56/7 56/11 56/16 65/9 66/14 71/20
71/22 77/25 79/1 79/19
afternoon [35]  2/6 2/8 2/9 2/11 2/12 2/14 2/15
2/20 2/21 2/23 2/24 3/5 3/7 3/8 3/9 3/12 3/17
3/18 3/25 4/1 4/3 4/6 4/7 4/9 4/10 4/11 4/17 5/4
5/5 5/5 5/7 20/10 41/25 42/11 59/23
afterwards [1]  50/25
again [27]  3/19 3/22 10/16 17/3 17/14 25/10
38/25 43/3 48/22 53/6 55/15 55/16 56/15 56/18
57/25 58/19 63/10 63/10 64/15 65/15 68/8 73/7
73/10 74/18 75/4 75/22 80/1
against [16]  12/22 13/22 14/16 14/24 15/3 16/3
16/9 16/16 55/1 57/23 61/25 64/13 66/23 69/6
73/3 77/11
age [1]  20/23
agents [1]  45/12
ages [1]  23/8
aggravated [1]  69/7
aggression [1]  38/4
ago [1]  35/12
agree [6]  17/12 33/3 57/18 62/7 72/21 78/20
agreed [2]  40/6 43/21
agreement [1]  40/3
agreements [3]  48/9 49/9 58/22
ahead [1]  36/24
aiding [12]  5/24 6/1 6/4 6/22 6/23 7/17 7/19
8/11 8/14 8/15 9/8 9/11
air [1]  34/19
al [1]  2/4
Alexandria [1]  34/7
all [115]
allegation [2]  12/22 12/25
allegations [4]  12/1 19/4 20/4 21/23
alleged [3]  14/25 18/1 55/1
alleging [1]  11/20
allow [2]  56/20 76/10
allowed [1]  75/22
alluded [1]  60/21
almost [4]  38/12 44/16 44/23 51/7
alone [3]  22/21 51/20 58/20

**A**

along [1] 32/4
already [4] 25/16 63/15 63/18 71/7
also [38] 4/8 5/10 11/8 11/15 13/16 13/21 15/9 15/13 15/20 16/7 16/22 16/24 17/11 17/15 18/3 18/15 19/4 19/9 20/4 20/24 21/5 23/7 38/8 38/12 39/10 39/15 41/15 41/17 45/25 58/8 58/23 60/6 61/8 61/17 61/24 62/13 77/18 79/8
although [2] 71/4 71/6
always [1] 63/24
am [15] 11/7 11/11 11/14 29/22 33/5 36/23 37/1 37/11 38/7 39/15 44/4 66/19 68/2 68/15 75/18
amenable [1] 42/2
Amendment [1] 34/4
AMERICA [3] 1/3 2/3 81/8
among [3] 14/15 17/19 57/15
amorphous [1] 69/19
amount [4] 27/19 43/3 48/23 63/25
ample [1] 77/2
analogous [2] 64/6 64/7
analogy [2] 54/13 54/23
analysis [4] 15/16 17/22 67/9 69/12
angles [1] 61/23
another [7] 4/23 12/17 39/15 64/10 70/14 70/21 73/1
answer [2] 24/17 74/23
anticipate [1] 43/4
Antonio [1] 21/2
antsy [1] 32/14
any [37] 10/3 10/23 14/14 18/9 19/8 20/5 20/18 21/21 22/25 24/12 27/22 29/24 30/3 31/4 33/6 34/13 38/15 38/15 42/18 44/20 45/12 45/15 47/2 50/24 51/4 52/20 53/3 56/2 66/19 66/20 66/25 67/8 69/21 73/14 73/15 76/14 77/24
anyone [3] 13/1 31/20 31/21
anything [17] 22/11 24/15 28/7 32/1 36/10 37/2 37/5 40/10 40/20 42/4 44/21 46/25 57/5 61/1 67/3 67/4 67/19
anyway [1] 76/8
apex [1] 61/15
apparently [3] 17/4 17/12 51/23
appear [1] 31/14
appearance [7] 3/2 3/11 4/5 4/14 4/16 11/4 31/15
APPEARANCES [1] 1/14
applicable [1] 16/24
apply [1] 53/9
appreciate [3] 38/11 40/4 80/10
appreciated [1] 55/24
approach [4] 25/2 51/3 51/24 57/23
approaches [1] 65/24
appropriate [2] 19/12 66/6
approximately [1] 27/7
April [1] 36/20
Aquilino [1] 62/20
are [134]
area [1] 68/9
arguably [1] 61/24
argue [3] 13/6 60/11 70/5
argued [2] 71/7 80/11
argues [3] 49/1 53/10 55/9
arguing [1] 58/1
argument [11] 17/18 18/19 19/9 58/17 59/6 59/20 60/15 67/6 67/12 75/15 77/4
arguments [2] 66/2 80/10
armed [1] 53/5
Armstrong [6] 47/12 59/25 69/10 73/2 74/3 75/19
arose [1] 54/24
around [2] 29/21 30/9
arraign [1] 5/18
arraignment [5] 4/24 11/4 11/8 11/12 11/15
arrested [2] 77/14 77/15
arresting [1] 50/22

Arrington [1] 12/18
art [1] 23/24
article [2] 65/11 78/25
as [81] 4/18 5/8 9/23 10/12 10/16 10/16 10/20 12/13 12/14 12/23 13/2 13/12 13/13 13/18 16/8 18/1 18/1 18/13 19/14 21/11 21/11 21/13 22/18 22/24 27/5 27/5 29/22 30/20 31/12 34/20 37/7 38/19 38/24 39/4 39/7 39/16 40/19 40/22 41/15 41/18 41/21 42/3 44/11 45/4 45/5 45/5 45/16 47/8 47/9 47/11 47/16 50/9 51/25 53/19 57/4 59/18 60/15 60/17 60/19 60/25 61/8 62/4 62/5 62/12 62/13 62/17 63/11 63/16 64/12 67/18 68/12 69/9 69/24 70/2 72/5 72/21 72/24 74/19 74/22 77/15 81/13
ascertain [1] 79/10
ask [11] 9/22 22/3 24/2 30/11 35/23 36/19 36/24 37/18 39/21 40/3 56/10
asked [2] 32/21 39/14 56/19
asking [8] 21/13 26/9 27/12 28/16 35/1 35/2 38/3 70/24
aspects [1] 66/2
assault [8] 48/10 53/4 53/8 53/15 59/10 62/1 69/7 71/21
assaulting [5] 5/22 5/25 6/2 6/21 7/16 8/10 8/12 9/7 9/9 77/15
assaults [1] 18/15
assert [1] 9/23
asserts [2] 12/13 36/16
assist [1] 34/24
assistants [2] 57/19 57/21
associated [7] 48/5 55/10 55/12 55/13 78/4 78/6 79/4
assume [5] 38/9 52/10 52/13 71/12 78/20
assumes [1] 11/25
assuming [1] 41/4
assure [1] 14/14
astounding [1] 71/19
attack [4] 53/11 61/6 61/9 69/21
attacked [1] 54/10
attacking [4] 73/24 74/17 75/2 77/12
attacks [1] 76/8
attempt [3] 15/12 51/4 56/2
attempted [1] 15/10
attendant [3] 48/11 49/19 53/9
attention [1] 62/10
attitude [1] 58/3
attorney [12] 3/21 5/16 5/19 28/15 28/15 31/12 34/10 34/17 47/9 58/16 71/15 75/11
Attorney's [9] 52/3 52/6 52/10 55/17 57/4 58/24 59/19 65/19 71/2
attorneys [8] 28/12 44/2 45/25 46/2 46/3 47/2 56/23 56/25
August [22] 27/6 28/13 29/2 29/25 30/2 30/4 32/16 32/18 33/1 33/17 35/3 35/6 36/1 36/6 36/22 38/11 39/10 39/15 39/16 39/22 42/3 43/8
August 29 [1] 43/8
August 29th [8] 32/16 32/18 33/1 35/3 35/6 36/22 39/10 42/3
AUSA [1] 72/18
AUSA's [4] 52/14 52/15 57/12 57/15
authorized [1] 72/18
availability [2] 28/24 29/7
available [16] 29/24 31/5 32/16 33/1 33/5 36/2 36/3 36/7 36/22 36/25 37/11 38/22 39/10 40/8 41/13 41/15
Avenue [1] 1/23
aware [3] 13/21 38/9 66/19
away [5] 15/6 21/7 21/8 22/4 38/12
awful [1] 18/4

**B**

back [10] 22/6 23/7 35/20 39/23 48/20 56/13 56/21 57/25 60/21 73/9
background [4] 18/11 66/3 71/10 73/3
backgrounds [1] 17/22
backs [1] 66/19

backup [1] 81/15
bail [17 49/5
Ballestas [1] 12/2
Bankins [4] 1/21 81/3 81/21 81/22
BANKRUPTCY [2] 1/1 81/4
banners [1] 79/2
based [7] 12/11 17/21 27/4 52/25 54/20 60/15 64/2
basically [3] 29/24 49/24 64/9
basis [2] 18/22 60/16
basketball [1] 20/25
Bates [2] 25/6 25/17
battery [4] 10/12 10/13 10/15 10/18
battle [1] 62/20
be [134]
bear [1] 62/11
because [22] 20/16 22/3 22/22 29/4 29/15 35/3 39/5 40/24 44/21 49/2 49/24 50/20 52/12 53/24 58/11 58/19 73/11 74/7 76/14 76/16 76/22 78/13
become [1] 40/25
becomes [1] 75/3
been [47] 10/2 10/9 10/11 10/22 14/2 25/9 26/2 26/15 28/25 33/14 33/19 34/3 34/13 34/14 34/16 34/18 35/4 35/4 35/10 35/22 36/17 38/10 39/18 41/19 42/11 44/11 44/21 45/15 46/1 47/16 51/1 51/6 51/12 52/21 56/21 57/5 57/23 60/23 64/24 65/12 67/2 72/17 74/14 75/20 76/21 77/1 77/20
before [14] 1/12 11/18 13/16 13/23 20/14 21/5 25/17 28/24 29/2 29/5 29/19 35/23 51/7 57/6
begin [1] 34/19
beginning [2] 28/16 39/14
begun [1] 32/6
behalf [8] 2/7 2/10 2/13 3/16 3/21 4/4 4/8 4/12
behavior [1] 18/9
behind [1] 66/14
being [22] 15/7 15/15 17/2 18/4 22/11 26/18 30/11 33/25 34/8 34/9 34/21 40/1 46/16 51/8 58/15 61/6 63/12 67/11 68/21 74/1 80/5 80/6
belief [3] 29/13 52/24 65/4
believe [9] 13/25 14/5 27/22 38/14 38/23 42/25 43/13 45/22 46/23
believed [2] 65/4 76/15 76/16
bench [1] 61/4
Berman [1] 62/13
best [4] 17/21 55/5 59/17 81/15
better [4] 21/15 35/12 56/19 64/15
between [9] 10/22 27/12 47/20 51/21 56/2 57/3 57/18 60/2 72/23
beyond [3] 28/5 30/4 65/5
Biden [2] 56/3 58/5
big [4] 25/25 27/16 57/3 67/21
bit [5] 66/17 69/1 72/3 74/21 75/24
black [7] 55/13 60/20 66/24 77/12 78/17 78/18 79/3
Blackney [1] 62/14
blink [1] 70/24
bodily [6] 5/23 12/16 12/22 13/7 13/9 13/10
body [3] 27/20 52/16 66/18
bond [20] 1/15 2/6 2/8 5/9 13/21 24/21 25/14 25/22 28/8 29/23 30/15 31/24 32/20 38/1 38/17 39/17 42/13 43/12 44/6 46/24
bore [1] 63/6
bosses [1] 57/19
both [11] 2/17 10/1 22/3 37/11 43/5 57/21 61/14 62/8 71/13 71/14 80/10
bottom [1] 66/16
box [4] 68/5 70/21 70/21 71/12
boy [1] 73/19
Branch [2] 49/22 50/5
breach [4] 15/11 15/12 62/17 69/22
breadth [1] 75/12
brief [3] 58/23 59/3 59/7
briefed [1] 25/10
briefing [2] 74/5 80/10

**B**

briefly [3] 5/10 24/23 33/20
briefs [1] 66/9
bring [3] 16/1 41/18 59/15
bringing [2] 58/4 59/3
broader [3] 53/24 54/15 67/20
broadly [1] 67/15
broke [1] 15/17
broken [1] 15/14
brought [9] 40/2 58/13 58/15 61/23 61/25 65/6 68/14 68/17 68/17
brutal [1] 62/19
build [1] 77/10
building [28] 6/6 6/8 6/10 6/11 6/25 7/2 7/4 7/5 7/21 7/23 7/25 8/1 8/17 8/19 8/21 8/22 9/13 9/15 9/17 9/18 15/12 15/18 15/19 17/20 53/2 61/12 62/2 62/6
buildings [1] 53/12
bulk [1] 74/10
bunch [1] 73/24
burden [5] 47/21 47/23 75/9 75/19 79/13
burned [1] 59/13
business [2] 4/22 5/17
busy [1] 21/14

**C**

calculation [1] 36/17
calendar [1] 30/4
California [1] 31/13
called [2] 60/4 61/5
came [4] 15/21 15/24 16/4 32/12
camera [1] 27/20
can [38] 4/15 5/18 10/16 24/9 24/18 25/10 25/17 26/10 27/17 28/25 29/4 29/10 29/19 30/13 38/20 39/3 39/23 43/2 44/8 44/12 45/6 45/9 46/8 49/25 50/4 52/9 64/24 65/8 66/1 67/11 68/4 69/15 73/19 73/19 75/3 75/11 76/4 77/9
can't [7] 28/2 45/5 49/3 55/9 60/11 75/15 75/18
cannot [3] 12/11 13/12 80/2
capability [1] 13/4
capable [3] 12/16 12/21 13/2
capacity [1] 81/6
Capitol [20] 6/10 6/11 7/4 7/5 7/24 8/1 8/21 8/22 9/17 9/18 14/23 15/12 15/18 15/19 53/2 53/11 53/12 61/22 62/5 62/6
Cappuccino [1] 4/12
CAPPUCCIO [9] 1/8 8/8 8/8 8/25 19/24 19/25 20/21 26/25 43/10
Cappuccio's [4] 5/2 5/8 19/21 20/6
captured [1] 63/21
care [1] 46/7
carefully [1] 13/17
case [76] 2/2 5/13 5/14 5/20 6/18 7/14 8/9 9/5 14/4 17/22 17/22 18/6 18/22 18/22 24/11 24/14 24/20 24/22 25/5 25/24 26/1 26/6 29/13 37/25 38/13 38/14 38/23 39/2 39/3 39/17 39/25 40/2 40/5 44/1 44/7 44/10 44/22 44/24 45/1 45/13 45/15 47/11 47/21 48/7 48/9 48/23 49/7 57/6 59/14 59/15 60/3 60/5 60/7 60/7 60/10 60/13 60/15 61/2 62/4 64/6 64/7 64/19 65/6 65/12 65/17 66/5 67/1 68/8 68/14 69/10 72/14 72/15 73/16 75/4 75/25 81/8
cases [62] 13/23 18/7 18/21 18/21 18/22 19/2 27/23 38/22 48/2 48/6 48/8 48/12 49/9 50/9 50/11 50/14 50/16 50/19 51/3 51/9 51/12 51/16 51/17 52/15 52/19 53/6 54/9 55/18 55/20 55/20 56/16 57/6 57/21 57/22 58/2 58/4 58/9 58/13 58/15 58/20 59/7 59/20 60/8 63/20 65/13 66/13 66/19 66/20 71/19 72/5 72/7 72/11 73/17 75/21 76/21 76/22 76/23 77/10 77/17 77/20 80/2 80/3
categorical [3] 51/7 56/22 57/23
categorically [2] 57/5 60/25
categories [6] 54/20 54/23 55/3 57/16 57/21 78/2

category [6] 18/17 48/12 51/15 54/5 68/2 71/5
caused [1] 12/25
causes [5] 48/5 55/13 55/14 73/21 78/5
causing [3] 12/16 12/21 51/11
CCTV [1] 27/21
Celiac [3] 33/18 33/20 34/5
cell [2] 25/9 42/10
Central [1] 19/5
certain [11] 5/22 5/23 6/1 6/2 6/21 7/16 8/11 8/12 9/7 9/9 57/16
certainly [18] 13/21 16/2 17/4 19/13 24/18 25/21 28/14 44/13 45/6 50/25 55/25 56/1 56/13 67/2 69/4 69/11 72/15 74/16
certificate [2] 21/6 80/13
certification [2] 21/11 61/13
certify [2] 81/5 81/12
Chachlan [1] 5/18
chain [1] 21/2
chair [1] 4/13
change [8] 19/8 19/13 19/22 20/12 50/11 55/18 58/3 59/5
changed [1] 56/12
changing [1] 5/3
character [1] 17/7
characteristics [4] 16/12 16/14 16/19 49/15
characterized [1] 76/17
characterizes [1] 76/9
charge [2] 10/8 67/2
charged [34] 5/21 6/18 7/14 8/9 9/5 10/7 10/11 10/15 10/19 14/2 22/11 48/10 49/3 49/8 50/9 50/25 51/2 51/10 51/12 53/3 53/7 53/22 53/23 59/9 59/10 63/11 64/11 66/23 67/21 69/6 69/7 69/8 69/8 71/21
chargers [1] 52/4
charges [6] 9/2 62/10 64/13 66/13 66/23 80/5
charging [7] 10/2 49/5 51/20 57/12 65/20 66/7 66/21
chart [2] 55/24 56/2
check [1] 23/2
children [1] 20/23
chilling [1] 61/5
Christian [1] 5/1
Christine [2] 5/6 20/10
CHRISTOPHER [4] 1/6 3/17 3/20 5/20
churchgoer [1] 52/21
circuit [7] 11/23 12/3 12/18 18/7 18/14 18/15 18/23
circumstances [7] 11/24 14/20 16/24 18/11 33/19 54/12 55/2
cited [5] 48/2 52/19 61/3 78/24 80/4
civil [5] 6/5 6/24 7/19 8/16 9/12
claim [12] 47/13 47/25 48/13 48/21 48/22 49/4 54/18 58/25 59/21 60/15 66/15 80/1
claiming [1] 68/21
claims [1] 68/16
clarify [2] 40/22 40/24
class [1] 53/18
classes [2] 21/10 21/12 22/5 23/6
classify [1] 35/18
clear [9] 14/12 40/25 41/6 70/8 71/4 74/19 74/22 75/1 75/17
clearest [1] 45/1
clearly [2] 69/24 73/9
clerk's [1] 24/20
client [5] 4/18 11/12 11/15 23/3 41/21
client's [2] 3/19 42/10
clients [1] 47/9
clock [2] 32/20 44/4
clocks [1] 43/23
close [3] 5/12 24/20 68/6
closed [1] 45/1
closer [1] 75/4
closing [2] 24/10 24/13
co [3] 26/1 27/2 42/25
co-counsel [1] 42/25

co-defendants [2] 26/1 27/2
COBB [6] 1/15 3/9 3/15 11/7 32/25
colleagues [3] 39/2 61/4 69/24
college [3] 22/15 52/19 61/13
colorable [9] 47/13 47/25 48/12 48/13 48/20 48/22 58/25 59/21 75/14
COLUMBIA [5] 1/1 1/22 20/12 70/15 81/5
combination [1] 14/13
combined [1] 17/3
come [5] 2/4 5/19 35/20 49/20 69/15
comes [5] 5/8 13/23 22/6 62/24 68/6
comfortable [1] 28/19
coming [1] 45/14
commit [2] 37/8 54/8
committed [3] 54/11 54/22 54/22
communicate [1] 34/25
communications [1] 57/3
communities [1] 78/16
community [6] 14/15 17/15 18/5 18/12 19/17 20/5
comparative [1] 59/17
comparator [2] 67/21 69/4
comparators [1] 75/13
compare [1] 51/9
compared [1] 51/25
compel [4] 5/16 46/24 47/14 47/24
compelled [1] 77/20
compelling [1] 18/20
complete [1] 27/10
completely [1] 17/7
complexity [2] 29/9 29/13
compliant [1] 20/16
complicated [1] 50/13
concede [2] 41/1 74/9
conceding [1] 41/7
conceivable [2] 12/20 13/8
concern [3] 17/14 37/19 51/23
concerns [5] 17/5 19/16 37/24 44/6 71/1
concluded [2] 39/4 80/12
condition [3] 14/13 20/4 52/23
conditions [10] 5/3 14/13 19/8 19/14 19/22 20/13 20/15 20/18 22/18 35/22
conduct [19] 6/6 6/10 6/25 7/4 7/20 7/24 8/17 8/20 9/13 9/17 14/25 18/1 18/2 18/13 18/24 51/11 58/19 58/20 63/1
conference [14] 1/12 30/6 31/13 31/19 33/21 35/17 35/19 36/5 37/19 43/12 43/17 43/20 46/7 81/7
conferences [1] 43/16
confident [1] 68/15
confined [2] 37/12 62/14
confinement [3] 33/19 34/6 37/9
conflates [1] 49/5
congressional [1] 62/18
Congresswoman [1] 34/5
conservative [4] 55/12 67/24 70/4 78/16
consider [7] 14/19 15/20 16/25 22/23 26/5 59/4 69/21
consideration [4] 16/17 19/12 66/21 71/17
considerations [2] 64/3 66/6
considered [6] 12/15 17/11 17/18 19/4 19/9 67/11
considering [2] 14/7 67/13
considers [1] 69/21
consistent [1] 15/22
constitute [1] 81/13
Constitution [3] 1/23 9/24 61/11
constitutionally [2] 53/14 61/14
consult [1] 42/24
contemplated [1] 12/14
contents [2] 44/17 44/23
context [2] 53/24 54/15
continue [1] 45/3
continued [1] 29/16
continues [2] 27/18 45/2
continuum [1] 74/9

**C**

control [1] 76/12
controlling [1] 47/12
convenience [3] 67/20 69/15 69/23
convenient [1] 67/7
conversations [1] 34/16
conveyed [1] 34/17
convicted [1] 14/18
conviction [4] 49/19 49/20 56/21 66/5
convince [1] 19/13
convincing [1] 14/12
correct [14] 2/18 2/19 11/4 11/6 11/7 11/10 11/11 11/14 21/19 22/2 44/13 46/17 59/11 65/7
could [4] 13/7 31/13 35/19 57/10
couldn't [1] 46/11
counsel [13] 2/4 26/3 27/3 27/5 29/10 30/9 31/4 38/19 40/7 42/25 44/12 44/15 80/10
count [41] 5/23 5/25 6/3 6/5 6/5 6/7 6/9 6/10 6/19 6/19 6/22 6/24 6/24 7/1 7/3 7/4 7/15 7/17 7/18 7/19 7/20 7/22 7/24 7/25 8/8 8/11 8/13 8/14 8/15 8/16 8/18 8/20 8/21 9/10 9/11 9/12 9/14 9/16 9/17 12/6 12/11
country [1] 68/11
counts [15] 5/21 5/24 6/1 6/15 6/20 7/9 8/4 9/6 9/8 9/23 11/19 11/22 16/2 16/16 62/1
couple [7] 29/6 33/13 42/15 50/23 63/14 63/17 67/17
course [14] 13/5 13/23 18/13 19/6 26/14 27/11 39/5 44/19 49/22 50/18 54/3 63/23 68/13 75/13
court [53] 1/21 1/22 9/22 11/19 11/25 12/11 13/12 13/16 13/23 22/23 27/12 27/17 30/20 37/10 37/18 38/24 39/9 39/11 41/14 41/14 42/3 46/8 48/14 49/12 49/17 53/12 53/23 54/13 54/17 54/19 54/21 56/10 56/13 57/9 57/18 58/18 59/15 60/4 60/17 60/21 60/25 62/13 67/8 67/18 68/2 68/3 69/25 70/6 73/3 73/11 81/3 81/9 81/22
Court's [6] 36/18 40/23 41/7 62/22 79/6 79/9
courtesy [1] 20/17
courthouse [6] 54/9 54/25 62/5 63/4 73/25 75/2
courts [6] 1/1 53/21 54/1 69/11 77/20 81/4
COVID [1] 21/5
cr [2] 1/3 81/9
crack [1] 54/18
cracker [11] 11/21 12/13 12/20 13/1 13/9 13/13 41/2 41/7 59/8 59/13 64/9
crackers [1] 12/25
create [2] 13/9 14/3
credit [1] 16/14
crime [2] 14/2 54/8
crimes [1] 18/18
criminal [14] 1/3 2/2 5/20 6/18 7/14 8/9 9/5 13/22 14/10 16/15 21/17 21/19 77/3 81/9
Critically [1] 12/6
crowd [2] 77/17 79/10
Cuccinelli [2] 18/6 61/7
curfew [4] 22/23 22/24 23/5 23/11
curious [1] 38/4
current [3] 20/12 45/22 51/2
curricular [1] 20/24
custody [3] 5/11 23/16 25/9
cylindrical [1] 48/7

**D**

D.C [22] 1/4 1/23 4/15 11/22 12/3 12/18 18/7 18/14 18/23 34/1 34/4 34/6 34/12 34/18 52/4 52/15 57/12 58/25 59/7 59/15 59/20 67/12
damage [1] 53/1
danger [5] 17/14 17/16 18/5 18/12 19/16
dangerous [23] 6/3 6/7 6/9 9/1 7/3 7/17 7/21 7/23 8/13 8/18 8/20 9/10 9/14 11/20 12/14 12/16 13/13 17/3 48/10 53/5 53/8 59/10
dangerousness [3] 16/22 17/5 19/1
data [1] 38/21

database [7] 38/7 38/9 44/8 45/5 45/16 45/25 46/4
date [37] 17/23 26/7 26/14 27/1 27/6 27/16 28/17 28/19 29/9 29/15 33/5 33/12 33/15 35/3 35/5 35/17 35/18 35/24 35/25 36/4 36/7 36/19 37/8 37/13 38/5 39/12 39/19 39/21 39/21 39/22 40/4 40/5 43/8 43/12 43/12 43/15 44/5
dates [11] 27/13 27/23 28/12 30/3 36/6 38/4 39/9 42/4 43/7 43/11 56/14
DAVID [3] 1/6 1/8 4/4
day [7] 10/20 22/6 33/23 33/25 77/3 81/10 81/18
days [4] 34/7 37/11 50/25 58/14
de [1] 13/21
deadline [1] 26/4
deadly [11] 6/7 6/9 7/1 7/3 7/21 7/23 8/18 8/19 9/14 9/16 12/15
dealers [2] 67/12 67/14
dealing [1] 52/5
death [1] 48/4
debate [1] 74/2
December [3] 1/5 81/10 81/18
decide [1] 26/6
decided [1] 13/11
decision [2] 18/8 19/19
decisions [6] 18/22 51/21 56/3 56/4 57/13 64/1
deeper [1] 57/24
defeat [1] 68/16
defeats [1] 67/8
defendant [29] 11/21 12/4 12/22 13/4 14/2 14/16 14/17 14/24 15/10 15/14 15/17 15/20 16/16 16/17 17/1 17/14 17/18 17/10 17/16 18/5 18/9 18/13 18/16 19/17 26/10 31/22 38/10 38/15 43/9 43/9 43/10 43/10 44/25 45/14 49/23 49/24 49/25 50/4 60/6 60/11 64/8 64/12 66/1 67/3 68/14 71/16 73/21
defendant's [8] 12/13 13/1 14/10 16/11 16/13 17/25 20/12 24/8
defendants [78] 1/10 1/17 5/18 17/19 17/24 17/25 18/2 18/17 26/1 27/2 27/18 28/25 29/14 30/12 32/13 33/5 38/19 39/5 42/15 43/18 43/20 43/22 44/2 45/3 46/3 47/2 48/6 49/2 49/8 49/15 50/24 50/25 51/22 51/24 53/20 54/1 54/5 54/6 54/18 54/23 55/3 56/8 57/24 58/12 58/20 58/21 59/18 59/24 61/25 62/15 62/25 63/8 65/1 66/12 66/23 66/24 66/24 67/10 67/16 68/10 68/18 69/3 69/16 70/16 71/21 74/6 74/10 76/11 76/18 76/24 77/11 77/16 78/3 78/5 78/15 79/13 79/17
defendants' [1] 56/23
defense [24] 13/5 14/6 15/25 17/18 18/21 19/6 19/10 19/18 24/9 27/3 28/15 28/15 29/10 29/17 30/8 31/4 34/25 38/19 40/7 45/25 46/2 46/3 70/4 75/11
defense's [1] 17/1
defensive [1] 15/7
defer [3] 19/24 20/2 20/17
deferred [3] 48/8 49/9 55/19
deferring [1] 20/15
define [2] 67/9 67/15
defined [1] 47/16
defining [2] 53/18 53/19
definitely [2] 36/6 79/20
degree [3] 21/6 21/11 21/13
degrees [1] 15/4
demands [1] 8/4
demarcation [1] 55/23
democracy [1] 61/4
democratic [2] 61/7 78/17
denial [1] 56/22
denied [1] 68/14
deny [2] 13/14 73/23
denying [1] 19/18
Department [4] 52/9 57/14 63/10 65/3
depending [1] 23/6
deputy [1] 64/10

describe [1] 45/22
describing [2] 67/25 70/3
detailed [1] 13/19
detained [1] 19/3
detention [17] 5/1 13/17 13/22 14/4 14/9 14/21 16/8 16/22 18/7 19/19 19/24 19/25 20/2 22/1 22/17 46/19 61/8
determination [2] 13/21 65/23
determinations [4] 17/21 65/17 65/20 73/4
determines [1] 12/3
detonated [1] 59/13
detonates [1] 64/9
develop [1] 75/3
developed [2] 12/12 13/11
device [6] 10/3 10/6 10/8 10/12 10/13 10/15
devout [1] 52/20
did [21] 16/3 17/4 17/23 20/13 20/16 27/2 27/5 32/22 39/24 41/9 53/2 54/7 57/10 59/7 59/14 60/14 60/17 65/2 68/8 77/5 77/8
didn't [13] 16/1 28/18 29/4 52/23 53/1 53/1 53/2 53/3 55/23 59/5 69/7 77/16 79/21
difference [3] 60/18 63/19 71/24
differences [1] 65/24
different [20] 17/22 17/23 18/17 19/7 22/7 23/8 34/14 34/22 48/18 52/6 52/10 55/10 57/5 60/8 60/25 63/17 65/13 65/20 65/24 67/7
differential [2] 17/19 18/20
differently [3] 22/14 68/18 68/21
difficult [1] 39/11
difficulties [1] 36/19
direct [6] 24/19 49/23 49/25 52/11 55/16 59/12
directed [1] 24/8
directing [2] 23/10 50/3
direction [1] 58/16
directions [2] 15/11 17/24
directives [1] 52/13
directly [1] 44/14
disagree [2] 16/12 62/22
disbursed [1] 57/15
disc [2] 34/11 34/12
discovery [43] 5/16 27/17 27/19 29/8 32/5 32/7 32/9 34/10 34/11 34/25 35/5 35/9 38/6 38/8 38/15 38/18 38/24 39/3 39/4 39/7 41/19 41/20 41/21 42/9 42/10 43/23 44/3 44/6 44/7 44/10 44/10 44/20 44/24 45/1 45/18 47/14 47/24 47/24 52/12 57/10 60/5 75/22 77/21
discretion [1] 64/1
discriminatory [3] 47/13 51/17 59/21
discuss [1] 14/8
discussed [2] 14/8 16/23
discussions [1] 28/17
disease [4] 33/18 33/20 33/24 34/5
disfavoring [1] 73/1
dismiss [11] 4/25 11/19 11/22 12/6 12/11 13/15 40/23 47/23 72/10 72/19 80/4
dismissal [2] 65/9 65/10
dismissals [1] 56/14
dismissed [23] 11/23 39/18 40/1 48/8 50/15 56/17 58/2 58/21 59/9 59/14 63/10 64/14 65/12 66/24 71/22 71/23 72/15 72/24 72/24 76/21 77/18 79/19 80/7
dismissing [2] 55/20 72/7
disorder [5] 6/5 6/24 7/20 8/16 9/12
disorderly [10] 6/6 6/10 6/24 7/3 7/20 7/24 8/16 8/20 9/12 9/16
disparities [1] 50/5
disparity [1] 51/20
dispute [2] 32/5 77/25
disruptive [5] 6/6 6/25 7/20 8/17 9/13
distinctions [1] 63/18
distinguish [1] 56/2
distribution [1] 54/19
district [18] 1/1 1/1 1/1 1/22 1/22 12/10 18/21 18/21 20/11 20/14 22/22 39/16 59/19 60/5 63/5 70/15 81/4 81/5

## D

divide [1] 26/18
do [65] 6/11 6/13 7/5 7/7 8/1 8/2 8/22 8/23 9/18
9/20 10/3 13/24 14/5 14/23 15/25 16/17 18/16
19/10 20/1 20/8 20/19 21/3 21/4 22/8 22/11
22/13 22/19 22/22 24/16 24/16 24/16 24/21
27/14 28/24 31/14 32/19 33/4 35/1 39/2 39/10
41/25 43/17 45/11 45/22 45/22 46/24 52/2 52/5
56/15 66/21 67/1 67/8 71/3 73/5 73/18 73/20
73/23 73/23 74/3 74/24 75/5 76/3 79/10 79/12
81/5
docket [1] 25/20
doctrinally [2] 67/2 69/23
doctrine [2] 66/18 75/23
does [20] 8/25 9/21 10/13 17/5 19/1 19/13 21/4
21/13 22/8 23/15 30/15 31/1 31/23 35/11 40/16
41/1 44/15 48/13 54/2 69/20
doesn't [7] 15/16 22/10 22/25 70/4 72/19 72/22
78/7
doing [5] 17/21 64/23 69/2 70/13 74/7
don't [55] 16/2 16/16 18/19 19/7 22/22 23/22
24/13 24/17 25/2 25/22 28/5 28/23 30/3 30/5
32/11 33/6 36/4 36/14 37/16 38/14 38/23 45/19
47/22 50/18 50/24 52/9 52/12 55/15 56/1 56/1
56/10 58/18 62/21 64/9 64/15 65/10 66/9 66/19
66/25 67/3 67/19 70/6 71/3 72/5 72/12 74/18
75/5 75/11 75/13 75/16 76/6 76/14 77/24 78/12
78/25
done [5] 27/22 28/6 30/11 34/17 45/1
doubt [1] 65/5
DOUENAT [5] 1/20 4/12 20/19 23/1 41/24
down [10] 19/12 31/7 31/16 40/25 51/13 62/20
63/11 65/22 72/11 75/4
dozens [1] 71/25
DPA's [1] 55/25
DRA [1] 51/5
DRA's [3] 50/12 51/13 56/6
draconian [1] 51/24
draft [1] 17/11
drastically [1] 65/9
draw [3] 63/18 66/22 68/4
drew [1] 68/22
drill [1] 65/22
drilling [1] 75/24
dropped [1] 34/11
dropping [1] 58/5
drug [5] 60/15 60/18 67/12 67/13 68/10
due [3] 23/21 29/13 34/23
dump [1] 42/10
duration [2] 10/9 10/10
during [1] 10/9 10/10

## E

each [2] 28/2 38/22
eager [1] 29/1
earlier [6] 26/3 29/15 29/20 38/2 61/3 65/18
early [7] 26/10 27/6 28/19 30/2 30/10 37/13
45/20
easily [1] 48/21
easy [1] 77/6
Edgar [1] 4/13
EDVA [4] 79/18 79/20 79/23 80/4
effect [4] 22/19 47/13 49/6 59/21
efforts [2] 71/9 77/6
eight [7] 7/15 7/22 8/10 35/6 35/11 38/11 69/5
Eighteen [1] 7/15
either [5] 26/10 41/21 48/8 72/10 72/13
election [3] 52/25 76/15 78/2
electoral [1] 61/13
elementary [1] 23/9
elements [2] 53/22 54/16
eleven [2] 5/25 38/13
ELIZABETH [2] 1/18 4/3
else [11] 12/21 27/14 28/7 32/19 36/10 37/2
40/10 42/6 61/1 67/19 68/5

email [2] 38/2 38/3
emailed [1] 60/25
emails [1] 57/18
employed [1] 16/18
employment [2] 14/11 16/18
enable [1] 37/18
encoding [1] 61/14
encompasses [1] 67/10
encroaching [1] 15/3
end [5] 14/25 15/1 18/1 36/7 39/22
enforcement [7] 60/7 60/18 62/2 62/3 63/12
71/22 76/23
engage [1] 28/4
engaged [5] 18/9 18/13 18/24 61/12 71/10
engagement [1] 20/6
engaging [6] 6/8 7/1 7/22 8/18 9/14 51/11
enhancement [2] 48/11 53/8
enhancements [1] 53/9
enough [3] 45/21 64/22 67/15
ensures [1] 20/5
ensuring [1] 44/2
enter [5] 4/13 4/15 6/15 9/23 53/2
entered [2] 15/14 15/18
enters [2] 7/9 8/4
entire [1] 44/16
entirely [1] 59/14
entrapment [1] 19/10
especially [1] 19/14
ESQUIRE [11] 1/15 1/15 1/16 1/17 1/17 1/18
1/18 1/19 1/19 1/20 1/20
essentially [1] 15/17
Essex [1] 34/3
establish [2] 75/12 75/14
established [3] 69/24 70/17 70/18
et [1] 2/3
euphemism [1] 62/17
even [16] 17/2 29/12 35/5 40/4 48/25 49/7
49/10 50/15 56/6 56/15 59/11 60/8 74/21 76/8
76/17 78/12
event [3] 53/13 61/5 70/15
events [10] 38/20 60/24 61/18 61/22 63/19
69/19 69/20 70/14 71/5 77/23
ever [5] 57/5 68/5 72/18 73/11 79/18
every [14] 10/8 12/23 22/12 26/10 28/14 28/15
33/25 44/24 45/14 53/13 61/10 61/12 77/3
79/11
everybody [4] 29/4 69/3 69/3 70/2
everyone [2] 26/5 28/21
everything [3] 34/22 35/22 64/23
evidence [42] 12/8 13/19 14/6 14/10 14/12
14/16 14/24 15/9 15/13 15/17 15/20 16/7 16/8
16/25 19/14 19/14 43/3 47/16 47/20 49/2 49/23
49/25 50/5 50/8 50/12 55/5 55/16 55/16 55/21
60/2 63/20 64/3 65/5 70/11 73/8 74/22 75/6
76/9 76/18 77/2 77/2 80/1 80/2
Evidence.Com [1] 38/7
evident [1] 71/16
evidentiary [3] 63/22 65/9 72/8
exact [1] 45/20 49/12
exacting [1] 49/4
exactly [1] 56/9
examine [1] 54/14
example [5] 38/14 54/20 57/11 64/5 64/15
excellent [1] 76/5
exclude [1] 27/12
exhibited [1] 18/3
existing [1] 66/4
exists [1] 57/16
expect [2] 39/3 46/6
explaining [1] 64/24
explanation [1] 10/10
expressed [1] 51/23
extended [2] 26/1 49/13
extends [1] 47/14
extent [2] 39/5 43/19
extra [1] 20/24

extreme [1] 15/1
extremely [2] 13/8 76/9
eyewitness [2] 59/12 59/12
eyewitnesses [1] 76/24

## F

F.3rd [4] 11/25 12/2 12/18 18/14
face [1] 77/1
faced [1] 15/7
facie [2] 47/11 67/1
Facility [1] 19/5
facing [2] 58/21 63/13
fact [10] 14/16 15/15 16/3 16/17 22/4 50/9 52/5
53/22 62/7 73/3
factor [2] 14/21 16/21
factors [3] 14/8 14/19 53/14
facts [3] 14/22 65/23 67/4
factual [2] 12/11 13/11
fails [1] 77/4
fair [3] 48/23 69/4 74/9
faith [1] 65/4
fall [2] 19/1 28/19
Fanone [1] 62/18
far [2] 45/5 75/25
fast [1] 37/16
favor [5] 14/4 14/21 16/2 16/16 16/19
favorable [3] 49/11 51/5 51/14
favoring [1] 73/1
favors [4] 16/8 16/14 16/22 19/8
FCRR [1] 1/21
feature [1] 13/6
February [14] 26/10 30/10 30/15 30/17 30/24
31/5 31/19 33/12 36/5 43/13 43/14 43/20 44/5
80/11
February 21st [1] 30/15
February 4th [7] 30/24 31/5 31/19 33/12 36/5
43/13 43/14
federal [17] 12/9 18/8 51/22 53/12 54/9 54/10
54/25 54/25 55/1 61/11 61/15 62/5 62/8 62/23
64/11 71/9 73/25
FEDERICO [4] 1/9 4/8 9/4 9/4
feel [1] 55/23
feels [3] 23/19 67/7 70/24
felonies [8] 49/3 49/8 50/10 51/13 53/4 71/21
72/1 72/9
felony [11] 49/18 49/20 55/20 56/20 58/4 59/9
71/21 72/19 79/19 79/19 80/7
few [2] 37/24 43/21
Fifteen [1] 7/15
Fifty [12] 6/9 6/10 7/3 7/4 7/24 7/25 8/18 8/20
8/21 9/14 9/16 9/17
Fifty-one [1] 9/14
Fifty-three [5] 6/10 7/4 7/25 8/21 9/17
Fifty-two [5] 6/9 7/3 7/24 8/20 9/16
fight [3] 15/21 15/24 16/4
figure [2] 5/14 45/7
file [7] 23/24 24/9 25/10 31/22 35/20 44/16
45/15
filed [4] 4/4 24/2 25/16 45/23
files [1] 45/13
filing [2] 13/18 45/19
filings [1] 13/18
filling [1] 31/11
final [1] 16/21
finally [1] 5/15
find [12] 10/23 14/8 14/12 14/20 18/11 18/19
23/3 24/18 29/18 43/17 54/4 79/7
fine [6] 23/13 30/25 31/8 41/3 42/4 66/4
finish [2] 21/10 21/12
fire [13] 11/21 12/13 12/20 12/25 13/1 13/8
13/13 41/2 41/7 48/7 53/2 59/8 59/13
firework [2] 13/6 48/10
fireworks [1] 53/7
first [18] 5/17 14/20 25/25 27/6 33/5 33/9
34/17 40/17 40/19 41/15 42/16 42/18 42/23
55/8 59/6 60/1 71/5 76/8

**F**

five [8] 6/5 6/19 6/24 7/19 8/16 9/12 21/10 64/9
flesh [1] 74/25
Floyd [3] 48/4 77/25 79/2
fly [1] 67/14
focus [4] 54/15 67/2 68/9 69/12
focused [2] 60/14 62/15
focusing [1] 61/16
FOIA [1] 57/3
folks [5] 4/17 11/18 61/18 65/21 80/11
following [2] 43/6 48/4
food [1] 33/23
footage [1] 27/20
force [1] 15/5
foregoing [1] 81/12
form [2] 33/22 33/22
formal [10] 6/12 6/14 7/6 7/8 8/1 8/3 8/22 8/25 9/19 9/21
forth [2] 23/4 35/21
forthcoming [1] 44/18
Forty [7] 6/7 6/24 7/1 7/20 7/22 8/16 9/12
Forty-eight [1] 7/22
Forty-nine [1] 7/1
Forty-one [1] 6/24
Forty-seven [1] 6/7
Forty-three [1] 9/12
Forty-two [1] 8/16
forward [2] 2/4 5/20
found [1] 18/14
four [12] 5/24 6/3 6/22 7/18 8/14 9/10 14/19 20/23 53/13 61/10 63/22 72/18
Fourth [1] 18/8
FPD [3] 27/25 27/25 46/1
framed [1] 35/4
frankly [4] 10/13 14/25 15/16 62/16
fraud [2] 52/25 76/15
free [2] 28/13 29/24
friction [1] 10/22
Friday [4] 30/17 30/22 30/23 31/5
Fridays [1] 30/20
fringe [1] 52/20
front [2] 25/17 62/6
full [1] 21/1
fully [1] 25/10
funny [1] 47/19
further [5] 19/8 32/4 36/11 78/6 81/12
future [1] 10/24

**G**

Garland [1] 58/16
gear [1] 15/21
gender [1] 75/10
general [4] 13/22 14/22 17/9 58/16
generally [1] 30/10
generis [3] 53/11 61/8 67/19
gentlemen [6] 2/20 6/16 7/11 8/6 9/25 11/1
GEOFFREY [1] 1/7
geographic [1] 68/9
George [3] 48/4 77/25 79/1
get [17] 27/10 28/1 28/4 29/4 29/19 32/6 38/22 45/25 47/24 57/8 61/22 64/20 69/7 73/18 75/4 75/5 75/20
gets [2] 70/10 75/24
getting [5] 10/2 21/5 27/1 58/2 58/20
gigabytes [1] 35/9
give [6] 16/14 23/23 42/24 53/22 55/5 70/4
given [4] 20/4 29/21 38/10 74/2
glacially [1] 38/14
global [4] 27/19 32/7 38/18 41/20
go [18] 10/15 14/22 29/2 32/8 32/9 32/14 36/24 37/16 39/23 52/23 56/13 56/21 64/4 64/24 68/2 73/14 77/5 79/10
goes [2] 50/17 64/8
going [50] 4/13 5/1 5/14 14/22 15/23 16/21 17/23 21/9 22/17 22/23 23/24 24/19 26/22

27/14 29/1 29/2 29/18 29/20 30/7 31/9 31/9 32/11 33/4 33/21 35/22 35/23 38/9 39/4 41/2 43/15 43/15 43/19 45/1 47/7 54/1 54/3 54/4 58/6 65/16 68/9 68/10 68/19 73/13 73/15 73/16 73/20 74/23 75/2 76/15 76/16
gone [2] 35/10 43/24
Gonnell [2] 62/20
good [36] 2/6 2/8 2/9 2/11 2/12 2/14 2/15 2/20 2/21 2/23 2/23 3/5 3/7 3/8 3/9 3/12 3/17 3/18 3/25 4/1 4/3 4/6 4/7 4/9 4/10 4/11 4/17 5/4 5/5 5/5 5/7 20/10 25/13 41/25 59/23 65/4
got [27] 4/20 16/5 17/8 28/12 32/9 43/11 58/19 63/21 64/8 66/17 67/15 68/11 69/6 69/7 69/8 69/18 69/19 70/20 71/12 73/16 74/3 74/4 74/19 74/21 74/24 76/12 80/5
gotten [1] 38/7
government [54] 1/15 2/5 5/2 5/10 5/13 12/23 13/25 14/5 15/1 15/9 17/13 19/21 23/15 23/17 24/7 28/8 29/22 30/25 31/2 32/11 37/25 38/5 38/16 38/17 38/23 39/9 40/3 41/4 46/1 49/1 49/5 49/13 51/16 53/10 53/18 55/8 56/6 56/15 58/22 59/11 59/22 65/19 69/15 69/20 71/8 71/14 72/7 76/8 76/20 77/3 77/6 77/21 79/9 80/4
government's [14] 5/12 12/8 13/18 13/24 16/10 16/25 21/21 24/10 25/9 27/4 39/8 51/23 52/22 80/1
GPS [6] 20/3 20/3 22/2 22/8 22/13 23/5
graduate [1] 52/19
granted [1] 75/21
granting [3] 22/16 24/24 73/10
granular [1] 69/1
great [4] 10/21 13/9 42/2 61/3
greater [1] 19/16
Greene [1] 34/5
Griffin [3] 65/25 68/14 68/20
grocery [1] 21/2
grounds [15] 6/7 6/9 6/11 6/25 7/2 7/5 7/21 7/23 8/1 8/17 8/19 8/22 9/13 9/15 9/18
group [35] 26/20 26/23 26/24 27/7 27/7 28/12 32/13 33/8 35/4 35/17 35/18 40/15 40/17 40/18 40/19 41/13 41/15 42/1 42/5 42/16 42/16 42/18 42/22 42/23 46/12 46/16 52/20 59/18 70/13 70/21 70/21 73/1 73/1 73/8 74/19
grouping [2] 32/10 32/12
groups [4] 26/18 26/19 79/5 79/12
growing [1] 68/13
guarding [2] 62/3 62/4
guess [6] 22/12 29/17 29/22 30/18 56/10 58/1
guessing [1] 21/24
guidance [2] 57/11 57/20
guidelines [1] 49/17
Guillermo [1] 9/4
guilty [5] 6/15 7/9 8/4 9/1 9/23
guise [1] 63/25
guns [1] 16/1

**H**

had [24] 13/4 15/25 17/1 18/12 20/1 26/15 28/3 38/2 39/17 39/18 40/5 41/1 48/8 50/15 54/18 65/4 65/4 73/17 73/20 76/24 77/22 78/1 79/17 81/7
Hale [2] 18/6 61/7
hand [1] 31/6
handbook [1] 17/1
handle [2] 33/8 57/15
handled [5] 50/19 51/17 55/18 58/24 59/20
hanging [1] 74/17
happen [2] 72/19 72/22
happened [7] 13/20 49/13 61/1 61/18 61/19 66/14 79/15
happening [2] 64/21 72/15
happens [5] 61/10 62/24 63/17 72/12 72/22
happy [2] 56/15 68/12
hard [7] 29/18 52/4 54/4 57/22 69/13 75/20 79/7

harder [1] 69/9 75/10 77/10
has [65] 10/9 10/11 10/17 11/23 14/2 14/6 15/1 15/9 16/18 18/23 20/23 21/10 21/15 21/17 22/4 22/12 25/6 25/9 33/22 34/2 34/12 34/14 35/4 35/4 35/4 35/9 38/10 38/15 38/17 38/18 38/23 39/13 44/10 44/16 44/23 45/14 46/1 47/10 48/2 48/14 48/23 49/12 49/13 49/15 51/6 51/6 51/17 52/5 56/21 57/23 58/24 59/20 60/4 60/23 61/23 63/10 63/15 65/12 66/21 67/2 71/15 73/11
hasn't [3] 44/21 52/22 67/3
have [110]
haven't [4] 24/12 32/5 32/6 70/18
having [4] 14/5 16/15 27/9 61/16
he [92]
he'd [1] 23/7
he's [16] 3/1 4/15 15/7 21/3 21/14 21/15 21/20 23/3 31/12 35/10 36/17 37/11 52/19 52/20 52/21 64/8
head [2] 76/25 80/6
hear [11] 5/8 5/13 5/15 19/21 42/15 46/11 47/4 47/8 48/22 61/20 78/15
heard [15] 20/9 20/20 24/23 32/20 33/13 36/10 40/11 40/20 42/7 44/6 60/10 65/11 74/1 76/3 76/4
hearing [9] 5/2 5/15 19/6 20/14 26/9 26/16 28/21 37/11 61/8
heart [1] 57/7
HEB [1] 21/1
held [1] 29/1
help [4] 10/16 41/14 41/14 57/2
helpful [1] 55/25
her [3] 38/6 59/12 75/9
here [54] 2/24 3/13 3/20 4/12 4/18 5/4 5/14 10/1 13/2 14/1 14/16 14/21 16/8 16/24 18/1 18/12 18/20 31/21 33/18 40/22 44/6 44/11 47/20 48/1 48/14 49/1 49/13 50/8 50/24 51/4 52/4 53/18 54/13 54/21 56/19 56/25 59/24 60/6 62/1 62/12 62/14 63/13 64/2 64/25 65/12 66/2 67/4 69/6 70/1 70/17 70/25 71/13 71/25 73/10
hereby [1] 81/5
hereto [1] 81/17
hey [3] 68/10 69/5 74/25
high [4] 11/22 23/9 47/21 47/24
him [17] 10/8 14/24 16/3 16/16 18/1 19/7 20/2 20/3 22/17 22/21 23/10 34/9 34/9 49/17 52/25 64/14 76/16
himself [1] 21/15
his [54] 3/1 3/11 3/13 4/4 5/1 5/3 5/13 9/24 10/6 10/8 11/3 13/17 13/18 14/11 15/16 16/2 16/15 16/16 16/19 17/5 18/10 18/11 19/8 19/13 19/22 21/1 21/10 21/25 22/5 25/9 33/18 33/19 33/20 33/23 33/25 34/5 34/6 34/11 34/24 34/24 35/5 36/16 37/8 37/17 40/1 40/23 44/10 44/16 44/17 44/23 44/24 52/24 66/2 66/3
history [9] 14/11 16/11 16/13 16/15 16/19 21/16 21/17 21/19 61/6
hold [4] 16/3 35/17 35/18 39/14
holiday [1] 23/22
Holquin [1] 4/13
home [7] 19/24 19/25 20/2 22/1 22/5 22/17 23/6
honestly [1] 29/18
Honor [115]
HONORABLE [1] 1/12
hope [2] 26/15 37/12
hopefully [1] 71/15
hours [4] 10/9 22/6 22/12 27/21
house [1] 20/22
how [28] 6/13 7/6 8/2 8/23 9/19 23/14 28/25 29/11 29/11 30/14 30/23 32/11 50/18 54/14 54/22 57/8 57/15 63/13 64/2 64/24 65/8 65/13 68/6 69/10 70/6 75/11 77/10 79/23
Howell [1] 61/6
However [2] 33/12 59/11
huge [1] 72/23

**H**

hundreds [2] 53/12 64/25
hypothetical [2] 66/22 67/5

**I**

I'd [2] 5/7 48/13
I'll [11] 5/15 14/8 19/21 23/23 24/2 29/17 30/19 36/24 48/16 49/12 80/9
I'm [50] 3/20 4/12 5/1 13/21 14/21 19/18 19/19 19/24 20/1 21/24 22/16 22/17 23/10 24/19 24/24 28/21 30/1 30/17 31/8 31/11 31/18 32/4 32/4 32/6 32/16 33/1 35/2 36/1 37/13 39/23 40/22 41/4 42/9 43/6 43/14 43/15 43/15 43/19 44/11 46/25 47/7 57/3 70/18 72/18 74/1 74/2 74/7 75/17 75/17 77/9
I've [14] 13/17 18/2 19/4 19/9 32/9 47/6 63/18 65/11 67/4 71/7 71/25 72/17 72/18 80/6
I.D.ed [1] 59/12
idea [2] 52/2 65/18
identical [2] 54/5 64/19
identically [2] 54/1 54/3
identified [1] 74/6
identifies [1] 73/9
identify [5] 2/4 64/5 64/25 65/2 77/7
ideology [1] 17/9
ignore [1] 67/13
III [2] 1/5 81/9
imagine [3] 29/15 54/17 80/2
impeding [9] 5/22 5/25 6/2 6/21 7/16 8/11 8/12 9/7 9/9
implications [1] 56/1
importance [1] 10/6
important [3] 61/17 62/23 63/24
imposing [1] 75/19
impossible [4] 49/24 75/9 75/19 79/13
impressions [1] 75/23
improper [13] 48/19 49/21 50/12 55/7 55/21 58/11 58/18 60/16 60/24 72/25 73/12 76/9 76/19
improperly [1] 60/16
incarcerated [3] 32/8 32/13 33/4
incarceration [1] 14/17
inclination [1] 32/15
inclined [3] 29/22 37/13 39/20
include [1] 68/23
included [2] 67/16 69/24
includes [1] 13/18
including [1] 53/4
inconvenient [1] 22/13
incredibly [1] 65/13
incremental [1] 65/24
indeed [2] 50/7 51/22
indicates [1] 42/17
indication [2] 50/21 73/17
indicative [1] 58/11
indicator [1] 10/12
indicia [2] 18/3 18/25
indict [1] 65/5
indicted [3] 26/14 43/4 66/12
indictment [22] 4/23 5/21 6/12 6/19 7/6 7/15 8/2 8/10 8/23 9/1 9/6 9/19 9/22 11/9 11/16 11/20 11/22 12/1 12/4 13/3 72/19 80/7
indictments [1] 11/23
indirect [5] 50/5 50/8 55/16 55/21 76/9
indisputably [1] 48/5
individual [5] 21/14 49/15 57/19 64/7 64/18
individuals [8] 51/10 53/6 54/20 71/10 74/13 74/16 79/2 79/16
inflicting [1] 5/23
information [1] 45/14
informed [1] 45/21
informs [1] 12/4
inherently [1] 12/15
initial [5] 26/15 47/11 58/12 59/6 59/15
initially [5] 49/2 49/7 50/9 51/12 59/8

initiated [1] 78/13
injured [2] 15/7 63/12
injuries [1] 12/24
injuring [1] 51/10
injury [10] 5/23 12/17 12/22 13/2 13/7 13/9 13/10 49/10 51/11 53/3
inquiry [1] 62/21
instead [3] 32/13 53/19 75/19
instructed [1] 10/20
insurrection [1] 61/24
intending [1] 5/18
intent [2] 49/23 49/25
interest [6] 17/9 39/6 43/18 43/18 61/16 72/25
interested [2] 5/1 17/2
interpreted [1] 69/11
investigation [1] 45/2
involve [1] 49/14
involved [4] 47/3 54/25 54/25 70/14
involves [1] 61/12
is [224]
Isaiah [1] 64/6
isn't [4] 47/21 50/13 63/13 70/11
issue [8] 25/25 29/9 32/6 41/8 44/12 45/19 67/16 70/11
issues [7] 10/2 10/24 28/9 29/6 33/18 34/22 65/9
issuing [1] 46/18
it [108]
it's [61] 12/20 13/8 16/5 22/13 23/22 27/25 29/18 29/20 30/21 30/22 33/21 33/22 34/19 38/4 39/1 45/19 47/21 47/25 49/24 50/1 50/2 51/3 52/8 52/8 52/15 53/19 54/4 54/14 55/11 60/12 61/10 61/11 62/14 63/24 64/4 64/16 65/12 66/16 69/13 69/13 69/14 69/16 71/20 71/22 72/15 72/23 73/9 74/4 74/9 74/15 74/18 75/1 75/18 75/22 78/3 78/7 78/11 79/13 79/15 80/6 80/8
its [2] 56/6 68/13
itself [3] 17/3 54/4 67/22

**J**

JACKSON [6] 1/15 2/9 2/11 45/9 45/10 62/13
jail [4] 19/7 34/1 34/6 34/12
jails [2] 34/15 34/15
JAMES [2] 1/16 2/12
January [56] 11/21 13/20 14/23 17/4 17/19 18/3 18/10 18/16 18/25 21/23 23/18 23/24 24/3 24/8 24/9 26/4 26/9 26/10 30/8 30/10 30/18 30/19 38/20 45/3 45/18 50/19 51/22 51/24 52/15 54/3 54/5 54/23 56/23 59/18 60/25 62/15 63/20 64/16 67/7 67/18 68/12 68/18 68/22 68/23 69/20 74/10 74/20 76/9 76/18 77/5 78/5 78/13 78/21 79/13 79/17
January 12th [2] 24/3 24/9
January 21st [1] 26/4
January 24th [1] 30/8
January 5th [2] 23/24 24/8
January 6 [3] 17/19 67/7 78/13
January 6th [33] 11/21 13/20 14/23 17/4 18/3 18/10 18/16 18/25 21/23 38/20 45/3 50/19 51/22 51/24 52/15 54/3 56/23 59/18 60/25 62/15 63/20 64/16 68/18 68/22 69/20 74/10 74/20 76/9 76/18 77/5 78/21 79/13 79/17
January 7th [1] 23/18
Jeffrey [2] 7/13 7/13
JOCELYN [2] 1/15 2/6
JOHN [3] 1/19 2/15 31/11
joined [1] 56/25
Joseph [2] 3/21 5/20
JR [1] 1/20
JUDD [18] 1/6 4/4 26/25 41/1 43/9 47/10 47/12 48/2 49/3 49/15 51/6 51/19 52/11 52/17 56/9 56/20 64/8 76/13
Judd's [5] 4/25 5/16 11/19 40/22 46/24
judge [12] 1/13 16/13 17/12 18/22 19/20 25/5 25/17 39/13 61/5 61/6 62/13 72/17

judge's [1] 13/20
judges [1] 39/20
judicial [1] 56/10
July [1] 12/24
jump [1] 72/23
juncture [1] 36/18
jury [2] 7/10 8/5
just [64] 4/15 15/23 16/23 18/17 22/3 22/6 22/11 22/13 22/21 25/19 27/25 29/3 30/9 35/17 38/13 39/18 40/1 40/24 40/25 41/3 41/5 42/24 44/24 48/20 50/17 51/7 52/5 54/15 55/16 56/5 56/10 58/9 58/19 59/16 59/18 59/20 60/12 62/3 64/12 65/12 66/24 67/6 67/10 67/13 68/4 68/22 69/15 70/12 71/5 71/12 71/19 72/1 72/4 72/19 74/3 74/25 75/1 75/17 76/17 77/14 78/25 79/14 80/6
justice [10] 43/18 52/8 52/9 52/14 57/4 57/12 57/15 57/20 63/10 65/3
justifies [1] 44/1

**K**

keen [1] 58/2
Keep [2] 26/22 27/14
Kelly [1] 39/13
kicked [2] 76/25 80/5
kids [3] 22/5 23/3 23/7
killed [2] 64/12 64/13
kind [20] 18/16 47/19 47/20 56/2 57/4 59/2 61/22 65/25 66/3 67/4 67/8 67/24 70/3 72/1 72/24 75/1 75/9 75/14 75/23 77/2
kinds [1] 66/5
kinesiology [1] 21/6
Kiyonaga [5] 2/16 2/18 23/24 31/6 36/14
KLEIN [14] 1/9 4/8 4/10 9/4 9/5 9/21 10/5 10/22 26/24 39/17 42/22 43/10 44/19 44/23
Klein's [7] 5/12 10/2 24/11 25/5 39/12 39/25 44/21
knocked [1] 75/4
know [93]
knowing [1] 39/6
knowledge [1] 41/20
known [1] 74/16
knows [1] 39/17
KYIONAGA [1] 1/19

**L**

lack [4] 14/10 17/13 17/13 17/14
laid [1] 16/9
lapse [1] 20/1
large [3] 44/1 48/7 63/21
last [9] 3/22 19/6 26/16 33/21 34/7 44/20 44/22 50/15 57/2
late [8] 26/8 26/9 27/6 28/13 28/19 29/25 30/2 30/10
later [4] 27/8 39/21 40/2 61/25
LAUREN [2] 1/17 3/9
law [12] 12/14 13/13 47/21 48/23 49/7 51/22 61/11 62/1 62/3 63/12 71/21 76/23
lawmaker [1] 61/12
lay [1] 45/20
lead [3] 53/24 62/1 65/9
leaders [4] 19/11 78/16 78/17 78/18
leadership [1] 15/10
leading [4] 39/14 48/5 55/14 78/5
leaning [2] 73/21 79/12
leanings [1] 79/16
least [8] 10/8 30/8 31/14 33/23 39/1 40/7 42/17 73/17
leave [1] 47/3
leaves [1] 75/16
leaving [1] 15/2
left [8] 46/24 48/5 50/23 55/14 73/21 78/5 79/4 79/11
leftists [1] 75/1
lend [1] 58/17
length [1] 29/21

**L**

lengthy [1] 14/17
lenience [2] 65/18 66/3
lenient [1] 52/3
less [1] 29/22
let [5] 4/21 26/3 28/15 31/19 33/8
Let's [2] 16/23 78/20
letter [1] 52/1
letters [2] 38/22 52/1
Lewisburg [2] 34/7 34/19
license [2] 28/4 32/6
licensed [2] 4/14 28/3
light [4] 19/14 26/8 48/17 57/22
like [29] 4/21 5/7 10/8 16/4 21/12 23/19 25/11 33/3 35/11 41/18 48/13 50/14 51/5 51/5 51/7 55/23 58/1 61/24 64/2 65/20 68/25 69/3 69/13 70/24 73/19 73/24 74/4 75/8 75/11
likes [1] 10/17
limits [1] 68/12
LINDY [1] 1/17 2/21
line [4] 57/19 57/20 57/22 66/16
Lisa [1] 1/21 81/3 81/21 81/22
list [2] 64/4 71/20
listening [1] 3/10
lit [1] 12/20
literally [2] 71/20 76/24
little [7] 33/4 48/17 50/13 67/7 72/3 74/21 75/24
live [2] 60/12 64/22
lived [1] 54/21
lives [5] 21/9 55/13 78/17 78/18 79/3
lobbed [1] 53/7
located [1] 31/12
lock [2] 76/25 80/6
locked [2] 17/25 36/17
logistically [2] 26/17 27/1
long [5] 10/16 23/14 23/19 35/11 64/24
look [23] 14/10 14/15 16/7 16/11 18/6 18/10 22/14 28/4 29/19 47/20 53/21 53/24 54/20 54/21 55/2 60/17 65/23 68/10 68/17 69/2 70/23 71/19 72/5
looked [1] 50/14
looking [11] 29/8 30/18 32/6 36/1 48/20 53/19 54/17 56/5 57/7 58/19 66/13
looks [2] 4/21 16/4
losses [1] 49/19
lot [10] 15/22 16/22 28/23 32/9 43/23 44/1 50/14 53/14 57/21 69/9
low [3] 10/12 10/15 10/18
lower [3] 15/11 62/15 69/4

**M**

M-E-T-C-A-L-F [1] 3/24
ma'am [7] 5/7 5/9 20/19 23/14 33/7 33/8 41/11
machine [2] 81/6 81/14
made [8] 19/19 37/25 38/5 38/23 47/10 61/4 63/23 66/2
MAGA [1] 73/24
magistrate [3] 13/20 16/13 19/20
main [6] 33/18 52/8 52/14 57/4 57/11 57/20
majority [3] 49/8 51/1 76/11
make [21] 17/21 18/22 31/14 32/11 32/12 33/4 33/13 36/7 40/25 41/5 42/21 43/2 45/24 46/3 47/13 48/14 64/1 65/20 65/23 67/11 77/6
makers [1] 51/22
makes [3] 25/19 56/2 71/18
making [4] 10/6 10/14 38/21 75/8
man [2] 20/22 48/9
mandated [1] 53/14
mandatory [1] 49/18
manner [1] 54/8
manuals [1] 65/3
many [8] 12/23 29/12 43/5 50/11 50/16 67/18 77/13 78/14
March [1] 36/20

Marcus [3] 21/7 21/8 22/4
MARROCCO [1] 1/17
marshal [2] 34/16 64/10
MARSHALL [7] 1/18 3/6 3/8 11/14 41/11 42/17 44/13
masks [2] 64/22 77/11
Massachusetts [1] 60/6
materials [2] 28/4 34/13
matter [12] 12/14 13/13 15/16 31/12 37/8 47/11 55/14 62/2 62/8 69/23 78/18 79/4
Matter's [1] 78/18
matters [3] 33/14 66/12 79/12
may [11] 11/2 19/11 19/12 23/17 24/23 30/21 37/23 40/21 40/25 51/12 74/13
maybe [11] 33/4 52/2 52/4 52/5 55/22 65/11 65/23 69/1 70/5 74/14 75/24
Maza [3] 64/7 64/8 64/12
McBride [3] 3/21 34/11 34/17
McCAUGHEY [13] 1/5 2/3 2/3 2/22 2/24 11/3 26/21 26/24 32/7 43/7 46/12 46/14 81/8
McFADDEN [1] 1/12
me [31] 4/21 12/20 13/8 13/10 19/13 25/22 29/18 31/19 32/12 33/8 35/1 37/18 39/1 39/9 39/11 39/14 40/19 42/24 43/12 48/16 50/14 55/5 56/13 57/2 57/4 61/21 63/11 70/24 75/8 79/9 79/13
mean [62] 21/13 21/14 21/23 28/23 47/19 49/24 50/14 50/18 50/22 52/8 53/25 54/2 55/8 55/11 55/22 55/24 56/6 57/25 58/14 59/16 62/16 62/18 63/9 63/13 63/14 64/5 64/15 65/12 65/15 66/22 67/8 67/11 67/11 68/1 68/8 68/11 68/13 68/25 69/3 70/1 70/4 70/9 70/15 70/22 70/23 71/18 71/19 72/4 72/15 72/21 72/22 73/18 74/4 74/8 74/15 75/9 75/22 76/10 77/5 78/13 78/13 78/25
means [1] 61/17
meant [1] 13/7
mechanical [1] 1/25
media [1] 70/25
medieval [1] 62/20
meet [4] 11/21 29/11 49/3 79/14
MEHAFFIE [11] 1/8 3/6 3/8 26/25 42/17 42/20 42/22 43/8 44/15 44/16 46/14
Mehaffie's [1] 44/10
MELISSA [2] 1/15 2/9
member [1] 52/20
members [1] 46/12
memo [2] 50/2 57/14
memos [1] 57/11
mental [1] 20/1
mention [1] 71/5
mentioned [6] 13/14 33/20 57/2 63/15 63/19 77/17
met [2] 49/1 51/7
METCALF [7] 1/19 3/16 3/18 3/24 3/25 33/10 36/9
middle [2] 23/9 77/14
might [7] 13/5 13/9 27/2 32/12 68/15 76/21 77/1
military [1] 16/15
militia [2] 17/1 17/2
militias [1] 17/2
mind [2] 37/17 53/15
mine [1] 19/1
minimum [1] 67/1
Ministries [2] 49/22 50/6
minute [1] 69/5
minutes [3] 21/7 21/8 22/4
misdemeanor [1] 51/14
misdemeanors [2] 61/23 72/11
mismatch [1] 47/19
missed [2] 39/24 55/22
missing [1] 46/25
mistake [1] 18/4
mob [3] 15/3 15/8 17/8
modifications [1] 20/18

Mom [1] 20/22
moment [4] 4/24 14/8 16/6 17/7 19/15 42/24 45/6 60/10 61/10 63/3 74/12
monitor [2] 22/2 22/13
monitoring [7] 10/3 10/11 20/3 20/3 22/9 22/22 23/5
month [4] 38/16 38/25 44/21 44/22
monthly [1] 45/17
months [14] 26/2 35/6 35/11 35/12 36/18 38/12 38/13 56/7 56/8 56/11 56/11 56/16 56/16 56/16
more [13] 3/22 21/12 23/8 23/20 29/22 32/14 33/4 43/24 50/12 50/13 51/5 55/12 60/3 66/17 66/21 69/1 71/3 74/3
Morillo [1] 12/9
MORSS [14] 1/7 2/16 6/17 6/17 7/9 26/20 26/23 36/15 36/16 37/3 43/7 46/12 46/14 46/19
Morss' [2] 4/25 13/16
Morss' motion [1] 13/16
Moss [1] 61/5
most [6] 17/24 27/20 43/20 64/6 64/7 64/18
motion [33] 4/25 4/25 5/2 5/11 5/15 5/16 11/19 12/6 12/13 13/14 13/16 16/10 19/19 19/21 22/16 23/15 23/18 24/8 24/25 25/4 25/8 25/15 35/20 40/23 46/20 46/24 47/6 52/19 57/1 66/8 66/11 73/10
motions [1] 43/16
motivated [1] 60/16
motivation [13] 48/19 49/21 50/12 51/18 55/7 55/21 58/11 58/18 60/24 72/25 73/1 76/10 76/19
motivations [2] 73/18 74/6
motive [1] 60/23
mountain [2] 29/8 75/20
move [2] 42/16 42/18
moves [1] 68/1
moving [4] 38/13 42/21 44/1 46/15
Mr [76] 2/14 2/16 2/18 2/22 2/24 3/6 3/18 4/1 4/25 4/25 5/2 5/8 5/11 5/19 8/25 10/4 11/3 11/4 11/19 19/21 19/23 19/25 20/6 20/21 20/26 26/21 26/23 26/23 26/25 26/24 26/25 26/25 26/25 31/6 32/7 32/15 32/25 33/3 33/14 34/18 35/3 35/22 36/14 36/14 36/16 37/3 40/22 41/1 42/20 42/21 42/22 43/7 43/7 43/7 44/9 44/13 44/15 44/16 44/20 44/21 44/23 45/6 46/15 46/24 47/10 47/12 48/2 49/15 51/6 51/19 52/17 61/20 66/8 76/1 76/13 78/7
Mr. [58] 2/16 2/23 3/1 3/6 3/8 3/8 3/25 4/10 4/10 4/12 5/12 5/16 6/17 7/9 7/13 8/3 8/8 9/4 9/21 10/2 10/5 10/22 11/3 11/8 11/14 20/22 23/15 23/18 23/24 24/11 25/5 26/20 26/24 26/25 32/1 33/10 35/18 36/9 37/6 37/7 37/22 37/12 39/17 39/25 41/11 42/17 42/17 42/22 43/7 44/13 44/19 49/3 52/11 56/9 56/20 64/8 64/12 68/20
Mr. Federico [1] 9/4
Mr. Griffin [1] 68/20
Mr. Jeffrey [1] 7/13
Mr. Judd [4] 49/3 52/11 56/9 56/20
Mr. Judd's [1] 5/16
Mr. Kiyonaga [1] 23/24
Mr. Klein [7] 4/10 9/21 10/5 10/22 39/17 42/22 44/19
Mr. Klein's [6] 5/12 10/2 24/11 25/5 39/12 39/25
Mr. Marshall [6] 3/6 3/8 11/14 41/11 42/17 44/13
Mr. Maza [2] 64/8 64/12
Mr. McCaughey [1] 11/3
Mr. Mehaffie [2] 3/8 42/17
Mr. Metcalf [3] 3/25 33/10 36/9
Mr. Mom [1] 20/22
Mr. Morss [2] 7/9 26/20
Mr. Quaglin [1] 35/18
Mr. Robert [1] 6/17
Mr. Sills [5] 2/16 8/3 26/25 37/6 37/7
Mr. Sills' [2] 23/15 23/18

## M

Mr. Steven [2] 4/12 8/8
Mr. Stevens [3] 11/8 26/24 43/7
Mr. Urso [3] 2/23 3/1 32/1
Mr. Woodward [2] 4/10 37/22
Ms [22] 5/4 5/17 11/11 20/8 20/19 22/19 23/11 25/14 30/15 32/20 33/7 39/17 40/13 41/24 44/6 45/9 45/10 59/22 63/9 71/19 74/24 76/6
Ms. [22] 2/8 2/11 3/12 3/15 4/6 11/7 23/1 24/21 25/22 28/8 29/23 31/24 32/25 38/1 38/17 42/13 43/12 46/24 47/4 67/24 73/5 76/3
Ms. Bond [11] 2/8 24/21 25/22 28/8 29/23 31/24 38/1 38/17 42/13 43/12 46/24
Ms. Cobb [4] 3/12 3/15 11/7 32/25
Ms. Douenat [1] 23/1
Ms. Jackson [1] 2/11
Ms. Mullin [5] 4/6 47/4 67/24 73/5 76/3
much [7] 15/16 20/22 29/11 29/19 57/19 65/20 70/4
MULLIN [14] 1/18 4/4 4/6 11/11 33/7 40/13 47/4 59/22 63/9 67/24 73/5 74/24 76/3 76/6
Mullin's [1] 71/20
multiple [6] 11/19 26/2 38/19 53/4 76/23 76/23
Munchel [2] 18/14 61/2
murder [2] 77/25 79/1
Muscrera [1] 12/9
must [3] 11/21 12/16 54/21
my [35] 4/13 4/22 17/5 17/25 18/7 18/7 23/3 28/21 29/7 29/9 29/13 29/19 30/3 32/5 34/10 36/3 36/17 37/12 39/2 41/20 42/10 45/17 52/19 57/11 57/13 59/6 59/15 59/16 67/5 77/18 78/25 81/6 81/14 81/15 81/17

## N

name [3] 3/19 3/22 81/18
namely [1] 11/21
narrow [1] 60/11
narrowly [3] 57/10 62/14 68/5
nature [2] 14/20 16/23
need [20] 12/12 13/2 21/1 22/19 23/11 23/15 24/16 31/6 31/14 45/24 46/3 47/12 49/23 69/16 73/5 74/24 76/6 77/16
needs [7] 4/15 19/2 21/10 31/20 31/22 43/24 58/18
negotiate [1] 51/5
never [7] 29/12 34/16 34/18 51/6 71/17 71/25 80/6
new [7] 33/21 40/5 44/21 45/12 45/15 45/23 73/11
news [3] 70/25 73/19 78/24
next [14] 30/6 31/13 33/12 35/16 35/19 36/4 37/10 37/11 37/19 43/15 43/17 45/20 46/7 76/20
nicely [1] 70/5
night [2] 64/21 77/12
nilly [1] 72/1
nine [9] 6/5 7/1 8/12 9/6 26/1 26/14 26/16 27/2 38/12
Nineteen [1] 9/6
no [43] 1/3 12/25 14/13 16/15 20/12 21/15 21/17 21/19 27/22 28/9 30/11 31/16 31/16 32/4 32/8 32/24 33/11 34/2 37/4 38/9 40/12 42/8 44/25 46/21 47/1 49/14 49/15 51/6 53/25 56/24 58/15 66/16 68/6 72/6 72/17 73/11 74/1 76/5 78/17 78/17 79/24 79/25 80/6
nol [4] 50/11 51/14 56/5 56/14
nonetheless [5] 14/9 14/12 15/17 16/21 18/10
normally [1] 23/21
north [1] 67/20
northwest [1] 67/14
not [120]
note [3] 20/16 41/18 59/6
noted [3] 60/25 70/25 71/1
notereading [1] 1/25
notes [2] 61/4 81/14

nothing [4] 22/12 32/19 36/11 68/5
notice [2] 43/8 61/15
noticed [1] 10/1
notification [1] 24/13
notion [5] 38/1 65/16 70/12 71/9 77/19
Notwithstanding [2] 36/21 43/21
novo [1] 13/21
now [21] 19/14 27/1 27/12 29/1 33/17 34/2 34/7 35/4 35/7 35/11 38/12 39/13 42/9 43/16 64/4 66/8 66/15 67/21 70/8 70/9 76/11
nuanced [1] 66/17
number [12] 13/19 16/1 17/20 26/12 26/13 27/10 27/11 29/14 32/18 56/24 72/5 81/9
numerous [1] 48/2
NW [1] 1/23

## O

object [5] 12/15 13/3 36/6 41/1 41/6
objection [3] 32/24 33/6 52/22
objections [2] 33/11 43/22
observing [1] 51/20
obstruction [5] 6/4 6/23 7/18 8/14 9/10
obvious [6] 52/15 55/11 78/3 78/8 78/12 79/15
obviously [5] 17/19 32/7 58/12 58/15 75/9
occurred [4] 49/10 63/4 77/24 77/25
occurs [2] 53/13 61/21
October [1] 34/10
October 7th [1] 34/10
off [2] 18/4 34/11
offense [5] 12/4 14/20 16/24 54/16 69/9
offenses [7] 53/22 53/23 54/11 54/19 54/21 54/24 63/11
offer [7] 10/10 13/5 16/18 31/21 31/23 49/16 56/19
offered [4] 48/8 49/9 54/13 56/7
offering [2] 51/13 55/19
offers [12] 25/25 26/1 26/4 26/8 26/11 27/16 43/25 49/11 49/13 51/14 51/15 57/13
office [16] 15/14 15/15 20/15 20/17 24/20 38/21 45/17 52/3 52/6 58/24 59/19 61/23 65/12 65/12 71/2 73/13
officer [14] 10/23 48/7 53/1 53/4 59/8 62/2 62/3 62/4 62/6 62/18 64/11 71/22 76/25 76/25
officer's [3] 15/6 59/14 77/1
officers [28] 5/23 5/24 6/1 6/3 6/22 7/16 8/1 8/13 9/8 9/9 15/2 18/16 48/6 49/10 51/11 53/7 53/16 54/10 55/1 55/1 62/10 62/23 62/23 63/12 69/6 77/16 80/5 80/5
offices [5] 52/10 55/17 55/18 57/4 65/19
official [9] 6/4 6/23 7/18 8/15 9/11 81/3 81/6 81/13 81/22
often [1] 72/20
oftentimes [1] 57/13
oh [2] 32/19 74/3
Ohio [1] 34/4
okay [47] 3/1 3/22 6/16 10/24 11/14 20/8 20/19 22/16 24/2 24/15 25/14 25/19 25/24 27/14 27/14 28/7 28/7 28/20 29/17 30/5 31/17 32/1 32/19 32/19 32/25 33/2 33/7 33/16 35/6 35/25 36/21 37/2 40/10 40/13 40/20 41/11 41/16 41/22 42/6 43/23 43/6 43/14 45/24 55/5 70/22 71/12 78/22
old [2] 20/22 64/13
once [5] 10/8 10/20 31/9 53/13 61/10
one [46] 3/22 5/22 6/24 9/8 9/14 10/13 14/25 16/5 18/1 18/4 18/7 21/3 23/8 26/12 29/6 30/8 33/18 41/18 42/24 43/25 48/14 53/12 59/7 60/1 60/1 61/25 63/14 63/18 63/18 65/12 65/19 67/17 69/5 69/7 69/8 70/9 70/10 70/12 70/21 71/11 72/25 73/1 75/23 79/7 79/8
one-off [1] 18/4
ones [3] 28/18 32/13 68/15
ongoing [7] 17/16 18/5 18/12 27/18 42/9 42/11 45/2
only [17] 10/12 11/23 13/2 20/16 23/4 44/16 46/23 47/12 53/12 53/13 60/3 62/14 66/24

27/12 70/10 71/24 77/20
open [1] 73/2
opened [1] 28/17
operative [1] 73/2
opinion [1] 46/19
opportunity [2] 28/3 35/23
oppose [5] 19/23 20/3 24/13 74/7 74/8
opposing [2] 21/25 25/15
opposite [1] 49/12
opposition [1] 30/11
order [5] 4/22 5/17 22/19 47/14 47/24
ordered [1] 19/6
orders [1] 52/7
Oregon [2] 52/2 65/18
organizing [1] 15/12
other [28] 13/19 14/8 14/14 14/15 22/17 24/14 25/5 43/15 45/3 49/22 49/25 50/5 50/7 55/14 55/16 56/23 63/19 64/3 66/20 67/16 68/15 68/18 68/21 70/12 70/15 71/2 78/15 79/4
others [3] 17/14 39/7 67/18
otherwise [2] 24/21 65/5 74/17
our [21] 17/21 20/7 20/15 20/17 24/21 25/16 26/15 27/19 33/21 34/15 37/19 38/14 41/21 49/15 57/24 58/17 58/23 58/25 59/20 61/3 74/5
ourselves [1] 36/7
out [42] 5/14 10/13 12/2 12/10 12/23 16/9 17/7 19/1 21/6 23/3 24/18 27/3 29/11 29/12 33/22 34/5 40/4 45/7 45/20 51/19 52/9 54/24 60/5 60/23 62/5 62/11 63/6 63/10 63/12 64/25 65/1 65/10 65/14 70/2 70/5 72/1 73/24 74/25 76/12 77/10 77/16 79/10
outcome [1] 49/6
outright [1] 55/20
outside [1] 39/16
outstanding [1] 43/25
outweigh [1] 43/18
over [11] 28/21 35/6 35/9 38/16 38/25 43/24 44/11 45/4 52/21 56/12 75/20
overcome [2] 59/24 69/17
overlap [1] 63/16
overlapping [1] 43/3
own [4] 16/3 32/5 34/25 68/13

## P

p.m [6] 1/10 22/24 23/11 31/1 31/5 31/19
page [8] 11/25 12/2 12/9 12/18 18/8 29/5 71/20 71/20
pages [1] 81/12
panoply [1] 61/21
pant [1] 59/14
papers [1] 75/1
paraphernalia [1] 15/22
parse [1] 52/9
part [7] 15/18 17/2 20/6 22/16 35/4 60/22 60/24
particular [7] 13/6 14/24 35/3 55/19 60/12 60/13 64/5
particularly [2] 52/3 72/7
partisan [1] 51/24
parts [1] 44/1
party [1] 74/15
past [1] 71/1
PATRICK [2] 1/5 81/8
pause [2] 43/1 61/9
Pausing [1] 60/10
Paxton [1] 60/6
peaceful [2] 15/23 61/14
PEARCE [7] 1/16 2/13 2/14 61/21 66/9 76/1 78/7
pending [2] 24/25 25/4
people [12] 12/25 15/12 22/14 50/22 60/12 65/8 67/16 67/21 69/2 70/12 71/11 79/4
people's [1] 17/22
perceives [1] 66/4
perfunctory [1] 38/21
perhaps [4] 44/11 59/25 64/3 74/14

**P**

period [2]  14/17 27/10
permissible [1]  12/7
permit [1]  37/10
person [9]  3/13 12/17 14/14 28/2 31/20 31/21 62/1 66/2 79/11
personally [1]  32/4
perspective [1]  71/8
persuasion [2]  70/13 70/14
pertinent [1]  51/4
phone [5]  2/25 3/10 25/9 42/10 44/17
physical [11]  6/8 6/11 7/2 7/5 7/22 7/25 8/18 8/21 9/15 9/18 31/14
pick [2]  77/10 79/10
picked [1]  77/16
picking [1]  29/3
picture [2]  74/19 74/22
pictures [1]  13/19
Pierce [2]  31/11 44/13
place [3]  34/17 48/3 60/12
placed [1]  40/14
places [1]  21/1
placing [1]  22/21
planning [1]  45/18
play [1]  45/21
playing [1]  65/14
plea [22]  6/15 7/9 8/4 9/23 25/25 26/1 26/4 26/8 27/16 31/21 31/23 43/25 49/11 49/13 49/16 51/5 51/14 51/14 56/19 57/13 58/22 72/13
plead [7]  6/13 7/7 8/2 8/24 9/20 31/20 72/10
pleading [1]  59/15
pleads [1]  9/1
please [5]  2/4 7/13 31/5 31/16 44/8
plenty [1]  74/13
plus [1]  60/9
podium [1]  25/3
point [24]  15/25 16/12 17/1 17/23 26/2 26/11 26/13 26/13 40/22 41/4 44/25 48/14 48/15 51/19 53/6 60/4 63/15 64/20 68/6 68/25 73/16 75/25 79/6 79/9
pointed [1]  67/3
pointing [1]  66/20
points [5]  12/23 38/21 18/25 63/9 76/7
police [11]  15/6 18/15 48/7 49/10 53/4 53/7 53/15 59/8 59/13 62/6 77/15
political [16]  19/11 54/24 70/13 70/14 70/20 70/21 71/10 71/12 71/16 73/11 73/18 74/13 74/15 75/9 76/13 79/16
Politician [2]  73/14 73/15
politicians [1]  52/25
politics [1]  55/10
pool [2]  67/21 69/5
population [1]  60/19
Portland [37]  48/3 49/2 50/9 51/9 51/21 51/25 52/14 54/9 55/13 55/18 57/12 58/2 59/17 61/1 61/19 62/5 62/9 63/5 64/6 64/17 64/21 64/21 64/25 65/2 65/10 66/4 66/12 70/14 71/18 73/17 73/25 74/23 76/21 78/23 79/8 79/16 80/3
pose [1]  17/15
posed [2]  18/12 19/16
poses [1]  18/5
posited [1]  67/5
position [6]  5/12 20/7 24/10 35/12 40/23 59/17
possible [1]  64/4
possibly [1]  75/12
posture [2]  18/24 56/9
potential [1]  17/6
potentially [3]  20/5 29/20 35/20
power [1]  61/15
powerful [1]  57/1
practice [2]  4/15 20/25
pre [1]  56/2
precedent [2]  47/12 49/22
precise [1]  12/4
precisely [1]  60/13
prefer [2]  3/18 30/18
preference [1]  29/9
preferences [2]  27/4
prejudice [1]  71/23
prejudicial [1]  40/6
preliminarily [1]  37/24
preliminary [1]  13/12
premise [1]  62/22
prepared [4]  15/21 26/19 39/12 44/3
preparing [1]  15/24
presence [2]  3/13 30/12
present [4]  2/17 4/8 30/12 48/13
presented [4]  14/6 15/9 48/1 80/3
president [10]  55/12 74/7 74/11 74/14 74/18 76/16 78/6 78/14 78/14 78/15
president's [1]  74/15
presidential [2]  61/15 78/2
pressed [1]  79/7
presumably [2]  65/2 70/3
presumption [9]  13/22 14/1 14/3 14/7 14/7 59/24 63/25 69/17 73/2
pretrial [12]  5/3 5/6 10/1 10/7 10/20 19/25 20/2 20/11 20/11 37/9 43/16 46/19
pretty [7]  15/5 20/22 47/21 50/22 63/11 67/21 80/8
previewed [1]  29/12
previously [3]  22/18 39/15 39/17
prima [2]  47/10 67/1
primarily [1]  14/10
prior [5]  40/1 44/12 44/15 49/16 51/6
prison [4]  49/14 49/19 56/21 58/21
private [2]  15/14 15/18
probably [5]  17/24 27/8 29/1 64/6 74/9
probation [1]  10/22
problem [2]  42/3 53/17
problems [4]  72/8 72/11 72/14 76/14
proceed [2]  4/24 29/22
proceeding [5]  6/4 6/23 7/19 8/15 9/11
proceedings [5]  1/25 80/12 81/6 81/13 81/15
process [3]  34/23 61/7 66/7
produce [1]  27/21
produced [2]  1/25 27/20
production [1]  27/19
productions [1]  38/18
program [1]  21/11
progress [2]  25/24 44/18
promulgated [1]  57/14
prong [6]  48/17 49/21 55/6 55/6 73/6 75/7
prongs [1]  48/18
proper [2]  54/14 54/19
property [2]  53/1 71/9
propose [3]  26/20 26/24 30/7
proposed [2]  26/19 58/22
pros [2]  56/6 56/14
prosecute [1]  73/15
prosecuted [3]  49/3 71/11 71/13
prosecuting [2]  52/16 63/3
prosecution [19]  47/11 47/23 49/6 50/3 53/21 54/18 55/4 57/6 58/7 58/10 59/1 62/8 62/9 62/25 64/1 66/7 67/9 68/16 77/4
prosecutions [3]  61/17 62/11 63/6
prosecutor [1]  65/4
prosecutorial [2]  59/25 73/13
prossed [2]  50/12 51/14
protect [1]  62/4
protected [1]  20/5
protecting [4]  62/10 62/22 62/23 72/25
protective [2]  62/4 64/11
protest [5]  15/23 69/20 69/21 76/11 79/17
protesting [1]  78/3
protestors [1]  78/4
protests [9]  54/24 54/25 55/10 55/11 58/25 76/13 77/23 79/8 79/15
prove [1]  75/10
provide [3]  44/13 56/14 77/21
provided [6]  38/2 38/17 38/18 44/12 44/15 44/20
providing [2]  20/17
public [3]  17/16 43/19 59/2
purpose [4]  47/13 53/20 55/6 55/6
purposes [1]  55/4
pursuant [1]  13/24
pushed [1]  40/4
pushing [2]  40/6 69/6
put [6]  18/16 25/20 35/18 48/23 74/5 80/6
puts [1]  14/24 18/1
putting [1]  17/3

**Q**

QUAGLIN [17]  1/6 3/17 3/20 4/1 5/19 5/20 20/21 26/23 33/14 34/18 35/3 35/18 35/23 42/22 43/9 46/12 46/15
Query [2]  74/12
question [13]  13/11 46/9 48/14 58/15 60/22 62/24 63/1 66/25 68/3 74/23 75/5 78/12 79/1
questions [2]  12/12 60/1
quick [1]  46/9
quickly [1]  50/22
quite [1]  47/23

**R**

race [3]  60/15 60/16 75/10
race-based [1]  60/15
racist [1]  52/20
raise [2]  31/5 59/7
raised [1]  71/1
raises [2]  55/25 60/6
rally [2]  15/23 78/13
rare [2]  50/4 80/8
rather [5]  18/4 37/8 38/17 39/21 74/25
RDR [1]  1/21
reach [1]  27/2
read [4]  66/19 73/19 74/4 75/1
reading [10]  6/12 6/14 7/6 7/8 8/1 8/3 8/23 9/1 9/19 9/21
ready [3]  27/10 29/3 29/7
real [2]  17/13 58/3
realistic [1]  57/8
reality [1]  70/25
realize [1]  15/4
realizing [1]  44/11
really [17]  14/25 18/1 18/16 19/1 38/1 43/25 49/6 51/4 52/4 54/15 54/15 55/9 55/23 55/24 58/1 66/13 70/11
reason [6]  10/23 21/21 22/25 27/22 42/18 64/14
reasonable [4]  20/4 27/11 29/10 65/5
reasonably [1]  14/14
reasoning [1]  21/24
reasons [7]  19/18 21/14 34/20 44/3 63/23 64/16 71/6
rebut [1]  14/6
rebuttable [2]  13/25 14/3
rebuttal [1]  14/9
received [8]  10/12 19/5 24/12 27/18 34/12 38/15 41/20 44/17
receiving [3]  27/24 35/10 41/19
recognize [1]  70/23
recognized [1]  18/23 54/2 69/25
record [13]  2/5 26/11 30/13 31/12 33/13 40/22 40/24 49/16 51/6 70/11 70/17 74/23 75/3
recorded [1]  1/25
recovered [1]  41/6
recovery [1]  27/10
referred [1]  61/8
referring [1]  62/17
refile [1]  25/17
reflective [1]  17/9
Reform [1]  14/19
refusal [1]  76/10
regard [1]  49/14

**R**

regarding [8]  5/11 18/20 19/4 19/9 20/15 20/18 41/19 49/21
regardless [1]  58/8
regards [5]  33/14 34/9 34/23 34/23 35/20
regularity [1]  59/25 63/25 72/22
regularly [1]  45/12
regulatory [1]  69/17
reject [3]  26/11 30/13 31/21
rejecting [1]  31/23
related [4]  5/13 24/11 24/20 38/20
relativity [6]  38/8 44/7 45/5 45/16 45/25 46/4
release [17]  5/3 5/11 13/17 14/13 16/14 16/20 19/13 19/22 20/13 20/18 21/25 22/17 23/16 25/8 46/19 52/23 56/9
released [3]  17/17 37/18 52/21
relevant [3]  40/25 52/18 71/17
relied [1]  73/14
remain [1]  22/18
remains [4]  10/7 10/15 22/1 36/4
remember [2]  64/10 72/18
remind [1]  43/12
remorse [1]  17/13
removed [1]  22/3
removing [4]  19/23 19/25 20/2 20/3
replicate [1]  54/4
reply [6]  23/25 24/9 57/11 58/23 59/3 77/18
reported [1]  81/5
Reporter [5]  1/21 18/8 81/1 81/3 81/22
reporting [1]  79/14
reports [2]  12/23 78/25
represent [2]  39/11 46/2
representation [3]  38/6 38/24 71/13
representations [1]  10/3 37/24
representative [2]  19/16 72/6
represents [1]  38/19
request [9]  5/12 7/10 19/6 23/21 24/24 30/10 36/3 57/3 57/16
requested [1]  39/8
requesting [2]  23/21 26/13 27/5 52/12
requests [1]  20/12
require [1]  65/24
required [1]  26/18
requires [1]  21/12
resist [2]  68/24 72/3
resistance [1]  51/8
resisting [10]  5/22 5/25 6/2 6/21 7/16 8/10 8/12 9/7 9/9 65/15
resolution [6]  48/9 49/9 51/17 51/21 56/20 72/14
resolutions [2]  55/19 56/7
resolve [1]  26/6
resolved [3]  37/9 50/11 50/17
resolving [1]  51/3
respect [5]  39/4 44/9 44/19 52/17 77/19
respectfully [1]  9/22 39/20 76/8
respond [4]  23/15 23/18 24/8 76/7
responded [1]  28/17
response [5]  25/17 56/7 56/21 78/1 78/12
responses [1]  67/17
restricted [10]  6/6 6/8 6/25 7/2 7/21 7/23 8/17 8/19 9/13 9/15
restriction [1]  23/4
result [2]  53/25 72/24
returning [1]  23/6
review [6]  13/17 13/20 25/1 25/5 34/13 44/2
reviewed [2]  13/17 35/5
reviewing [1]  38/8
revoke [1]  5/1
right [82]
rights [4]  9/24 36/17 37/17 49/20
rigor [1]  74/2
rigorous [3]  48/21 60/3 69/14
riot [6]  14/23 52/24 55/18 62/17 69/22 80/3
rioters [7]  51/21 51/25 64/21 64/25 68/22

**68/23 77/5**

rioting [2]  64/9 80/9
riotous [1]  20/6
riots [8]  48/3 48/4 55/13 59/17 61/1 71/2 71/2 75/15
ripe [2]  25/1 25/5
rise [1]  53/22
RMR [1]  1/21
road [3]  19/12 40/25 51/13
rob [1]  15/2
robbery [8]  5/24 6/19 6/20 7/17 8/13 14/3 15/4 15/5
ROBERT [4]  1/7 6/17 6/17 13/16
role [1]  15/10
roll [1]  79/23
rolled [1]  79/22
room [2]  44/25 70/5
rooted [2]  61/10 61/11
ruling [2]  40/24 41/8
run [2]  19/2 53/15
running [1]  10/13
rush [1]  32/8
RYAN [1]  1/18

**S**

saddled [1]  49/18
safety [1]  14/14
said [18]  10/1 11/23 14/5 18/1 19/14 28/13 30/16 34/21 46/11 61/3 62/13 62/13 63/23 65/25 72/21 81/9 81/13 81/15
same [8]  29/4 36/4 38/22 43/5 52/16 56/18 62/11 79/12
sample [3]  68/12 69/18 72/6
San [1]  21/2
sandbagging [1]  59/3
saw [1]  52/1
say [21]  3/22 13/12 14/3 18/19 31/19 37/2 56/23 63/3 63/11 66/17 68/8 68/10 68/17 69/5 73/8 73/13 73/19 74/1 74/3 74/21 74/25
saying [11]  29/2 31/22 37/15 61/20 62/19 62/20 72/23 74/2 75/17 75/18 76/14
says [4]  48/22 66/20 70/10 75/19
scenario [3]  33/24 65/13 69/16
schedule [6]  27/4 29/19 32/4 32/5 35/2 43/16
scheduled [1]  39/15
scheduling [1]  36/19
school [8]  20/25 23/4 23/6 23/7 23/8 23/9 23/9 23/9
Schuck [6]  5/4 5/6 20/8 20/11 22/19 23/12
scuffle [1]  77/14
season [1]  23/22
seat [1]  11/2
second [20]  4/13 27/7 35/25 40/15 40/18 41/12 42/1 42/5 42/16 42/22 48/17 55/6 60/24 63/17 68/2 70/9 71/6 71/6 73/6 75/7
see [7]  4/22 46/15 56/1 68/15 70/1 77/10 80/11
seeking [2]  23/24 38/5
seem [3]  28/18 32/12 38/13
seemingly [1]  65/21
seems [7]  13/10 16/8 32/10 33/3 71/24 72/1 73/19
seen [6]  18/2 63/24 71/25 72/18 79/19 80/7
seismic [1]  77/23
selected [1]  43/13
selective [15]  47/11 47/23 50/3 53/21 54/18 55/4 57/6 58/6 58/10 58/11 59/1 60/7 62/25 67/9 68/16
self [1]  71/16
self-evident [1]  71/16
senator's [1]  15/14
Senators [1]  70/25
senior [1]  21/10
sense [5]  21/15 25/19 32/11 32/12 33/4
sent [1]  38/3
sentenced [1]  49/17
sentencing [3]  48/11 65/21 66/1

**separate [1]  26/19**

September [3]  27/6 36/2 36/2 36/8 36/25 38/11 39/19 39/21 39/24 40/2 40/8 42/2 43/11
September 12th [2]  39/19 39/24
September 26 [1]  43/11
September 26th [4]  36/2 36/25 40/8 42/2
Sergeant [1]  62/19
serious [10]  12/16 12/21 13/7 13/10 33/24 33/24 55/20 63/11 66/12 66/13
seriously [2]  15/13 71/14
seriousness [1]  64/15
service [2]  16/15 64/11
services [7]  5/4 5/6 10/1 10/20 20/11 20/11 62/4
set [17]  26/6 26/9 27/7 29/9 29/15 35/21 36/4 36/6 39/18 39/20 39/24 40/2 43/12 43/15 43/15 43/17 74/8
setting [2]  22/15 31/18 43/6 43/14
seven [5]  6/7 6/21 7/15 9/7 69/6
Seventeen [1]  9/6
several [1]  38/18
she [6]  38/2 38/3 38/5 59/8 59/9 59/12
she's [1]  21/3
shed [1]  57/21
shield [1]  15/6
shields [1]  15/2
shocking [1]  15/5
short [1]  16/18
shorthand [2]  81/6 81/14
shortly [1]  45/23
should [12]  10/18 11/23 26/5 34/16 34/18 53/23 54/15 58/1 59/4 62/2 69/1 73/9
shoulder [1]  28/22
shouldn't [4]  42/18 62/3 66/13 69/1
showing [1]  15/11
show [7]  49/23 49/24 49/25 50/4 50/18 55/15 73/6
showing [1]  58/17
shown [2]  50/7 59/21
shows [4]  51/15 51/17 64/17 76/18
side [2]  62/9 66/20
siege [1]  54/10
signal [1]  10/18
signed [2]  31/22 38/6
significance [1]  10/14
significant [1]  48/21
signs [1]  79/2
SILLS [9]  1/7 2/16 7/13 7/14 8/3 26/25 37/6 37/7 43/10
Sills' [3]  5/11 23/15 23/18
similar [6]  54/8 54/12 58/19 61/4 63/13 67/12
similarities [1]  55/2
similarity [3]  60/11 62/25 63/1
similarly [23]  51/16 52/18 53/20 54/2 54/7 54/11 55/3 60/22 61/18 62/12 62/21 63/7 64/16 64/18 65/16 65/21 68/5 69/12 69/22 70/10 71/2 71/7 75/4
simply [1]  25/17
since [3]  9/25 34/14 40/22
sincere [1]  37/12
single [5]  44/24 52/22 61/12 77/3 79/11
singled [1]  60/23
singular [1]  61/5
sir [21]  2/19 3/19 10/24 24/4 24/22 25/3 31/16 32/17 34/1 35/1 36/2 36/12 36/23 37/7 37/4 37/20 40/9 40/11 46/10 46/13 72/20
sit [4]  30/21 31/7 31/16 44/11
sits [1]  30/20
sitting [1]  44/25
situated [23]  51/16 52/18 53/20 54/1 54/2 54/3 54/7 55/3 60/22 61/18 62/12 62/21 63/7 64/16 64/18 65/16 65/22 68/5 69/12 69/22 70/11 71/7 75/5
situation [2]  15/7 56/18
six [5]  6/2 6/19 21/12 27/7 36/18
Sixth [1]  34/24

**S**
size [2] 68/12 69/18
slightly [1] 23/20
slow [1] 38/14
small [1] 13/8
smart [1] 64/22
so [115]
some [48] 10/2 10/22 13/6 16/5 17/6 17/24 19/9 27/3 28/17 28/17 28/24 28/25 29/1 35/21 39/13 42/9 44/6 47/16 47/20 47/25 49/2 49/7 49/9 50/21 50/25 52/11 52/13 55/25 57/3 58/12 58/25 60/2 63/16 65/3 67/15 68/12 70/13 72/24 72/25 73/17 73/20 74/5 74/5 74/6 74/25 75/12 76/23 80/3
someone [10] 5/3 12/21 15/5 15/23 16/4 18/23 19/1 19/2 51/5 60/23
something [9] 17/9 31/22 61/24 69/12 69/14 69/16 70/16 71/11 75/11
sometimes [5] 33/23 50/1 50/2 71/23 71/23
somewhat [1] 57/11
soon [2] 35/15 45/19
sorry [9] 3/18 19/24 20/1 30/1 30/18 33/8 36/1 39/23 70/18
sort [17] 16/5 17/6 19/10 38/21 54/14 60/2 60/18 61/16 63/16 65/22 66/7 69/19 69/23 73/20 74/19 75/12 77/22
sound [1] 35/11
sounds [3] 10/17 58/1 75/8
southeast [1] 67/12
sparked [1] 79/1
speak [5] 20/13 27/5 28/2 33/22 34/8 34/9 39/1 44/8 45/5 45/6 45/9 56/22 56/22 57/23 78/16
speaking [1] 78/17
speaks [1] 16/16
special [1] 53/14
specific [10] 39/3 39/3 41/21 44/7 44/10 44/24 45/7 60/18 65/17 73/4
specifically [3] 14/1 42/20 50/3
speedy [10] 32/20 33/12 36/17 37/17 41/10 41/17 42/1 43/23 44/4 56/8
spit [1] 76/25
spoiling [1] 16/4
spoke [2] 20/14 34/5
spoken [2] 28/14 28/18
spur [3] 16/6 17/7 19/15
spurred [1] 19/10
St [3] 21/7 21/8 22/4
stage [1] 13/12
stand [4] 22/21 24/21 39/2 59/16
stand-alone [1] 22/21
standard [9] 11/22 22/24 48/21 48/25 54/7 60/2 60/3 69/14 74/3
standing [1] 66/14
stands [1] 53/5
STANLEY [2] 1/20 4/7
starkly [1] 65/13
start [2] 53/2 68/3
started [2] 34/3 50/22
starting [1] 2/5
starts [2] 38/1 58/5
state [4] 21/7 45/20 45/22 62/9
stated [3] 22/18 38/1 56/15
statement [1] 17/11
statements [1] 19/11
states [17] 1/1 1/3 1/13 1/22 2/3 2/7 2/10 2/13 11/24 12/2 12/8 12/17 18/14 52/8 56/6 81/4 81/8
statistical [1] 50/4
statistics [1] 60/17
status [24] 1/12 5/1 5/14 10/16 26/9 27/17 30/6 31/13 31/19 33/21 35/16 35/19 36/5 37/11 37/19 37/25 38/24 43/11 43/15 43/17 43/20 45/17 46/7 81/7
statutes [1] 61/21

statutorily [1] 61/14
statutory [1] 61/8
stay [2] 23/10 47/8
steadfast [1] 76/10
steady [1] 14/11
stemming [1] 48/2
stenography [1] 1/25
step [2] 70/9 73/10
STEPHEN [2] 1/19 3/16
STEVEN [4] 1/8 4/12 8/8 8/8
STEVENS [7] 1/5 3/10 11/8 26/24 43/7 46/13 46/14
still [7] 27/21 32/9 34/12 34/12 34/19 44/17 52/8
stipulating [1] 49/14
Stone [1] 62/13
store [1] 21/2
strain [1] 60/3
strength [1] 52/22
strenuous [1] 52/22
strike [2] 53/1 63/11
strikes [1] 57/4
strong [4] 16/9 59/24 64/3 69/17
stronger [2] 63/21 73/8
strongly [2] 14/21 58/6
struck [2] 48/6 48/16
subject [1] 14/17
submit [15] 49/5 50/7 50/8 51/3 53/23 54/11 55/15 55/17 57/22 58/24 59/18 76/8 76/18 77/23 78/3
submitted [2] 43/24 58/23
subscribed [1] 81/17
subsequently [1] 51/13
subset [2] 65/1 65/8
substantially [3] 33/24 54/8 54/12
such [3] 13/2 22/23 74/18
sufficiency [1] 12/7
sufficient [4] 14/6 21/22 26/5 27/9
sufficiently [1] 52/25
suggest [4] 37/9 55/24 72/12 79/3
suggested [6] 15/1 26/16 33/8 65/18 66/11 69/9
suggesting [1] 29/23
suggestion [1] 21/22
suggestive [5] 16/5 17/15 19/2 58/6 58/10
suggests [3] 17/13 67/4 76/20
sui [3] 53/11 61/8 67/18
summer [9] 28/19 29/20 48/3 61/2 61/19 63/4 63/5 77/24 78/4
summertime [1] 29/7
Superior [1] 59/15
superseded [1] 40/1
superseding [4] 4/23 5/21 6/12 6/18 7/6 8/2 8/23 9/19 11/8 11/12 11/16
supervision [1] 20/17
supplement [3] 12/9 45/11 45/12
support [1] 78/6
supporter [3] 73/14 73/15 79/7
supporters [5] 73/24 74/11 74/14 78/14 78/19
supporting [1] 70/3
suppose [1] 13/8
supposed [5] 21/3 42/10 69/13 69/14 70/6
sure [6] 10/6 10/14 45/24 46/3 72/10 77/9
surely [1] 66/22
surmounted [1] 48/22
surrounding [3] 18/3 18/11 18/25
sustained [1] 67/19
swap [1] 42/21
sweep [1] 45/13
swept [1] 17/8

**T**
tactical [1] 15/21
tag [1] 76/6
tailor [1] 57/10
take [14] 15/6 15/13 16/17 17/1 21/10 22/4 25/14 37/10 52/7 53/15 56/10 75/15 75/18 80/9

taken [7] 33/21 33/22 46/7 57/23 66/1 71/14 73/14
takes [4] 20/23 20/24 20/25 20/25
taking [2] 23/3 23/7
talk [6] 5/10 27/3 27/15 30/5 45/12 71/6
talked [4] 22/11 28/11 61/6 67/18
talking [8] 23/5 35/8 62/12 63/2 65/1 68/4 70/9 74/17
talks [1] 49/7
tall [1] 31/6
tape [1] 81/15
teacher [1] 21/11
teacher's [1] 21/6
team [1] 45/18
teamed [1] 76/6
technicolor [1] 16/10
tell [8] 4/22 17/12 25/22 29/17 38/20 48/16 49/12 55/9
telling [1] 52/25
tells [1] 39/9
ten [3] 6/20 38/12 66/22
tend [1] 53/21
tendered [1] 42/11
tenor [2] 75/15 75/18
tension [1] 60/2
tentatively [1] 39/19
term [1] 48/24
terms [4] 18/2 32/3 32/10 63/19
terrace [2] 15/11 62/16
territory [1] 73/11
testimony [3] 13/5 62/18 81/7
tests [1] 62/12
Texas [4] 20/14 21/2 21/6 21/8
than [16] 18/4 23/8 23/20 35/13 39/22 50/13 60/4 66/17 66/21 67/16 67/20 68/21 70/12 74/3 74/25 75/10
Thank [39] 3/4 3/15 4/2 4/20 6/16 7/11 7/12 8/6 8/7 9/3 9/25 11/1 20/19 22/20 23/14 24/6 24/7 31/17 31/25 32/25 33/7 36/9 36/12 36/13 37/20 37/21 37/23 40/12 41/8 41/9 41/11 41/22 41/23 42/13 47/5 59/22 76/1 76/2 76/5
Thanks [3] 11/18 46/6 80/11
that [492]
that's [59] 4/21 11/24 12/8 12/10 12/17 13/10 15/22 18/19 20/7 23/4 26/11 29/10 30/25 34/22 35/14 35/22 38/20 40/5 41/3 41/8 42/3 42/8 42/10 42/11 43/24 45/16 47/16 50/4 50/5 50/17 52/11 56/18 57/5 58/6 60/7 60/7 60/8 60/13 62/24 64/7 64/18 65/7 67/19 67/21 68/6 68/24 69/9 69/10 69/22 69/23 70/6 70/16 71/18 72/6 73/2 77/13 79/9 79/21 79/23
their [19] 10/13 15/2 21/24 21/24 27/4 30/2 32/12 43/8 43/10 43/23 45/15 48/8 51/12 51/23 52/7 56/8 57/19 58/20 59/3
them [22] 15/2 15/4 16/1 20/14 20/24 20/25 20/25 22/3 26/3 26/6 28/1 42/19 43/4 45/4 49/8 58/5 67/13 69/7 69/8 71/3 72/11 77/7
themselves [1] 28/5
then [30] 4/24 5/15 12/3 23/7 29/5 29/19 31/23 34/3 34/4 34/6 34/8 34/14 35/19 36/2 36/3 36/6 37/12 39/8 50/10 51/9 52/24 55/12 58/5 58/21 59/9 60/23 76/15 78/1 78/6 79/13
there [89]
there's [21] 4/23 10/2 12/25 13/22 13/25 23/8 25/4 25/8 33/17 38/8 43/23 44/25 47/19 48/17 53/14 58/14 66/18 67/1 72/23 76/10 77/19
therefore [2] 13/12 13/14
these [31] 27/23 28/25 35/21 43/25 45/17 46/2 46/2 46/3 51/3 51/15 54/23 54/24 55/3 55/10 56/7 56/16 58/4 58/12 58/15 61/17 62/15 63/7 65/13 68/17 69/3 69/19 71/4 71/8 73/3 75/1 76/22
they [48] 2/17 2/19 17/23 20/15 20/16 20/16 20/17 21/1 22/5 23/8 26/2 26/6 28/1 28/3 28/5 30/13 43/24 44/14 50/21 51/13 52/7 54/7 54/21 54/22 54/22 64/23 65/16 67/23 67/23 68/17

**T**

they... [18]  70/16 70/18 71/7 71/13 71/13 76/12
76/13 76/17 76/22 77/1 77/8 77/15 77/15 79/1
79/3 79/15 79/21 79/23
they're [1]  21/25
thing [9]  16/6 17/7 19/15 23/5 44/16 46/23
65/25 75/23 77/10
things [12]  14/15 16/23 24/21 27/17 27/21
38/13 45/4 45/15 63/14 64/2 64/5 76/12
think [121]
Thirteen [1]  17/17
Thirty [14]  6/3 6/5 6/5 6/22 6/24 7/18 7/19
8/13 8/14 8/16 9/8 9/9 9/10 9/12
Thirty-five [5]  6/5 6/24 7/19 8/16 9/12
Thirty-four [5]  6/3 6/22 7/18 8/14 9/10
Thirty-nine [1]  6/5
Thirty-one [1]  9/8
Thirty-two [1]  9/9
this [93]
those [38]  19/18 20/18 21/14 26/4 26/8 26/11
27/12 28/4 28/9 28/17 34/20 38/22 42/4 44/3
48/4 48/5 50/11 51/17 52/18 54/10 55/2 55/2
60/19 60/19 61/16 61/18 63/18 63/22 65/16
65/22 66/5 69/22 74/10 77/16 77/17 79/8 80/2
80/5
though [7]  28/24 40/4 41/18 49/7 59/11 70/2
74/12
thought [2]  35/12 55/24
thousands [1]  27/20
threat [1]  61/3
three [15]  5/22 6/1 6/10 7/4 7/25 8/21 9/12
9/17 27/9 29/18 30/22 32/13 33/23 39/14 76/7
three-week [2]  27/9 30/22
threw [3]  48/7 48/9 59/8
through [8]  15/14 32/9 35/10 63/24 64/4 71/19
72/13 79/10
throughout [2]  33/20 68/11
thrown [1]  13/3
thus [1]  12/11
tightly [1]  67/10
time [33]  3/23 5/8 6/15 10/9 10/11 15/16 19/11
21/1 23/3 23/7 23/19 26/5 27/9 27/12 29/1
29/21 29/24 30/9 33/6 33/20 35/11 39/13 41/13
41/17 44/2 49/19 57/2 60/13 62/11 71/22 71/22
72/13 72/16
timeframe [1]  29/3
times [4]  10/7 33/23 63/22 65/20
timing [5]  56/5 57/25 58/9 58/17 63/15
today [7]  3/13 4/14 4/22 28/10 35/13 36/6
45/20
together [5]  26/15 26/16 39/6 43/4 81/14
told [1]  76/16
toll [1]  43/19
tolling [5]  32/20 33/6 33/11 41/9 44/4
tons [2]  72/4 72/4
too [2]  35/14 57/19
took [3]  15/10 48/3 68/3
top [1]  63/24
tossed [2]  12/21 72/1
toward [1]  64/24
transcript [3]  1/12 1/25 81/13
transferred [6]  19/7 34/3 34/4 34/6 34/14
34/18
transforms [1]  34/8
transition [1]  61/15
treated [2]  68/18 68/21
treating [1]  71/2
treatment [6]  17/19 18/20 19/5 19/5 35/10
64/19
tremendous [1]  27/19 43/3 77/6
trespassery [3]  18/18 61/23 69/8
TREVOR [1]  1/12
trial [62]  7/10 8/4 12/12 13/6 13/11 26/7 26/14
27/1 27/4 27/6 27/9 27/10 27/11 27/13 27/16
27/23 28/16 28/19 29/9 29/15 29/19 29/21 30/3

**U**

30/9 30/19 30/22 32/3 32/5 32/8 32/14 32/16
32/20 32/22 33/8 33/13 33/17 33/20 34/11 34/18
36/19 37/8 37/13 37/17 38/4 38/5 39/12 39/15
39/18 39/21 39/25 40/4 41/8 41/10 41/13 41/18
42/1 42/4 43/7 43/8 43/11 43/23 44/4 56/8
trials [2]  12/10 43/5
tricky [1]  27/2
tried [2]  15/2 39/6
TRISTAN [1]  1/5 3/10
trouble [2]  46/8 51/7
troubling [1]  55/25
true [3]  12/25 50/17 77/13
Trump [12]  50/10 50/18 55/12 56/3 58/4 58/13
58/14 78/6 78/14 78/14 78/15 79/7
truth [1]  12/1
try [5]  15/6 17/21 26/15 57/10 69/13
trying [4]  18/22 21/14 72/18 74/8
Tuitt [4]  60/5 60/10 60/13 68/8
tunnel [2]  62/16 69/4
turn [2]  39/8 45/3
turned [1]  44/11
turns [1]  70/2
tweet [1]  64/22
Twenty [8]  5/24 6/1 6/2 6/19 6/21 8/10 8/12
9/7
Twenty-eight [1]  8/10
Twenty-nine [1]  8/12
Twenty-seven [2]  6/21 9/7
Twenty-six [1]  6/2
Twenty-three [1]  6/1
twice [1]  31/9
two [29]  5/22 6/9 7/3 7/24 8/16 8/20 9/9 9/16
23/20 26/13 26/18 26/19 33/17 34/7 34/14
39/16 42/4 48/17 53/6 54/23 55/3 60/8 60/22
75/15 75/20 77/20 77/22 78/2 79/14
two-part [1]  60/22
type [1]  75/6
types [1]  67/24
typically [1]  50/4

**U**

U.S [14]  34/16 52/2 52/6 52/10 53/12 55/17
57/4 58/24 59/19 61/5 64/10 65/18 71/1 71/14
ultimately [1]  66/4
unable [1]  21/3
unclear [2]  30/21 39/1
under [23]  9/24 12/14 14/1 14/19 20/23 41/17
47/12 48/25 49/22 50/10 50/15 51/2 52/24
54/10 54/11 58/13 58/16 58/22 59/25 65/8
69/10 73/2 80/9
under that [1]  48/25
underlying [1]  53/21
understand [15]  11/3 26/17 28/25 30/8 32/15
36/18 37/15 39/13 40/23 41/3 41/7 43/20 46/1
49/17 58/10
understanding [4]  34/10 34/15 45/18 57/14
understands [1]  10/6 10/7 10/14
Understood [2]  35/8 46/5
unfolded [1]  58/9
unimportant [1]  63/6
unique [2]  53/9 77/22
UNITED [16]  1/1 1/3 1/13 1/22 2/3 2/7 2/10
2/13 11/24 12/1 12/8 12/17 18/14 52/8 81/4
81/8
universe [4]  67/10 67/15 68/22 70/2
university [1]  21/9
unless [1]  48/14
unlike [1]  67/19
unprotected [1]  15/3
unrealistic [1]  29/14
unreasonable [1]  23/22
untenable [1]  53/25 54/14
until [8]  10/18 23/17 23/23 35/19 36/4 37/8
43/19 44/4
unusual [6]  11/24 33/19 72/2 72/7 72/13 72/23
up [22]  10/1 17/8 17/25 19/12 29/23 30/6 34/19

26/17 37/10 38/7 40/6 40/22 41/18 59/15 60/21
64/8 66/3 66/7 71/8 71/8 73/9 74/8
update [3]  27/17 45/19 45/23
updates [1]  45/17
upheld [1]  18/7
upon [2]  40/6 81/7
URSO [10]  1/17 2/21 2/23 3/1 11/3 11/5 32/1
32/16 32/25 33/3
us [15]  4/21 34/8 34/9 34/25 38/2 38/3 38/3
38/4 38/18 57/8 68/1 69/6 69/10 73/10 75/16
USC [4]  12/14 13/14 13/24 14/1
used [3]  11/20 15/5 15/15
uses [1]  73/21
using [4]  6/3 7/16 8/13 9/10
usually [1]  12/24

**V**

various [4]  15/4 34/22 61/22 66/2
vast [3]  49/8 51/1 76/11
vehicle [1]  12/7
vein [1]  18/6
versus [9]  2/3 11/24 12/2 12/9 12/18 18/14
56/3 64/17 81/8
very [22]  24/4 25/13 28/18 31/6 37/13 39/11
41/5 43/25 45/23 46/22 51/14 55/25 62/14
63/13 69/24 72/1 72/19 73/3 75/20 77/1 77/22
80/10
vested [1]  64/1
via [1]  30/11
viable [2]  26/17 42/25
vice [1]  74/17
video [4]  63/21 76/22 77/1 77/17
videos [1]  29/12
view [1]  70/7
views [1]  73/3
vigorously [1]  62/4
violated [1]  52/22
violations [3]  34/23 34/24 35/21
violence [13]  6/8 6/11 7/2 7/5 7/22 7/25 8/19
8/21 9/15 9/18 14/2 21/16 55/1
violent [7]  15/3 15/8 18/9 18/13 18/24 20/6
51/11
volume [1]  35/9
voluminous [1]  35/9
vote [1]  61/13

**W**

wait [1]  69/5
waiting [4]  10/18 27/25 37/17 42/9
waive [16]  6/12 6/14 7/6 7/8 8/1 8/3 8/22 8/25
9/19 9/21 30/12 37/17 41/10 41/17 42/1 43/22
waived [4]  3/1 3/11 3/13 56/8
waiver [1]  4/4
waiving [6]  11/3 11/4 11/8 11/12 11/15 44/4
waning [1]  58/14
want [21]  4/24 5/10 5/13 25/25 26/6 27/15
37/16 40/24 40/25 41/5 42/16 60/21 61/9 69/2
71/3 71/5 72/3 72/12 74/7 74/8 75/13
wanted [4]  28/10 36/10 37/2 45/11
wants [3]  36/5 56/13 68/2
warrant [1]  66/3
warranted [1]  14/9
was [68]  15/3 15/15 16/18 17/6 18/2 18/9 18/13
18/24 19/10 19/15 21/5 21/9 23/4 26/17 30/7
30/18 34/3 34/6 34/17 40/2 40/14 41/7 44/12
44/15 46/11 48/10 52/24 53/13 54/9 54/10
55/23 55/25 59/7 59/8 59/9 59/10 59/14 60/1
60/14 60/16 60/17 61/3 61/9 62/9 62/20 64/10
64/10 64/11 64/12 64/13 64/13 66/10 68/20
68/21 72/23 72/24 73/20 76/13 76/14 76/15
76/16 77/2 77/10 77/22 78/13 79/11 80/2 80/2
Washington [3]  1/4 1/23 61/2
wasn't [2]  16/5 41/6
way [15]  10/10 15/16 55/17 58/9 58/24 59/19
64/24 65/22 68/8 69/11 74/25 75/22 76/8 76/17
79/21

# W

ways [2]  60/1 63/17
we [129]
we'd [6]  7/8 7/10 8/3 35/23 39/21 40/3
we'll [2]  4/23 43/16
we're [19]  5/14 32/11 35/8 38/12 41/6 41/12
42/11 54/17 63/1 63/13 65/1 67/13 68/9 68/10
70/8 70/13 73/13 73/14 73/15
we've [9]  43/11 49/1 50/7 56/19 63/21 70/20
71/12 74/21 80/5
weak [2]  76/21 80/2
weapon [22]  6/3 6/7 6/9 7/1 7/3 7/17 7/22 7/24
8/13 8/18 8/20 9/10 9/14 9/16 11/20 12/14
13/13 15/7 48/11 53/5 53/8 59/10
weapons [2]  16/1 16/3
wear [1]  64/22
wearing [3]  15/21 77/11 77/12
Wednesday [1]  38/3
week [8]  12/24 26/3 27/9 28/16 30/7 30/22 38/2
45/20
weekend [1]  4/14
weeks [6]  23/20 27/8 29/18 39/14 39/16 50/23
weigh [1]  16/19
weight [3]  14/15 16/7 48/24
welcome [2]  47/3 47/8
well [38]  4/18 5/8 13/18 16/8 21/11 21/13
22/10 24/4 27/5 27/22 30/20 31/12 33/25 39/7
40/19 41/15 41/19 42/3 42/21 43/25 46/22
47/22 50/1 50/21 51/1 52/7 55/7 57/9 59/5
60/13 63/14 65/15 68/1 70/8 77/21 78/9 78/24
80/11
well-being [1]  33/25
went [3]  34/4 52/24 78/15
were [77]  17/16 27/3 28/9 29/3 34/13 35/12
48/4 48/8 48/17 49/2 49/8 50/9 50/14 50/16
50/22 50/25 51/10 52/11 52/13 52/25 53/7
54/10 54/11 54/22 54/22 54/24 55/10 55/11
55/13 56/7 56/8 56/16 58/2 58/13 59/2 60/8
60/19 60/19 62/15 63/6 64/14 64/21 64/23
66/12 66/23 66/24 68/9 68/17 68/18 69/5 69/5
70/14 71/11 73/8 73/13 73/24 74/10 74/10
74/16 74/21 76/12 76/21 76/23 77/13
77/14 77/15 77/15 77/18 78/1 78/3 78/4 78/16
78/17 79/1 79/2 79/3
weren't [2]  66/9 76/22
west [3]  15/11 62/16 69/4
Western [1]  20/13
what [55]  4/22 5/12 12/10 13/19 14/22 17/4
17/23 21/24 22/8 23/3 23/6 23/11 24/10 24/16
25/7 26/20 27/14 35/1 37/15 39/6 39/24 43/12
45/7 46/11 49/6 52/1 52/25 55/9 57/7 60/13
60/17 60/21 61/1 61/20 62/2 63/4 63/9 63/11
63/13 66/14 69/2 70/19 71/3 71/18 73/5 73/9
73/20 74/24 75/16 78/23 79/4 79/9 79/15 79/16
79/17
what's [2]  57/7 74/22
when [15]  5/8 10/12 10/13 12/20 22/5 39/3
47/20 56/8 56/23 58/2 62/24 63/16 65/21 69/18
72/4
where [24]  5/14 15/7 17/8 18/7 21/8 24/21
25/22 33/22 35/19 39/2 49/10 51/10 53/6 54/9
54/17 54/20 60/15 61/10 63/12 69/14 69/16
76/22 76/24 77/20
whereof [1]  81/17
wherever [1]  62/23
whether [9]  12/3 26/6 28/2 28/5 52/18 53/20
54/21 60/23 79/11
which [28]  5/21 6/18 7/14 8/9 9/5 12/5 13/18
14/3 21/2 21/7 21/8 21/11 27/18 34/15 37/12
38/5 43/4 45/20 46/1 47/25 49/6 56/9 60/22
61/2 61/24 63/16 71/15 73/3
while [4]  29/23 30/6 41/19 51/12
white [3]  60/19 66/24 67/13
who [45]  4/8 4/13 16/4 17/20 18/17 18/24 19/1
19/2 20/22 20/23 20/23 31/11 31/20 31/21 35/4
38/11 42/16 43/22 44/25 47/3 48/6 48/9 50/25
51/6 51/24 54/20 54/21 57/15 61/1 61/11
60/19 60/19 64/13 65/2 65/2 65/21 67/11 74/10
74/13 77/11 77/11 77/12 77/12 77/14 78/3
who's [2]  15/23 28/12
whoa [2]  26/22 26/22
whole [6]  33/21 44/10 45/17 66/18 68/11 72/5
whose [1]  18/25
why [14]  21/21 25/2 25/22 30/5 34/20 36/14
43/4 52/11 57/22 59/4 62/2 62/3 78/10 79/15
widely [1]  74/16
wife [2]  21/1 22/6
will [30]  10/10 10/15 10/19 13/14 14/13 17/6
20/17 26/4 27/8 29/7 31/20 36/7 37/12 39/10
39/10 39/11 43/5 43/8 43/11 44/18 45/3 45/13
45/20 45/23 46/6 46/18 47/4 55/17 65/19 66/17
William [1]  7/14
willing [2]  42/17 43/22
willy [1]  72/1
willy-nilly [1]  72/1
window [1]  15/15
wing [2]  78/16 79/4
wish [16]  6/13 6/14 7/7 8/2 8/23 9/20 20/8
20/20 32/1 32/20 33/13 37/5 40/10 40/20 42/6
76/3
wishes [2]  31/20 31/21
withdrawing [1]  26/8
without [1]  71/24
witness [1]  81/17
witnesses [1]  43/5
woman [1]  59/7
won't [2]  27/22 39/1
wonderful [1]  46/2
WOODWARD [7]  1/20 4/8 4/10 10/4 37/22
44/20 45/7
word [1]  73/21
work [8]  23/1 30/15 31/1 31/23 40/16 43/2
48/7 69/12
working [3]  22/6 42/12 46/1
works [6]  21/1 40/19 42/2 68/7 70/5 75/23
world [1]  68/13
worth [1]  73/9
would [82]
wouldn't [5]  54/19 65/6 67/14 67/23 68/24
wounds [1]  64/9
writing [1]  35/21
written [2]  24/13 46/19
wrong [1]  78/10
wrote [1]  17/12

# Y

Yakou [1]  11/24
Yeah [7]  29/17 47/7 56/24 59/2 70/1 72/17
80/8
year [5]  12/24 18/15 20/22 64/13 77/22
years [9]  49/14 53/13 58/21 60/4 60/9 61/10
72/18 75/21 77/20
yes [39]  3/3 3/14 6/14 10/5 10/19 10/25 11/13
11/17 20/21 23/13 24/1 24/22 25/12 30/3 31/3
31/25 32/3 32/18 32/23 35/16 36/23 37/1 38/17
40/9 40/14 40/16 40/21 41/5 41/12 42/14 43/2
46/10 47/18 47/23 48/20 58/8 58/16 76/12 77/1
yet [8]  4/23 38/10 41/21 44/17 44/17 53/3
65/10 69/18
you [254]
you're [11]  22/10 22/12 23/24 29/2 29/23
29/23 29/24 30/6 70/3 75/8 79/18
you've [12]  28/11 28/12 47/7 58/19 64/24
65/11 67/15 69/18 69/19 73/16 74/3 74/24
your [138]
yourself [1]  2/4

# Z

Zoom [2]  30/11 31/14