UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

STEVEN CAPPUCCIO,

         Defendant.

Case No. 21-cr-40-8-TNM

### MR. STEVEN CAPPUCCIO'S TRIAL BRIEF

MR. STEVEN CAPPUCCIO, through his attorney, respectfully submits this brief summarizing his evidence at trial and legal issues that may be brought before the Court. It is anticipated the Government will introduce video evidence, testimony from law enforcement witnesses, and admissions made by defendants in video-taped interviews.

### BACKGROUND

Mr. Cappuccio was one of the thousands present in Washington D.C. during the well-documented events of January 6, 2021.

The Government defines the timeline applicable to Mr. Cappuccio in its Opposition to Defendants Judd's, Cappuccio's, and Klein's Severance Motions (Doc. No. 277), apparently using video records from various sources. The following facts are in accord or suggest slight deviations from the Government's proposed facts. Mr. Cappuccio was in Washington, D.C. at 1:30 p.m. He entered the Lower West Terrace

Tunnel of the United States Capitol Building at approximately 3:06 p.m. At 3:11 p.m., Mr. Cappuccio is seen with his hands on the gas mask of Metropolitan Police Department Officer D.H., who was stationed at the door and at the front of the group of law enforcement positioned in front of the surging crowd. At 3:13 p.m., Mr. Cappuccio is seen exiting the tunnel holding a baton. *Id.* at 10.

## I.  APPLICABLE LAW

The Government alleges the following nine offenses specific to Mr. Cappuccio in the Fifth Superseding Indictment (Doc. No. 179):

(1) 18 U.S.C. §§ 111(a)(1), 2 (Assaulting, Resisting, or Impeding Certain Officers, Aiding and Abetting) (Count 28)
(2) 18 U.S.C. §§ 111(a)(l) and (b) (Inflicting Bodily Injury on Certain Officers) (Count 29)
(3) 18 U.S.C.§§ 2111, 2 (Robbery) (Count 30)
(4) 18 U.S.C. §§ 1512(c)(2) and 2 (Obstruction of an Official Proceeding) (Count 34)
(5) 18 U.S.C. § 231(a)(3) (Civil Disorder) (Count 35)
(6) 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon) (Count 42)
(7) 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A) (Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon) (Count 50)
(8) 40 U.S.C. §§ 5104(e)(2)(D), 2 (Disorderly Conduct in a Capitol Building) (Count 52)
(9) 40 U.S.C. §§ 5104(e)(2)(F), 2 (Act of Physical Violence in the Capitol Grounds or Buildings) (Count 53)

A. *Assaulting, Resisting or Impeding Certain Officers (Count 28)*

One commits the offense of assaulting, resisting, or impeding, as set forth in section 111(a)(1) of Title 18 of the United States Code, when that individual "forcibly

assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties." As relevant to the present count, and to justify a sentence of more that 1 year in prison, the Government would have to establish that the conduct included "physical contact with the victim of that assault or the intent to commit another felony." *Id.* To be convicted, "a defendant must: (1) forcibly; (2) assault, resist, oppose, impede, intimidate, or interfere with; (3) a designated federal officer; (4) while engaged in or on account of the performance of official duties. In addition, the defendant must have: (5) the "intent to do the acts" specified in the subsection." *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002).

The Indictment does not specifically allege Mr. Cappuccio aided and abetted others committing the offense, *see United States v. Lam Kwong–Wah*, 924 F.2d 298, 302 (D.C. Cir. 1991) (holding that aiding and abetting need not be specifically alleged), but the Count caption declares the Government's intention to pursue a conviction on this theory. As such, the Government must establish beyond a reasonable doubt "(1) the specific intent to facilitate the commission of a crime by another; (2) guilty knowledge on the part of the accused; (3) that an offense was being committed by someone; and (4) that the accused assisted or participated in the commission of the offense." *United States v. Washington*, 12 F.3d 1128, 1136 (D.C. Cir. 1994).[1]

---

[1] This approach is repeated in Counts 30, 34, 52 and 53. The same aiding and abetting standard would thus apply to those counts.

### B. *Inflicting Bodily Injury on Certain Officers (Count 29)*

One commits the offense of inflicting bodily injury on certain officers, as set forth in section 111(b) of Title 18 of the United States Code and limited by the Government's allegations, when that individual "in the commission of any acts described in subsection (a)[1], uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component)," specifically a baton.

To be convicted, the Government must establish that the defendant has the intent to use the dangerous or deadly weapon. *Arrington*, 309 F.3d at 44-45.

For an object that is not inherently deadly, specifically regarding a "dangerous or deadly weapon," the "object must be capable of causing serious bodily injury or death to another person and the defendant must use it in that manner."[2] *Id.* at 45.

### C. *Robbery (Count 30)*

One commits the offense of robbery, as set forth in section 2111 of Title 18 of the United States Code, when that individual "by force and violence, or by intimidation, takes or attempts to take from the person or presence of another anything of value." The thing of value is alleged to be a baton.

The Government must establish that a defendant knowingly took the property of another by force, violence, or intimidation. *See Carter v. United States*, 530 U.S.

---

[2] "Dangerous or deadly weapon" is found in Counts 42 and 50. The definition would thus apply to those Counts as well.

255, 268 (U.S.,2000)(holding structurally similar 18 U.S.C. § 2113 requires general intent).

   *D. Obstruction of an Official Proceeding (Count 34)*

One commits the offense of Obstruction of an Official Proceeding, as set forth in section 1512(c) of Title 18 of the United States Code, when that individual "corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so."

The defense moved to dismiss Count 34 (Doc. No. 253) arguing that (1) the alleged conduct falls outside the scope of § 1512(c); (2) certification of the Electoral College vote does not qualify as an "official proceeding"; and (3) 'corruptly', as used in § 1512(c)(2), is void for vagueness. This Court denied the Motion. (Doc. No. 409). The defense nonetheless re-urges its objections to Count 34 as set forth in the Motion to Dismiss Count 34 (incorporated herein by reference) for purposes of appeal.

After this Court's Order issued, a highly divided panel of the District of Columbia Court of Appeals recently reversed and remanded dismissals largely based on the aforementioned grounds, *see United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). The Court of Appeals subsequently stayed issuance of the mandate until September 11, 2023, pending final disposition of a petition for writ of certiorari. *United States v. Fischer*, 2023 WL 3985537, Nos. 22-3038, 22-3039, & 22-3041 (D.C. Cir. June 13, 2023).

According to the recent decision, congressional certification of the Electoral

College count is an "official proceeding." *Fischer*, 64 F.4th at 342. The majority opinion however declines to define 'corruptly.' Id. at 341 ("It is more prudent to delay addressing the meaning of 'corrupt' intent until that issue is properly presented to the court."). The concurrence laments the failure to define 'corruptly' for purposes of section 1512(c). Circuit Judge Katsas opines 'corruptly' "requires a defendant to act 'with an intent to procure an unlawful benefit either for himself or for some other person.' *Marinello v. United States*, ─── U.S. ───, 138 S. Ct. 1101, 1114, 200 L.Ed.2d 356 (2018) (Thomas, J., dissenting) (cleaned up). The defendant must 'not only kn[ow] he was obtaining an 'unlawful benefit,'" it must also be "his "objective" or "purpose." Id.' *Fischer*, 64 F.4th at 352 (Katsas, J., concurring). Without waiving any objections to Count 34, it is respectfully submitted Circuit Judge Katsas's definition of 'corruptly' is adequate for the present proceeding.

E.  *Civil Disorder (Count 35)*

One commits the offense of civil disorder, as set forth in section 231(a)(3) of Title 18 of the United States Code, when that individual "commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function."

"Civil disorder" is "any public disturbance involving acts of violence by

assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

Mr. Cappuccio joined David Lee Judd's motion to dismiss Count 34 (Doc. Nos. 254 & 268) arguing that the section (1) is overbroad and unconstitutionally vague, specifically § 231(a)(3)'s imprecise and subjective standards fail to provide fair notice as to what conduct is criminal and creates significant risk of arbitrary enforcement; and (2) several of the statute's terms are so broad and indefinite as to impose unqualified burdens on protected expression. This Court denied the Motion. (Doc. No. 409). The defense nonetheless re-urges and incorporates by reference its objections to Count 35 as set forth in the Motion to Dismiss Count 35 for purposes of appeal.

Without waiving any objection to the sufficiency of Count 35, it is respectfully submitted that the Government's previously proposed standard set forth in the Joint Proposed Jury Instructions at 10 (Doc. No. 76) as filed in *United States v. Robertson*, 21-cr-34 (CRC), provides a working definition of the offense for purposes of the present proceeding.

> First, the defendant knowingly committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.
>
> Second, at the time of the defendant's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.
>
> Third, the civil disorder in any way or degree obstructed, delayed, or

adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

The defense nonetheless urges the dismissal of Count 35.

### F. *Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (Count 42)*

One commits the offense of disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, as set forth in section 1752(a)(2), (b)(1)(A) of Title 18 of the United States Code, when that individual "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." The Government seeks an enhanced statutory maximum pursuant to subsection (b)(1)(A), which requires proof "the person, during and in relation to the offense, uses or carries a deadly or dangerous weapon or firearm," specifically a baton.

Mr. Cappuccio joined[3] David Lee Judd's motion to dismiss Count 42 (Doc. Nos. 256 & 268) arguing, *inter alia*, that the section is inapplicable to the present offense conduct as "restricted buildings or grounds" requires that the Vice President only "temporarily visit" the United States Capitol. As the Vice President maintains an office in the Capitol, the Indictment fails to state an actionable violation. This Court denied

---

[3] In joining David Lee Judd's Motion, the defense explained that Counts 38 and 46, applicable to David Lee Judd, were substantively identical to Counts 42 and 50. (Doc. No. 268).

8

the Motion, adding on page 3 that final determinations as to whether the Vice President's presence at the Capitol qualifies as a "temporary visit" is best left to trial and a renewed Rule 29 motion if such were not proved by the Government.[4] (Doc. No. 409). Acknowledging this Court's invitation but mindful of possible appellate waiver, the defense re-urges its objections to Count 42 as set forth in the Motion to Dismiss.

As relevant to the present case, "restricted buildings or grounds" is defined as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting . . . . " 18 U.S.C. § 1752(c)(1)(B). One need not scour historical records to identify the historical connection between Vice President and the Capitol, as such can be found on the official site of the United States Senate.

> The United States Constitution designates the vice president of the United States to serve as president of the Senate and to cast the tie-breaking vote in the case of a deadlock. To carry out these duties, the vice president has long had an office in the Capitol Building, just outside the Senate chamber.
>
> Due to lack of space in the Capitol's old Senate wing, early vice presidents often shared their room with the president. Following the 1850s extension of the building, the Senate formally set aside a room for the vice president's exclusive use. John Breckinridge of Kentucky was the first to occupy the new Vice President's Room (S–214), after he

---

[4] In its Order on page 3, this Court wrote "At this stage, the Court agrees . . . that the Vice President can temporarily visit his Capitol office. . . . But Defendants appear to make a factual argument that Vice President Pence's visit on January 6, steeped as it was in constitutional implications, was not a temporary visit. . . . That is best left for trial, where the Government must offer proof to meet its burden. . . . Thus, the Court denies this motion to dismiss without prejudice to it being re-raised at the Rule 29 conference." (Citations omitted).

9

> gavelled the Senate into session in its new chamber in 1859.
>
> Over the years, S–214 has provided a convenient place for the vice president to conduct business while at the Capitol. Until the Russell Senate Office Building opened in 1909, the room was the only space in the city assigned to the vice president, and it served as the sole working office for such men as Hannibal Hamlin, Chester Alan Arthur, and Theodore Roosevelt.

The Vice President's Room, https://www.senate.gov/artandhistory/art/resources/pdf/Vice_President_s_Room.pdf.

Courts have reasoned that "temporarily visiting," applying selected Dictionary meanings, means going to a location "for a particular purpose, be it 'business, pleasure, or sight-seeing,' and for a limited time, which could be 'brief' or 'extended' while nonetheless remaining 'temporary.'"

*United States v. McHugh*, 583 F.Supp.3d 1, 33 (D.D.C. 2022). In commonsense parlance, one does not 'visit' a workplace. That person "goes to work."  An office with one's name on the door is a defining characteristic of working at a location.

In this case, the Vice President, in performance of a Constitutionally delegated role, has maintained an Office in the United States Capitol for more than 150 years. The role performed on January 6, 2021 by the Vice President was no impromptu ceremony or spontaneous stop at the corner store, nor travel to auditorium or park for a scheduled speech, which would themselves seem a more appropriate application as a location "temporarily visited" by the Vice President in a commonsense approach. Instead, it is an official function supported by longstanding historical and legal

precedent. Any concern that a contrary interpretation would leave the criminal conduct unaddressed ignores the violations alleged in Counts 52 and 53, specifically addressed to the acts at the United States Capitol Building. The Capitol is a historical landmark and fixed structure. Congress is likely well aware of protective measures and associated sanctions required to safeguard that location. As such, it would be illogical to suggest presence at a well-defined work location is a 'visit' or 'temporary' for purposes of seeking unprecedented application of section 1752(a)(2).

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances or interferes with another person by jostling against or unnecessarily crowding that person. "Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process. Redbook 6.643.

### G. Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (Count 50)

One commits the offense of engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, as set forth in section 1752(a)(4), (b)(1)(A) of Title 18 of the United States Code, when that individual "knowingly engages in any act of physical violence against any person or property in any restricted building or grounds." The Government seeks an enhanced statutory maximum pursuant to subsection (b)(1)(A), which requires proof "the person, during and in relation to the offense, uses or carries a deadly or dangerous weapon or firearm," specifically a baton.

11

As with Count 42, Mr. Cappuccio joined David Lee Judd's motion to dismiss Count 50 (Doc. Nos. 256 & 268) on the grounds previously described. Acknowledging this Court's invitation to revisit the "temporarily visiting" issue but mindful of possible appellate waiver, the defenses re-urges its objections to Count 42 as set forth in the Motion to Dismiss.

*H. Disorderly Conduct in a Capitol Building (Count 52)*

One commits the offense of Disorderly Conduct in a Capitol Building, as set forth in section 5104(e)(2)(D) of Title 40 of the United States Code, when that individual "willfully and knowingly . . . [u]tter[s] loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress.

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. *United States v. Bryan*, 524 U.S. 184, 190 (1998).

*I. 40 U.S.C. §§ 5104(e)(2)(F), 2 (Act of Physical Violence in the Capitol Grounds or Buildings) (Count 53)*

One commits an act of physical violence in the Capitol grounds or buildings, as set forth in section 5104(e)(2)(F) of Title 40 of the United States Code, when that

individual "willfully and knowingly . . . engage[s] in an act of physical violence in the Grounds or any of the Capitol Buildings."

## II. DEFENSE WITNESSES

The defense expects to call Dr. Brian Cutler, who will testify based on his education, training and experience, and following a review of the evidence produced in this case and specifically identified in his report, that any eyewitness identification offered under the circumstances present at the United States Capitol on January 6 would be suspect/unreliable given effect of impact of distractions, impact of extreme stress, confidence and accuracy, and impact of viewing body worn camera footage on memory and recall.

The defense also expects to call Dr. Stephen N. Xenakis, MD. Dr. Xenakis will testify, based on his education, training and experience and after a review of the medical records of Mr. Steven Cappuccio documenting a diagnosis of Post-Traumatic Stress Disorder (PTSD) by treating physicians, that under the circumstances present on January 6 specifically involving stress, aggression and chaos, and identified features of PTSD, including a disproportionate "fight of flight" response and a reliving of prior trauma, Mr. Cappuccio's actions could not be characterized as intentionally or willfully done.

## III.   STIPULATIONS

The defense is not opposed to stipulations of law, fact, or evidence admissibility when appropriate. It is respectfully submitted that all stipulations be consolidated in the Government Trial Brief.

Respectfully submitted,

Maureen Scott Franco
Federal Public Defender


    /S/
MARINA THAIS DOUENAT
Assistant Federal Public Defender
Western District of Texas
727 E Cesar E. Chavez Boulevard
Suite B-207
San Antonio, TX 78206
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I, Marina-Thais Douenat, Assistant Federal Public Defender for the Western District of Texas, hereby certify that on the 28th day of June 2023 filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ MARINA-THAIS DOUENAT
Assistant Federal Public Defender