UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEVEN CAPPUCCIO,<br><br>Defendant. | Case No. 21-cr-40-8-TNM |

### MR. STEVEN CAPPUCCIO'S SUPPLEMENTAL TRIAL BRIEF

MR. STEVEN CAPPUCCIO, through his attorney, respectfully submits this brief to address this Court's concerns identified during the hearing conducted on July 11, 2023, directed to the testimony of defense experts Brian Cutler and Brigadier General Stephen N. Xenakis, M.D.  The following Brief focuses on the issues understood as remaining as raised in the Government's separate motions to exclude the testimony of the defense expert witnesses.

### I.  DR. CUTLER

The Government argues (1) the proposed testimony involving the psychological factors that could have affected the accuracy of D.H.' recollections and testimony about who assaulted him and the actions taken by the perpetrator(s) would be inappropriate absent a prior interview of D.H. by the expert and (2) proposed testimony directed to D.H.'s recollection, rather than identification of the defendant, should be excluded.

1

### A. Interview Requirement

There is no requirement that an expert interview an adverse witness prior to offering an opinion involving general psychological, sociological, or behavioral principles. *See Scott v. Ross*, 140 F.3d 1275, 1286 (9th Cir. 1998)(allowing expert testimony without plaintiff interview discussing history and general practice of deprogramming and the origin and practices of the "anti-cult movement" in case involving civil rights claim by church member against nonprofit cult awareness organization); *United States v. Halamek*, 5 F.4th 1081, 1088 (9th Cir. 2021)(allowing testimony on 'grooming' in abuse of minor cases with requirement that defendant be interviewed before opinion). Experts are frequently called upon to offer scientific principles to a specific case. Dr. Cutler's testimony offered to call into question D.H.'s identification is no different.

It is further worth noting that the principles espoused by Dr. Cutler are general in nature and do not suggest a psychoanalysis of D.H. These well-founded principles are designed to inform the trier of fact on complex studies to assess properly the claimed certainty of D.H.'s eyewitness identification. Contrary to the Government's suggestion, this approach in expert testimony is not akin to a mental health evaluation, in which the patient's responses inform the opinion.

### B. Recollection versus Identification

Dr. Cutler's testimony incorporates both recollection and identification. His expertise touches on both topics, as D.H. addresses a matter occurring in the past

(recall) while identifying Mr. Cappuccio as the individual engaged in the offense conduct at that time. The two concepts are necessarily interrelated.

Expert testimony is a noted safeguard against improper identification. *Perry v. New Hampshire*, 565 U.S. 228, 247 (2012) (observing same). Courts have recently expressed a more hospitable approach to expert testimony on eyewitness identification than was originally exhibited. *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing decision). More recently, courts have endorsed a case-by-case approach to admitting expert testimony on identifications, typically focusing on the importance of the identification in contrast to non-eyewitness evidence proving guilt. *United States v. Watkins*, 66 F.4th 1179, 1185 (8th Cir. 2023). "[S]uch testimony has been allowed in with increasing frequency where the circumstances include 'cross-racial identification, identification after a long delay, identification after observation under stress, and [such] psychological phenomena as ... unconscious transference.' *Langan*, 263 F.3d 613, 621(quoting *United States v. Harris*, 995 F.2d 532, 535 (4th Cir.1993)). The present case aligns perfectly with these concerns.

As for testimony regarding recollection rather than identification, expert testimony frequently centers on the interaction of the two concepts. *See, e.g., United States v. Downing*, 753 F.2d 1224, 1230 (3d Cir. 1985) (vacating district court judgment based on failure to admit expert testimony with eyewitness identification as central issue).

In the present case, despite massive volumes of video evidence there is no

3

corroborating video to substantiate D.H.'s claimed aggravated assault with a deadly weapon. In a case-by-case approach, an expert opinion on a uniquely chaotic and stressful scenario is essential to undercut the certainty of D.H.'s identification testimony.

## II. GENERAL STEPHEN N. XENAKIS

This Court expressed concern as to General Xenakis testimony regarding posttraumatic stress disorder and certain general rather than specific intent offenses, such as assault. General Xenakis's testimony is addressed to "[t]he activities at the Capitol boil[ing] into frenzy and chaos that resembled a combat environment . . . [during which] Mr. Cappuccio became surprisingly swept up in it and was unable to extract from it safely."  This necessarily includes the civil disorder violation, which this Court recognized, and the government has conceded is a specific intent violation.

In general, "mental condition evidence [is appropriate when] . . . admitted not as an affirmative defense to excuse the defendant from responsibility for his acts, but to negate specific intent when that is an element of the charged act itself." *United States v. Childress*, 58 F.3d 693, 728 (D.C. Cir. 1995).

Even if the Government relinquishes its alleged aiding and abetting claim as to the robbery and assault claims, this specific intent allegation remains as to Counts 34, 52 and 53.  If this Court were to adopt Circuit Judge Katsas's definition of corruptly, as set forth in the Trial Brief defining the offense, then the substantive offense would require action with an intent, and thereby require proof of specific intent.  Count 52

requires that the Government prove the conduct was willfully done, yet another specific intent *mens rea* example.

It is respectfully submitted various charges contain specific intent components sufficient to justify the proposed expert testimony.

### III.   GENERAL CONSIDERATIONS

This Court, in assessing whether to include or exclude the proposed witnesses, is asked to consider the testimony is offered not to jurors lacking an understanding of the law but to this Court, well-versed in its requirements and unlikely to be led astray by the testimony offered to it.

As was observed in required to the current analysis and the role of the precise factfinder, specifically in the context of bench trials:

> The gatekeeping analysis is "flexible" and "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 141–42, 119 S.Ct. 1167. . . . The Court is also mindful that "where a bench trial is in prospect, resolving Daubert questions at a pretrial stage is generally less efficient than simply hearing the evidence." *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 7-cv-5804, 2009 WL 959775, at *6, n.3 (S.D.N.Y. Apr. 8, 2009). This is because, in a bench trial, the "factfinder and the gatekeeper are the same." *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006). A *Daubert* motion, therefore, effectively asks the Court to "gate-keep expert testimony from [itself]." *Joseph S. v. Hogan*, No. 6-cv-1042, 2011 WL 2848330, at *2 (E.D.N.Y. July 15, 2011); *see also Ramirez v. U.S. Immigr. & Customs Enf't*, No. 18-cv-508, 2019 WL 6036121, at *4 (D.D.C. Nov. 14, 2019) ("in a bench trial, the Court can easily discount the weight of any testimony the Professors might give that goes beyond the proper scope of their expertise"); 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 23:2.75 (4th ed. 2015) ("In a non-jury trial ... the law gives the judge a wide scope of discretion to read expert affidavits

5

or hear expert testimony which will assist in reaching an informed decision."). If a party seeks only partial exclusion of an expert's testimony, the expert "will be testifying anyway, so the efficiency gained or time saved by granting the motion in limine would be limited." *Ramirez*, 2019 WL 6036121, at *4.

*United States ex rel. Morsell v. NortonLifeLock, Inc.*, 567 F.Supp.3d 248, 260 (D.D.C., 2021). This Court is unlikely to be confused by testimony deemed to assist it in its determinations, regardless of the degree to which such testimony may be considered helpful. It is respectfully submitted that the proposed testimony passes muster under *Daubert* and need not be excluded.

## IV. CONCLUSION

Considering the foregoing, this Court is respectfully asked to reject the Government's request to exclude the proposed expert testimony.

> Respectfully submitted,
>
> Maureen Scott Franco
> Federal Public Defender
>
>         /S/
> MARINA THAIS DOUENAT
> Assistant Federal Public Defender
> Western District of Texas
> 727 E Cesar E. Chavez Boulevard
> Suite B-207
> San Antonio, TX 78206
> *Attorney for Defendant*

## CERTIFICATE OF SERVICE

I, Marina-Thais Douenat, Assistant Federal Public Defender for the Western District of Texas, hereby certify that on the 12th day of July 2023 filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ MARINA-THAIS DOUENAT
Assistant Federal Public Defender