UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 1:21-cr-00040-8 (TNM) |
| STEVEN CAPPUCCIO, | |
| Defendant. | |

### MEMORANDUM ORDER

After a bench trial, the Court found Steven Cappuccio guilty of several offenses stemming from his conduct at the United States Capitol on January 6, 2021. Cappuccio now moves for a judgment of acquittal notwithstanding that verdict. Mot. for J. of Acq. Notwithstanding the Verdict (Mot. for JNOV), ECF No. 694. The Court denies his motion.

### I.

The Government charged Cappuccio with nine criminal offenses for his conduct during the riot at the Capitol on January 6, 2021. *See* Fifth Superseding Indictment, ECF No. 180. He was charged alongside eight co-defendants. *Id*. After a bench trial, the Court found him guilty on seven of those charges. Verdict, ECF No. 687. Only two of his convictions are relevant to this motion: (1) Count 42, Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, *id*. at 2; and (2) Count 50, Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, *id*. Cappuccio now moves for judgment notwithstanding the verdict on both those convictions. *See* Mot. for JNOV at 2.

His theory is as follows: Counts 42 and 50 both require that an individual have taken

certain actions "in or in close proximity to any restricted building or grounds." Oral Verdict Tr. at 60:10–12, 62:21–23. For purposes of this case, "a restricted building or grounds" is "any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). Here, the relevant "person protected by the Secret Service" was then-Vice President Michael Pence. *See* Oral Verdict Tr. at 59:3–7. The Government contended, and the Court agreed, that the Vice President's presence made the Capitol a "restricted building or grounds" during the electoral vote certification. *Id*. at 58:24–60:6. But Cappuccio argues that this was wrong. Mot. for JNOV at 3–5. He argues that, because the Vice President has an office in the Capitol, the Capitol is the Vice President's "workplace" and thus not somewhere that the Vice President can "temporarily visit[]." *Id*.

## II.

After a guilty verdict has been rendered, a defendant may move for a judgment of acquittal notwithstanding the verdict (sometimes called JNOV, or judgment *non obstante veredicto*). Fed. R. Crim. P. 29(c). The bar for obtaining such a judgment is high. The verdict may be overruled "only if no reasonable [factfinder] could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983). In making that determination, the Court must "view the evidence in the light most favorable to the verdict, and must presume that the [factfinder] has properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *Id*. In short, a motion for JNOV succeeds only where the Government's case is legally defective or has suffered a significant failure of proof. This is a high bar indeed. *See United States v. Hale-Cusanelli,* 628 F. Supp. 3d 320, 324

(D.D.C. 2022).

Cappuccio argues that "the evidence [wa]s insufficient to support a conviction" on Counts 42 and 50 because, in his view, the Capitol did not qualify as a "restricted building or grounds" on January 6, 2021.  Mot. for JNOV at 3–5.  Cappuccio does not dispute that the Capitol was "posted, cordoned off, or otherwise restricted."  18 U.S.C. § 1752(c)(1).  Nor does he dispute that the Vice President was a "person protected by the Secret Service."  *Id*. § 1752(c)(1)(B).  Instead, he argues only that Vice President Pence was not "temporarily visiting" the Capitol that day.  Mot. for JNOV at 4–5.  That is because "the Vice President has a direct organizational link to the Capitol" and was thus "no mere visitor."  *Id*. at 4.  This argument is primarily legal, rather than factual, and turns on the meaning of "temporarily visiting."  *See United States v. Jabr*, No. 1:18-cr-00105, 2019 WL 13110682, at *9 (D.D.C. May 16, 2019).

### III.

Cappuccio's argument is based on the Vice President's close relationship with the Senate.  The Vice President is the President of the Senate.  U.S. Const. art. I, § 3, cl. 4.  In that capacity, he or she maintains an office near the Senate chamber.  *United States v. McHugh*, 583 F. Supp. 3d 1, 35 (D.D.C. 2022).  Cappuccio claims that this makes the Capitol the Vice President's "workplace," and means that the Vice President's presence there can never be reasonably described as a visit.  Mot. for JNOV at 5.  The Court disagrees.

While it is true that Vice President Pence had an office at the Capitol, his principal office was elsewhere.  Indeed, Cappuccio himself concedes that the Vice President went to the Capitol only infrequently.  Reply in Supp. of Mot. for JNOV at 2, ECF No. 699.  That is because his primary workplace was in the Eisenhower Executive Office Building.  *See McHugh*, 583 F.

Supp. 3d at 35 ("[T]he Vice President is principally an executive officer who spends little time at the Capitol and likely even less in [his] 'office' there."). This by itself is fatal to Cappuccio's argument. While perhaps a trip to one's *primary* workplace may be best described as something other than a "visit," the same is not true of a trip to a secondary or tertiary workplace.[1]

Consider some examples. Each federal appellate court hears oral arguments in certain statutorily designated cities. 28 U.S.C. § 48(a). For instance, the Second Circuit hears its cases in New York City. *Id*. But the judges of each circuit may have duty stations in other cities, many of which never host oral argument sittings. *See id*. § 456(e). Imagine a Second Circuit judge with a duty station in Greenwich, Connecticut. When he periodically travels from Greenwich to New York City to attend oral arguments, he could fairly be described as "visiting" the Thurgood Marshall U.S. Courthouse. And that is so even though he has official business there and even though he may have chambers in the building. That his Foley Square sojourn deviates from his ordinary course is enough to render it a "visit."

Or imagine a successful businesswoman who owns two homes: a primary residence in Washington, D.C., and a beach house in Rehobeth Beach, Delaware. When she travels with her family to the Rehobeth Beach home, every ordinary English speaker would describe her getaway as a "visit." Indeed, the contrary is much less likely. It would strike most people as quite peculiar to describe our beachgoer as "residing" in Rehobeth Beach. Or our judge as "working" in New York City. *Contra* Mot. for JNOV at 5.

Dictionary definitions confirm this reading. Section 1752 was originally enacted in 1971. *See Omnibus Crime Control Act of 1970*, Pub. L. No. 91-644, § 18, 84 Stat. 1880, 1891–92

---

[1] The Court stresses the word "may." Because this case does not involve a trip to a principal workplace, the Court need not address whether such a trip constitutes a "visit."

(1971).  Contemporary dictionaries reflect the usage the Court just described.  For instance, dictionaries provide definitions for "visit" such as "[t]o go or come to see in an official or professional capacity," or "[t]o go or come to generally."  *Visit*, Am. Heritage Dictionary of the Eng. Lang. (New Coll. Ed. 1976); *accord Visit*, Webster's New World Dictionary of the Am. Lang. (2d Coll. Ed. 1968).  On either of those definitions, the Vice President's presence at the Capitol for the electoral count certification would be described as a "visit."

And Cappuccio's reading would lead to bizarre results.  For example, it would mean that Cappuccio's conduct would be criminal under this section if a Vice President's spouse were sitting in the gallery, watching the certification, 18 U.S.C. § 3056(a)(2), but not if the Vice President were there alone.  Perhaps more absurdly, it would mean that the conduct would be criminal if a Vice President-Elect were in attendance.  *Id*. § 3056(a)(1), (a)(7).  Or if a *former* one were.  *Id*. § 3056(a)(8).  But not if only the *current* Vice President were present.  The Court cannot imagine Congress meant to subject current officeholders to such disfavored status.  And Congress's work does not compel Cappuccio's strained reading.

Perhaps for these reasons, *every* court confronted with this question has rejected Cappuccio's position.  *See, e.g.*, *United States v. Rhine*, No. 1:21-cr-00687, 2023 WL 372044, at *6–7 (D.D.C. Jan. 24, 2023) (collecting cases); *McHugh*, 583 F. Supp. at 34-35; *United States v. Puma*, 596 F. Supp. 3d 90, 112-14 (D.D.C. 2022).  Against that authority, Cappuccio merely recycles the same arguments that have failed time and again.  The Court sees no error in these opinions' reasoning and agrees with their conclusion.  The Vice President was "temporarily visiting" the Capitol when Cappuccio joined the riot there on January 6, 2021.

5

## IV.

The Court concludes that, during the certification of electoral votes on January 6, 2021, the United States Capitol qualified as a "restricted building or grounds." 18 U.S.C. § 1752(c)(1)(B). Accordingly, the Court **ORDERS** that the Motion for Judgment of Acquittal Notwithstanding the Verdict, ECF No. 694, is **DENIED**.

Dated: October 23, 2023                                    TREVOR N. McFADDEN, U.S.D.J.